# United States District Court
# Central District of California



**FILED**
CLERK, U.S. DISTRICT COURT

APR 5, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY:     BH     DEPUTY

G. Pederson, et al.,

　　　　　　　　Plaintiffs,

　　　　v.

Airport Terminal Services,

　　　　　　　　Defendant.

ED CV 15-02400-VAP (SPx)

## Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Conditional Certification of Class

## (Doc. No. 39)

On March 9, 2018 Plaintiffs Gideon Pederson, Ruth Alcaraz, and Sasha Mason (collectively "Plaintiffs") filed a Motion for Preliminary Approval of a Settlement Agreement. (Doc. No. 39 ("Motion").) Defendant Airport Terminal Services ("ATS" or "Defendant") does not oppose the Motion.[1] Having considered the papers filed in support of the Motion, the Court deems this matter appropriate for resolution without oral argument of counsel pursuant to Local Rule 7-15 and GRANTS the Motion.

---

[1] The caption page on Plaintiffs' filings erroneously name Richard B. Hawes and Sally A. Leible as defendants in this action. Although they were named defendants in this action in the original and first amended complaints, (Doc. Nos. 1, 11), the parties agreed to dismiss Mr. Hawes and Ms. Leible from the case on April 7, 2016, (Doc. No. 15). The operative Second Amended Complaint thus does not name them as defendants. (Doc. No 18.) The only remaining defendant to this action is ATS. (*Id.*)

# I.    BACKGROUND

## A.    Factual and Procedural Background

Plaintiffs are current and former employees of Defendant who worked as Airport Agents in Riverside County.  (Doc. No. 17 ("SAC") ¶¶ 1-2.)  Plaintiffs allege Defendant violated various provisions of the California Labor Code, the California Code of Regulation, and the California Business and Professions Code by (1) failing to pay earned wages to Airport Agents on account of late, curtailed, or missed meal periods; (2) failing to provide Airport Agents with proper wage statements; (3) failing to reimburse Airport Agents for uniform maintenance expenses; (4) collecting unlawful deductions from employees; (5) unlawfully requiring Airport Agents to purchase uniforms; (6) failing to pay the correct amount of overtime owed to Airport Agents; (7) failing to provide Airport Agents with proper seating; and (8) engaging in unfair, unlawful, and/or fraudulent business practices in violation of California law.  (Id. ¶¶ 3-4.)

On November 20, 2015, Plaintiffs filed a putative class action complaint against Defendant in this Court.  (Doc. No. 1.)  On January 25, 2016, Plaintiffs filed a first amended complaint to clarify their California Labor Code Private Attorneys General Act of 2004 ("PAGA") claims.  (Doc. No. 11.)  Plaintiffs then filed the operative Second Amended Complaint on April 14, 2016.  (SAC.)

The claims in this case overlap substantially with a prior class action lawsuit, Collette McDonald v. Airport Terminal Services, No. 11-CV-01946-VAP (SPx) (C.D. Cal. 2011).  The investigation similarly overlapped. (Doc. No. 39-1 ("Harris Decl.") ¶ 3.)  After a mediation on August 9, 2016 and further negotiations with the

assistance of the mediator, the parties filed a Notice of Settlement on January 4, 2018 before any motion practice occurred.  (Doc. No. 35.)

## B.    Settlement Agreement

This Settlement Agreement provides for the settlement of all pending claims against Defendant in this case.  (Doc. No. 39-1, Ex. 1 ("Settlement Agreement") at ¶¶ 2.7, 2.10.)  It defines the proposed class as: "any current or former non-exempt employee who is or was employed by Defendant within California at any time from November 20, 2011 through the date of preliminary approval of the settlement." (Id. ¶ 1.5)  According to Defendant's records, there are 2,842 potential Settlement Class Members.  (Harris Decl. ¶ 14.)

The proposed Settlement Agreement includes the following terms:

### 1.    Monetary Relief to Class Members

The Settlement Agreement provides for a Gross Settlement Amount ("GSA") of $600,000.  (Settlement Agreement at ¶ 5.1.)  This amount is inclusive of all attorneys' fees and costs, class representative incentive awards, lead plaintiffs' individual payments, the State of California's Labor and Workforce Development Agency ("LWDA") payment, settlement administration costs, and all employee or employer payroll taxes.  (Id.)  The GSA also includes the Deposit Sum, which is the security deposits and accrued interest paid by Class Members and held by Defendant as of January 1, 2018, currently calculated to be $50,956.45.  (Id. ¶ 1.12; Mot. at 1-2.)

After these deductions from the GSA, the Net Settlement Amount ("NSA") will then be used to fund individual payments to class members.  (Id. ¶¶ 1.14,

1.17.)  Class Members must submit a claim form in order to receive an individual distribution.  Each Class Member's proportional share will be determined by multiplying the balance of the NSA by a fraction, the numerator of which is the total of the Class Member's number of workweeks during the class period, and the denominator of which is the total of all workweeks for Class Members who have submitted valid and timely claim forms.  (Id. ¶ 5.8.1.)  Each payment will be characterized as 80% 1099 income and 20% W-2 income.  (Id. ¶ 5.8.3.)

None of the GSA will revert to Defendant.  (Id. ¶ 5.8.4.)  All uncashed or undeliverable settlement checks will expire after 180 days.  (Id.)  The value of all expired checks will be tallied by the Settlement Administrator and paid to the Industrial Relations Unpaid Wage Fund described in California Labor Code section 96.6 or as consistent with applicable law and approved by the Court.  (Id.)

## 2.  Release of Claims Against Defendant

On the date the Court enters the final judgment and final approval, the Class Members will release each Released Party of and from all claims that were or could have been based on or arise out of the facts or allegations alleged in connection with this action.  (Id. ¶ 6.2.)

## 3.  Class Counsel's Fees and Costs

When moving for final approval of the settlement, Plaintiffs' counsel will request attorneys' fees in an amount not to exceed 33% of the GSA – not more than $200,000 – and not more than $12,000 for all attorneys' costs.  (Id. ¶ 5.3.) The Court's approval of Attorneys' Fees and Costs is not a material term of the Agreement, and any different amount shall be allocated to the NSA or from the GSA.  (Id. ¶ 5.3.1.)

4

### 4. Class Representative Payments

In addition to their settlement share, Plaintiffs will apply to the Court for an award of (i) Class Representative Incentive Awards of $500.00 for each named plaintiff, and (ii) individual payments of $4,500 for each named plaintiff on account of their execution of additional individual releases broader than Settlement Class Member releases and their additional agreements to refrain from seeking future employment with Defendant. (Id. ¶ 5.4.)  The Court's approval of Class Representative Incentive Awards is not a material term of the Agreement, and any different amount shall be allocated to the NSA or from the GSA. (Id. ¶ 5.4.1.)

### 5. PAGA and LWDA Payments

Plaintiffs will also seek approval from the Court for a PAGA payment from the Gross Settlement Amount of $10,000; $7,500 of which shall be allocated to the LWDA and $2,500 of which will be distributed as part of the NSA. (Id. ¶ 5.6.)

### 6. Notice

Plaintiffs shall request that the Court appoint CPT Group, Inc. or another administrator mutually agreed upon by the parties as Settlement Administrator for purposes of sending notice of the settlement to Class Members. (Id. ¶ 3.1.)  The Settlement Administrator Costs shall not exceed $27,000 and the parties shall continue to seek reduced bids from potential administrators. (Id.)

Once the Court enters an order granting Preliminary Approval, Defendant will provide the Settlement Administrator with a database containing each Class Member's known mailing address, names, and social security numbers. (Id. ¶ 3.3; Mot. at 16, n. 10.)  Within 28 days of the entry of an order granting Preliminary Approval, the Settlement Administrator will mail the Class Notice to all Class

5

Members via first-class regular U.S. mail using the mailing address information provided by Defendant.  (Id. ¶ 3.5)  In the event that any Class Notice Packet is returned as undeliverable, the Settlement Administrator will be responsible for taking reasonable steps to trace the mailing address.  (Id.)

## II.    LEGAL STANDARD

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  When parties reach a settlement before class certification, courts must assess: (1) the propriety of the class certification and (2) the fairness of the settlement.  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  When reviewing the settlement, the Court should not endeavor to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  City of Seattle, 955 F.2d at 1291.

At the preliminary approval stage, a court should approve a proposed settlement and give notice to the proposed class where "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . ."  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Federal Judicial Center, Manual for Complex Litigation § 30.44 (2d ed. 1985)).

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23.  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1996).  A court considering such a request should give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context."  Id.

In addition to these requirements, a plaintiff must satisfy one of the three Rule 23(b) prongs to maintain a class action.  Here, Plaintiffs seek class certification under Rule 23(b)(3).  (Mot. at 19.)  Where a plaintiff seeks class certification under Rule 23(b)(3), he must prove: "[1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Class action settlements must also satisfy the fairness and reasonableness standard of Rule 23(e).  Alberto v. GMRI, Inc., 252 F.R.D. 652, 664 (E.D. Cal. 2008).  Rule 23(e) states: "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Id.  The Court must hold a hearing and find that the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval followed by a final fairness hearing.  See Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004).

At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether or not notice should be sent to class members.  Vasquez v. Coast Valley Roofing, Inc., 670 F.

Supp. 2d 1125 (E.D. Cal. 2009); In re Tableware Antitrust Litig., 484 F. Supp. 2d
1078, 1079 (N.D. Cal. 2007); Gautreaux v. Pierce, 690 F.2d 616, 621 n. 3 (7th Cir.
1982) (stating the purpose of a preliminary approval hearing is to "ascertain
whether there is any reason to notify the class members of the proposed
settlement and to proceed with a fairness hearing").

## III.    DISCUSSION

### A.    CLASS CERTIFICATION

#### 1.    Rule 23(a) Requirements

##### i.    Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all
members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "'[I]mpracticability' does not
mean 'impossibility,' but only the difficulty or inconvenience of joining all members
of the class."  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14
(9th Cir. 1964).  "Although there is no exact number," courts have repeatedly held
classes comprised of "more than forty" members presumptively satisfy the
numerosity requirement.  See e.g., DuFour v. BE LLC, 291 F.R.D. 413, 417 (N.D.
Cal. 2013) (citing Krzesniak v. Cendant Corp., No. 05-05156 MEJ, 2007 WL
1795703, at *7 (N.D. Cal. June 20, 2007)).  "Where the exact size of the proposed
class is unknown, but general knowledge and common sense indicate it is large,
the numerosity requirement is satisfied."  Heffelfinger v. Elec. Data Sys. Corp., No.
CV 07-00101 MMM (Ex), 2008 WL 8128621, at *13 (C.D. Cal. Jan. 7, 2008)
(citations omitted) (internal quotation marks omitted).

Here, Plaintiffs have represented that the class consists of 2,842 members. (Mot. at 9-10.)  As the class is comprised of "more than forty" members, Plaintiffs have met their burden as to numerosity.  See DuFour, 291 F.R.D. at 417.

### ii.    Commonality

Commonality "requir[es] a plaintiff to show that 'there are questions of law or fact common to the class.'"  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) (quoting Fed. R. Civ. P. 23(a)(2)).  Even a single common question will suffice.  Id. at 359.

Here, Plaintiffs raise common questions, namely (1) whether Defendant's policy of not paying for meal periods when "No Lunch" was coded on employee timesheets was legal; (2) whether Defendant was required to reimburse employees for maintaining their uniforms; (3) whether Defendant's wage statement complied with California Labor Code section 226(a); and (4) whether Defendant's deduction policy complied with California Labor Code section 221. (Mot. at 17-18.)  Plaintiffs represent that Defendant engaged in uniform practices with respect to the Class Members and all of the employees in the Class were subject to the challenged practices.  As those questions are capable of class-wide resolution, commonality is satisfied.  See Wal-Mart Stores, Inc., 564 U.S. at 359.

### iii.    Typicality

The Ninth Circuit in Hanlon v. Chrysler Corp. explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  150 F.3d 1011, 1020 (9th Cir. 1998).  Thus, to find typicality, a "court does not need to find that the claims of the

purported class representatives are identical to the claims of the other class members." Haley v. Medtronic, Inc., 169 F.R.D. 643, 649 (C.D. Cal. 1996).

Here, Plaintiffs' claims are typical of the class members' claims because "[t]he fact-pattern for Plaintiffs is similar, if not identical, to the fact-pattern for other Settlement Class members: Plaintiffs and Settlement Class members earned hourly wages but were not provided meal-period compensation for documented cancelled meals, and they were required to shoulder the expense of maintaining their uniforms." (Mot. at 18.) Hence, typicality is satisfied.

   *iv.* *Adequacy of Representation*

Finally, "[t]he named Plaintiffs must fairly and adequately protect the interests of the class." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(4)). To determine whether this requirement has been met, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. In determining adequacy of counsel pursuant to Rule 23(g), the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Here, there is no indication Plaintiffs or Class Counsel have any conflicts of interest with other class members. (See Motion at 18.) Plaintiffs assert "[they]

10

also have no conflicts of interest with Settlement Class members, as they share their likely desire to be paid in full." (Id.)  Moreover, "Plaintiffs are committed to pursuing the claims of the Settlement Class, and their motivation in retaining counsel and pursuing this action has been to seek reimbursement for themselves and Settlement Class members, as well as to ensure that [Defendant] complies with wage-and-hour requirements." (Id.)  Although Defendant disputes the merits of Plaintiffs' claims, "Plaintiffs' motion shall be unopposed by Defendant, unless Plaintiffs' motion for preliminary approval seeks relief not specified by [the Settlement] Agreement." (Harris Decl., Ex. 1 at ¶ 7.1.2.)

The named Plaintiffs, for their part, have been actively engaged in the litigation and "understand that [they] owe a duty of good faith to [ATS] employees." (Harris Decl., Ex. 3 ¶ 5; Ex. 4 ¶ 5; Ex. 5 ¶ 5.)  Among other tasks, the named Plaintiffs have effectively communicated with Class Counsel, interpreted various documents for Class Counsel, and participated extensively in the full-day mediation session. (Id.)

Accordingly, the named Plaintiffs and Class Counsel have demonstrated their "ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

As Plaintiffs have met all of the Rule 23(a) criteria, the Court turns to the Rule 23(b) requirements.

### 2.    Rule 23(b)(3)

Plaintiffs seek preliminary class certification under Rule 23(b)(3). (Motion at 19.)  When invoking Rule 23(b)(3), the party seeking class certification bears the burden of showing the following two criteria are met: (1) the questions of law or

11

fact common to members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  See In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009)

### i. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether classes are sufficiently cohesive to warrant adjudication by representation."  Hanlon, 150 F.3d at 1022.  "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)."  Id.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  Id.

As discussed above, Plaintiffs have demonstrated commonality amongst proposed class members as they "noted with respect to the commonality requirement, the central issue in this case is the legality of ATS's meal-period, wage statement, uniform maintenance and deduction policies.  The only individual determinations, then, are the quantification of damages for each Settlement Class member—and such individual determinations do not defeat class certification." (Mot. at 19.)  Plaintiffs, therefore, have demonstrated that common issues predominate over individualized concerns.

### ii. Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."

<u>Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1175 (9th Cir. 2010). Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification. (<u>Id</u>.)

A class action appears to be superior to other available methods for adjudicating this matter fairly and efficiently. Here, the alternative to a single class action would be numerous high-risk, low-reward individual actions. "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this superiority factor weighs in favor of class certification." <u>Wolin</u>, 617 F.3d at 1175 (alteration brackets omitted). Indeed, without class certification, it is unlikely that these claims would be litigated at all. Defendants have not opposed Plaintiffs' contention that a class action is the superior mechanism for the settlement of the claims as pled by Plaintiffs. Hence, Plaintiffs have satisfied the superiority requirement of Rule 23(b)(3).

Since Plaintiffs have satisfied Rule 23(a) and Rule 23(b), the Court concludes that class certification for purposes of settlement is proper in this case, and now turns to whether the proposed settlement is fair, adequate, and reasonable under Rule 23(e).

## B.    FAIRNESS, ADEQUACY, AND REASONABLENESS OF THE SETTLEMENT

"[Rule] 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." <u>Hanlon</u>, 150 F.3d at 1026. "At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential

treatment to class representatives or segments of the class; and (4) falls within the
range of possible approval." Harris v. Vector Mktg. Corp., No. C-08-5198 EMC,
2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).

### 1. Product of Serious, Informed, Non-Collusive Negotiations

To approve the settlement at this stage, the Court must find first it is "not the
product of fraud or overreaching by, or collusion between, the negotiating parties."
Hanlon, 150 F.3d at 1027.  The settlement between the Parties "was negotiated in
light of all known facts and circumstances — including the potential difficulty of
proving Plaintiffs' claims, potential defenses, the uncertainty associated with
litigation, the risks of significant delay, and numerous potential appellate issues."
(Harris Decl. ¶ 6.)  ATS's counsel provided Class Counsel with information
regarding the size of the Settlement class and the number of cancelled meal
breaks during the class period.  (Id. ¶ 7.)  "Class counsel were thus able to
calculate potential damages with precision."  (Motion at 20.)

The Agreement is the result of "more than 16 months of negotiations and
exchange of information between the Parties following the initial mediation," and
was conducted with the assistance of Lisa Klerman, "an experienced mediator of
cases involving the wage and hour laws at issue in the Action."  (Harris Decl. ¶¶ 4,
6.)  The Agreement thus appears to be the product of serious, informed, and non-
collusive negotiations.  Moreover, "[t]he assistance of an experienced mediator in
the settlement process confirms that the settlement is non-collusive." Satchell v.
Federal Express Corp., Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4
(N.D. Cal. Apr. 13, 2007).  This factor weighs in favor of preliminary approval.

14

### 2.    Obvious Deficiencies and Improper Preference

While not explicitly argued, Plaintiffs' Motion supports finding the proposed Agreement has no obvious deficiencies and that the relief provided in the settlement will reasonably benefit all Class Members.  (Mot. at 20-24.)  It also appears to include a common-sense method of determining the settlement share owed to each Participating Class Member.  Thus, these factors weigh in favor of preliminary approval of class certification.  As noted below, however, the Court has concerns over the requested attorneys' fees.

### 3.    Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  Vasquez, 670 F. Supp. 2d at 1125.  Moreover, to evaluate whether a settlement is fundamentally fair, adequate, and reasonable, the Court considers the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  "[W]hen (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'"  Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012).

i.    *Strength of Plaintiff's Case and Future Risk*[2]

Plaintiffs' claims do not appear particularly strong, and Class Counsel
maintains that the Agreement is "more than reasonable" in light of the litigation
risks that Plaintiffs and Class Members would face if the case were not settled.
(Mot. at 20-24.)  These risks include, inter alia, dismissal of class allegations, an
adverse decision on the merits, loss of motions, the likely lengthy duration of
further litigation, and the possibility that a trial would return a less favorable
verdict.  (Id.)  Plaintiffs also concede that "[t]he defenses raised by ATS potentially
eliminate *any* liability for Plaintiffs' meal period, pay-stub, expense reimbursement,
unlawful deduction, overtime and derivative continuing-wage claims."  (Id.
(emphasis in original).)  Defendant continues to dispute Plaintiffs' claims, and
maintains that the Actions could not be properly maintained as a class action, that
members of the class were properly compensated, that it provided accurate wage
statements, that it did not violate any state law, and that it is not liable for any
penalties claimed in the Actions.  (Id.)

Defendant's contentions, at the very least, would have presented Plaintiffs
with the "substantial risk of incurring the expense of a trial without any recovery."
In re Toys 'R' Us FACTA Litig., 295 F.R.D. at 451.  Plaintiffs concede that
Defendant's asserted defenses present serious threats to the claims of Plaintiffs
and the other Class Members.  (Mot. at 22.)  Defendants have presented specific
defenses to each of Plaintiffs' claims.  (Harris Decl. ¶¶ 15-19.)  Moreover, prior to
the filing of the present Motion, the Court had not yet certified a class in this case.

---

[2] As the first three Hanlon factors — strength of the Plaintiff's case; the risk,
expense, complexity, and likely duration of future litigation; and the risk of
maintaining class action status throughout the trial — are interrelated, the Court
discusses them together here.

Where there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement.  See, e.g., Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009).

Given the relative strength of Plaintiffs' claims, and the "substantial" risks and costs associated with future complex litigation, the Agreement's terms appear to be reasonable.  Hence, these factors favor preliminary approval.

ii.    *Extent of Discovery Completed and Stage of the Proceedings*

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  Linney v. Cellullar Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).  Both sides have "investigated the claims against Defendant and also analyzed any and all applicable defenses raised by Defendant.  This investigation included work conducted in connection with a prior class action lawsuit, . . . the exchange of information and documentation pursuant to informal discovery methods, service of formal discovery, numerous conferences between [Class Counsel] and Defendant's Counsel, and [Class Counsel's] interviews of Plaintiffs and Class Members."  (Harris Decl. ¶ 3.)  "Given the parties' attempts at an early resolution of this case, Plaintiffs have not had occasion to undertake any 'formal' discovery." (Mot. at 23.)  However, informal discovery completed includes: (a) information as to the size of the Settlement Class, (b) total number of cancelled breaks during the class period, (c) information regarding the security deposits maintained by Defendant, and (d) the alternative workweek elections held by Defendant.  (Id. at 23-24 (citing Harris Decl. ¶¶ 7-11).)  "In addition, Class Counsel undertook their own independent investigation to inform their negotiating position, including risk re-evaluation in light of the potentially dispositive defenses." (Id. at 23 (citing Harris

Decl. ¶¶ 3, 8).)  Accordingly, the Court finds this factor weighs in favor of preliminary approval.  See <u>Linney</u>, 151 F.3d at 1239.

### iii.   Experience and Views of Counsel

Class Counsel has ample experience litigating class actions similar to this case and has demonstrated the ability to prosecute vigorously on behalf of the class members.  (Harris Decl. ¶¶ 20-21.)  Moreover, Class Counsel states that the Settlement is "more than reasonable."  (<u>Id</u>. ¶ 15.)  Accordingly, the Court finds this factor weighs in favor of preliminary approval.

### iv.   Presence of a Governmental Participant and Reaction of the Class Members to the Proposed Settlement

As there is no governmental participant in this action and the Parties have not yet provided notice to the class members, these factors are irrelevant for the purposes of preliminary approval.

### v.   Amount Offered in the Settlement

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  <u>Staton</u>, 327 F.3d at 963.

### A.   Attorneys' Fees

When evaluating attorneys' fees, the Ninth Circuit has held that "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method."  <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir.2002) (citing <u>In re Wash. Pub. Power Supply Sys. Sec. Litig.</u>, 19 F.3d 1291, 1295–96 (9th Cir.1994)).  When using the percentage-of-the-fund method,

"courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record." Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013); see Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989). The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases. Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing Vizcaino, 290 F.3d at 1048–50).

Here, Class Counsel indicates they intend to seek an award of attorneys' fees in of up to 33.33% of the GSA, (Mot. at 13), which is above the Ninth Circuit's 25% "benchmark award for attorney[s'] fees." Hanlon, 150 F.3d at 1029. Class Counsel does not set forth adequate reasons justifying such a fee; the Court therefore cannot undertake a preliminary evaluation of the request under the factors set forth in Vizcaino at this time. In light of the claims, stage of the action at the time of resolution, results achieved, and other information presented in this Motion, the Court is unlikely to determine that an upward departure from the 25% benchmark is warranted and reasonable at the final settlement approval.

B.    Costs

According to the Agreement, Class Counsel will apply to the Court for reimbursement out of the settlement fund for costs associated with the prosecution of the class action up to $12,000. (Settlement Agreement ¶ 5.3.) Class Counsel has not attached any accounting of past costs. Thus, the Court will revisit the cost request at the time the Parties seek final approval of the settlement.

19

C.    Incentive Awards

Named plaintiffs "are eligible for reasonable incentive payments." Staton, 327 F.3d at 977.  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009).  "The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" Staton, 327 F.3d at 977.  Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).  "Courts have generally found that $5,000 incentive payments are reasonable." Alberto, 252 F.R.D. at 669.

Under the Agreement, Plaintiffs will apply to the Court for an award of (i) Class Representative Incentive Awards of $500.00 for each named plaintiff, and (ii) individual payments of $4,500 for each named plaintiff on account of their execution of additional individual releases broader than Settlement Class Member releases and their additional agreements to refrain from seeking future employment with Defendant.  (Id. ¶ 5.4.)

A total of $5,000 per named Plaintiff is within reasonable bounds for incentive payments to named Plaintiffs.  Yet, while Class Counsel briefed the appropriateness of the $500 incentive award payment, (Mot. at 12-13), Counsel did not address the appropriateness of the individual payments of $4,500.  Accordingly, the Court will set the appropriate award at the final settlement approval hearing.

### D.    Settlement Administrator Costs

Here, the Agreement states a maximum of $27,000 will be deducted from the settlement fund and paid to the settlement administrator for the costs of administrating the fund.  (Settlement Agreement ¶ 5.5.)  To the extent the fees and expenses are less than $20,000, the remainder will be retained in the NSA for distribution to Participating Class Members.  (Id.)  The parties will ask the Court to appoint a mutually agreed upon independent third party to serve as the Settlement Administrator.  (Id. at ¶ 1.21.)

The Settlement Administrator will be charged with administering the settlement fund by, among other things, mailing notice to settlement class members; receiving and tracking claim forms; receiving and tracking opt outs and objections from nonparticipating class members; and distributing payments to all participating class members.  (Id. ¶¶ 3.1-3.6, 4.2-4.3, 4.7, 5.3.2)  Accordingly, the Court finds the settlement administrator's costs reasonable for the purposes of this motion.

### E.    PAGA Settlement

The Court finds that the $10,000 PAGA settlement is reasonable and approves it.  See Chu v. Wells Fargo Investments, LLC, Nos. C 05-4526 MHP, C

06-7924 MHP, 2011 WL 672645 at *1, *6 (N.D. Cal. Feb. 16, 2011) (approving a similar settlement including a PAGA payment of $10,000, with $7,500 going to the State of California and the remaining $2,500 being distributed as part of the settlement awards).

> ### vi.    Conclusion Based on Review of <u>Hanlon</u> Factors

As almost all of the <u>Hanlon</u> factors weigh in favor of preliminary approval, the Court finds that the proposed settlement is "within the range of possible approval" and that notice should be sent to class members.  <u>Vasquez</u>, 670 F. Supp. 2d at 1125.  The Court stresses, however, that it is unlikely to approve the attorneys' fees award in its current form at the final approval stage.

## C.    NOTICE PROCEDURE

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Plaintiff must provide notice that is "timely, accurate, and informative." <u>See</u> <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 172 (1989).

### 1.    Notice Form

The Court accepts the proposed notice form, assuming that the Parties will insert dates and the Settlement Administrator's contact information appropriately. The notice form explains in plain language what the case is about, what the recipient is entitled to, and what the recipient must do next.  (Harris Decl., Ex. 2.) The Notice states the class members' options—do nothing, submit a claim form,

22

opt out of the class, or object to the settlement—and describes the consequences attached to each decision. (Id.)

### 2.    Claims Administration

The Agreement states the Settlement Administrator will send the notice, claim, and request for exclusion forms and issue appropriate claim payments. (Settlement Agreement ¶¶ ¶¶ 3.1-3.6, 4.2-4.3, 4.7, 5.3.2.)  The proposed administrative deadlines—e.g., Defendants shall provide the Settlement Administrator with a list of class members and their total rotations within 14 days of the preliminary approval order, and the Administrator will provide notice of the settlement to class members within 28 days of preliminary approval (Id. at ¶¶ 3.2-3.3)—are reasonable and are approved.  Thus, the Court finds the notice form and proposed claims administration process adequate.

## IV.    CONCLUSION

For the reasons stated above, most of the factors considered by the Court favor settlement.  Although the Court declines to approve the proposed attorneys' fees, the proposed settlement is within the range of possible final approval.  The Court, therefore, GRANTS Plaintiffs' Motion for preliminary approval of class action settlement and conditionally certifies the class for settlement.  The Court also VACATES the hearing on this Motion set for April 9, 2018.

Defendant shall provide a list of all settlement class members to the settlement administrator, KCC, within fourteen (14) calendar days of the date of this order.

The settlement administrator shall mail the notice form to all settlement class members within twenty-eight (28) calendar days of the date of this order.

Class members shall have forty-five (45) calendar days from the postmark date of the notice form mailing to submit a claim form, object, or opt out of the settlement.

The final approval hearing will be conducted within ninety (90) calendar days from the date of this Order, or at such other time as the Court may order.

**IT IS SO ORDERED.**

Dated:    4/5/18

Virginia A. Phillips
Chief United States District Judge