1  Alan Harris (SBN 146079)
2  Priya Mohan (SBN 228984)
   HARRIS & RUBLE
3  655 North Central Ave.
   Glendale, California 91203
4  Telephone: (323) 962-3777
   Facsimile: (323) 962-3004
5  aharris@harrisandruble.com
   pmohan@harrisandruble.com

6  John P. Dorigan (SBN 98964)
7  LAW OFFICES OF JOHN P. DORIGAN
   600 Canterbury Lane
8  Sagamore Hills, Ohio 44067
   Telephone: (330) 748-4475
9  Facsimile: (330) 748-4475
   jpdorigan@aol.com

10 *Attorneys for Plaintiffs*

11            **UNITED STATES DISTRICT COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14 G. PEDERSON, R. ALCARAZ, and S. MASON, individually and on behalf of all others similarly situated, and on behalf of aggrieved employees, the people of the State of California and the Labor Commissioner, | Case No. 5:15-cv-02400-VAP-SP *Assigned to Hon. Virginia A. Phillips* |
| 17            Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEY'S FEES, INCENTIVE AWARD AND REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 18            v. | |
| 19 AIRPORT TERMINAL SERVICES, INC., | Date:        July 2, 2018 Time:        2:00 p.m. Courtroom: 8A |
| 21            Defendant. | 350 West 1st Street Los Angeles, CA 90012 |

23

24

25

26

27

28

i

**PLEASE TAKE NOTICE** that, on July 2, 2018, at 2:00 p.m., in Courtroom 8A of the above-entitled Court located at 350 West 1st Street, Los Angeles, California 90012—or at such other date, time, or place as the Court may designate—Plaintiffs Gideon Pederson, Ruth Alcaraz and Sasha Mason will and hereby do, move for an order awarding $200,000 in attorney's fees, $9,357.47 in litigation costs, a $5,000 payment to each Plaintiff, consisting of a $500 enhancement award and a $4,500 payment on account of the broad releases from each.   The Motion will be made and based upon this Notice; the Memorandum of Points and Authorities appended hereto; the Request for Judicial Notice and Declarations of Alan Harris, John Dorigan, Gideon Pederson, Ruth Alcaraz and Sasha Mason filed herewith; all of the pleadings, papers, and documents contained in the file of the within action; and such further evidence and argument as may be presented at or before the hearing on the Motion.

The requested one-third fee award is justified in this case, as four years will have passed before Class Counsel receive reimbursement of their costs or any fee payment, at all; this is a case for workers with wages which were just above the minimum wage; the case is one which this Court has characterized as one which did "not appear particularly strong"; and the financial recovery represents essentially all of the outstanding wages, as well as significant non-monetary relief insofar as the Defendant has abandoned its practice of extracting $300 security deposits from the workers.  It is submitted that the Circuit's 25% "benchmark" was created mainly for cases involving multi-million dollar recoveries and lodestars will below the requested fees.  With an effective hourly rate of little over $300 ($200,000/650 total hours = $307/hr.), this Court should award the requested fees in full.

The required Local Rule 7-3 meet-and-confer took place commencing on January 8, 2018, and on various dates thereafter.  (See May 7, 2018, Decl. of Alan Harris in Supp. of Mot. for Award of Attorney's Fees ("Harris Decl.") ¶ 1.)  The Motion is made pursuant to the April 5, 2018 Order Granting Preliminary Approval of Class Settlement

[ECF Doc. 41] and Order regarding Clarification of Order Granting Preliminary
Approval of Class Action Settlement [ECF Doc. 46] as well as the Court-approved
Class Notice disseminated on May 3, 2018. The Class Notice specifies a claims-
submission deadline of June 18, 2018; an objection and/or opt-out deadline of June 18,
2018; and a final fairness hearing date of July 2, 2018.  The present Motion is being
filed with sufficient notice to safeguard the due-process rights of the Settlement Class.
See In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 994-95 (9th Cir. 2010)
(holding that a district court should set a schedule that provides class members an
opportunity to review class counsel's completed fee motion before the objection
window expires.)  Plaintiffs will lodge a single, consolidated Proposed Order granting
final approval and the present fee-and-cost request.


Dated:  May 7, 2018                                  Respectfully submitted,
                                                     HARRIS & RUBLE
                                                     LAW OFFICES OF JOHN P.
                                                     DORIGAN

                                                         /s/ Alan Harris
                                                     Alan Harris
                                                     John P. Dorigan
                                                     Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.    Introduction .................................................................................................1

II.    Summary of Claims and Procedural History ........................................4

    A.    Plaintiffs' Initiation of this Action ........................................4

    B.    Class Counsel's Investigation .............................................5

    C.    Mediation and Court-Ordered Stay ....................................6

    D.    Scheduling Conference and Continued Settlement Efforts................6

    E.    Settlement ..........................................................................6

    F.    The Estimated Recovery To Class Members .....................8

    G.    Additional Non-Monetary Relief .......................................9

III.    Argument .................................................................................................10

    A.    The Requested Attorneys' Fee Is Reasonable....................10

    B.    Class Counsel Are Entitled To Recover Fees From The
        Common Fund ...................................................................17

    C.    Class Counsel's Requested Fees Are Within The Range Of
        Approval ............................................................................17

        1.    The Results Obtained And The Degree Of Risk Assumed......18

        2.    The "Market Rate" For Class Counsel's Services ..................19

        3.    Class Counsel's Contingent-Based Representation................20

        4.    Class Counsel's Skill And The Complexity Of The Issues.....21

        5.    The Reaction Of The Class .................................................21

    D.    The Incurred Costs Should Be Reimbursed ......................22

    E.    The Enhancement Awards and Individual Payments Are
        Reasonable.........................................................................22

IV.    Conclusion ..............................................................................................24

1

## TABLE OF AUTHORITIES

2

3

**Cases**

4

Blandino v. MCM Constr., Inc.,

5

   No. C12-1729 WHO, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014)............................17

6

Bluetooth Headset Prods. Litig.,

   654 F.3d 936, 941 (9th Cir. 2011) (9th Cir. 2011) ........................................11

7

Blum v. Stenson,

   465 U.S. 886 (1984)........................................................................13

8

Boeing Co. v. Van Gemert,

9

   444 U.S. 444, (1980) (1980)..............................................................17

Bond v. Ferguson Enterprises, Inc.,

10

   No. 1:09-cv-1662 OWW MJS,  2011 WL 2648879 (E.D. Cal. Jun. 30, 2011) ......1, 2, 17

11

Bywaters v. United States,

   670 F.3d 1221 (Fed. Cir. 2012) ......................................................14, 15

12

Campbell v. First Investors Corp.,

13

   No. 11-cv-00548 BEN (WMc) 2012 WL 5373423 (S.D. Cal. Oct. 29, 2012) ...............23

Carter v. Anderson Merchandisers, LP,

14

   2010 WL 1946757 (C.D. Cal. filed May 11, 2010) ........................................20

15

Castillo v. ADT, LLC,

16

   No. 2:15-383-WBS DB, 2017 WL 363108 (E.D. Cal. Jan. 25, 2017)............................1

Cicero v. DirecTV, Inc.,

17

   No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ........................20

Clark v. Payless Shoesource, Inc.,

18

   No. C09-0915, 2012 WL 3064288 (W.D. Wash. July 27, 2012)..................................11

19

Collado v. Toyota Motor Sales, U.S.A., Inc.,

   No. CV10-3113-R, 2011 WL 5506080 (C.D. Cal. Oct. 17, 2011) ................................16

20

Craft v. County of San Bernardino,

21

   624 F. Supp. 2d 1113 (C.D. Cal. 2008)........................................................19

Davis v. City of San Francisco,

22

   976 F.2d 1536 (9th Cir. 1992) ......................................................................13

23

Franco v. Ruiz Food Prods., Inc.,

   No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ..........19, 21, 22

24

Garcia v. Gordon Trucking, Inc.,

25

   No. 1:10-cv-0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012)................21

Gardner v. GC Servs., LP,

26

   No. 10-cv-0997-IEG, 2012 WL 1119534 (S.D. Cal. Apr. 2, 2012)........................20

27

Gates v. Deukmejian,

   987 F.2d 1392 (9th Cir. 1992) ......................................................................13

28

PLS.' NOT. OF MOT. AND MOT. FOR AWARD OF ATTORNEY'S FEES; MEM. OF P. & A. IN SUPP. THEREOF

Greko v. Diesel U.S.A., Inc.,
  No. 10-cv-02576-NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ...........................11
Guerrero v. Wells Fargo Bank, N.A.,
  No. C12-04026 WHA, 2014 WL 4351113 (N.D. Cal. Sept. 2, 2014) ..........................11
Hartless v. Clorox Co.,
  273 F.R.D. 630 (S.D. Cal. 2011) .........................................................................20
Hash v. United States,
  No. 1:99-cv-00324-MHW, 2012 WL 1252624 (D. Idaho Apr. 13, 2012).....................14
Helm v. Alderwoods Group, Inc.,
  No C08-01184 SW, 2011 WL 5573837 (N.D. Cal. Nov. 15, 2011)................................9
Hopkins v. Stryker Sales Corp.,
  No. 11-cv-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb 6, 2013).......................19, 20
Huber v. Majestic Pictures, Inc.,
  No. CV08-02243-GAF (MANx) 2009 WL 10671416 (C.D. Cal. Nov. 24, 2009).........17
In re Activision Sec. Litig.,
  723 F.Supp. 1373 (N.D. Cal. 1989)..................................................................2, 17
In re ATM Fee Antitrust Litig.,
  686 F.3d 741 (9th Cir. 2011) ...............................................................................12
In re Chiron Sec. Litig.,
  No. C-04-4293 VRW, 2007 WL 4249902 (N.D. Cal. Nov. 30, 2007) ....................14, 15
In re Heritage Bond Litig.,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. Jun. 10, 2005) ...........................12
In re HP Laser Printer Litig.,
  No. SACV07-0667, 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ..............................13
In re HPL Techs., Inc. Sec. Litig.,
  366 F. Supp. 2d 912 (N.D. Cal. 2005).................................................................13, 15
In re Linerboard Antitrust Litig.,
  No. MDL 1261, 2004 WL 1221350 (E.D. Pa. Jun. 2, 2004) .......................................12
In re Mercury Interactive Corp. Sec. Litig.,
  618 F.3d 988 (9th Cir. 2010) .............................................................................3, 10
In re Nuvelo Sec. Litig.,
  No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. Jul. 6, 2011) ........................18, 19
In re Schering-Plough Corp. Enhance Securities Litigation,
  No. 08-397 DMC (JAD), 2013 WL 5505744 (D. NJ, Oct. 1, 2013)............................14
In re Warfarin Sodium Antitrust Litig.,
  212 F.R.D. 231 (D. Del. 2002) ...........................................................................10
Kakani v. Oracle Corp.,
  No. C06-06493, 2007 WL 2221073 (N.D. Cal. Aug. 2, 2007)......................................8
Knight v. Red Door Salons, Inc.,
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. 2009)......................................2, 17, 22

Laffey v. Northwest Airlines, Inc.,
  572 F. Supp. 354 (D. D.C. 1983).................................................................14
Morales v. Stevco, Inc.,
  No. CIV-F-09-0704 AWI (JLT), 2013 WL 1222058 (E.D. Cal. Mar. 25, 2013) .....19, 21
Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,
  221 F.R.D. 523 (C.D. Cal. 2004)..............................................................22
Odrick v. UnionBanCal Corp.,
  No. C10-5565 SBA, 2012 WL 6019495 (N.D. Cal. Dec. 3, 2012)................................22
Orian v. Fed'n Int'l Des Droits de L'Homme, No. CV11-6904 PSG (FFMx),
  2012 WL 9946343 (C.D. Cal. Mar. 22, 2012) ...............................................13
Petition of Hill,
  775 F.2d 1037 (9th Cir. 1985) .................................................................17
Pierce v. County of Orange,
  905 F. Supp. 2d 1017 (C.D. Cal. 2012)........................................................13
Powers v. Eichen,
  229 F.3d 1249 (9th Cir.2000) ....................................................................2
Rodriguez v. West Publ'g Corp.,
  563 F.3d 948 (9th Cir. 2009) ...................................................................23
Rodriguez v. West Publ'g Corp.,
  No. CV05-3222 R(MCx), 2007 WL 2827379 (C.D. Cal. Sept. 10, 20107) ...................10
Rutti v. Lojack Corp.,
  No. SACV 06-350 DOC (JCx), 2012 WL 3151077 (C.D. Cal. Jul. 31, 2012)...............13
Sandoval v. Tharaldson Employee Mgmt., Inc.,
  No. EDCV08-482-VAP (OPx), 2010 WL 2486346 (C.D. Cal. Jun. 15, 2010)..........9, 22
Singer v. Becton Dickinson & Co.,
  No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. Jun. 1, 2010) ...................18
Six Mexican Workers v. Arizona Citrus Growers,
  904 F.2d 1301 (9th Cir. 1990) ............................................................1, 17
Smith v. CRST Van Expedited, Inc.,
  No. 10-CV-1116-IEG (WMC), 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) .......9, 23, 24
Thieriot v. Celtic Ins. Co.,
  No. C10-04462 LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ..............................20
Trevino v. Gates,
  99 F.3d 911 (9th Cir. 1996) ....................................................................13
Van Vranken v. Atl. Richfield Co.,
  901 F. Supp. 294 (N.D. Cal. 1995)............................................................23
Vasquez v. Coast Valley Roofing, Inc.,
  266 F.R.D. 482 (E.D. Cal. 2010).........................................................9, 23
Vizcaino v. Microsoft Corp.,
  290 F.3d 1043 (9th Cir. 2002) ............................................................ Passim

Wren v. RGIS Inventory Specialists,
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)...............................10

**Statutes**

California Business and Professions Code section 17200 *et seq.*........................................5

**Rules**

Fed. R. Civ. Proc. 23...................................................................................................10, 11

PLS.' NOT. OF MOT. AND MOT. FOR AWARD OF ATTORNEY'S FEES; MEM. OF P. & A. IN SUPP. THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

On April 5, 2018, the Court preliminarily approved the Settlement Agreement between Plaintiffs Ruth Alcaraz, Gideon Pederson, and Sasha Mason ("Plaintiffs") and Defendant Airport Terminal Services, Inc. ("ATS") [ECF Doc. 41].  Under the terms of the Settlement Agreement, a Gross Settlement Payment of $600,000 will be made to compensate employees for the alleged violations and to fund a PAGA recovery for the State of California.[1] Here, effective hourly rate for all services comes to just over $307 per hour (=$200,000/650 hours). A requested one-third fee is justified by analysis of the relevant Vizcaino factors and ensures that matters of this nature may be prosecuted to protect low-wage workers, such as those in this case.

In light of the four-year effort involved in bringing this case to a successful conclusion, with Class Counsel funding all costs with no assurance of recovering their costs, much less a fee for over six hundred and fifty hours of work, attorney compensation representing one-third of the gross recovery is reasonable.  While the requested attorneys' fees are above the 25% "benchmark" set by the Ninth Circuit for "common fund" settlements, see Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990), "courts in this circuit have approved fees that exceeded that 'benchmark' in many cases, see Bond v. Ferguson Enterprises, Inc., No. 1:09-CV-1662 OWW MJS, 2011 WL 2648879, at *9 (E.D. Cal. June 30, 2011) ('[T]he exact percentage [of attorneys' fees] varies depending on the facts of the case, and in most common fund cases, the award exceeds [the 25%] benchmark.')." Castillo v. ADT, LLC, No. CV 2:15-383 WBS DB, 2017 WL 363108, at *7 (E.D. Cal. Jan. 25, 2017).  The present rule is that fee awards amounting to "33 1/3% of the total settlement value" are considered "acceptable":

---

[1] The Settlement Agreement is attached to the Declaration of Alan Harris ("Harris Decl.") filed herewith as Exhibit 1.  Capitalized terms herein are the same as defined in the Settlement Agreement.

1   The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to

2   33 1/3% of the total settlement value, with 25% considered the benchmark.

3   *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir.2000); *Hanlon,* 150 F.3d at

4   1029; *Staton,* 327 F.3d at 952. However, the exact percentage varies

5   depending on the facts of the case, and in "most common fund cases, the

6   award exceeds that benchmark." *Knight v. Red Door Salons, Inc.,* 2009 WL

7   248367 (N.D. Cal. 2009); *see also In re Activision Sec. Litig.,* 723 F.Supp.

8   1373, 1377–78 (N.D.Cal. 1989) ("nearly all common fund awards range

9   around 30 %").

10   Bond v. Ferguson Enterprises, Inc., No. 1:09-CV-1662 OWW MJS, 2011 WL 2648879,

11   at *9 (E.D. Cal. June 30, 2011). A result which awards more than 25% of the recovery is

12   particularly appropriate in PAGA wage and hour class actions in which the Defendant is

13   responsible for payment of 100% of the lodestar in the event of a judgment. Were

14   plaintiffs routinely limited to a 25% fee in smaller cases, a fee well below their lodestar,

15   there would be a disincentive to settle cases short of trial, or to even undertake cases such

16   as here, one in which this Court has recognized that the probability of success did "not

17   appear particularly strong". (ECF Doc 41 at 16).  Accordingly, here, as in other

18   settlements, "[t]he fact that the requested fees in this case are below the lodestar figure

19   further supports granting approval" of a fee of up to one third.  Castillo v. ADT, at *7.

20   Here, the requested effective hourly rate is just over $300 per hour, and the requested fee

21   should be awarded.  (Harris Decl., ¶22).

22      If all requested fees and costs are awarded, a minimum of $287,544 will remain for

23   distribution to the Settlement Class as a whole, with the security Deposit Sums also being

24   returned to the specific workers who had previously tendered them to ATS.[2] Here, the

25   _____

26   [2] The Net Settlement Amount is $600,000 less the court approved attorney's fees
(Plaintiffs request $200,000) and costs (Plaintiffs request $9,357.47), claims-

27   administration expenses (estimated not to exceed $15,000), class representative incentive
awards ($500 requested for each Plaintiff) and individual payments to Plaintiffs on

28   account of their execution of broad general releases of the claims articulated in the

litigation has also accomplished other benefits to employees, effectively forcing
Defendant to abandon its practice of taking improper "security deposits" from the
workers on account of the uniforms they wear. Accordingly, assuming one hundred
percent participation by the 2,940 members of the Settlement Class, the plan of allocation
specified by the Settlement Agreement will provide an average net payment of $102
dollars per class member. Of course, a 100% participation rate is unlikely for any class,
and the actual recovery here will likely be between $300 to $400, each. Because the
Gross Settlement Payment is non-reversionary, participating Settlement Class members
will receive significantly more than $102 each. In addition, here counsel's performance
generated benefits beyond the cash settlement fund, as during the litigation Defendant
abandoned its practices regarding security deposits, substantial withholdings from low-
wage workers, which are no longer required. This is the sort of "[i]ncidental . . . benefit[]
conferred by the litigation" which is "a relevant circumstance" that this Court may
consider in adjusting the lodestar. <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1049 (9th
Cir. 2002).

Another important factor is that this Court has recognized the claims at issue here to
be "high risk" in nature. "Here, the alternative to a single class action would be numerous
high-risk, low reward individual actions." Apr. 4, 2018 Order [ECF Doc. 41] at 13.
Indeed, this Court has recognized that "Plaintiffs' claims do not appear particularly
strong." <u>Id.</u>, at 16.

On May 3, 2018, Class Notice was mailed by CPT Group, Inc. ("CPT"), the
appointed Claims Administrator. Pursuant to the Settlement Agreement, settlement
payments will be made to those Class Members who submit claims. From the $600,000
common fund, Class Counsel seek an attorney's fee award of $200,000 for over 650 hours

litigation, claims for retaliation and discrimination arising thereafter and their agreement
to refrain from seeking future employment with Defendant ($4,500 requested for each
Plaintiff), and the PAGA penalty payment to the Labor Workforce and Development
Agency ($7,500). The Net Settlement Amount includes the security deposits and interest
held by ATS as of January 1, 2018 ($50,956.45).

1  of work.  The requested award is but fifty-seven percent of Class Counsel's lodestar,

2  representing more than a forty-two percent reduction from Class Counsel's $350,849

3  lodestar.  Class Counsel also seek reimbursement of $9,357.47 in litigation expenses.[3]  All

4  told, this is an outstanding result, particularly in light of the arguably dispositive airline-

5  industry defenses applicable to each of Plaintiffs' claims.  (Harris Decl., ¶¶ 15-19.)  Class

6  Counsel's fee-and-cost request is fair and should therefore be approved.

7  **II.    Summary of Claims and Procedural History**

8      **A.    Plaintiffs' Initiation of this Action**

9      In November of 2015, Plaintiffs commenced this action on behalf of a putative

10  class of all current and or former employees employed by Defendant within California at

11  any time from November 20, 2011.  On January 25, 2016, Plaintiffs filed a first amended

12  complaint to clarify that they were authorized to pursue claims under the California

13  Labor Code Private Attorneys General Act of 2004, Code section 2698 et seq. ("PAGA").

14  On April 14, 2016, Plaintiffs filed the operative Second Amended Complaint ("SAC"),

15  asserting twelve causes of action:  (1) a claim for missed meal breaks under Code

16  sections 226.7 and 512; (2) a claim for improper pay stubs under section 226(a) of the

17  Code; (3) a claim alleging that ATS failed to reimburse employees for uniform-

18  maintenance expenses under section 2802 of the Code; (4) a claim for failing to properly

19  deal with security deposits under sections 403-406 of the Code, as well as section 9(c) of

20  the Wage Order; (5) a claim for unlawful deductions from wages, in violation of Code

21  section 221; (6) failure to pay proper overtime in violation of sections 510 and 1194 of

22  the Code; (7) failure to pay all wages as required by Code sections 201, 201.3(B)(1) and

23  continuing wages under section 203 of the Code; (8) a claim for unfair competition under

24  section 17200 *et seq.* of the California Business and Professions Code; (9) a claim

25  _____

26  [3] Under the Settlement Agreement and as described in the Notice to Class Members, Class Counsel may seek an award of costs up to $12,000. The requested award of costs is

27  some $2,642 less than the maximum award permitted under the Settlement Agreement. These funds will be allocated for distribution to Class Members under the terms of the

28  Settlement Agreement.

violation of the FLSA; (10) individual claims for failure to produce records requested under section 226(b) of the Code; (11) individual claims for failure to produce records under section 1198.5 of the Code; and (12) a claim for civil penalties under section 2698 *et seq.* of the Code. The civil-penalties claim is premised in part on ATS violations of Code provisions and Wage Order requirements with respect to treatment of security deposits.[4]

**B.    Class Counsel's Investigation**

Both before initiating the Action and afterwards, Class Counsel investigated the claims against Defendant and also analyzed any and all applicable defenses raised by Defendant. Class Counsel's background includes work conducted in connection with a prior class action lawsuit, <u>Collette McDonald v. Airport Terminal Services</u>, No. 5:11-cv-01946-VAP-SP (C.D. Ca. 2011). Class Counsel's investigation also included the exchange of information and documentation pursuant to informal discovery methods, service of formal discovery, numerous conferences between Class Counsel and Defendant's Counsel, and Class Counsel's interviews of Plaintiffs and Class Members.

In connection with these attempts at resolution, ATS's counsel provided information as to the class size, and the number of automatic meal period deductions taken during the relevant period when employees worked shifts of more than five hours per day.  ATS also provided information regarding required security deposits and alternative workweek elections.  (Harris Decl. ¶ 3.)

_____

[4] Plaintiffs contend that the ATS practice of taking uniform deductions from Plaintiffs' and Airport Agents' paychecks violates Code §§ 403, 404, and 405, giving rise to civil penalties under 2699 (f) (2). Defendant ATS commingled the earned but unpaid wages of Plaintiffs and Airport Agents with other funds of ATS in violation of Code § 405. ATS failed and refused to pay interest to workers on the return of such deposits. According to Cose section 2699.5:  "The provisions of subdivision (a) of Section 2699.3 apply to any alleged violation of . . . 403 [requiring segregated deposit of cash bonds, and a written agreement signed by employer and employee detailing the conditions] [and] subdivision (b) of Section 404 [requiring return of deposit with interest]."

### C.    Mediation and Court-Ordered Stay

After extensive negotiations, including several settlement offers and counteroffers, the Parties agreed that the services of a private mediator would assist in resolving Plaintiff's claims.  (Harris Decl. ¶ 4.)  On or about August 9, 2016, the Parties attended a mediation before Lisa Klerman, an experienced mediator of cases involving the wage and hour laws at issue in the Action. The Parties were unable to reach a mediated resolution. On or about September 1, 2016, the Court stayed the Action through November 7, 2016, to permit the Parties and mediator to continue efforts to attempt to settle the Action. (Harris Decl. ¶ 4.)

### D.    Scheduling Conference and Continued Settlement Efforts

On or about January 30, 2017, the Parties appeared before the Court for a scheduling conference. The Parties continued to meet and confer on numerous occasions, reviewing Plaintiffs' claims, the alleged defenses, the potential for a mediated resolution of the Action. On or about May 12, 2017, the Court stayed the Action through August 7, 2017. The Parties and mediator continued to meet and confer to explore the potential for settlement. (Harris Decl. ¶ 5.)

### E.    Settlement

After more than 16 months of negotiations and exchange of information between the Parties following the initial mediation, the Parties finally agreed to a settlement, and on or about January 4, 2018, the Parties filed a notice of settlement. The settlement was negotiated in light of all known facts and circumstances—including the potential difficulty of proving Plaintiffs' claims, potential defenses, the uncertainty associated with litigation, the risks of significant delay, and numerous potential appellate issues.  The settlement was reached only after extensive arm's-length negotiations, with the assistance of the mediator Lisa Klerman. Over the course of the next two months, the Parties proceeded to negotiate the terms of a long-form settlement agreement encompassing the terms of the Memorandum of Understanding.  (Harris Decl. ¶ 6.)  In March 2018, those negotiations resulted in the execution of the Settlement Agreement that was preliminarily

approved by the Court on April 5, 2018.  [ECF Doc. 41.]  (Harris Decl. ¶ 6, Ex. 1.)

Again, under the Settlement Agreement, ATS will pay $600,000 for the benefit of the participating Class Members.  The $600,000 settlement amount constitutes the Gross Settlement Payment.  (Harris Decl., Ex. 1 at ¶ 5.1.)  The Gross Settlement Payment will be used to pay the costs of delivering the Class Notice and the claim form to the Settlement Class, as well as to pay attorney's fees and costs to Class Counsel, incentive awards and individual payments (on account of their execution of broad releases of claims and agreement not to seek future employment) to Plaintiffs, and a PAGA payment to the LWDA, all subject to approval by this Court.[5]  (Harris Decl., Ex. 1 at ¶¶ 5.1, 5.3, 5.4 and 5.5.)  The Gross Settlement Payment also includes the value of Class Member security deposits held by Defendant as of January 1, 2018 ($50,957.45) and accrued interest as of January 1, 2018. (Harris Decl., Ex. 1 at ¶ 5.7.)

After the above-noted deductions have been made from the Gross Settlement Payment, the balance (the "Net Settlement Fund") will be distributed to Settlement Class members who do not "opt out" of the settlement and who submit valid and timely claim forms.[6]  (Harris Decl., Ex. 1 at ¶ 5.8.)  This distribution will be made on a *pro rata* basis according to the Class Member's length of active employment in the State of California as a non-exempt employee since November 20, 2011, through the date of preliminary approval (April 5, 2018).  Each Class Member's proportional share shall be calculated by multiplying the balance of the Net Settlement Amount by a fraction, the numerator of which is the total of the Class Member's number of workweeks during the class period, and the denominator of which is the total of all workweeks for Class Members who have submitted valid and timely claim forms.  (Harris Decl., Ex. 1 at ¶ 5.8.1.)  Accordingly,

---

[5] Class Counsel requests an award of attorney's fees of 33.33% of the Gross Settlement Payment ($200,000), an award of costs of $9,357.47, incentive payments to Plaintiffs of $500 each and individual payments to Plaintiffs of $4,500 each.  (Harris Decl., Ex. 1 at ¶¶ 5.3 and 5.4.)

[6] Settlement Class members who do not opt out as described *infra* in section III.F. of this Memorandum are referred to as "Class Members."  (Harris Decl., Ex. 1 at ¶ 1.23.)

the longer a participating Class Member worked for ATS, the greater his or her share.  As part of the Settlement, ATS shall distribute all deposit sums, which include accrued interest, to Class Members on whose behalf the security deposits were held.  (Harris Decl., Ex. 1 at ¶ 5.7.)  According to Defendant's records, the typical Class Member worked with ATS for less than a year (138,986.95 weeks/2,940 workers = 47 weeks worked, each). (Harris Decl. ¶ 14.)

## F.    The Estimated Recovery To Class Members

The sum of potential damages on account of unpaid premium wages for failing to provide proper meal breaks ($37,773) and unpaid overtime ($72,500) is about $110,000. In addition, the Settlement Agreement provides for the return of 100% of the balance of Deposit Sums still retained by ATS, just over $50,000.  The balance of the payments represent attorney's fees and costs as well as a sum attributable to penalties, civil penalties and liquidated damages, recoveries which courts routinely permit to be substantially discounted in cases in which unpaid wage claims are paid, as here.

Assuming that the Court approves $200,000 in attorney's fees (equal to 33.33% of the Gross Settlement Payment), the requested $9,357.47 in litigation costs, the estimated $15,000 in claims-administration expenses, $5,000 payments to each Plaintiff,[7] and $7.500 for payment to the LWDA, $353,143 will remain.  Out of the $353,143, $50,956.45 is the Deposit Sum held by ATS which will be distributed to Class Members on whose behalf the security deposits are being held.  The remaining Net Settlement Amount is $302,186.  Assuming a 100% participation rate, excluding refunds of security deposits, the average net payment to Class Members will therefore be some $102 (=$302,186/2,940).

Of course, "[h]uman nature dictates that[,] despite counsel's best efforts, not all [Settlement C]lass members will submit claims."  Kakani v. Oracle Corp., 2007 WL

_____

[7] The $5,000 individual payments consist of $4,500 individual payments to the Plaintiffs on account of their broad general release of claims, including individual claims for retaliation and discrimination, and their agreement not to seek employment with Defendant, as well as a $500 representation fee.

2221073 at *4 (N.D. Cal. filed Aug. 2, 2007).  Accordingly, it is more reasonable to assume a participation rate by the Settlement Class between 25% and 50%.  See e.g., Smith v. CRST Van Expedited, Inc., 2013 WL 163293 at *4 (S.D. Cal. filed Jan. 14, 2013) (in approving a settled wage-and-hour class action, noting that 44% of the class had submitted claims, which the court characterized as a "positive" response); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 485 (E.D. Cal. 2010) (in approving a settled wage-and-hour class action, noting that "31% of the class submitted claims"); Sandoval v. Tharaldson Employee Mgmt., Inc., 2010 WL 2486346 at *7 (C.D. Cal. filed June 15, 2010) (in approving a settled wage-and-hour class action, noting that "24% of [c]lass [m]embers submitted valid claim[s]," which the court characterized as a "positive" response).  If 50% of the Settlement Class submit claims, the average net settlement payment increases to $205 (= $302,186 ÷ 1470 Class Members); if 25% of the Settlement Class submit claims, the average net settlement payment increases to $411 (= $302,186 ÷ 735 Class Members).

### G.    Additional Non-Monetary Relief

Aside from the above-described cash fund, as a direct result of this lawsuit ATS has changes its security deposit practices, effectively saving all new employees from a required $300 deduction from their wages during the initial months of employment.  Specifically, ATS stopped taking deposits in August 2017 and no longer requires security deposits at all.  (Harris Decl. ¶ 13.)  This is a noteworthy benefit from this lawsuit, given that Plaintiffs are former employees who necessarily would not have been able to obtain such relief even if they had prevailed at trial.  See, e.g., Helm v. Alderwoods Group, Inc., 2011 WL 5573837 at *1, 5 (N.D. Cal. filed Nov. 15, 2011) (in a wage-and-hour action alleging Code violations, holding that "[a] former employee does not have standing o seek injunctive relief for any of the violations of his former employer because he cannot demonstrate  a 'real or immediate threat of irreparable injury'").  Because "this concession from [ATS] exceeds what Plaintiff[] could have obtained even if [she] had prevailed at trial," it has value separate and apart from the cash fund described above.

1  Wren v. RGIS Inventory Specialists, 2011 WL 1230826 at *28 (N.D. Cal. filed Apr. 1,
2  2011).

3          The Gross Settlement Payment of $600,000 will result in an average net payment
4  of at least $102.  In addition, those employees who have had deductions taken from their
5  wages will be reimbursed for those amounts.  This represents a more-than-reasonable
6  resolution of this case.  See Rodriguez, 2007 WL 2827379 at *9 (noting that a
7  "'settlement amount representing 33% of the maximum possible recovery was well
8  within a reasonable range when compared with recovery percentages in other class action
9  settlements'") (quoting In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 257–58
10  (D. Del. 2002).  Under the Settlement Agreement, assuming a one hundred percent
11  participation rate, Class Members will receive on average $102.  This represents a
12  significant portion of the damages sought by Plaintiffs' lawsuit.  Employees who suffered
13  security deposit deductions from their wages will also have these funds returned, with
14  interest.

15  **III.  Argument**

16          **A.    The Requested Attorneys' Fee Is Reasonable**

17          Federal Rule of Civil Procedure 23 provides that, "[i]n a certified class action, the
18  court may award reasonable attorney's fees and nontaxable costs that are authorized by
19  law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h).  Rule 23(h) applies to
20  requests for attorney's fees for settled class actions.  See Staton v. Boeing Co., 327 F.3d
21  938, 964 (9th Cir. 2003) (explaining that "[a]ttorneys' fees provisions included in
22  proposed class action agreements are, like every other aspect of such agreements, subject
23  to the determination whether the settlement is 'fundamentally fair, adequate and
24  reasonable'").  According to the Ninth Circuit, in order to protect the due-process rights
25  of unnamed class members, any such request must be filed prior to the deadline to object
26  to the settlement.  In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 994–95 (9th
27  Cir. 2010) (hereinafter, "In re Mercury").  See also Weeks v. Kellogg Co., 2011 U.S.
28  Dist. LEXIS 155472 at *80 (C.D. Cal. filed Nov. 23, 2011) (applying In re Mercury and
   holding that the filing of a fee petition one week before the objection deadline comported

with due process); <u>In re TFT-LCF (Flat Panel) Antitrust Litig.</u>, 2011 WL 7575004 at *2 (N.D. Cal. filed Dec. 27, 2011) (holding that class counsel's filing of their fee motion one month before the objection deadline satisfied <u>In re Mercury</u>); <u>Gardner v. Equilon Enters., LLC</u>, 2012 U.S. Dist. LEXIS 142033 at *5 (C.D. Cal. filed Oct. 1, 2012) (requiring class counsel to file their motion for fees fourteen days before the objection deadline).  Here, the Class Notice approved by the Court and delivered to the Settlement Class specifies an objection deadline of June 18, 2018[ECF Doc. 41].  Class Counsel are filing their Motion for Attorney's Fees and Reimbursement of Costs only days after the May 3, 2018 mailing of Notice to Class Members, well prior to the expiration of the objection window.  The present Motion therefore complies with <u>In re Mercury</u>.

Turning to the merits of the Motion, in analyzing Rule 23(h) fee requests, courts "'have an independent obligation to ensure that the award, like the settlement itself, is reasonable[] even if the parties have already agreed to an amount.'"  <u>Greko v. Diesel U.S.A., Inc.</u>, 2013 WL 1789602 at *8 (N.D. Cal. filed Apr. 26, 2013) (quoting <u>In re Bluetooth Headset Prods. Litig.</u>, 654 F.3d 936, 941 (9th Cir. 2011)).  For purposes of determining a reasonable fee, "'courts have discretion to employ either the lodestar method or the percentage-of-recovery method.'"  <u>Greko</u>, 2013 WL 1789602 at *8.  Generally speaking, though, "[t]he lodestar method is . . . preferable when calculating statutory attorney fees, whereas the percentage-of-recovery approach is appropriate when the fees will be drawn from a common fund."  <u>Clark v. Payless Shoesource, Inc.</u>, 2012 WL 3064288 at *1 (W.D. Wash. filed July 27, 2012) (citing <u>In re Bluetooth Headset Prods. Litig.</u>, 654 F.3d at 941).  "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."  <u>Vizcaino</u>, 290 F.3d at 1050.  Here, the time from initial meetings with the clients until a payment of fees and reimbursement of costs will exceed four years, a protracted period which is another factor warranting upward adjustment of the percentage fee award.

As recognized in <u>Guerrero v. Wells Fargo Bank, N.A.</u>, No. C 12-04026 WHA, 2014 WL 4351113 (N.D. Cal. Sept. 2, 2014), "the district court has discretion in

common fund cases to choose either the percentage-of-the-fund or the lodestar method."
Guerrero, 2015 WL 4351113 at *3, quoting Vizcaino, 290 F.3d at 1047.  In any event,
when setting a fee award, courts can—and should—apply the lodestar method to provide
"perspective on the reasonableness of a given percentage award."  Vizcaino, 290 F.3d
1043, 1050.  According to the Ninth Circuit, "[c]alculation of the lodestar, which
measures the lawyers' investment of time in the litigation, provides a check on the
reasonableness of the percentage award."  Id.

"Lodestar calculations are determined by multiplying the number of hours
reasonably expended during the litigation by a reasonable hourly rate."  In re Heritage
Bond Litig., 2005 WL 1594403 at *5 (C.D. Cal. filed June 10, 2005).  It is "common for
a counsel's lodestar figure to [then] be adjusted upward by some multiplier reflecting a
variety of factors such as the effort expended by counsel, the complexity of the case, and
the risks assumed by counsel."  Id. at *22 (citing In re Linerboard Antitrust Litig., 2004
WL 1221350 at *16 (E.D. Pa. filed June 2, 2004) (recognizing that the average
multiplier approved in common-fund cases is 3.89), disapproved on other grounds, In re
ATM Fee Antitrust Litig., 686 F.3d 741, 755, n.7 (9th Cir. 2011)).

Here, based on the detailed, contemporaneously kept time records submitted with
this Motion, Class Counsel's *unadjusted* lodestar (*i.e.*, with no multiplier) is $350,849.5
computed as a function of the following hours and rates:

| Table 1:  Class Counsel's Requested Hourly Rates | | | | |
|---|---|---|---|---|
| *Attorney* | *JD Acquired* | *Hourly Rate* | *Hours* | *Lodestar* |
| A. Harris | 1974 | $800 | 167.60 | $134,080.00 |
| P. Mohan | 2003 | $625 | 102 | 63,750.00 |
| R. Lee | 2013 | $375 | 1.2 | 450.00 |
| C. Nordsten | 2013 | $375 | 9.5 | 3,562.50 |
| J. P. Dorigan | 1981 | $600 | 178 | 106,800.00 |
| Law Clerk/Paralegal | --- | $220 | 191.85 | 42,207.00 |
| *Total* | --- | --- | 650.15 | $350,849.50 |

(Harris Decl., Ex. 5 at p. 27; Dorigan Decl., Ex. 1.)

Both the rates noted above and the associated hours are reasonable.  As to the rates, "'[t]he proper reference point in determining an appropriate fee award is the rate[] charged by private attorneys in the same legal market as prevailing counsel.'"  Rutti v. Lojack Corp., 2012 WL 3151077 at *10 (C.D. Cal. filed July 31, 2012) (quoting Trevino v. Gates, 99 F.3d 911, 925 (9th Cir. 1996)).  The rate charged by private attorneys in the same legal market, in turn, is the "'prevailing market rate[] in the relevant community,'" Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)), vacated in part on other grounds by 984 F.2d 345 (9th Cir. 1993)), and the relevant community is "'the forum district'—[here], the Central District of California," Anderson v. Nextel Retail Stores, LLC, 2010 U.S. Dist. LEXIS 71598 at *6 (C.D. Cal. filed June 30, 2010) (quoting Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992)). When setting rates, courts should use the attorneys' "current" rates, i.e., their rates at the time of the fee application.  See In re HPL Techs., Inc. Sec. Litig., 366 F. Supp. 2d 912, 919–20 (N.D. Cal. 2005) (hereinafter, "In re HPL") (explaining that the use of current rates "simplifies the calculation and accounts for the time value of money in that lead counsel ha[ve] not been paid contemporaneously").

According to recent case authority, Harris & Ruble's hourly rates are within the range of rates recently approved for complex class actions, including wage-and-hour actions.  See, e.g., Orian v. Fed'n Int'l Des Droits de L'Homme, No. CV11-6904 PSG (FFMx), 2012 WL 9946343 (C.D. Cal. Mar. 22, 2012) (approving $900 per hour rate for anti-SLAPP motion practice); Wang v. Chinese Daily News, Inc., 2008 U.S. Dist. LEXIS 123824 at *8–9 (C.D. Cal. filed Oct. 3, 2008) (in a wage-and-hour action, approving rates of up to $800 per hour), vacated on other grounds, 132 S. Ct. 74 (2011); Rutti, 2012 WL 3151077 at *11 (in a wage-and-hour action, approving rates of up to $750 per hour); Pierce v. County of Orange, 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) (approving rates of up to $850 per hour); (In re HP Laser Printer Litig., 2011 WL 3861703 at *5–6 (C.D. Cal. filed Aug. 31, 2011) (approving rates of up to $800 per hour); see Orian v. Fed'n Int'l des Droits de L'Homme, 2012 WL 994643, at *2-3 (C.D.

Cal. Mar. 22, 2012) (rates of $545, $625, and $900 per hour reasonable): see In re
Schering-Plough Corp. Enhance Securities Litigation, 2013 WL 5505744 at *58, n. 43
(D. NJ, Oct. 1, 2013) ($875 per hourly rate for a "very experienced class action lawyer"
characterized as "extremely reasonable, if not a bargain").  Rather than employing a
multiplier, Class Counsel's present fee request of $200,000 is 57% of the lodestar
amount, representing more than a 40% reduction of the lodestar. The request is therefore
reasonable.

Alternatively, in assessing reasonableness, courts often refer to the "Laffey"
matrix, "[a] widely recognized compilation of attorney . . . rate data" for the District of
Columbia, "so named because of the case that generated the index," Laffey v. Northwest
Airlines, Inc., 572 F. Supp. 354 (D. D.C. 1983); In re Chiron Sec. Litig., 2007 WL
4249902 at *6 (N.D. Cal. filed Nov. 30, 2007).  Adjusting those rates for cost-of-living
differences between the Washington, D.C. and Los Angeles areas, the In re Chiron court
concluded that reasonable rates for a Los Angeles attorney with twenty-plus years of
experience is $460.24, eleven to nineteen years of experience is $407.94, eight to ten
years of experience is $329.49, and four to seven years of experience is $266.73.  Id. at
*6–7.  Of course, ten years have passed since the In re Chiron decision, and, as noted
above, when setting rates, courts should use attorneys' current rates.  In addition, since
the time that In re Chiron was decided, an "adjusted" Laffey matrix has been published
"using a methodology advocated by economist Dr. Michael Kavanaugh" that "has been
used by the United States District Court for the District of Columbia to determine the
amount of a reasonable fee."  Bywaters v. United States, 670 F.3d 1221, 1226 n. 4 (Fed.
Cir. 2012).  As explained by the Federal Circuit, the adjusted Laffey matrix "more
accurately reflects the prevailing rates for legal services."  Id.  See also, e.g., Hash v.
United States, 2012 WL 1252624 at *22 (D. Idaho filed Apr. 13, 2012) (agreeing that the
"adjusted" Laffey matrix "is the most accurate representation of rates for legal services
in the Washington D.C. area for complex litigation, . . . giv[ing] weight to the Federal
Circuit's recent statement implying acceptance of the use of the Updated Laffey

Matrix") (citing <u>Bywaters</u>, 670 F.3d at 1226, n. 4).

A copy of the current, adjusted <u>Laffey</u> matrix is attached to the Harris Declaration filed herewith as Exhibit 8.  The adjusted <u>Laffey</u> matrix for June 1, 2017, to May 31, 2018, lists the following relevant rates for attorneys in the Washington, D.C. area:

| Table 2:  *Laffey* Matrix | |
|---|---|
| *Experience* | *Rate* |
| 20 + | $864 |
| 11-19 | $717 |
| 4-7 | $440 |

(Harris Decl. Ex. 8 at 1.)  Because "[t]hese figures are . . . tailored for the District of Columbia, which has a lower cost of living than . . . Los Angeles[,] . . . some [further] adjustment" is appropriate.  <u>In re Chiron</u>, 2007 WL 4249902 at *6.  The <u>In re Chiron</u> court made this adjustment "us[ing] the federal locality pay differentials based on federally compiled cost of living data."  <u>Id.</u>  Copies of that same data—updated to 2017—are also attached to the Declaration of Alan Harris filed herewith as Exhibit 9. According to that data, the Washington, D.C. area has a +27.10% locality pay differential, while the Los Angeles area has a +29.65% locality pay differential.  (Harris Decl. Ex. 9 at 1–2.)  These differentials suggest that the figures in table 2 may be adjusted upward by 2.0%.[8]

_____

[8] The 2.0% cost-of-living adjustment is computed as follows:  $(129.65 − 127.10) \div 127.10 = .0200$ or 2.0%.  In <u>In re Chiron</u>, the court computed the cost-of-living adjustment for 2007 using the same methodology and the same federally compiled data (for 2007). Specifically, the court noted that, in 2007, the Washington, D.C. area had a +18.59% locality pay differential, while the Los Angeles area had a +24.03% locality pay differential.  <u>In re Chiron</u>, 2007 WL 4249902 at *6.  Using those figures, the court computed a 4.6% cost-of-living adjustment (= $(124.03 − 118.59) \div 118.59 = .0459$, or 4.6%).  The <u>In re Chiron</u> court based its cost-of-living adjustment on the methodology employed by the Northern District in <u>In re HPL</u>.  In <u>In re HPL</u>, the court looked to the same federally compiled data (for 2005), noting that, in 2005, the Washington, D.C. area had a +15.98% locality pay differential, while the San Francisco area—where lead counsel's firm operated—had a +26.39% locality pay differential.  Using these figures, the <u>In re HPL</u> court computed a 9% cost-of-living adjustment (= $(126.39 − 115.98) \div 115.98 = .0898$, or 9%).  <u>In re HPL</u>, 366 F. Supp. 2d at 921–22 & n.1.

Adjusting the figures in table 2 upward by 2.0% results in the following:

| Table 3:  Cost-of-Living-Adjusted _Laffey_ Matrix | |
|---|---|
| **Experience** | **Rate** |
| 20 + | $881.28 |
| 11-19 | $731.34 |
| 4-7 | $448.8 |

Applying these rates, in turn, to Class Counsel's hours leads to the following lodestar:

| Table 4:  Class Counsel's Laffey Rates | | | | |
|---|---|---|---|---|
| **Attorney** | **JD Acquired** | **Hourly Rate** | **Hours** | **Lodestar** |
| A. Harris | 1974 | $881.28 | 167.60 | $147,702.53 |
| P. Mohan | 2003 | $731.34 | 102 | 74,596.68 |
| R. Lee | 2013 | $448.8 | 1.2 | 538.56 |
| C. Nordsten | 2013 | $448.8 | 9.5 | 4,263.60 |
| J. P. Dorigan | 1981 | $881.28 | 178 | 156,867.84 |
| Law Clerk/Paralegal | --- | $220 | 191.85 | 42,207 |
| _Total_ | --- | --- | 650.15 | $426,176.21 |

In other words, applying the _Laffey_ matrix results in an *upwards* adjustment of Class Counsel's lodestar by some $75,326.71, or approximately 21.47 percent.  Judged from this perspective, then, Class Counsel's present fee request is reasonable and should be approved.

Turning to the hours expended in this case, Class Counsel note that this case has been pending since November 20, 2015.  Over nearly three years that this case has been pending, some 650.15 hours worked amounts, on average, to little more than one hour per day. Under these circumstances, Class Counsel's request is eminently reasonable. Cf., Collado v. Toyota Motor Sales, U.S.A., Inc., 2011 WL 5506080 at *5 (C.D. Cal. filed Oct. 17, 2011) (in analyzing class counsel's hours and concluding that they were excessive, noting that the "request for compensation of 6,881 hours is best represented by this being the equivalent to a collective 11.1 hours per day devoted by the five firms during the pendency of this action").  Class Counsel's requested hours should be deemed appropriate and a $200,000 fee should be awarded based on the lodestar, albeit with a substantial

1    reduction.

2    **B.    Class Counsel Are Entitled To Recover Fees From The Common Fund**

3    As explained by the Ninth Circuit, a "common fund" exists "when (1) the class of

4    beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3)

5    the fee can be shifted with some exactitude to those benefiting." In re Petition of Hill,

6    775 F.2d 1037, 1041 (9th Cir. 1985).  According to the Supreme Court, "the[se] criteria

7    are satisfied when each member of a certified class has an undisputed and

8    mathematically ascertainable claim to part of a lump-sum [amount]." Boeing Co. v. Van

9    Gemert, 444 U.S. 444, 479 (1980).  Here, the $600,000 Gross Settlement Payment is a

10    common fund, as each participating Class Member will be entitled to a sum certain.

11    Accordingly, the Court may also apply the percentage-of-recovery approach when

12    setting the amount of Class Counsel's fee.  As explained below, because Class Counsel's

13    requested fees are within the range specified by the Ninth Circuit, and because the Class

14    Members here will recover a substantial percent of their actual damages, the Motion

15    should be granted.

16    **C.    Class Counsel's Requested Fees Are Within The Range Of Approval**

17    The Ninth Circuit has explained that "25 percent of the fund [i]s the 'benchmark'

18    award that should be given in common fund cases." Six (6) Mexican Workers v.

19    Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).  That said, "the exact

20    percentage varies depending on the facts of the case, and in 'most common fund cases,

21    the award *exceeds* that benchmark.'" Bond v. Ferguson, 2011 WL 2648879 at *9 (E.D.

22    Cal. filed June 30, 2011) (quoting Knight v. Red Door Salons, Inc., 2009 WL 248367 at

23    *6 (N.D. Cal. filed Feb. 2, 2009)) (emphasis supplied).  See also In re Activision Sec.

24    Litig., 723 F. Supp. 1373, 1377–78 (N.D. Cal. 1989) (stating that "nearly all common

25    fund awards range around 30%").[9]  This is particularly true when class members stand to

26    _____

[9] Blandino v. MCM Constr., Inc., No. C 12-1729 WHO, 2014 WL 11369763, at *3 (N.D.

27    Cal. Mar. 6, 2014)(awarding fee of thirty percent); Huber v. Majestic Pictures, Inc., No.
CV0802243GAFMANX, 2009 WL 10671416, at *6 (C.D. Cal. Nov. 24, 2009)

28    (approving "an award of thirty percent of the settlement").

recover a significant amount of their potential damages and when class counsel's
lodestar exceeds the fee request.  See Singer v. Becton Dickinson & Co., 2010 WL
2196104 at *8–9 (S.D. Cal. filed June 1, 2010) (departing from the benchmark and
awarding fees equal to 33.33% of the settlement fund when class members would
recover "110% of the claimed losses").

      Here, Class Counsel are requesting $200,000, which comes to 33.33% of the
Gross Settlement Payment.  Although this request exceeds the "benchmark," it is
warranted in light of the fact that participating Class Members will receive recovery of a
substantial portion of their actual damages. Moreover, as explained above, Class
Counsel's lodestar substantially exceeds the fee request. These two factors support an
upward adjustment from the benchmark.  See In re Nuvelo Sec. Litig., 2011 WL
2650592 at *1 (N.D. Cal. filed July 6, 2011) (explaining that two factors considered in
setting an appropriate percentage include "whether counsel achieved exceptional results"
and whether the requested percentage compares favorably "with counsel's lodestar")
(citing Vizcaino, 290 F.3d at 1048–50).  When determining what particular percentage is
fair, reasonable, and adequate, courts also consider "the degree of risk assumed by
counsel," whether "counsel's performance generated benefits beyond the cash settlement
fund," whether "the fee lies above or below the market rate," the "length of time counsel
represented the class on a contingency basis," class counsel's "experience and skill," and
the "reaction of the class."  In re Nuvelo Sec. Litig., 2011 WL 2650592 at *1.  Here, the
factor weigh in favor of awarding more than the 25% level of fees.

## 1.    The Results Obtained And The Degree Of Risk Assumed

      The $600,000 settlement is an exceptional result obtained in the face of significant
risk.  Again, it is estimated that participating Class Members will receive on average
more than $102 each, a recovery of a significant portion of their actual damages. These
recoveries are substantial in and of themselves, and particularly large given the
dispositive defenses available to Defendant in this action.  Had the defense prevailed,
then *none* of the individuals within the Settlement Class would be entitled to *any*

1     payments at all.

2         Adding to these risks is the fact that Class Counsel undertook this litigation on a

3 contingent-fee basis, requiring them to shoulder not only the cost of attorney time, but

4 all of the costs of what will be some three years of litigation from commencement of the

5 investigation until any payment is made, at all, later this year.  See Hopkins v. Stryker

6 Sales Corp., 2013 WL 496358 at *3 (N.D. Cal. filed Feb 6, 2013) (in awarding more

7 than the 25% benchmark, explaining that "[c]lass [c]ounsel took a significant risk

8 investing in this case" because it "was conducted on an entirely contingent fee basis

9 against a well-represented [d]efendant" and because [a]ll of the financial risk of

10 litigation was therefore assumed by [c]lass [c]ounsel, whose fee arrangement with

11 [p]laintiffs required [c]lass [c]ounsel to bear all of the costs of litigation"); Franco v.

12 Ruiz Food Prods., Inc., 2012 WL 5941801 at *16 (E.D. Cal. filed Nov. 27, 2012)

13 (stating that "an award of one-third of the common fund as attorneys' fees has been

14 found appropriate" when an "action [i]s undertaken on a contingency fee basis and

15 [when], as such, [c]lass [c]ounsel invest[] time, effort, and money with no guarantee of

16 recovery").  Judged relative to these risks, that participating Class Members will recover

17 a significant portion of their actual damages weighs in favor of granting the present

18 Motion in full.

19         **2.**    **The "Market Rate" For Class Counsel's Services**

20         Class Counsel's 33.33% fee request comports with the "market rate" for a

21 settlement of this size. The market-rate factor concerns "'the range of fee awards out of

22 common funds of comparable size.'"  Morales v. Stevco, Inc., 2013 WL 1222058 at *3

23 (E.D. Cal. filed Mar. 25, 2013) (quoting Vizcaino, 290 F.3d at 1050).  See also In re

24 Nuvelo Sec. Litig., 2011 WL 2650592 at *2 (in analyzing the percentage rate requested

25 relative to the market rate, finding that "30% reasonably compares to other awards for

26 [settlements of the same size]").  According to the Central District, "25% is substantially

27 below the average class fund fee nationally," and "[c]ases of under $10 [m]illion will often

28 result in fees above 25%."  Craft v. County of San Bernardino, 624 F. Supp. 2d 1113, 1125

(C.D. Cal. 2008) (citing a study by the Federal Judicial Center "of all class actions resolved or settled over a four-year period," which study "found a median percentage recovery range of 27–30%").  See also Cicero v. DirecTV, Inc., 2010 WL 2991486 at *6 (C.D. Cal. filed July 27, 2010) (explaining that "20 to 30% [i]s the usual range in common fund cases where the recovery is between $50 and 200 million," that "case law surveys suggest that . . . 30–50% [is] commonly . . . awarded in case[s] in which the common fund is relatively small," and that "*cases below $10 million are often [compensated at] more than the 25% benchmark*") (emphasis supplied); Hartless v. Clorox Co., 273 F.R.D. 630, 642-43 (S.D. Cal. 2011) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent.") In light of the "market rate" for a settlement of this size, Class Counsel's 33% fee request is reasonable.

### 3.    Class Counsel's Contingent-Based Representation

Class Counsel's fee request is further justified based on the contingent nature of what will be some three years of representation before fees may finally be paid, in 2018. As recently explained by the Northern District, conducting a case "on an entirely contingent fee basis against a well-represented [d]efendant" supports an upward adjustment from the benchmark.  Hopkins, 2013 WL 496358 at *3.  See also Gardner v. GC Servs., LP, 2012 WL 1119534 at *7 (S.D. Cal. filed Apr. 2, 2012) (in concluding that a 30% fee award was reasonable, explaining that "class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it"); Theriot v. Celtic Ins. Co., 2011 WL 1522385 at *6 (N.D. Cal. filed Apr. 21, 2011) (in awarding a 33% fee, explaining that "[i]t is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all"); Carter v. Anderson Merchandisers, LP, 2010 WL 1946757 at *2 (C.D. Cal. filed May 11, 2010) (in awarding the requested fees, stating that "[t]he case was undertaken on a contingency fee basis" and that "[c]lass [c]ounsel advanced all costs, despite the risk of no recovery in

this case, representing a significant financial burden"). This factor therefore weighs in favor of approving the requested fees.

### 4. Class Counsel's Skill And The Complexity Of The Issues

As explained by the Eastern District, "California wage and hour law is extremely complex and the statutory/administrative language can be particularly difficult to parse." Morales, 2013 WL 1222058 at *3. See also Franco, 2012 WL 5941801 at *16 (explaining that "specialist skills" are required "to litigate the legal theories relating to wage and hour law and labor law"); Garcia v. Gordon Trucking, Inc., 2012 WL 5364575 at *10 (E.D. Cal. filed Oct. 31, 2012) (in awarding 33% of a common-fund settlement, concluding that "th[e] case required substantial skill in litigating complex legal issues, particularly in light of the uncertainty in California law as it relate[s] to [p]laintiffs' meal break claims"). As reflected in the Declarations of Alan Harris and John Dorigan filed herewith, Class Counsel have considerable experience in prosecuting complex class-wide cases, including, in particular, wage-and-hour actions. (See Harris Decl. ¶ 20.) "Overall, the specialized skill of Class Counsel in this area of the law [i]s generally an asset to the Class Members." Franco, 2012 WL 5941801 at *16. Class Counsel's 33.33% fee request is therefore reasonable.

### 5. The Reaction Of The Class

With respect to the reaction of the Class, at this stage, Notice has only recently been mailed. There is a substantial time before the opt-out window closes, and the participation rate, therefore, will not be known for several weeks. Class Members have until June 18, 2018 to object to the settlement. Therefore, the Parties have no idea how many, if any, will request exclusion or object. Accordingly, Class Counsel will submit a supplemental Memorandum to discuss these factors, prior to the Hearing on Final Approval. Of course, the class participation rate and the absence or presence of objections may be important factors to weigh in this matter. See, e.g., Franco, 2012 WL 5941801 at *14 (explaining that "'the absence of a large number of objections to a proposed class action settlement raises a strong presumption that [its] terms are

favorable'") (quoting <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523,

529 (C.D. Cal. 2004); <u>Sandoval</u>, 2010 WL 2486346 at *7 (in approving a settled wage-

and-hour class action, noting that "24% of [c]lass [m]embers submitted valid claim[s],"

which the court characterized as a "positive" response).

### D.    The Incurred Costs Should Be Reimbursed

Although the Settlement Agreement permits Class Counsel to seek up to $12,000

in litigation costs, Class Counsel are seeking reimbursement of $9,357.47 which

includes expenses actually incurred in the prosecution of this case.  As detailed in the

Declaration of Alan Harris filed herewith (<u>see</u> Harris Decl. Ex. 3 at 33-34), the costs

include "travel costs, mediation fees, . . . copy and scanning costs, filing fees, and

electronic research fees[, which] fees are routinely reimbursed." <u>Franco</u>, 2012 WL

5941801 at *22.  <u>See also</u> <u>Odrick v. UnionBanCal Corp.</u>, 2012 WL 6019495 at *6 (N.D.

Cal. filed Dec. 3, 2012) (in a common-fund settlement, noting that class counsel were

seeking reimbursement of "costs for a retained expert, mediation, travel, copying,

mailing, legal research, and other litigation-related costs," and concluding that

"reimbursement of these costs and expenses in their entirety is justified"); <u>Knight</u>, 2009

WL 248367 at *7 (in a common-fund settlement, stating that class counsel's expenses

"relate to online legal research, travel, postage and messenger services, phone and fax

charges, court costs, and the costs of travel"; that "[a]ttorneys routinely bill clients for all

of these expenses"; and that "it is therefore appropriate for counsel here to recover these

costs from the [s]ettlement [f]und").  The request should therefore be approved in full.

### E.    The Enhancement Awards and Individual Payments Are Reasonable

Pursuant to the terms of the Settlement Agreement, Class Counsel have applied for

Enhancement Awards to the Plaintiffs not to exceed $5,000 each for their efforts in

bringing and prosecuting this case.  (Harris Decl., Ex. 1 at ¶ 16(c)(vi).)  According to the

Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases" and "are

intended to compensate class representatives for work done on behalf of [a] class, to

make up for financial or reputational risk undertaken in bringing the action, and,

1   sometimes, to recognize their willingness to act as a private attorney general." <u>Rodriguez</u>

2   <u>v. West Publ'g Corp.</u>, 563 F.3d 948, 958–59 (9th Cir. 2009) (emphasis removed), *vacated*

3   *on other grounds,* 688 F.3d 645, 660 (9th Cir. 2012).  Courts should consider "the risk to

4   the class representative in commencing suit, both financial and otherwise," as well as

5   "the amount of time and effort spent by the class representative" and "the personal

6   benefit (or lack thereof) enjoyed by the class as a result of the litigation." <u>Smith v. CRST</u>

7   <u>Van Expedited, Inc.</u>*,* 2013 WL 163293, at *6 (S.D. Cal. filed Jan. 14, 2013) (quoting <u>Van</u>

8   <u>Vranken v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 299 (N.D. Cal. 1995)) (internal

9   quotations omitted).

10      Here, all of the factors weigh in favor of approving the award.  First, as a direct

11  result of Plaintiffs' having brought this suit, participating Class Members will receive a

12  cash benefit in recognition of the claims alleged in this case, most of which are penalties

13  or civil penalties.  Second, Plaintiffs have expended considerable time conferring with

14  Class Counsel and their investigators, providing factual background and support,

15  analyzing ATS's provided data, and participating in mediation and subsequent settlement

16  discussions.  (Harris Decl., Exs. 2, 3, and 4 (March 9, 2018 Declarations of Gideon

17  Pederson, Sasha Mason and Ruth Alcaraz.))   Finally, Plaintiffs "undertook the financial

18  risk that, in the event of a judgment in favor of [Defendants] in this action, [they] could

19  have been personally responsible for any costs awarded in favor of [Defendants]."

20  <u>Vasquez v. Coast Valley Roofing, Inc.</u>*,* 266 F.R.D. 482, 491 (E.D. Cal. 2010).  Indeed,

21  enhancement awards are particularly appropriate in employment class actions, where they

22  help to alleviate the "stigma upon future employment opportunities for having initiated an

23  action against a former employer." <u>Campbell v. First Investors Corp.</u>, 2012 WL

24  5373423, at *8 (S.D. Cal. filed Oct. 29, 2012).

25      Class Counsel further request that Plaintiffs be awarded individual payments of

26  $4,500 each on account of their execution of broad general releases of the claims

27  articulated in the litigation, claims for retaliation and discrimination arising thereafter and

28  their agreement to refrain from seeking future employment with Defendant.  (Dorigan

Decl., ¶ 8.)

        The Enhancement Award and individual payments contemplated in the Settlement
Agreement are *below* the range awarded in similar cases, see Smith, 2013 WL 163293,
*6.  Plaintiffs request that the Court therefore approve the requested Enhancement
Awards of $500 and Individual Payments of $4,500 to each of the Plaintiffs.  Plaintiffs
understand that the approval of the Settlement Agreement with respect to the Class
claims is not contingent on their receipt of any Enhancement Award or Individual
Payment and that they may not receive one, at all.

## IV.   Conclusion

        This was a hard fought case resulting in a well-deserved victory for the Class.
The Court should approve Class Counsel's reasonable request for $200,000 in attorney's
fees and $9,357.47 in incurred litigation costs, as well as the Enhancement Awards and
Individual Payments to each Plaintiff totaling $5,000 to each, all payable from the
$600,000 common-fund settlement.


Dated:  May 7, 2018                      Respectfully submitted,

                                   HARRIS & RUBLE
                                   LAW OFFICES OF JOHN P.
                                   DORIGAN


                                      /s/ *Alan Harris*
                                   Alan Harris
                                   John P. Dorigan