Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Ave.
Glendale, California 91203
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
pmohan@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
600 Canterbury Lane
Sagamore Hills, Ohio 44067
Telephone: (330) 748-4475
Facsimile: (330) 748-4475
jpdorigan@aol.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. PEDERSON, R. ALCARAZ, and S. MASON, individually and on behalf of all others similarly situated, and on behalf of aggrieved employees, the people of the State of California and the Labor Commissioner,<br><br>Plaintiffs,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC.,<br><br>Defendant. | Case No. 5:15-cv-02400-VAP-SP<br>*Assigned to Hon. Virginia A. Phillips*<br><br>**DECLARATION OF ALAN HARRIS IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY'S FEES, INCENTIVE AWARDS AND REIMBURSEMENT OF COSTS**<br><br>Date:       July 2, 2018<br>Time:       2:00 p.m.<br>Courtroom: 8A<br>             350 West 1st Street<br>             Los Angeles, CA 90012 |

i

## DECLARATION OF ALAN HARRIS

I, ALAN HARRIS, declare under penalty of perjury under the laws of the United States and of the State of California, as follows:

1.      I am a member in good standing of the State Bar of California, and am admitted to practice in the Central District of California. I am counsel for Plaintiffs Gideon Pederson, Ruth Alcaraz and Sasha Mason in this action. I am making this declaration in support of Plaintiffs' Motion for Award of Attorney's Fees, Incentive Awards, and Reimbursement of Costs.  The required Local Rule 7-3 meet and confer took place commencing on January 8, 2018, and on various dates thereafter.  If sworn as a witness I could competently testify to each and every fact set forth herein from my personal knowledge.  A true and correct copy of the Settlement Agreement and Release of Claims ("Settlement Agreement") is attached hereto as Exhibit 1.  True and correct copies of the Declarations of Plaintiffs Gideon Pederson, Ruth Alcaraz and Sasha Mason are attached hereto as Exhibits 2, 3 and 4.

*Summary of Litigation and Procedural History*

2.      In November of 2015, Plaintiffs commenced this action on behalf of a putative class of all current and or former employees employed by Defendant within California at any time from November 20, 2011.  On January 25, 2016, Plaintiffs filed a first amended complaint to clarify that they were authorized to pursue claims under the California Labor Code Private Attorneys General Act of 2004, Code section 2698 et seq. ("PAGA").  On April 14, 2016, Plaintiffs filed the operative Second Amended Complaint ("SAC"), asserting twelve causes of action:  (1) a claim for missed meal breaks under Code sections 226.7 and 512; (2) a claim for improper pay stubs under section 226(a) of the Code; (3) a claim alleging that ATS failed to reimburse employees for uniform-maintenance expenses under section 2802 of the Code; (4) a claim for failing to properly deal with security deposits under sections 403-406 of the Code, as well as section 9(c) of the Wage Order; (5) a claim for unlawful deductions from wages, in violation of Code section 221; (6) failure to pay proper overtime in violation of sections 510 and 1194 of

the Code; (7) failure to pay all wages as required by Code sections 201, 201.3(B)(1) and continuing wages under section 203 of the Code; (8) a claim for unfair competition under section 17200 *et seq.* of the California Business and Professions Code; (9) a claim violation of the FLSA; (10) individual claims for failure to produce records requested under section 226(b) of the Code; (11) individual claims for failure to produce records under section 1198.5 of the Code; and (12) a claim for civil penalties under section 2698 *et seq.* of the Code. The civil-penalties claim is premised in part on the ATS failure to provide adequate seating for its employees, as required by section 14 of the wage order as well as the ATS violations of Code provisions and Wage Order requirements with respect to treatment of security deposits.

3.      Both before initiating the Action and afterwards, the undersigned investigated the claims against Defendant and also analyzed any and all applicable defenses raised by Defendant. Class Counsel's background includes work conducted in connection with a prior class action lawsuit, <u>McDonald v. Airport Terminal Services</u>, No. 5:11-cv-01946-VAP-SP (C.D. Ca. 2011). The present investigation included the exchange of information and documentation pursuant to informal discovery methods, service of formal discovery, numerous conferences between the undersigned and Defendant's Counsel, and interviews of Plaintiffs and Class Members.  In connection with these attempts at resolution, defense counsel provided information as to the class size, and the number of automatic meal period deductions taken during the relevant period when employees worked shifts of more than five hours per day.  ATS also provided information regarding required security deposits and alternative workweek elections.

4.      After extensive negotiations, including several settlement offers and counteroffers, the Parties agreed that the services of a private mediator would assist in resolving Plaintiff's claims.  On or about August 9, 2016, the Parties attended a mediation before Lisa Klerman, an experienced mediator of cases involving the wage and hour laws at issue in the Action. The Parties were unable to reach a mediated resolution.

On or about September 1, 2016, the Court stayed the Action through November 7, 2016, to permit the Parties and mediator to continue efforts to attempt to settle the Action.

5.      On or about January 30, 2017, the Parties appeared before the Court for a scheduling conference. The Parties continued to meet and confer on numerous occasions, reviewing Plaintiffs' claims, the alleged defenses, the potential for a mediated resolution of the Action. On or about May 12, 2017, the Court stayed the Action through August 7, 2017. The Parties and mediator continued to meet and confer to explore the potential for settlement.

6.      After more than 16 months of negotiations and exchange of information between the Parties following the initial mediation, the Parties finally agreed to a settlement, and on or about January 4, 2018, the Parties filed a notice of settlement. The settlement was negotiated in light of all known facts and circumstances—including the potential difficulty of proving Plaintiffs' claims, potential defenses, the uncertainty associated with litigation, the risks of significant delay, and numerous potential appellate issues.  The settlement was reached only after extensive arm's-length negotiations, with the assistance of the mediator Lisa Klerman. Over the course of the next two months, the Parties proceeded to negotiate the terms of a long-form settlement agreement encompassing the terms of the Memorandum of Understanding.  In March 2018, those negotiations resulted in the execution of the Settlement Agreement which was preliminarily approved by the Court on April 5, 2018 [ECF Doc. 41].

*The Specific Claims for Relief Alleged in this Action*

7.      *Meal Break Violation.*  As alleged in the SAC, the nature of ATS's hourly employees' work at airport worksites at times prevented them from taking their meal breaks.  During discovery, Class Counsel were able to establish that there were some 2,422 instances when they might prove liability for premium wages on account of missed meals on a class-wide basis.  Assuming an average hourly wage of $14.77, the total damages would amount to $35,772.94 (=$14.77*2,422).

8.    *Unpaid Overtime.*  Investigation uncovered a dispute between the parties with respect to whether ATS complied with the technical requirements for an employee election to permit an alternative workweek of four days, ten hours per day, all paid at straight time wages.  There were only some sixty persons impacted, and the total claim for unpaid overtime came to less than some $12,500.  In addition, Plaintiffs claimed that ATS improperly computed overtime owing to many employees on account of failing to properly compute the applicable regular rate.  The total damages for this part of the overtime claim came to under $60,000.

9.    *Wage Statement Violation.*  Plaintiffs allege that Defendant failed to provide Airport Agents with the data required by section 226(a) of the Code.  The wage statements fail to record properly the additional wages owed to Plaintiffs on account of overtime wages owing to them.  Although ATS is a temporary services employer, the wage statements also fail to provide the rate of pay and total hours worked for each temporary services assignment.  The total damages are capped at $4,000 per employee, limited to the period commencing one year prior to the filing of suit.  During the relevant time, the company employed hundreds of workers who collectively received many thousands of wage statements.  The total at issue, with PAGA penalties, comes to several million dollars.  In the settlement, this sum is substantially discounted, as there are substantial problems in establishing liability and courts may be unlikely to reward stacked penalties for a violation that the defense claims to by hyper-technical in nature.

10.    *Failure to Reimburse Uniform Maintenance Expenses.*  Plaintiffs allege that ATS failed to reimburse hourly employees for the costs of maintaining their uniforms, despite the fact that certain parts of the uniforms have a label: "dry clean only."  Plaintiffs contend that uniform-maintenance expenses are a "necessary expenditure" for which ATS bears the burden of reimbursement.  See 8 Cal. Code Regs. § 11090 subsec. 9(A) (stating that, "[w]hen uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer").  Damages here were estimated to apply to about 600 full time equivalent

DECL. OF ALAN HARRIS IN SUPPORT OF MOT. FOR AWARD OF ATTORNEY'S FEES. INCENTIVE AWARDS AND REIMBURSEMENT OF COSTS

workers who, over a year would spend about $5 per dry cleaning per month, about $36,000 per year (=600 FTEs * $5 * 12 months).

11.    *Unlawful Deductions.*  Plaintiffs allege that, in violation of Code section 221, ATS unlawfully deducted uniform deposits from the paychecks of Airport Agents. As of January of 2018, the total retained by ATS, including accrued interest, came to just over $50,000.

12.    *Liability for Cal. Lab. Code § 203 Continuing Wages.*  Plaintiffs contend that at least on account of Defendant's failure to pay Airport Agents proper overtime wages, as well as Defendant's failure to provide meal-period premium wages, Defendant is liable to former employees for continuing wages pursuant to section 203 of the Code. To the extent the case were not settled and continuing wages were awarded, the total would come to several million dollars.  For one employee, continuing wages could come to some $3,544.80 (=$14.77 per hour * 8 hours per day * 30 days).  Were liability established for 2,000 employees, the total penalty would be $7,089,600.  Here, in settlement, such penalties are completely discounted.  Rodriguez v. West Publ'g Corp., 2007 WL 2827379 at *8 (C.D. Cal. filed Sept. 10, 2007).

13.    Aside from the above-described cash fund, as a direct result of this lawsuit ATS has changes its security deposit practices. Specifically, ATS stopped taking deposits in August 2017 and no longer requires security deposits at all.

14.    On May 3, 2018, the appointed Settlement Administrator, CPT Group, Inc. ("CPT"), mailed Notice to the 2,940 Settlement Class members who worked a total of approximately 138,987 weeks during the class period. Based on the information provided by CPT, the undersigned anticipates that settlement administration fees and costs will not exceed $15,000.  This is substantially less than the party's previous estimate for claims administration costs, $27,000.

15.    *The Strength of Plaintiffs' Case.*  Since the inception of this case, ATS has asserted that Plaintiff's meal-break claims are preempted under the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.  The Northern District of California has held that,

because "ADA preemption applies to 'state enforcement actions having a connection with, or reference to[,] carrier rates, routes or services . . . even if a state law's effect on rates, routes or services is only indirect,'" and because "enforcing state meal period . . . regulations would impermissibly regulate an air carrier's service" by, say, "prevent[ing] an aircraft from being fueled or serviced" or by preventing "cargo from being unloaded such that [there] would [be an] impact [on] the schedule of the point-to-point transportation of passengers or cargo," California's meal-break statute is preempted. Angeles v. US Airways, Inc., 2013 WL 622032 at *8–9 (N.D. Cal. filed Feb. 19, 2013) (quoting Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008)) (quotation marks omitted).  See also Blackwell v. Skywest Airlines, Inc., 2008 WL 5103195 at *15–18 (S.D. Cal. filed Dec. 3, 2008) (holding that California's meal-period requirements are preempted under the ADA because they impact an airline's services, routes, and prices). If preemption applies, *none* of the Settlement Class are entitled to *any* meal-period damages.  The $600,000 Gross Settlement Payment, which will likely provide participating Class Members with a substantial amount of what they are owed for missed breaks, is therefore more than reasonable.  This factor thus weighs in favor of approving the settlement.

16.    Another potentially dispositive defense applies to Plaintiff's claim for improper wage statements.  Plaintiffs' wage statement claim is based on the assertion that ATS is a "temporary services employer."  Defendant has argued that ATS does not meet the definition of a temporary services employer because it does not provide workers to its customers, but rather services.  If Defendant were to prevail on this argument, Class Members would not be entitled to any damages for the wage statement claim.

17.    With respect to Plaintiffs' expense reimbursement claim for uniform maintenance, Defendant has denied that ATS issued any directive requiring employees to dry clean their uniforms and has raised the defense that individualized inquiries would preclude class action treatment of this claim.

18.    With respect to Plaintiffs' unlawful deduction claim, Defendant has argued that there is no private right of action for a Code § 221 claim and is therefore subject to a one year statute of limitations under PAGA.  Defendant also argues that therefore the Plaintiffs lack standing to bring this claim.

19.    Defendant also disputes the merits of any regular rate based overtime claim or overtime claim based on Defendant's failure to comply with the requirements for alternative workweek elections.

20.    *Plaintiffs' Enhancement Awards and Individual Payments.*  Under the terms of the Settlement Agreement, Class Counsel have applied for Enhancement Awards in the amount of $500 to each of the Plaintiffs for their efforts in bringing and prosecuting this case. Here, all of the factors support approving the awards. First, as a direct result of Plaintiffs' having brought this suit, participating Class Members will receive a cash benefit in recognition of the claims alleged in this case, most of which are penalties. Second, Plaintiffs have expended considerable time conferring with Class Counsel and their investigators, providing factual background and support, analyzing ATS's provided data, and participating in mediation and subsequent settlement discussions.  See generally the Declarations of Plaintiffs Pederson, Alcaraz and Mason filed herewith. Finally, Plaintiffs "undertook the financial risk that, in the event of a judgment in favor of [Defendants] in this action, [they] could have been personally responsible for any costs awarded in favor of [Defendants]."  Indeed, enhancement awards are particularly appropriate in employment class actions, where they help to alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer." Campbell v. First Investors Corp., 2012 WL 5373423, at *8 (S.D. Cal. filed Oct. 29, 2012).

21.    In addition, Class Counsel request that an individual payment of $4,500 be made to each Plaintiff on account of the broad general release of claims, including individual claims for retaliation and discrimination, and their agreement not to seek employment with Defendant.

22.    *Class Counsel's Fee and Expense Award.* Pursuant to Ninth Circuit precedent and the Settlement Agreement, Class Counsel have applied for 33.33% of the Total Maximum Settlement Amount in fees—i.e. $200,000—and seek reimbursement of $9,357.47 in litigation expenses.  As there are a total of just over 650 hours devoted to the case, the requested, effective mixed hourly rate is just over $300 per hour ($200,000/650 total hours = $307/hour).  To the best of my knowledge, my firm has no conflict of interest with Plaintiff or any Class Members, and I believe that my firm has, thus far, fairly and adequately represented the interests of the Class.  To date, my firm has advanced all costs incurred in this case.  Similarly, the required legal services have been provided on a contingent-fee basis.  Exhibit 5 hereto is a true and correct copy of detailed records of the time and expenses incurred by Harris & Ruble in, *inter alia*, initiating the case, litigating the action, working with experts on liability and damage issues, preparing for and attending mediation, negotiating the settlement, preparing the settlement-related documents, and securing preliminary approval of the settlement.  Because the time records run only through April 25, 2018, they do not reflect all time spent on this case. The undersigned estimates that at a bare minimum, an additional fifteen hours of time will be spent by Harris & Ruble attorneys in the further prosecution of this case, including preparation of the motion for final approval, attendance at the hearing on the motion for final approval, communicating with class members and the claims administrator and attending to related administrative matters involved in bringing the settlement to completion.  Therefore, the time records reflect fifteen hours of estimated time.   It is my practice and the policy of Harris & Ruble that all employees record their professional time in tenth-of-an-hour increments on a contemporaneous basis, and Exhibit 4 reflects that practice.  In addition, I regularly review the time and expense records of all Harris & Ruble employees, I have reviewed all of the records attached as Exhibit 5, and I believe that they accurately—yet conservatively—represent the time productively and necessarily spent in the prosecution of this case.

DECL. OF ALAN HARRIS IN SUPPORT OF MOT. FOR AWARD OF ATTORNEY'S FEES. INCENTIVE AWARDS AND REIMBURSEMENT OF COSTS

23.    *Experience.* I have been and am licensed as an attorney, first in Illinois (1974) and later in California (1989). I am a graduate of the University of Illinois (A.B. 1970, J.D. 1974). After graduation from law school in January 1974, I was hired as a litigation associate at a plaintiffs' antitrust boutique in Chicago, Illinois: Freeman, Freeman & Salzman, P.C. I became a partner in that firm in 1980, and I started my own practice in 1982.[1] I speak before professional organizations on topics of interest to the Bar, and I have represented plaintiffs in complex business litigation for over forty years. See e.g., Illinois v. Ill. Brick Co., Inc., 431 U.S. 720 (1977); In re My Left Hook, LLC, 129 Fed. Appx. 352 (9th Cir. 2005); Gregory v. SCIE, LLC, 317 F.3d 1050 (9th Cir. 2003); In re Blue Coal Corp., 986 F.2d 687 (3d Cir. 1993); In re Blue Coal Corp., 206 B.R. 730 (M.D. Pa. 1997); U.S. v. Gleneagles Inv. Co., Inc., 584 F. Supp. 671, 689 (M.D. Pa. 1984), aff'd. in part and vacated in part, and remanded sub. nom., U.S. v. Tabor Ct. Realty Corp. 803 F.2d 1288 (3d Cir. 1986), cert. den. sub. nom., McClellan Realty Co. v. U.S. 483 U.S. 1005 (1987); In re Uranium Antitrust Litig., 503 F. Supp. 33 (N.D. Ill. 1981); In re Grand Jury, 469 F. Supp. 666 (M.D. Pa. 1980); In re Anthracite Coal Antitrust Litig., 82 F.R.D. 364 (M.D. Pa. 1979), In re Folding Carton Antitrust Litig., 83 F.R.D. 251 (N.D. Ill. 1978); In re Anthracite Coal Antitrust Litig., 78 F.R.D. 709 (M.D. Pa. 1978); In re Masterkey Antitrust Litig., 1977 U.S. Dist. LEXIS 12948 (D. Conn. 1977) (six-week jury trial for plaintiffs); A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp., 68 F.R.D. 383 (N.D. Ill. 1975); In re Cement-Concrete Block, Chicago Area, Grand Jury Proceedings, 381 F. Supp. 1108 (N.D. Ill. 1974); Parmet v. Lapin, 2004 Cal. App. Unpub. LEXIS 5217 (June 1, 2004). I have participated

---

[1] Of my still-living partners in Freeman, Freeman & Salzman, a firm that dissolved in 2007, each has assumed a senior role in a leading national law firm. Lee Freeman, Jr. was a partner and chair of the Antitrust Litigation Practice Group at Jenner & Block from 2007 to June 2011. Jerrold Salzman is of counsel at Skadden, Arps, Slate, Meagher & Flom LLP. Tyrone Fahner, formerly an Attorney General of the State of Illinois, is a partner at Mayer Brown, having served as its co-chair from 1998 to 2001 and its chair from 2001 to 2007.

1    in class-action jury and bench trials on behalf of plaintiffs and, once, assisted as counsel

2    for a defendant, Allstate Insurance Company, in a class action bench trial.

3          24.    I have represented employees in numerous disputes concerning their receipt

4    of wages, both before the California Division of Labor Standards Enforcement and before

5    state and federal courts. For nearly twenty years, I have researched and argued claims

6    such as those at issue in this case.  I have been appointed lead class counsel in many

7    wage-and-hour class actions. See, e.g., Alfano v. Int'l Coffee & Tea, LLC, C.D. Cal.

8    Case No. CV 04-8996 SVW; Jenne v. On Stage Audio Corp., C.D. Cal. Case No. CV 04-

9    2045 CAS; Agatep v. Exxon Mobil Corp., C.D. Cal. Case No. CV 05-2342 GAF

10   ($1,500,000 settlement); Hansen v. Advanced Tech Sec. Servs., Inc., Los Angeles Sup.

11   Ct. Case No BC 367175 ($1,050,000 settlement); Ross v. Human Res., Inc., Los Angeles

12   Sup. Ct. Case No. BC 351506; Harrington v. Manpay, LLC, Los Angeles Sup. Ct. Case

13   No. BC 312171 ($1,000,000 settlement); Brackett v. Saatchi & Saatchi, Los Angeles Sup.

14   Ct. Case No. BC 298728; Readmond v. Straw Dogs, Inc., Los Angeles Sup. Ct. Case No.

15   BC 257394; Angel Paws, Inc. v. Avalon Payroll Servs., Inc., Los Angeles Superior Court

16   Case No. BC 188982 ($450,000 settlement); Saunders v. Metro Image Group, San Diego

17   Sup. Ct. Case No. GIC 809753;  Doty v. Costco Wholesale Corp., No. CV05-3241 FMC

18   (JWJX), 2006 WL 8431343, at *2 (C.D. Cal. Dec. 11, 2006) (preliminary approval) and

19   Doty v. Costco Wholesale Corp., No. CV053241FMCJWJX, 2007 WL 9698132, at *2

20   (C.D. Cal. May 14, 2007) (final approval) ($7,500,000 settlement); Bithell v. E.P. Mgmt.

21   Servs., LP, 2007 WL 4216854 (Cal. Ct. App. 2007) (sustaining a class-wide settlement as

22   fair and reasonable, and finding that class counsel adequately represented the class--

23   $5,348,000 settlement); Kang v. Albertson's, Inc., C.D. Cal. Case No. CV 07-00894 CAS

24   ($6,637,500 settlement); Stratford v. Citicorp West FSB, Monterey Sup. Ct. Case No. M

25   81026 ($950,000 settlement); Douglas v. Arcadia Health Servs., Inc., No. CV-11-03552

26   SBA, 2012 WL 12953866, at *3 (N.D. Cal. Apr. 17, 2012) (final approval for 30% of

27   settlement as fees) and Douglas v. Arcadia Health Servs., Inc., No. C 11-3552 SBA, 2011

28   WL 13177621, at *1 (N.D. Cal. Dec. 12, 2011) (preliminary approval); Castillo v. ADT,

1  LLC, No. CV 2:15-383 WBS DB, 2017 WL 363108, at *7 (E.D. Cal. Jan. 25, 2017)

2  (awarding 33 1/3 percent of class settlement to fees); Hutchins v. Producers Payroll, Inc.,

3  No. CV0705535GHKJTLX, 2008 WL 11340343, at *3 (C.D. Cal. Dec. 12, 2008)

4  (preliminary approval); Tremblay v. Chevron Stations, Inc., 2008 Westlaw 2020514

5  (N.D. Cal. 2008) (wage-and-hour $4,500,000 settlement); Escobar v. Whiteside Constr.

6  Corp., 2008 U.S. Dist. LEXIS 68439 (N.D. Cal. 2008) (wage-and-hour collective action);

7  Jacobs v. CSAA Inter Ins. Bureau, No. C07-00362MHP, 2009 WL 1201996, at *1 (N.D.

8  Cal. May 1, 2009) (injunction against communications with later-filed state class action);

9  Silva v. Banco Popular N. Am., No. CV 08-6709 JFW (RZX), 2009 WL 10672397, at *2

10  (C.D. Cal. June 22, 2009) (certifying settlement classes and awarding fees of 28% of

11  $1,050,000 settlement); Blandino v. MCM Constr., Inc., No. C 12-1729 WHO, 2014 WL

12  11369763, at *3 (N.D. Cal. Mar. 6, 2014)(awarding fee of thirty percent); Gonzalez v.

13  Preferred Freezer Servs. LBF, LLC, 2013 U.S. Dist. LEXIS 109930 (C.D. Cal. filed July

14  29, 2013) ($834,474 settlement); McDonald v. Airport Terminal Servs., Inc., C.D. Cal.

15  Case No. EDCV 11-1946 VAP ($250,000 settlement); Chookey v. Sears, Roebuck and

16  Co., C.D. Cal. Case No. 12-CV-2491-GW ($3.2 million settlement); Huber v. Majestic

17  Pictures, Inc., No. CV0802243GAFMANX, 2009 WL 10671416, at *6 (C.D. Cal. Nov.

18  24, 2009) (approving "an award of thirty percent of the settlement"); Covillo v.

19  Specialty's Café, No. C-11-00594 DMR, 2013 WL 5781574, at *2 (N.D. Cal. Oct. 25,

20  2013) (preliminary approval of $2,000,000 settlement); Taylor v. W. Marine Prod., Inc.,

21  No. C 13-04916 WHA, 2015 WL 2452902, at *2 (N.D. Cal. May 21, 2015) ($435,000

22  settlement); Brumfield v. Belmont Village, LP, C.D. Cal. Case No. 13-CV-07445-BRO

23  ($459,312 settlement); Wigersma v. Motion Theory, Inc., Los Angeles Sup. Ct. Case No.

24  BC 531180 ($1,000,000 settlement); Castillo v. ADT, E.D. Cal. Case No. 2:15-cv-00383-

25  WBS-DAD ($1,060,000 settlement); Sherman v. CLP Res., Inc., No. CV 12-8080-

26  GW(PLAX), 2015 WL 13542762, at *15 (C.D. Cal. Feb. 4, 2015)(certification of

27  contested classes); Thio v. Genji, LLC, No. C 12 5756 NC, 2014 WL 12644020, at *3

28  (N.D. Cal. Dec. 5, 2014) (certification of settlement classes); Wingate v. Prod. Farm,

1  LLC, No. CV0704294DDPRZX, 2008 WL 11342467, at *2 (C.D. Cal. Nov. 4,

2  2008)(class settlement); Douglas v. Arcadia Health Servs., Inc., No. CV-11-03552 SBA,

3  2012 WL 12953866, at *3 (N.D. Cal. Apr. 17, 2012) (class settlement); Luviano v. Multi

4  Cable, Inc., No. CV1505592BROFFM, 2017 WL 3017195, at *24 (C.D. Cal. Jan. 3,

5  2017) (granting contested motion for class and collective action certification). The

6  experience of my co-counsel, John P. Dorigan, is set forth in the concurrently filed

7  Declaration of John Dorigan.

8       25.    During the course of this case, the following employees of Harris & Ruble

9  made substantial contributions:

10      a.    As discussed above, I, the undersigned am a *summa cum laude* graduate of

11  the University of Illinois (AB 1970, JD 1974).  I am a member of the bars of Illinois

12  (1974) and California (1989).  In this matter, through April 25, 2018, I spent over 167

13  hours.  As detailed in the Declaration of Peter D. Zeughauser ("Zeughauser Declaration")

14  attached as Exhibit 6 hereto, as of 2013, in California, the market hourly rate for these

15  services is $895.

16      b.    Priya Mohan is a *magna cum laude* graduate of the University of Michigan

17  (B.A., 2000), USC Gould School of Law (J.D., 2003), and the UCLA Luskin School of

18  Public Affairs (M.P.P. 2010). She became a member of the California bar in 2003.  Ms.

19  Mohan has worked with me in a number of labor-law disputes at Harris & Ruble.  E.g.

20  Clarke v. Indelible Media Corp., C.D. Cal. Case No. CV10-6230; Lobato v. Abbott

21  Cardiovascular Systems, Inc., Santa Clara Sup. Ct. Case No. 1-10-CV-175637; Matheny

22  v. CA Payroll, Inc., C.D. Cal. Case No. 2:11-CV-02522; Chorley v. Palm Productions,

23  Los Angeles Sup. Ct. Case No. BC465045; Popko v. Van Acker Construction Associates,

24  Inc., N.D. Cal. Case No. CV114034; Rentoria v. Omnicare, Los Angeles Sup. Ct. Case

25  No. BC405988; Pena v. Downey, Los Angeles Sup. Ct. Case No. BC447731; Seielstad v.

26  Aegis Senior Communities, LLC, N.D. Cal. Case No. 09-01797; Covillo v. Specialty's

27  Café and Bakery, Inc., N.D. Cal. Case No. 11-CV-00594-DMR; Johnson v. Sky Chefs,

28  Inc., N.D. Cal. Case No. 11-CV- 05619-LHK. Ms. Mohan has also worked with me on

class-action matters and has been appointed class counsel in connection therewith, e.g. Lobato v. Abbott Cardiovascular Systems, Inc., Santa Clara Sup. Ct. Case No. 1-10-CV-175637; Rentoria v. Omnicare, Los Angeles Sup. Ct. Case No. BC405988; Covillo v. Specialty's Café and Bakery, Inc., N.D. Cal. Case No.11-CV-00594-DMR; Johnson v. Sky Chefs, Inc., N.D. Cal. Case No. 11-CV- 05619-LHK; Chookey v. Sears Roebuck and Co., C.D. Cal. Case No.12-CV-2491-GW; Taylor v. West Marine Products, Inc., N.D. Cal. Case No. 13-CV-4916-WHA, Brumfield v. Belmont Village, LP, C.D. Cal. Case No. 13-CV-07445-BRO and Castillo v. ADT, E.D. Cal. Case No. 2:15-cv-00383-WBS-DAD. As of 2013, the California Market rate for Ms. Mohan's services is $625 and as of April 25, 2018, she spent some 87 hours working on this matter.  It is conservatively estimated that Ms. Mohan will spend at least an additional 15 hours on this matter, for a total of 102 hours, preparing the motion for final approval and addressing settlement administration issues.  These additional estimated hours are included in Exhibit 5 hereto.

c.    Rebecca Lee, an attorney from Harris & Ruble who worked on the above-captioned case, has worked with me on a number of wage and hour matters.  Ms. Lee earned her J.D. from the USC Gould School of Law in 2013. At USC, she was the President of the Public Interest Law Foundation, and was a Production Editor for the Review of Law and Social Justice. Prior to joining Harris & Ruble, Ms. Lee served as a Peace Corps volunteer in Cajabamba, Ecuador. During her service, she worked as a health educator, and helped local groups found small businesses. She graduated from Columbia University in 2008 *cum laude*, with honors. She earned a B.A. in political science. Ms. Lee has worked with me on numerous class-action matters, E.g. Sherman v. CLP Resources, Inc.. The California market rate for Ms. Lee's services is $375 per hour.

d.    Christina Nordsten, a Harris & Ruble attorney who performed work on this case,  is a graduate of Stockholm University (B.A., and LL.M. 2013) and the USC Gould School of Law (LL.M., 2014). She became a member of the California bar in 2015. Mrs. Nordsten has worked with me on class-action matters, E.g. Sherman v. CLP Resources, Inc.; Douglas Ednie v. Fueld Films, Inc., Los Angeles Superior Court Case No.

DECL. OF ALAN HARRIS IN SUPPORT OF MOT. FOR AWARD OF ATTORNEY'S FEES. INCENTIVE AWARDS AND REIMBURSEMENT OF COSTS

1  BC561725; I. Hernandez v. XPO Logistics, Inc., Central District of California Case No.

2  2:16-cv-03112-R-JC; Maureen Crawford v. Sears Hometown and Outlet Stores, Inc.,

3  Riverside Superior Court Case No. RIC1510091; L. Luviano v. Multi Cable Inc., Central

4  District of California Case No. 2:15-cv-05592-BRO-FFM; Cho v. AMC, Los Angeles

5  Superior Court Case No. BC575892; Tanika Turley v. Chipotle Services, LLC, San

6  Francisco Superior Court Case No. CGC-15-544936; S. Natale v. Topanga Productions,

7  Inc., Los Angeles Superior Court Case No. BC599970; M. Cociu v. David Yurman, Los

8  Angeles Superior Court Case No. BC604385. The California market rate for her services

9  is $375 per hour.

10    e.    In addition, Ms. Dorigan spent over 190 productive hours performing

11  paralegal work on this matter.  The market rate for her services is $220 per hour.  Ms.

12  Dorigan's time records and the time records of Class Counsel John Patrick Dorigan are

13  attached as exhibits to the Declaration of John Patrick Dorigan, filed herewith.

14  *Class Counsel's Lodestar*

15    26.    Table 1 in the Memorandum in Support of Plaintiff's Motion for Award of

16  Attorney's Fees correctly summarizes the requested lodestar submitted herein. Class

17  Counsel also seeks $9,357.47 for reimbursement of the costs reasonably incurred in the

18  prosecution of this matter.  (Exhibit 5 at pp. 27-28.)

19  *Class Counsel's Hourly Rates*

20    27.    In an effort to bring Harris & Ruble's rates up to date with the current

21  prevailing market rate, I retained the services of an expert in the field, Peter D.

22  Zeughauser, to opine on proper market-based billing rates for class-action cases and to

23  provide insight in setting rates for Harris & Ruble's hourly clients. Mr. Zeughauser has

24  executed a Declaration setting forth his opinion as to the rates for attorneys at Harris &

25  Ruble. A true and correct copy of his Declaration is attached hereto as Exhibit 6. In his

26  Declaration, Mr. Zeughauser notes that, for over seventeen years, he "ha[s] served as a

27  legal management consultant to law firms throughout the United States[ and] . . . ha[s]

28  also consulted with numerous law firms with offices in Los Angeles and throughout the

United States regarding the appropriate amount to charge clients for services rendered by

the firms." (Exhibit 6 at ¶ 8.)  According to Mr. Zeughauser's website, his clients include

the law firms of Akin Gump Strauss Hauer & Feld; Gibson, Dunn & Crutcher; Howard

Rice; K&L Gates; Manatt, Phelps & Phillips; Mayer Brown; Morgan, Lewis & Bockius;

Morrison & Foerster; O'Melveny & Myers; Proskauer; and Winston & Strawn.

(http://zeughausergroup.com/representative-clients-2/.) Mr. Zeughauser's assessment of a

"reasonable" hourly rate for Harris & Ruble's attorneys was based directly upon his in-

depth knowledge of the prevailing market rates. (Exhibit 6 at ¶ 9.) He has "published

numerous articles in national, state and local legal publications on the topic of

determining the appropriate value of legal services," and he is "a member of the Board of

Editors of America Lawyer Magazine," for which he is a regular columnist who "often

address[es] the subject of proper techniques for determining the appropriate value of legal

services." (Exhibit 6 at ¶ 6.) The following is a partial list of Mr. Zeughauser's fee-related

publications:

> • Alternative Billing: Clients Aren't Biting, Legal Times, May 1, 2000.

> • An Alternative to Alternative Fees, The American Lawyer, Dec. 1996.

> • Lawyers are from Mercury, Clients are from Pluto (1999).

> • The New Math: Associate Pay Raises Will Have a Domino Effect on the
> Entire Legal Industry, Clients Will Build In-House Empires, and Many
> Firms Will Collapse, Legal Times, May 1, 2000, at 46.

> • Tower of Billables, 88 A.B.A.J. 14 (Apr. 2002).

> • The Use of Alternative Fee Arrangements to Achieve Smart Results and
> Improve Outside Counsel Relationships, 871 PLI Corp. 47 (1994).

> • Using Alternative Fee Arrangements to Improve Client Relationships, Law
> Firm Profitability and Results, Legal Econ., Apr. 1997 at 22.

According to Mr. Zeughauser regarding Harris & Ruble rates as of 2013, my rate should

be $895 per hour and Ms. Mohan's rate should be $625 per hour. (Exhibit 6 at ¶ 11.)

28.    Harris & Ruble's hourly rates for this case are comparable to the rates charged by other firms in California wage-and-hour class actions. For example, in <u>Wang v. Chinese Daily News, Inc.</u>, 2008 U.S. Dist. LEXIS 123824 (C.D. Cal. filed Oct. 3, 2008), vacated on other grounds, 132 S. Ct. 74 (2011), the Central District approved hourly rates of up to $800. <u>Wang</u>, 2008 U.S. Dist. LEXIS at *8–9. More recently, in <u>Rutti v. Lojack Corp.</u>, 2012 U.S. Dist. LEXIS 107677 (C.D. Cal. filed July 31, 2012), the Central District approved hourly rates of up to $750. <u>Rutti</u>, 2012 U.S. Dist. LEXIS 107677 at *33. See also, <u>Pierce v. County of Orange</u>, 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) (approving rates of up to $850 per hour); <u>In re HP Laser Printer Litig.</u>, 2011 WL 3861703 at *5–6 (C.D. Cal. filed Aug. 31, 2011) (approving rates of up to $800 per hour); <u>See</u> <u>Orian v. Fed'n Int'l des Droits de L'Homme</u>, 2012 WL 994643, at *2-3 (C.D. Cal. Mar. 22, 2012) (rates of $545, $625, and $900 per hour reasonable); <u>In re Schering-Plough Corp. Enhance Securities Litigation</u>, 2013 WL 5505744 at *58, n.43 (D. NJ, Oct. 1, 2013) ($875 per hourly rate for a "very experienced class action lawyer" characterized as "extremely reasonable, if not a bargain").

29.    Further, Class Counsel's requested rates have been approved in connection with other class-wide settlements.  For example, a copy of the July 10, 2014 Tentative Ruling on the Motion for Award of Attorney's Fees, Incentive Award and Reimbursement of Costs and July 30, 2014 Order Granting Final Approval of Class Action Settlement in <u>Chookey v. Sears, Roebuck and Co.</u>, C.D. Cal. Case No. 12-2491-GW (MRWx) is attached hereto as Exhibit 7.

30.    A copy of the adjusted Laffey matrix is attached as Exhibit 8 hereto.

31.    A copy of the adjusting data for the Laffey matrix, revealing a higher cost of living for Washington, D.C., Los Angeles is attached as Exhibit 9 hereto.

32.    As explained by the Central District, "'[t]he prevailing view is that expenses are awarded *in addition to* the fee percentage.'" <u>Jefferson v. H&M Hennes & Mauritz, L.P.</u>, 2013 U.S. Dist. LEXIS 2875 at *9 (C.D. Cal. filed Jan. 7, 2013) (quoting 1 Alba Conte, Attorney Fee Awards § 2:08 at 50–51) (emphasis supplied). The 33.33% fee

request is warranted on account of Class Counsel's contingent-based representation. Class Counsel should be compensated for their work, since, "'[i]t is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all.'" (Thieriot v. Celtic Ins. Co., 2011 WL 1522385 at *6 (N.D. Cal. filed Apr. 21, 2011) (awarding a 33% fee)). To date, Class Counsel have received no fees during the entire pendency of this action, and they have also advanced all costs. Further, in this case, the lodestar substantially exceeds the requested award of fees.  These factors, along with the fact that class action litigation such as this case is extremely risky, supports an upward adjustment from the benchmark. See, e.g., Hopkins, 2013 WL 496358 at *3 (explaining that conducting a case "on an entirely contingent fee basis against a well-represented [d]efendant" supports an upward fee adjustment); Carter v. Anderson Merchandisers, LP, 2010 WL 1946757 at *2 (C.D. Cal. filed May 11, 2010) (in awarding the requested fees, stating that "[t]he case was undertaken on a contingency fee basis" and that "[c]lass [c]ounsel advanced all costs, despite the risk of no recovery in this case, representing a significant financial burden.")  Our hourly rates do not reflect a risk of non-payment, as they are the rates used for paying clients.

33.    Both while negotiating and before executing the Settlement Agreement, I reviewed the terms in detail with Plaintiffs.  Plaintiffs Pederson, Alcaraz and Mason have indicated to me that they consider the Class Settlement Agreement to represent a fair, reasonable and adequate resolution of this case. Plaintiffs share the desire to be paid in full, such that they are committed to pursuing the Class claims to seek reimbursement for themselves as well as other of Defendants' employees.

I have read the foregoing, and the facts set forth therein are true and correct of my personal knowledge.  Executed May 7, 2018, in the County of Los Angeles, State of California.

_/s/ Alan Harris_
Alan Harris

DECL. OF ALAN HARRIS IN SUPPORT OF MOT. FOR AWARD OF ATTORNEY'S FEES. INCENTIVE AWARDS AND REIMBURSEMENT OF COSTS

# Exhibit 1

# SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims is entered into by and between Plaintiffs Gideon Pederson, Ruth Alcaraz, and Sasha Mason, their counsel, and on behalf of the class they seek to represent, on the one hand, and Defendant, Airport Terminal Services, Inc., on the other hand.

## 1. DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

**1.1.   Action.** "Action" means the civil lawsuit originally entitled *G. Pederson, R. Alcaraz, and S. Mason v. Airport Terminal Services, Inc.*, filed on or about November 20, 2015, in the United States District Court, Central District of California, and designated as Case No. 5:15-cv-02400-VAP-SP.

**1.2.   Agreement.** "Agreement" means this Settlement Agreement and Release of Claims, which includes the Definitions, Recitals, and all Exhibits attached hereto.

**1.3.   Attorneys' Fees and Costs Award.** "Attorneys' Fees and Costs Award" means any attorneys' fees and costs payment, subject to Court approval, from the Gross Settlement Amount for Class Counsel's attorneys' fees and costs associated with the litigation and resolution of the Action (excluding third-party Settlement Administration Costs which are separately identified and defined below).

**1.4.   Class Counsel.** "Class Counsel" (or "Plaintiffs' Counsel") means Alan Harris and Priya Mohan of HARRIS & RUBLE, 655 North Central Avenue, Glendale, California 91203, and John P. Dorigan of LAW OFFICES OF JOHN P. DORIGAN, 600 Canterbury Lane, Sagamore Hills, Ohio 44067.

**1.5.   Class Member.** "Class Member" means any current or former non-exempt employee who is or was employed by Defendant within California at any time from November 20, 2011, through the date of preliminary approval of the settlement.

**1.6.   Class Notice.** "Class Notice" means the Notice of Class Action Settlement, substantially in the form attached as Exhibit A.

**1.7.    Class Representative Incentive Award.** "Class Representative Incentive Award" means any payment, subject to Court approval, to Plaintiffs from the Gross Settlement Amount in recognition of their efforts and work in prosecuting the Action on behalf of Class Members.

**1.8.    Plaintiff's Individual Payment.** "Plaintiff's Individual Payment" means any payment, subject to Court approval, to Plaintiffs from the Gross Settlement Amount on account of their individual agreements to refrain from seeking future employment with Defendant and their individual agreements to broader general releases of claims articulated in the litigation.

**1.9.    Court.** "Court" means the United States District Court, Central District of California, the Honorable Virginia A. Phillips presiding.

**1.10.    Defendant.** "Defendant" means Airport Terminal Services, Inc.

**1.11.    Defendant's Counsel.** "Defendant's Counsel" means Seyfarth Shaw LLP. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Aaron R. Lubeley and Simon L. Yang, Seyfarth Shaw LLP, 333 South Hope Street, Suite 3900, Los Angeles, California 90071.

**1.12.    Deposit Sum.** "Deposit Sum" means the value of any Class Member security deposits (and accrued interest) held by Defendant as of January 1, 2018.

**1.13.    Effective Date.** "Effective Date" means the date applicable based on the following: (a) if no appeals of an order by the Court granting final approval of class action settlement or granting judgment dismissing with prejudice the Action and all claims for Settlement Class Members is filed, 10 days after the expiration date of the time for the filing or notice of any appeals from such an order or judgment; or (b) if any appeals of an order by the Court granting final approval of class action settlement or granting judgment dismissing with prejudice the Action and all claims for Settlement Class Members is filed, 30 days after any appeals affirming such an order or judgment are final and no longer appealable.

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**1.14.  Individual Settlement Payment.** "Individual Settlement Payment" means each Settlement Class Member's potential payment from the Net Settlement Amount.

**1.15.  Gross Settlement Amount.** "Gross Settlement Amount" means the maximum potential settlement amount (inclusive of any Attorneys' Fees and Costs Award, Class Representative Incentive Awards, Plaintiff's Individual Payments, Deposit Sum, LWDA Payment, Settlement Administration Costs, Individual Settlement Payments, and all employee or employer payroll taxes) that Defendant may be required to pay in connection with an order granting final approval of class action settlement.

**1.16.  LWDA Payment.** "LWDA Payment" means any payment, subject to Court approval, to the State of California Labor and Workforce Development Agency.

**1.17.  Net Settlement Amount.** "Net Settlement Amount" means the portion of the Gross Settlement Amount available for allocation to Settlement Class Members for all Individual Settlement Payments and all employee or employer payroll taxes, after deductions for any Court approved Attorneys' Fees and Costs Award, Class Representative Incentive Awards, Plaintiff's Individual Payments, Deposit Sum, LWDA Payment, and Settlement Administration Costs.

**1.18.  Parties.** "Parties" means Plaintiffs and Defendant.

**1.19.  Plaintiff(s).** "Plaintiff" or "Plaintiffs" mean Gideon Pederson, Ruth Alcaraz or Sasha Mason.

**1.20.  Released Party.** "Released Party" means Defendant or any of its current or former subsidiaries, affiliates, parents, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, employers, attorneys, personal representatives, executors, and shareholders, including their respective pension, profit sharing, savings, health, and other employee benefit plans of any nature, the successors of such plans, and those plans' respective current or former trustees and administrators, agents, employees, and fiduciaries.

**1.21.  Settlement Administrator.** "Settlement Administrator" means the independent third-party settlement administrator mutually agreed on by the Parties, subject to Court approval, to administer the settlement.

**1.22.  Settlement Administration Costs.** "Settlement Administration Costs" means any payment, subject to Court approval, payable from the Gross Settlement Amount to the Settlement Administrator for administering the settlement, including, but not limited to, printing, distributing, or tracking Class Notices, processing any required tax payments or reportings, providing any required tax forms, distributing the Deposit Sum, Individual Settlement Payments, Class Representative Incentive Awards, Plaintiff's Individual Payments, Attorneys' Fees and Costs Award, and LWDA Payment, and providing necessary reports and declarations, as requested by the Court or Class Counsel and Defendant's Counsel.

**1.23.  Settlement Class Members.** "Settlement Class Members" means any and all Class Members who do not exclude themselves from the settlement by complying with the procedures set forth in the Class Notice to opt out of the settlement.

**2.   RECITALS**

**2.1.   Initiation of Action.** On or about November 20, 2015, Plaintiffs filed the original complaint initiating the Action on behalf of a putative class of all current or former non-exempt employees employed by Defendant within California at any time from November 20, 2011. On January 25, 2016, Plaintiffs filed a first amended complaint to amend the existing complaint to clarify that they were authorized to pursue claims under the California Labor Code Private Attorneys General Act of 2004, California Labor Code section 2698 et seq. ("PAGA"), and to name two additional individual defendants. On April 14, 2016, Plaintiffs filed a second amended complaint to dismiss the two additional individual defendants. The second amended complaint is the operative complaint.

**2.2.   Causes of Action.** The Action pursues class, collective, and representative action claims for alleged (i) meal break violations, (ii) inaccurate itemized wage

statements, (iii) expense reimbursement violations, (iv) security deposit violations, (v) improper deductions, (vi) overtime violations, (vii) late final pay, (viii) unfair competition, (ix) Fair Labor Standards Act violations, (x) wage record inspection violations, (xi) employment record inspection violations, and (xii) penalties under PAGA.

**2.3.    Plaintiffs' Factual Allegations.** Plaintiffs asserted their claims based on various factual allegations, including but not limited to, claims that Defendant (i) failed to pay earned wages to Class Members on account of late, curtailed, or missed meal periods, (ii) failed to provide Class Members with proper wage statements, (iii) failed to reimburse Class Members for uniform maintenance expenses; (iv) collected unlawful deductions or security deposits from Class Members; (v) unlawfully required Class Members to purchase uniforms; (vi) failed to generally pay the correct amount of overtime owed, including specific failures on account of shift differential payments or alternative workweek elections; (vii) failed to provide Class Members with proper seating; and (viii) generally engaged in unfair, unlawful, or fraudulent business practices in violation of California law to the detriment of Class Members and the general public.

**2.4.    Class Counsel's Investigation.** Both before initiating the Action and afterwards, Class Counsel investigated the claims against Defendant and also analyzed any and all applicable defenses raised by Defendant. Class Counsel's investigation included work conducted in connection with a prior class action lawsuit, *Collette McDonald v. Airport Terminal Services*, filed on or about November 2, 2011, and designated as United States District Court, Central District of California Case No. 5:11-cv-01946-VAP-SP. Class Counsel's investigation also included the exchange of information and documentation pursuant to informal discovery methods, service of formal discovery, numerous conferences between Class Counsel and Defendant's Counsel, and Class Counsel's interviews of Plaintiffs and Class Members.

**2.5.    Mediation and Court-Ordered Stay.** On or about August 9, 2016, the Parties attended a mediation before Lisa Klerman, an experienced mediator knowledgeable of both the wage and hour laws and class, collective, and representative

5

claims at issue in the Action. The Parties were unable to reach a mediated resolution. On or about September 1, 2016, the Court stayed the Action through November 7, 2016, to permit the Parties and mediator to continue efforts to attempt to settle the Action. The Parties continued preparing their claims and defenses for litigation, while the Parties and mediator continued also to meet and confer on numerous occasions. The Parties were unable to reach a resolution at that time.

2.6.   **Scheduling Conference and Continued Settlement Efforts.** On or about January 30, 2017, the Parties appeared before the Court for a scheduling conference and to discuss the status of the Action. The Parties continued to meet and confer on numerous occasions, discuss Plaintiffs' claims described above, discuss Defendant's defenses, discuss the potential for a mediated resolution of the Action, and exchange informal discovery. On or about May 12, 2017, the Court stayed the Action through August 7, 2017. The Parties and mediator continued to meet and confer to explore the potential for settlement.

2.7.   **Settlement.** After more than 16 months of continued negotiations and exchange of information between the Parties following the initial mediation, the Parties finally agreed to a settlement, and on or about January 16, 2018, the Parties filed a notice of settlement with the Court. The settlement was negotiated in light of all known facts and circumstances—including the potential difficulty of proving Plaintiffs' claims, potential defenses asserted by Defendant, the uncertainty associated with litigation, the risks of significant delay, and numerous potential appellate issues—and was reached after extensive arm's-length negotiations, with the assistance of the mediator Lisa Klerman.

2.8.   **Defendant's Denials.** Defendant denied and continues to deny (i) all of the allegations made by Plaintiffs in the Action, (ii) that it violated any applicable laws, (iii) that it would be liable or owes damages, penalties, or any other type of remedies to anyone with respect to the alleged facts or claims asserted in the Action, and (iv) that class, collective, or representative treatment of the Action or any alleged claims would be proper. Nonetheless, without admitting or conceding any liability or wrongdoing

6

whatsoever and without admitting or conceding that class, collective, or representative treatment would be appropriate for any purpose other than settlement purposes alone, Defendant has agreed to settle the Action on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing the Action. Any stipulation or statement by Defendant contained herein is made for settlement purposes only.

**2.9.    Class Counsel's Evaluation.** Based on Class Counsel's ongoing investigation and evaluation over the course of more than two years since initiating the Action, Class Counsel is of the opinion that the terms set forth in this Agreement are fair, reasonable, adequate, and in the best interests of the class. Any stipulation or statement by Plaintiffs contained herein is made for settlement purposes only.

**2.10.    Intention of Parties.** It is the desire of the Parties to fully, finally, and forever settle, compromise, or discharge any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind that were or could have been asserted in the Action or that arise out of the alleged facts, circumstances, and occurrences underlying the allegations in the Action.

**2.11.    Certification of Settlement Class.** This Agreement is contingent upon the approval and certification by the Court of a class for settlement purposes only. Defendant does not waive, and instead expressly reserves, any and all rights to challenge the propriety of class, collective, or representative treatment for any other purpose should the Court not approve this Agreement or grant final approval of class action settlement.

**2.12.    Agreement to Cooperate.** The Parties agree to cooperate and take all steps necessary and appropriate to effectuate all aspects of this Agreement, to obtain preliminary and final approval of class action settlement, and to dismiss the Action and claims of Class Members with prejudice upon final approval.

**3.    NOTICE TO CLASS MEMBERS**

**3.1.    Settlement Administrator**. Plaintiffs and Class Counsel shall request that the Court appoint CPT Group, Inc. (or another administrator mutually agreed upon with

Defendant) as Settlement Administrator for purposes of sending notice of the settlement to Class Members. The Parties agree that Settlement Administration Costs should not exceed $27,000.00 and shall continue to seek reduced bids from potential administrators. All disputes relating to the Settlement Administrator's performance of its duties, after good-faith efforts by the Parties to first resolve such disputes, will be referred to the Court, if necessary, which will have continuing jurisdiction over this Agreement until all payments and obligations contemplated by this Agreement have been fully completed to Class Counsel and Defendant's Counsel's satisfaction.

**3.2.    Class Notice of Settlement.** The Settlement Administrator shall send Class Notice to Class Members to provide notice of settlement within 28 days of the entry of an order granting preliminary approval of class action settlement, pursuant to the procedures below. This shall be the sole means of notice to Class Members.

**3.3.    Class Data for Settlement Administrator.** Within 14 days of the entry of an order granting preliminary approval of class action settlement, Defendant shall provide to the Settlement Administrator each Class Member's most current, known mailing address, as well as data sufficient for the Settlement Administrator to determine each Class Member's number of workweeks during the applicable Class Period.

**3.4.    Confidentiality of Class Data.** Within 10 days of the entry of an order granting preliminary approval of class action settlement, the Settlement Administrator shall execute a confidentiality agreement. The Settlement Administrator shall keep data provided by Defendant strictly confidential, shall not share it with Class Counsel, shall use it only for the purposes described herein, and shall return it to Defendant or confirm its destruction upon completion of the Settlement Administrator's duties in administering the settlement.

**3.5.    Mailing of Notice.** The Settlement Administrator shall send Class Notice to each Class Member via First Class U.S. Mail, using the most current, known mailing address for each Class Member, based on class data provided by Defendant. Any Class Notice returned to the Settlement Administrator as undeliverable shall be sent promptly

via First Class U.S. Mail to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine the correct address using a skip-trace search and shall then promptly send a single re-mailing.

**3.6.    Proof of Mailing.** At least 5 days prior to the filing of a motion for final approval for class action settlement, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel a declaration by the Settlement Administrator of due diligence and proof of mailing with regard to mailing of Class Notice. At least 5 days prior to the hearing on a motion for final approval for class action settlement, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel a supplemental declaration regarding the mailing of Class Notice, response rate of Class Members, and the number of opt outs or objections to the settlement.

# 4.    CLASS MEMBERS' RESPONSE OPTIONS

**4.1.    Consideration Period.** Class Members shall be provided 45 days after the postmark date of the initial mailing of Class Notice to exercise any rights with regard to the settlement. Except as specifically provided herein, no Class Member responses of any kind that are postmarked more than 45 days after the initial mailing of Class Notice shall be considered.

**4.2.    Claim Procedure.** Plaintiffs shall submit a motion for preliminary approval of the settlement on a claims-made basis, which will require Class Members to submit a written, timely, and signed claim form to the Settlement Administrator in order to receive a share of the Net Settlement Amount. If for any reason the Court does not grant preliminary approval of a claims-made settlement, Plaintiffs shall take all steps necessary to move for preliminary approval of a settlement distributing the Net Settlement Amount in separate checks to Class Members without the need to submit a specific claim form.

**4.3.    Opt-Out Rights and Procedures.** Class Members shall be given the opportunity to opt out of the settlement. Class Members must comply with the procedures set forth in the Class Notice to opt out of the settlement. Class Members may opt out of the settlement by mailing to the Settlement Administrator the Request for Exclusion form

(attached to the Class Notice), which expresses their desire to be excluded from the Settlement Class. Any Request for Exclusion must include a Class Member's name (and former names, if any), signature, current address, and current telephone number. Any such Request for Exclusion must be postmarked not more than 45 days after the postmark date of the initial mailing of Class Notice. A Request for Exclusion shall be deemed to be submitted as of the postmarked date. Any Request for Exclusion that does not include all required information or that is not submitted on a timely basis shall be deemed null, void, and ineffective.

    **4.4.     Opt-Out Effect.** Class Members who opt out of the settlement pursuant to the terms of this Agreement shall not be permitted to object to the settlement, shall not receive any Individual Settlement Payments, and shall not be bound by the release provisions in this Agreement or the applicable release provisions in any order granting final approval of class action settlement. If a Class Member submits both a Request for Exclusion and an objection, the Class Member's objection shall be valid and shall be deemed to invalidate the Request for Exclusion. Each Class Member who does not opt out of the settlement shall remain qualified to receive an Individual Settlement Payment, pursuant to the terms of this Agreement, and shall be subject to being bound by the applicable release provisions in this Agreement or the applicable release provisions in any order granting final approval of class action settlement.

    **4.5.     Objection Rights and Procedures.** Because a class would be certified by the Court for settlement purposes, Settlement Class Members shall be given the opportunity to object to the terms of the settlement. Class Members who fail to make objections in the manner specified in the Class Notice shall be deemed to have waived any objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement. An objection shall be deemed to be submitted as of the postmarked date.

    **4.6.     Objection Effect.** Class Members who submit an objection shall remain subject to be bound by the release provisions in this Agreement or the applicable release

provisions in any order granting final approval of class action settlement. Class Members who submit an objection pursuant to the procedures set forth in the Class Notice may appear at the hearing on a motion for final approval for class action settlement, either in person or through counsel, but must state their intention to do so at the time they submit their written objection. Class Members may withdraw their objections at any time.

**4.7.    Proof of Class Members' Responses.** By not later than 60 days after the initial mailing of Class Notice, the Settlement Administrator will prepare and submit a declaration attesting to (by number of relevant individuals), its mailing of Class Notice, its inability to deliver Class Notice due to invalid addresses, and its receipt of valid Requests for Exclusion. Prior to the hearing on the motion for final approval of the settlement, the Settlement Administrator shall prepare any supplemental declarations regarding the administration of the settlement, as necessary or as jointly requested by the Parties or the Court. Class Counsel shall file any valid objections with the Court.

**4.8.    Class Member Freedom and Defendant's Right to Withdraw.** The Parties shall do nothing to encourage or solicit Class Members to submit claims, opt out, or object. Defendant, however, shall have the right, at its sole option, to withdraw from this Agreement if the total number of opt outs exceeds 20 Class Members.

**5.    SETTLEMENT PROCEEDS**

**5.1.    Gross Settlement Amount.** Defendant agrees to pay a maximum potential settlement amount of $600,000.00. The Gross Settlement Amount is inclusive of any Attorneys' Fees and Costs Award, Class Representative Incentive Awards, Plaintiff's Individual Payments, Deposit Sum, LWDA Payment, Settlement Administration Costs, Individual Settlement Payments, and all employee or employer payroll taxes that Defendant may be required to pay in connection with an order granting final approval of class action settlement.

**5.2.    Funding of Gross Settlement Amount.** Within 21 days after entry of an order granting final approval of class action settlement, Defendant shall make a one-time deposit of the Gross Settlement Amount (excluding only any amounts of the Deposit Sum

no longer in its possession as a result of a return to Class Member) into a qualified settlement fund to be established by the Settlement Administrator. The Settlement Administrator will not disburse any funds until at least 5 days after the Effective Date and after disbursing all payments pursuant to this settlement shall return to Defendant any funds or interest accrued prior to or after the Effective Date. If the Effective Date does not or is not to occur, the Settlement Administrator will return the deposited funds, with interest, to Defendant.

5.3.    **Attorneys' Fees and Costs Award.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve an Attorneys' Fees and Costs Award in the amount of (a) up to one-third (33.33%) of the Gross Settlement Amount (or $200,000.00) and (b) costs in the amount of up to $12,000.00. Except as provided in this Agreement, Defendant shall have no liability for any Plaintiffs or Class Member's attorneys' fees or costs in connection with the Action.

5.3.1. **Award Not Material.** The Court's approval of an Attorneys' Fees and Costs Award is not a material term of this Agreement. If the Court does not approve Class Counsel's request for an Attorneys' Fees and Costs Award (or approves only a lesser amount than requested by Class Counsel), the other terms of this Agreement shall apply. The Court's refusal to approve the Attorneys' Fees and Costs Award requested by Class Counsel does not give Plaintiffs or Class Counsel any basis to abrogate this Agreement. Any different amount of an Attorneys' Fees and Costs Award approved by the Court shall be allocated to the Net Settlement Amount or from the Gross Settlement Amount.

5.3.2. **Timing of Payment.** The Settlement Administrator shall pay to Class Counsel any approved Attorneys' Fees and Costs Award no later than 30 days after the Effective Date. Within 21 days after the Effective Date, Class Counsel shall transmit instructions to the Settlement Administrator as to how the Attorneys' Fees and Costs Award shall be paid. Class Counsel agrees that Class Counsel is responsible for allocating this payment among themselves or any other counsel for Class Members

12

settling claims through the final approval of class action settlement. The Settlement Administrator shall issue an Internal Revenue Service ("IRS") Form 1099 to Class Counsel for any Attorneys' Fees and Costs Award payment. Class Counsel shall be solely and legally responsible for paying all applicable taxes on any Attorneys' Fees and Costs Award payments and shall hold harmless Defendant from any claim or liability for taxes, fees, costs, or assessments resulting from any failure to timely pay taxes, interest, fees, or penalties owed in connection with the settlement or any payments to be made pursuant to this settlement.

**5.4.    Class Representative Incentive Awards and Plaintiff's Individual Payments.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve (i) Class Representative Incentive Awards of up to $500.00 for each Plaintiff and (ii) Plaintiff's Individual Payments of up to $4,500.00 for each Plaintiff on account of their execution additional individual releases broader than Settlement Class Member releases (including California Civil Code section 1542 waivers of all known or unknown claims), as well as their additional agreements to refrain from seeking future employment with Defendant. Any approved Class Representative Incentive Awards or Plaintiff's Individual Payments are supplemental to Plaintiffs' Individual Settlement Payments.

**5.4.1. Award Not Material.** The Court's approval of Class Representative Incentive Awards  is not a material term of this Agreement. If the Court does not approve the Class Representative Incentive Awards (or approves only a lesser amount than requested by Class Counsel), the other terms of this Agreement shall apply. The Court's refusal to approve Class Representative Incentive Awards requested by Class Counsel does not give Plaintiffs or Class Counsel any basis to abrogate this Agreement. If the Court approves Plaintiff's Individual Payments but approves only a different amount than requested by Class Counsel, the other terms of this Agreement shall apply. Any different amount of Class Representative Incentive Awards or Plaintiff's Individual Payments

approved by the Court shall be allocated to the Net Settlement Amount or from the Gross Settlement Amount.

**5.4.2. Timing of Payment.** The Settlement Administrator shall pay to Plaintiffs any approved Class Representative Incentive Awards or Plaintiff's Individual Payments no later than 30 days after the Effective Date. The Settlement Administrator shall issue an IRS Form 1099 to Plaintiffs for any Class Representative Incentive Awards or Plaintiff's Individual Payments distributed to Plaintiffs. Plaintiffs shall be solely and legally responsible for paying all applicable taxes on any Class Representative Incentive Awards or Plaintiff's Individual Payments and shall hold harmless Defendant from any claim or liability for taxes, fees, costs, or assessments resulting from any failure to timely pay taxes, interest, fees, or penalties owed in connection with the settlement or any payments to be made pursuant to this settlement.

**5.5. Settlement Administration Costs.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve Settlement Administration Costs of up to $27,000.00. Any amount of Settlement Administration Costs requested by Class Counsel but unapproved by the Court shall be allocated to the Net Settlement Amount. Upon completion of administration of the settlement, the Settlement Administrator shall provide written certification of such completion to Class Counsel and Defendant's Counsel. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize Settlement Administration Costs.

**5.6. LWDA Payment.** Class Counsel intends to request that the Court approve allocation of $10,000 of the Gross Settlement Amount to PAGA penalties and of $7,500.00 of the Gross Settlement Amount as an LWDA Payment to the State of California Labor and Workforce Development Agency. Any different amount of LWDA Payment approved by the Court shall be allocated to the Net Settlement Amount or from the Gross Settlement Amount. The Settlement Administrator shall issue the LWDA Payment no later than 30 days after the Effective Date.

14

**5.7.   Deposit Sums.** The Gross Settlement Amount includes the value of Class Member security deposits held by Defendant as of January 1, 2018, or $50,956.45, and accrued interest as of January 1, 2018. No later than 30 days after the Effective Date, the Settlement Administrator shall distribute any Deposit Sum included with the one-time funding of the Gross Settlement Amount to Settlement Class Members on whose behalf the security deposits are held. The Settlement Administrator shall issue an IRS Form 1099 to Settlement Class members for any Deposit Sum interest payments distributed to Settlement Class Members. Settlement Class Members shall be solely and legally responsible for paying all applicable taxes on their respective Deposit Sum payments.

**5.8.   Individual Settlement Payments.** Subject to any payroll taxes (including the employer's share of payroll taxes), the remaining Net Settlement Amount shall be distributed in separate checks to Settlement Class Members either on a claims-made basis or without the need to submit a specific claim form, based on Court approval. The Settlement Administrator shall calculate Individual Settlement Payments for Settlement Class Members.

**5.8.1. Claims-Made Calculations.** Pursuant to a claims-made settlement, the amount of the Net Settlement Amount allocated to each Settlement Class Member submitting a valid claim shall be based on the Settlement Class Member's length of active employment in the State of California as non-exempt employees since November 20, 2011, through the date of preliminary approval, as reflected in Defendant's records. Each Settlement Class Member's proportional share shall be calculated by multiplying the balance of the Net Settlement Amount by a fraction, the numerator of which is the total of the Settlement Class Member's number of workweeks during the class period, and the denominator of which is the total of all workweeks by Settlement Class Members submitting a valid claim during the class period.

**5.8.2. Alternative Calculations.** If the Court does not approve a claims-made settlement, the amount of the Net Settlement Amount allocated to each Settlement Class Member shall be based on Settlement Class Member's length of active employment

15

in the State of California as non-exempt employees since November 20, 2011, through the date of preliminary approval, as reflected in Defendant's records. Each Settlement Class Member's proportional share shall be calculated by multiplying the balance of the Net Settlement Amount by a fraction, the numerator of which is the total of the Settlement Class Member's number of workweeks during the class period, and the denominator of which is the total of all Settlement Class Members' workweeks during the class period.

**5.8.3. Timing of Payment.** The Settlement Administrator shall issue Individual Settlement Payments no later than 30 days after the Effective Date. Each Settlement Class Member's Individual Settlement Payment shall be characterized as 80% 1099 income and 20% W-2 income. In accordance with applicable tax laws, required tax withholdings will be taken from each Individual Settlement Payment for the portion allocated to W-2 income and remitted to the appropriate taxing authorities. The Settlement Administrator shall issue any necessary IRS Form 1099 or W-2 to Settlement Class Members for their respective Individual Settlement Payments. Settlement Class Members shall be solely and legally responsible for paying all applicable taxes on their respective Individual Settlement Payments.

**5.8.4. Undeliverable or Uncashed Checks.** No portion of the Gross Settlement Amount in Defendant's possession upon funding shall revert to Defendant. All uncashed or undeliverable settlement checks will expire after 180 days. The sum value of all expired checks will be tallied by the Settlement Administrator. As to all uncashed settlement payments, the Settlement Administrator, after the 180 days, will direct the associated funds to the Industrial Relations Unpaid Wage Fund described in California Labor Code section 96.6 or as consistent with applicable law and approved by the Court.

**5.9.    Payment Considerations.** Defendant are not giving any tax advice in connection with the settlement or any payments to be made pursuant to this Agreement.

**5.9.1. No Tax Advice or Liability.** Each Settlement Class Member, Plaintiffs, and Class Counsel shall hold harmless Defendant from any claim or liability for taxes, fees, costs, or assessments resulting from any failure to timely pay taxes, interest, fees, or penalties owed in connection with the settlement or any payments to be made pursuant to this settlement.

**5.9.2. No ERISA Impact.** None of the payments made pursuant to the settlement and this Agreement shall be considered for purposes of determining eligibility for, vesting or participation in, or contributions to any benefit plan, including, without limitation, all plans subject to the Employee Retirement and Income Security Act of 1974 ("ERISA"). Any distribution of payments to Plaintiffs or Settlement Class Members shall not be considered as a payment of wages or compensation under the terms of any applicable benefit plan and shall not affect participation in, eligibility for, vesting in, the amount of any past or future contribution to, or level of benefits under any applicable benefit plan. Any amounts paid will not impact or modify any previously credited hours of service or compensation taken into account under any benefit plan sponsored or contributed to by Defendant or any jointly-trusteed benefit plan. For purposes of this Agreement, "benefit plan" means each and every "employee benefit plan" as defined in 29 U.S.C. § 1002(3), and, even if not thereby included, any bonus, pension, stock option, stock purchase, stock appreciation, welfare, profit sharing, retirement, disability, vacation, severance, hospitalization, insurance, incentive, deferred compensation, or any other similar benefit plan, practice, program, or policy.

## 6.    RELEASES

**6.1.    Settlement Class Member Acknowledgment.** Settlement Class Members acknowledge that they may hereafter discover facts or law different from, or in addition to, the facts or law they know or believe to exist with respect to a released claim. Settlement Class Members nonetheless acknowledge that this Agreement and their releases shall be and shall remain effective in all respects notwithstanding such different or additional facts or law regarding such released claims.

**6.2.    Releases by Settlement Class Members**. By operation of the entry of the final judgment and final approval, and except as to such rights or claims as may be created by this Agreement, Settlement Class Members, and each of their respective executors, administrators, representatives, agents, heirs, successors, assigns, trustees, or guardians, shall release each Released Party and give a limited waiver of California Civil Code section 1542 of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind that were or could have been asserted in any version of the complaints filed in this Action or that are based on or arise out of the facts or allegations alleged in connection with this Action, including but not limited to those for (i) meal break violations, (ii) inaccurate itemized wage statements, (iii) expense reimbursement violations, (iv) security deposit violations, (v) improper deductions, (vi) overtime violations, (vii) late final pay, (viii) unfair competition, (ix) Fair Labor Standards Act violations, and (x) penalties under PAGA. California Civil Code section 1542 states:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

These releases do not include any claims that cannot be waived as a matter of law, though Settlement Class Members acknowledge and agree that they will not accept any monetary recovery from any proceedings relating to any such claims. Settlement Class Members further acknowledge that this Agreement and these releases do not waive prospective rights but do include post-dispute waivers or releases of any and all rights to pursue or recover PAGA remedies arising from or related to any of the underlying claims that were or could have been brought in the Action.

**6.3.    Additional Releases by Plaintiffs**. In addition to the above release applicable to Plaintiffs as Settlement Class Members, Plaintiffs specifically release any claims related to wage record inspection violations and employment record inspection violations. Plaintiffs also additionally agree that they will not knowingly seek, accept, or

18

continue employment with Defendant. Plaintiffs further generally release each Released Party of and from any and all claims, rights, demands, charges, complaint, causes of action, obligations or liability, including a waiver of California Civil Code section 1542. Plaintiffs expressly waive all rights provided by California Civil Code section 1542, or other similar statutes, that Plaintiffs may have against each Released Party. California Civil Code section 1542 states:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs acknowledge that they have read all of this Agreement, including the above language from the California Civil Code, and that they fully understand both this Agreement and the California Civil Code section. By executing this Agreement, Plaintiffs expressly waive any benefits and rights granted pursuant to California Civil Code section 1542 or any statute, rule, or principle of common law or equity, in any jurisdiction, that is similar, comparable, or equivalent, in whole or in part, to California Civil Code section 1542. Plaintiffs acknowledge and agree that this knowing and voluntary waiver is an essential and material term of this Agreement, and the Agreement would not have been entered into without such a waiver.

**6.4.    Injunction from Pursuing Released Claims**. As part of the preliminary approval of the settlement, the Court shall order that Settlement Class Members unless and until opting out of the settlement, shall be enjoined from filing, initiating, or continuing to prosecute any actions, claims, complaints, or proceedings in court, with the California Division of Labor Standards Enforcement ("DLSE"), with the California Labor and Workforce Development Agency ("LWDA"), or with any other entity regarding the released claims. This settlement is conditioned upon the releases by Settlement Class Members as described herein, and upon covenants by Settlement Class Members that they will not participate in any actions, lawsuits, proceedings, complaints, or charges brought individually, by the DLSE, the LWDA, or by any other agency,

persons, or entity in any court or before any administrative body related to the released claims, nor will Settlement Class Members contest or interfere with efforts by Defendant or a Released Party to oppose any attempt to bring such released claims against Defendant or a Released Party.

**6.5.   Non-Admission of Liability**. By entering into this Agreement, Defendant in no way admit any violation of law or any liability whatsoever to Plaintiffs or Class Members, individually or collectively, and expressly denies all such liability. Neither this Agreement nor the Memorandum of Understanding or any other settlement document shall be offered in any case or proceeding as evidence of any admission by Defendant of any liability on any claim for damages or relief. Likewise, by entering into this Agreement, Defendant in no way admit to the suitability of this case for class, collective, or representative treatment, other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and Class Members. The Parties understand and agree that this Agreement and all exhibits thereto are settlement documents and shall be inadmissible for any purpose in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement. The Parties agree that, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement.

**7.   COURT APPROVAL**

**7.1.   Preliminary Approval**. Plaintiffs shall request from the Court a hearing date for the motion for preliminary approval and submit to the Court a motion for an order granting preliminary approval of class action settlement.

**7.1.1. Order Granting Preliminary Approval**. The motion shall request the entry of an order to, among other things, (i) grant preliminary approval of the proposed settlement according to the terms in this Agreement, (ii) set a date for a final

20

approval and fairness hearing; and (iii) provide for Class Notice to be sent to Class Members as specified herein.

**7.1.2. Defendant's Right to Oppose**. Plaintiffs' motion shall be unopposed by Defendant, unless Plaintiffs' motion for preliminary approval seeks relief not specified by this Agreement. In such event, Defendant reserves its rights to address any assertions that are not contained in this Agreement.

**7.1.3. Effect of Failure to Obtain Preliminary Approval**. If this Agreement or a mutually agreed settlement is not preliminarily approved, the Action shall proceed as if no settlement has been attempted, unless the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. Defendant retains the right to contest whether any aspect of the Action should properly be maintained as a class, collective, or representative action or to contest the merits of the claims being asserted by Plaintiffs in the Action.

**7.2.     Final Approval**. Not later than 28 court days before the date set by the Court for a final approval and fairness hearing, or such other time as the Court may require, Class Counsel shall submit to the Court a motion for final approval of class action settlement. Class Counsel shall request the entry of an order granting final approval, which shall include findings and orders: (i) approving the settlement, (ii) adjudging the terms to be fair, reasonable, and adequate, (iii) reciting the release terms, (iv) directing that the settlement's terms and provisions be carried out; and (v) retaining jurisdiction to oversee administration and enforcement of the terms of this Agreement and the Court's orders.

**7.2.1. Entry of Judgment.** At the final approval and fairness hearing, the Parties shall request that the Court, among other things: (i) enter final judgment in accordance with this Agreement and without further fees or costs to any party except as expressly set forth in this Agreement; (ii) approve this Agreement as fair, reasonable, adequate, and binding on all Class Members; (iii) enter an order as to Class Counsel's request for an Attorneys' Fees and Costs Award; (iv) enter an order as to the request for

21

Class Representative Incentive Awards and Plaintiff's Individual Payments; (v) enter an order as to the request for the LWDA Payment; and (vi) enter an order permanently enjoining all Settlement Class Members from pursuing or seeking to reopen claims that have been released by this Agreement.

            **7.2.2. Effect of Failure to Obtain Final Judgment**. In the event the Court fails to enter final judgment in accordance with this Agreement, or such final judgment is reversed, the Action shall proceed as if no settlement had been attempted, unless the Parties jointly agree to seek reconsideration or appellate review of the ruling or seek Court approval of a renegotiated settlement. Defendant retains the right to contest whether any aspect of the Action should be maintained as a class, collective, or representative action or to contest the merits of the claims being asserted by Plaintiffs in the Action.

    **7.3.**    **Waiver of Appeal Rights.** By accepting this settlement and authorizing the dismissal of the Action with prejudice, Plaintiffs and Class Counsel hereby waive any and all rights they may have to appeal any judgment, ruling, or order made by the Court in this Action, including, without limitation, any order granting final approval of this settlement or dismissing the Action with prejudice.

**8.**    **MISCELLANEOUS**

    **8.1.**    **Interim Stay of Proceedings**. The Parties agree to refrain from further litigation of this matter, except such proceedings necessary to implement and obtain an order granting final approval of the terms of the Agreement. If the settlement is not finally approved, the Parties agree that they will revert to their positions in the lawsuit prior to the time the settlement was reached, and no agreements set forth in this Agreement, Memorandum of Understanding, or any documents generated or orders issued related to the settlement will be admissible in any future proceeding in this or any other action. If the settlement is not finally approved, Defendant reserves its rights to make all arguments that class or collective action certification or representative treatment would not be appropriate.

1

**8.2.    Parties' Authority**. The signatories hereto represent that they are fully

2

authorized to enter into this Agreement and are fully authorized to bind the Parties to all

3

terms stated herein. Subject to and upon the Court's order granting final approval of

4

settlement by the Court, the Parties agree that Class Members are so numerous that it is

5

impossible or impractical to have each Class Member execute this Agreement and that

6

this Agreement may be executed on behalf of Class Members by Plaintiffs and Class

7

Counsel and have the same force and effect as if executed by each Class Member.

8

**8.3.    Entire Agreement**. This Agreement, which includes the Definitions,

9

Recitals, and all Exhibits attached hereto, constitute the entire agreement between the

10

Parties with regard to the subject matter contained herein, and all prior and

11

contemporaneous negotiations and understandings between the Parties shall be deemed

12

merged into this Agreement.

13

**8.3.1. Materiality of Terms**. The Parties have arrived at this Agreement as

14

a result of arm's-length negotiations. Except as otherwise stated herein, all terms and

15

conditions of this Agreement in the exact form set forth in this Agreement are material to

16

this Agreement and have been relied upon by the Parties in entering into this Agreement.

17

**8.3.2. Counterparts**. This Agreement may be executed in counterparts, and

18

when all signatories have signed and delivered at least one such counterpart, each

19

counterpart shall be deemed an original, and when taken together with other signed

20

counterparts, shall constitute one signed Agreement, which shall be binding upon and

21

effective as to all Parties.

22

**8.3.3. Facsimile or Scanned Signatures**. Any party may sign and deliver

23

this Agreement by signing on the designated signature block and transmitting that

24

signature page via facsimile or as an attachment to an e-mail to counsel for the other

25

party. Any signature made and transmitted by facsimile or as an attachment to an e-mail

26

for the purpose of executing this Agreement shall be deemed an original signature for

27

purposes of this Agreement and shall be binding upon the party who transmits the

28

signature page.

**8.3.4. Binding Effect**. This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**8.3.5. Waivers, Modifications, Etc. to Be in Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement. The time periods and dates provided in this Agreement with respect to giving of notices and hearings are subject to Court approval and modification by the Court or by written stipulation of Class Counsel and Defendant's Counsel.

**8.4.    Construction**. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**8.4.1. Exhibits Incorporated by Reference**. The terms of this Agreement include the terms set forth in any attached Exhibit, which are incorporated by this reference as though fully set forth herein. Any Exhibit to this Agreement is an integral part of the settlement.

**8.4.2. Captions**. The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

24

**8.4.3. Invalidity of Any Provision**. Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to render all provisions of this Agreement valid and enforceable.

**8.5.    Further Acts and Cooperation Between the Parties**. The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of another, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. All papers to be filed with the Court by Defendant or Plaintiffs' Counsel in connection with this Agreement shall be submitted to the other Party at least two days prior to filing.

**8.5.1. No Prior Assignments or Undisclosed Liens**. Plaintiffs and Class Counsel represent and warrant that they have not assigned, transferred, conveyed, or otherwise disposed of, or purported to assign, transfer, convey, or otherwise dispose of any of their Released Claims or the Attorneys' Fees and Costs Award to be paid pursuant to this Agreement. Plaintiffs and Class Counsel further represent and warrant that there are not any liens or claims against any of the amounts to be paid by Defendant to Plaintiffs or Class Counsel pursuant to this Agreement. Plaintiffs and Class Counsel agree to defend, indemnify, and hold Defendant harmless from any liability, losses, claims, damages, costs, or expenses, including reasonable attorneys' fees, resulting from a breach of these representations or from any lien or assignment.

**8.5.2. No Future Employment of Plaintiffs**. Plaintiffs hereby waive any rights to future employment with Defendant, any related company, affiliate, entity, or business. Plaintiffs agree that neither Defendant nor any related company, affiliate, entity, or business is obligated to offer employment to them, regardless of the circumstances, at any time in the future. Plaintiffs agree that this is a negotiated clause of this Agreement and not evidence of claimed retaliation.

**8.5.3. Waiver of Right to Object**. Plaintiffs agree to sign this Agreement, and by signing this Agreement, Plaintiffs are thereby bound by the terms herein. For good and valuable consideration, Plaintiffs further agree that they shall not object to any of the terms of this Agreement.

**8.5.4. No Solicitation of Objections**. The Parties further represent and warrant that they have not and will not solicit, encourage, or assist in any fashion any effort by any entity or person to object to the settlement set forth in this Agreement or to seek exclusion from the settlement.

**8.5.5. Discovery of Confidential Documents and Information**. Within 60 days after the completion of the administration of the settlement, Class Counsel shall either return to Defendant any confidential documents and confidential data produced by Defendant in connection with the Action or destroy such documents and data. Class Counsel shall certify in writing to Defendant the good-faith efforts to comply with this provision.

**8.6.    No Media**. Neither side shall make any public statements, to the media or otherwise, concerning the settlement, and both sides shall decline to respond to media inquiries concerning the settlement. Nothing in this provision shall prevent Class Counsel from communicating directly with Class Members regarding the settlement, provided that such communication is limited to Class Members. Nor shall anything in this provision prevent Defendant from making any appropriate disclosures.

**8.7.    Continuing Jurisdiction**. The Court shall retain jurisdiction over the implementation of this Agreement as well as any and all matters arising out of, or related to, the implementation of this Agreement and of the settlement contemplated thereby. Unless the Parties jointly agree, the Court shall not have jurisdiction to modify the terms of the Agreement.

**8.8.    Disputes**. If the Parties have a dispute with regard to the language of this Agreement, the Parties agree to engage Lisa Klerman to mediate any such dispute. The Parties will split the costs of the mediator, and the Parties will bear their own fees.

1    **8.9.    Governing Law**. All terms of this Agreement shall be governed by and

2    interpreted according to the laws of the State of California.

3                                              **COUNSEL FOR PLAINTIFFS AND CLASS**

4    Dated: March _9_, 2018                    *Alan Harris*

5                                              Alan Harris

6                                              **COUNSEL FOR PLAINTIFFS AND CLASS**

7    Dated: March___, 2018                     _____

8                                              John P. Dorigan

9                                              **PLAINTIFF**

10   Dated: March ___, 2018                    _____

11                                             Gideon Pederson

12                                             **PLAINTIFF**

13   Dated: March ___, 2018                    _____

14                                             Ruth Alcaraz

15                                             **PLAINTIFF**

16   Dated: March ___, 2018                    _____

17                                             Sasha Mason

18                                             **DEFENDANT**

19   Dated: March ___, 2018                    _____

20                                             Sally Leible
                                               On behalf of Airport Terminal Services, Inc.

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1

**8.9.    Governing Law**. All terms of this Agreement shall be governed by and

2    interpreted according to the laws of the State of California.

3                                                    **COUNSEL FOR PLAINTIFFS AND CLASS**

4    Dated: March____, 2018                          _____

5                                                    Alan Harris

6                                                    **COUNSEL FOR PLAINTIFFS AND CLASS**

7    Dated: March 9, 2018                            _____

8                                                    John P. Dorigan

9                                                    **PLAINTIFF**

10   Dated: March ____, 2018                         _____

11                                                   Gideon Pederson

12                                                   **PLAINTIFF**

13   Dated: March ____, 2018                         _____

14                                                   Ruth Alcaraz

15                                                   **PLAINTIFF**

16   Dated: March ____, 2018                         _____

17                                                   Sasha Mason

18                                                   **DEFENDANT**

19   Dated: March ____, 2018                         _____

20                                                   Sally Leible
                                                     On behalf of Airport Terminal Services, Inc.
21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1    **8.9.    Governing Law**. All terms of this Agreement shall be governed by and

2    interpreted according to the laws of the State of California.

3                                          **COUNSEL FOR PLAINTIFFS AND CLASS**

4    Dated: March____, 2018            _____

5                                          Alan Harris

6                                          **COUNSEL FOR PLAINTIFFS AND CLASS**

7    Dated: March____, 2018            _____

8                                          John P. Dorigan

9                                          **PLAINTIFF**

10   Dated: March 9, 2018             _____

11                                         Gideon Pederson

12                                         **PLAINTIFF**

13   Dated: March ____, 2018          _____

14                                         Ruth Alcaraz

15                                         **PLAINTIFF**

16   Dated: March ____, 2018          _____

17                                         Sasha Mason

18                                         **DEFENDANT**

19   Dated: March ____, 2018          _____

20                                         Sally Leible
                                          On behalf of Airport Terminal Services, Inc.

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1    **8.9.**    **Governing Law**. All terms of this Agreement shall be governed by and

2    interpreted according to the laws of the State of California.

3                                                          **COUNSEL FOR PLAINTIFFS AND CLASS**

4    Dated: March___, 2018                    _____

5                                                          Alan Harris

6                                                          **COUNSEL FOR PLAINTIFFS AND CLASS**

7    Dated: March___, 2018                    _____

8                                                          John P. Dorigan

9                                                          **PLAINTIFF**

10   Dated: March ___, 2018                  _____

11                                                        Gideon Pederson

12                                                        **PLAINTIFF**

13   Dated: March _9_, 2018                  _____

14                                                        Ruth Alcaraz

15                                                        **PLAINTIFF**

16   Dated: March ___, 2018                  _____

17                                                        Sasha Mason

18                                                        **DEFENDANT**

19   Dated: March ___, 2018                  _____

20                                                        Sally Leible
                                                           On behalf of Airport Terminal Services, Inc.

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1    **8.9.    Governing Law**. All terms of this Agreement shall be governed by and

2   interpreted according to the laws of the State of California.

3                                                    **COUNSEL FOR PLAINTIFFS AND CLASS**

4   Dated: March___, 2018      _____

5                                                    Alan Harris

6                                                    **COUNSEL FOR PLAINTIFFS AND CLASS**

7   Dated: March___, 2018      _____

8                                                    John P. Dorigan

9                                                    **PLAINTIFF**

10  Dated: March ___, 2018      _____

11                                                   Gideon Pederson

12                                                   **PLAINTIFF**

13  Dated: March ___, 2018      _____

14                                                   Ruth Alcaraz

15                                                   **PLAINTIFF**

16  Dated: March 9__, 2018      _____

17                                                   Sasha Mason

18                                                   **DEFENDANT**

19  Dated: March ___, 2018      _____

20                                                   Sally Leible
                                                     On behalf of Airport Terminal Services, Inc.

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1    **8.9.    Governing Law**. All terms of this Agreement shall be governed by and

2    interpreted according to the laws of the State of California.

3                                                              **COUNSEL FOR PLAINTIFFS AND CLASS**

4    Dated: March___, 2018                    _____

5                                                              Alan Harris

6                                                              **COUNSEL FOR PLAINTIFFS AND CLASS**

7    Dated: March___, 2018                    _____

8                                                              John P. Dorigan

9                                                              **PLAINTIFF**

10   Dated: March ___, 2018                   _____

11                                                             Gideon Pederson

12                                                             **PLAINTIFF**

13   Dated: March ___, 2018                   _____

14                                                             Ruth Alcaraz

15                                                             **PLAINTIFF**

16   Dated: March ___, 2018                   _____

17                                                             Sasha Mason

18                                                             **DEFENDANT**

19   Dated: March ___, 2018                   _____

20                                                             Sally Leible
                                                               On behalf of Airport Terminal Services, Inc.

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

# Exhibit A

*This notice is being sent pursuant to court order. This is not a solicitation from a lawyer.*

# NOTICE OF PENDING CLASS ACTION SETTLEMENT

*Pederson et al. v. Airport Terminal Services, Inc.*,
United States District Court, Central District of California Case No. 5:15-cv-02400-VAP-SP

**If you are a current or former non-exempt employee who is or was employed by Airport Terminal Services, Inc. within California at any time from November 20, 2011, through [April 9], 2018, you are a Class Member and may waive your legal rights and any entitlement to settlement proceeds if you do not act. To remain eligible for a settlement payment, you MUST respond to this notice.**

***Read this notice carefully, as your legal rights could be affected whether you act or not.***

The United States District Court for the Central District of California has preliminarily approved a class action settlement that may affect your legal rights. The proposed settlement resolves a class action filed by Plaintiffs Gideon Pederson, Ruth Alcaraz, and Sasha Mason against Airport Terminal Services, Inc. ("ATS")— *G. Pederson et al. v. Airport Terminal Services, Inc.*, United States District Court, Central District of California Case No. 5:15-cv-02400-VAP-SP.

- The Lawsuit is based on various allegations, including but not limited to, Plaintiffs' claims that ATS (i) failed to pay earned wages, (ii) failed to provide proper wage statements, (iii) failed to reimburse expenses; (iv) collected unlawful deductions or security deposits; (v) unlawfully required purchases of uniforms; (vi) failed to pay overtime; (vii) failed to provide proper seating; and (viii) engaged in unfair, unlawful, or fraudulent business practices.

- ATS denies Plaintiffs' contentions and maintains it has fully complied with the law. By entering into this settlement, ATS in no way admits any violation of law or any liability whatsoever to Plaintiffs or Class Members, individually or collectively, and expressly denies all such liability. ATS enters into this settlement solely to avoid further protracted litigation and to resolve and settle any disputes between Class Members and Released Parties.

- The Court has preliminary approved Plaintiffs' counsel—Alan Harris and Priya Mohan of HARRIS & RUBLE and John P. Dorigan of LAW OFFICES OF JOHN P. DORIGAN—as Class Counsel. Based on their investigation and evaluation, Class Counsel is of the opinion that the terms set forth in the preliminarily approved settlement are fair, reasonable, adequate, and in the best interests of the class.

- Plaintiffs and ATS have reached this settlement in light of all known facts and circumstances—including the risks of significant delay and uncertainty associated with litigation, various defenses asserted by ATS, and numerous potential appellate issues—with the assistance of an experienced mediator knowledgeable of both the wage and hour laws and class and representative claims at issue.

**THIS NOTICE IS NOT TO BE UNDERSTOOD OR VIEWED AS AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS ASSERTED BY THE PLAINTIFFS.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM** | You may submit a claim. If you submit a Claim Form and the Court grants final approval of the settlement, you (i) will be eligible to receive an Individual Settlement Payment and (ii) will release your claims. **To receive a settlement payment, you *must* submit a Claim Form.** |
| **DO NOTHING** | You may do nothing. If you do nothing and the Court grants final approval of the settlement, you (i) will release your claims but (ii) will *not* be eligible to receive an Individual Settlement Payment. |
| **OPT OUT** | You may opt out. If you submit a Request for Exclusion and the Court grants final approval of the settlement, you (i) will not release your claims and (ii) will not be eligible to receive an Individual Settlement Payment. **To avoid releasing your claims, you *must* opt out.** |
| **OBJECT** | You may object. If you submit a written objection and the Court nonetheless grants final approval of the settlement despite your objection, you (i) will release your claims but (ii) will *not* be eligible to receive an Individual Settlement Payment, unless you also submit a Claim Form. |

**IMPORTANT LEGAL NOTICE CONCERNING YOUR RIGHTS**
YOU MAY WAIVE YOUR LEGAL RIGHTS AND ANY ENTITLEMENT TO SETTLEMENT PROCEEDS IF YOU DO NOT ACT.
TO REMAIN ELIGIBLE FOR A SETTLEMENT PAYMENT, YOU MUST RESPOND TO THIS NOTICE.

| **1.** | **Why Did I Receive This Notice?** |
|---|---|

The Court ordered that this Notice of Pending Class Action Settlement ("Notice") be sent to you because ATS's records show that you are a current or former non-exempt employee who is or was employed by ATS within California at any time from November 20, 2011, through [April 9], 2018, and are a Class Member. This Notice provides a brief description of the Lawsuit, informs you of the settlement terms preliminarily approved by the Court, and advises you of your legal rights. If finally approved by the Court, the settlement will fully resolve the Lawsuit and your legal rights may be affected by the settlement. The terms of the settlement are set forth in detail in the Settlement Agreement and Release of Claims ("Settlement Agreement"), which you may obtain from the neutral third-party appointed by the Court to administer the settlement (the "Settlement Administrator").

| **2.** | **What Is the Lawsuit About?** |
|---|---|

On November 20, 2015, Plaintiffs filed a complaint on behalf of a putative class of all current or former non-exempt employees employed by ATS within California at any time from November 20, 2011. The Lawsuit pursues class, collective, and representative action claims for alleged (i) meal break violations, (ii) inaccurate itemized wage statements, (iii) expense reimbursement violations, (iv) security deposit violations, (v) improper deductions, (vi) overtime violations, (vii) late final pay, (viii) unfair competition, (ix) Fair Labor Standards Act violations, (x) wage record inspection violations, (xi) employment record inspection violations, and (xii) penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA").

ATS denies and continues to deny (i) all of the allegations made by Plaintiffs, (ii) that it violated any applicable laws, (iii) that it would be liable or owes damages, penalties, or any other type of remedy to anyone with respect to the alleged facts or claims asserted in the Lawsuit, and (iv) that class certification or representative treatment of the Lawsuit or any alleged claims would be proper. Nonetheless, without admitting or conceding any liability or wrongdoing whatsoever and without admitting or conceding that class certification or representative treatment would be appropriate for any purpose other than settlement purposes alone, ATS has agreed to settle the Lawsuit to avoid the burden, expense, and uncertainty of continuing the Lawsuit.

| **3.** | **What Are the Payments Under the Settlement?** |
|---|---|

### a.    Overall Summary of Settlement Payments

ATS agrees to pay a maximum potential settlement amount of **$600,000** ("Gross Settlement Amount"), which would be inclusive of $50,956.45 in security deposits (and accrued interest) held by ATS as of January 1, 2018 ("Deposit Sum") and any payments, subject to Court approval, (i) to Settlement Class Members ("Individual Settlement Payments"), (ii) for any attorneys' fees and costs payment for Class Counsel's attorneys' fees and costs associated with the litigation and resolution of the Lawsuit ("Attorneys' Fees and Costs Award"), (iii) to Plaintiffs for their efforts and work in prosecuting the Lawsuit on behalf of Class Members ("Class Representative Incentive Payments"), (iv) to Plaintiffs for their individual agreements to refrain from seeking future employment with ATS and their individual agreements to broader general releases of claims ("Plaintiff's Individual Payments"), (v) to the State of California Labor and Workforce Development Agency ("LWDA Payment"), (vi) to the Settlement Administrator for administering the settlement ("Settlement Administration Costs"), and (vii) for all employee or employer payroll taxes required in connection with an order granting final approval of class action settlement.

### b.    Payments to Settlement Class Members

If the Court grants final approval of the settlement and concludes it is reasonable, fair, and adequate for Class Members, the Settlement Administrator shall (i) distribute any Deposit Sum remaining in ATS's possession to Settlement Class Members on whose behalf the security deposits are held and (ii) distribute separate checks for Individual Settlement Payments to Settlement Class Members submitting a valid claim. The portion of the Gross Settlement Amount available for allocation to Settlement Class Members for all Individual Settlement Payments and all employee or employer payroll taxes is the Net Settlement Amount, after deductions for any Court approved Attorneys' Fees and Costs Award, Class Representative Incentive Awards, Plaintiff's Individual Payments, Deposit Sum, LWDA Payment, and Settlement Administration Costs.

The Settlement Administrator shall calculate Individual Settlement Payments for each Settlement Class Member submitting a valid claim based on the Settlement Class Member's length of active employment in the State of California as a non-exempt employee since November 20, 2011, through [April 9], 2018, as reflected in ATS's records. Each Settlement Class Member's proportional share shall be calculated by multiplying the balance of the Net Settlement Amount by a fraction, the numerator of which is the total of the Settlement Class Member's number of workweeks during the class period, and the denominator of which is the total of all workweeks by Settlement Class Members submitting a valid claim during the class period.

The Settlement Administrator shall issue an IRS Form 1099 for any Deposit Sum interest payments distributed. Each Settlement Class Member's Individual Settlement Payment shall be characterized as 80% 1099 income and 20% W-2 income. In accordance with applicable tax laws, required tax withholdings will be taken from each Individual Settlement Payment for the portion allocated to W-2 income and remitted to the appropriate taxing authorities. The Settlement Administrator shall issue any necessary IRS Form 1099 or W-2 to Settlement Class Members for their respective payments. Class Members shall be solely and legally responsible for paying all applicable taxes on their respective payments.

**IMPORTANT LEGAL NOTICE CONCERNING YOUR RIGHTS**

YOU MAY WAIVE YOUR LEGAL RIGHTS AND ANY ENTITLEMENT TO SETTLEMENT PROCEEDS IF YOU DO NOT ACT.

TO REMAIN ELIGIBLE FOR A SETTLEMENT PAYMENT, YOU MUST RESPOND TO THIS NOTICE.

### c.  Additional Payments Subject to Court Approval

You do not need to pay individually any portion of Class Counsel's attorneys' fees and costs. Any payments for those attorneys' fees and costs—or any other payments—would be deducted from the Gross Settlement Amount and would be made if and only if the Court concludes the settlement is reasonable, fair, and adequate for the Class and grants final approval of the settlement. The Court may deny or adjust the amounts of certain payments. Any amounts unapproved by the Court shall be added to the amount to be allocated to Settlement Class Members. Class Counsel intends to request that the Court approve (i) Settlement Administration Costs of up to $xx,xxx; (ii) an LWDA Payment to the State of California Labor and Workforce Development Agency of $7,500; (iii) Class Representative Incentive Payments of $500 for each Plaintiff; (iii) Plaintiff's Individual Payments of $4,500 for each Plaintiff; (iv) an Attorneys' Fees and Costs Award for (a) fees of $200,000 and (b) costs of up to $12,000.

## 4.    What Do I Release Under the Settlement?

By operation of the entry of the final judgment and final approval, and except as to such rights or claims as may be created by this Agreement, Settlement Class Members, and each of their respective executors, administrators, representatives, agents, heirs, successors, assigns, trustees, or guardians, shall release ATS and any of its current or former subsidiaries, affiliates, parents, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, employers, attorneys, personal representatives, executors, and shareholders, including their respective pension, profit sharing, savings, health, and other employee benefit plans of any nature, the successors of such plans, and those plans' respective current or former trustees and administrators, agents, employees, and fiduciaries ("Released Party") from certain claims. Specifically, Settlement Class Members will give a limited waiver of California Civil Code section 1542 of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind that were or could have been asserted in any version of the complaints filed in this Lawsuit or that are based on or arise out of the facts or allegations alleged in connection with this Lawsuit, including but not limited to those for (i) meal break violations, (ii) inaccurate itemized wage statements, (iii) expense reimbursement violations, (iv) security deposit violations, (v) improper deductions, (vi) overtime violations, (vii) late final pay, (viii) unfair competition, (ix) Fair Labor Standards Act violations, and (x) penalties under PAGA. California Civil Code section 1542 states: "*A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.*" Settlement Class Members acknowledge that they may hereafter discover facts or law different from, or in addition to, the facts or law they know or believe to exist with respect to a released claim. Settlement Class Members nonetheless acknowledge that this Agreement and their releases shall be and shall remain effective in all respects notwithstanding such different or additional facts or law regarding such released claims.

These releases do not include any claims that cannot be waived as a matter of law, though Settlement Class Members acknowledge and agree that they will not accept any monetary recovery from any proceedings relating to any such claims. Settlement Class Members further acknowledge that this Agreement and these releases do not waive prospective rights but do include post-dispute waivers or releases of any and all rights to pursue or recover PAGA remedies arising from or related to any of the underlying claims that were or could have been brought in the Lawsuit.

## 5.    What Are My Options?

Your options are explained below. The option you select is up to you, but you MUST make your choice by [45 days after mailing]. Any Claim Form, Request for Exclusion, or written objection shall be deemed to be submitted as of the postmarked date.

***If you do nothing and the Court grants final approval of the settlement, you (i) will release your claims but (ii) will not be eligible to receive an Individual Settlement Payment.***

### a.    Submit a Claim Form

**To receive a settlement payment, you *must* submit a Claim Form.** If you submit a Claim Form and the Court grants final approval of the settlement, you (i) will be eligible to receive an Individual Settlement Payment and (ii) will release your claims. In order to remain eligible to receive a settlement payment, you must mail to the Settlement Administrator listed below a Claim Form that includes your name (and former names, if any), signature, current address, and current telephone number. Class Members who submit a Claim Form will remain bound by the settlement if finally approved.

### b.    Opt Out of the Settlement

**To avoid potentially releasing your claims, you *must* submit a Request for Exclusion.** If you submit a Request for Exclusion and the Court grants final approval of the settlement, you (i) will not release your claims and (ii) will not be eligible to receive an Individual Settlement Payment. In order to opt out, you must mail to the Settlement Administrator listed below a Request for Exclusion form that includes your name (and former names, if any), signature, current address, and current telephone number. Any Request for Exclusion that does not include all required information or that is not submitted on a timely basis will be deemed null, void, and ineffective.

Class Members who opt out of the settlement pursuant to the above procedures shall not be permitted to object to the settlement, shall not receive any Individual Settlement Payments, and shall not be bound by the release provisions in any order granting final approval

**IMPORTANT LEGAL NOTICE CONCERNING YOUR RIGHTS**
YOU MAY WAIVE YOUR LEGAL RIGHTS AND ANY ENTITLEMENT TO SETTLEMENT PROCEEDS IF YOU DO NOT ACT.
TO REMAIN ELIGIBLE FOR A SETTLEMENT PAYMENT, YOU MUST RESPOND TO THIS NOTICE.

of settlement. If a Class Member submits both a Request for Exclusion and an objection, the Class Member's objection shall be valid and shall be deemed to invalidate the Request for Exclusion. Class Members who do not opt out of the settlement shall remain subject to being bound by the applicable release provisions in any order granting final approval of class action settlement.

   c.    **Object to the Settlement**

**To object to the settlement, you *must* submit a written objection to the Settlement Administrator.** If you submit a written objection and the Court nonetheless grants final approval of the settlement despite your objection, you (i) will release your claims but (ii) will not be eligible to receive an Individual Settlement Payment, unless you also submit a Claim Form. In order to object, you must mail to the Settlement Administrator listed below a written objection that includes: your name (and former names, if any), current address, current telephone number, and the basis for your objection. Any objection that does not include all required information or that is not submitted on a timely basis will be deemed null, void, and ineffective.

Class Members who submit an objection will remain bound by the settlement if finally approved. Class Members who object pursuant to the above procedures may appear at the final approval hearing, either in person or through counsel, but must state their intention to do so at the time they submit their written objection. Class Members may withdraw their objections at any time. Class Members who fail to object pursuant to these procedures shall be deemed to have waived any objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement.

| 7. | Where Can I Get Additional Information? |
|---|---|

This Notice summarizes the Lawsuit, settlement, and related matters. For more information, you may contact the Settlement Administrator, [INSERT], Telephone: (xxx) xxx- xxxx.

### DO NOT CONTACT THE COURT FOR INFORMATION REGARDING THE SETTLEMENT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| REQUEST FOR EXCLUSION |
|---|

I would like to opt out of the pending class action settlement in *G. Pederson et al. v. Airport Terminal Services, Inc.*, United States District Court, Central District of California Case No. 5:15-cv-02400-VAP-SP. I understand that by completing, signing, and mailing a valid Request for Exclusion by [45 days after mailing], I shall not receive any payment from the settlement in the above-referenced lawsuit. I also understand that by submitting a valid Request for Exclusion, I may not object to the settlement.

Name (and Former Names, if Any):    _____

Signature:    _____

Current Address:    _____

_____

Current Telephone Number:    _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| CLAIM FORM |
|---|

I would like to receive an Individual Settlement Payment in connection with the pending class action settlement in *G. Pederson et al. v. Airport Terminal Services, Inc.*, United States District Court, Central District of California Case No. 5:15-cv-02400-VAP-SP. I understand that by completing, signing, and mailing a valid Claim Form by [45 days after mailing], I may be bound by the release provisions if the settlement is finally approved.

Name (and Former Names, if Any):    _____

Signature:    _____

Current Address:    _____

_____

Current Telephone Number:    _____

### IMPORTANT LEGAL NOTICE CONCERNING YOUR RIGHTS
YOU MAY WAIVE YOUR LEGAL RIGHTS AND ANY ENTITLEMENT TO SETTLEMENT PROCEEDS IF YOU DO NOT ACT.
TO REMAIN ELIGIBLE FOR A SETTLEMENT PAYMENT, YOU MUST RESPOND TO THIS NOTICE.

Exhibit 2

Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Ave.
Glendale, California 91203
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
pmohan@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
600 Canterbury Lane
Sagamore Hills, Ohio 44067
Telephone: (330) 748-4475
Facsimile: (330) 748-4475
jpdorigan@aol.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. PEDERSON, R. ALCARAZ, and S. MASON, individually and on behalf of all others similarly situated, and on behalf of aggrieved employees, the people of the State of California and the Labor Commissioner,<br><br>      Plaintiffs,<br><br>      v.<br><br>AIRPORT TERMINAL SERVICES, INC., RICHARD B. HAWES, and SALLY A. LEIBLE,<br><br>      Defendants. | Case No. 5:15-cv-02400-VAP-SP<br>*Assigned to Hon. Virginia A. Phillips*<br><br>**DECLARATION OF GIDEON PEDERSON IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:     April 9, 2018<br>Time:     2:00 p.m.<br>Courtroom: 8A<br>          350 West 1st Street<br>          Los Angeles, CA 90012 |

**GIDEON PEDERSON** declares under penalty of perjury under the laws of the United States and of the State of California, as follows:

1.      I am a Plaintiff in the above-captioned action.  If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

2.      I am a former hourly-paid employee of Airport Terminal Services, Inc. ("ATS").  I was employed by ATS as an Airport Agent in Palm Springs, California.  I first met with my attorneys herein regarding my employment with ATS in approximately mid-2015 after developing certain concerns about the compensation ATS had paid me, as well as concerns about ATS's practice of deducting uniform deposits from the paychecks of Airport Agents.  Over the course of several meetings with my attorneys, I came to the conclusion that I was owed amounts for ATS's failure to provide me with adequate meal breaks, failure to pay proper overtime, failure to reimburse me for the costs associated with maintaining my work uniform and ATS's practice of deducting uniform deposits from my paychecks.

3.      After coming to these conclusions, I assisted my attorneys with the drafting of the complaints filed in this case, including the operative Second Amended Complaint. I thereafter had numerous discussions regarding this case with my attorneys.  All told, I have spent more than fifteen hours discussing my case with my attorneys.  I have also spent additional numerous hours—both before and after the case was filed—reviewing various documents relating to my employment with ATS and providing my attorneys with the necessary factual background to understand and interpret these documents.  I understand that my input with respect to ATS's payroll documents was instrumental, as a central factual inquiry for my claims concerns ATS's coding of "NO LUNCH" on employee time sheets and how that coding was treated on subsequent employee pay stubs.

4.      In addition to assisting my attorneys with interpreting ATS's payroll documents, I helped them with respect to the full-day mediation session that was held in

this case. I intend on continuing to take an active role in this litigation until its resolution.

5.    In connection with this lawsuit, I believe that I have been—and that I can continue to be—a good representative of other individuals employed by ATS. As such a representative, I understand that I owe a duty of good faith to these employees and that I cannot—and will not—act solely in my own self-interest. My primary concern at all times has been—and will continue to be—that all of ATS's employees be treated fairly.

6.    In light of the allegations made by my attorneys in this case, I can think of no interest I have that is adverse to any interest of any ATS employee. Indeed, I believe that my individual claims are typical of the claims of ATS's other employees in that, among other things, I did not receive meal-period "premium" pay for those instances when my time sheets reflect a "NO LUNCH" coding.

7.    I understand that any amounts provided to me under any class-wide settlement of my lawsuit must be approved by the Court. I have had an opportunity to review in detail the terms of the Settlement Agreement and Release of Claims ("Settlement Agreement") attached to the concurrently filed Declaration of Alan Harris. I have thoroughly discussed the terms of the Settlement Agreement with my attorneys. I believe that the $600,000 Gross Settlement Payment called for by the Settlement Agreement represents a fair and reasonable resolution of this case for the employees I seek to represent. This is particularly true in light of the airline-industry-specific defenses that my attorneys have explained ATS intends on asserting in this case.

I have read the foregoing, and the facts set forth therein are true and correct of my own personal knowledge. Executed on March 9, 2018, in the County of Riverside, State of California.

GIDEON PEDERSON

# Exhibit 3

1  Alan Harris (SBN 146079)
   Priya Mohan (SBN 228984)
2  HARRIS & RUBLE
   655 North Central Ave.
3  Glendale, California 91203
   Telephone: (323) 962-3777
4  Facsimile: (323) 962-3004
   aharris@harrisandruble.com
5  pmohan@harrisandruble.com

6  John P. Dorigan (SBN 98964)
   LAW OFFICES OF JOHN P. DORIGAN
7  600 Canterbury Lane
   Sagamore Hills, Ohio 44067
8  Telephone: (330) 748-4475
   Facsimile: (330) 748-4475
9  jpdorigan@aol.com

10 *Attorneys for Plaintiffs*

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14 G. PEDERSON, R. ALCARAZ, and S.          Case No. 5:15-cv-02400-VAP-SP
   MASON, individually and on behalf of all  *Assigned to Hon. Virginia A. Phillips*
15 others similarly situated, and on behalf of
   aggrieved employees, the people of the    **DECLARATION OF RUTH ASHLY**
16 State of California and the Labor          **ALCARAZ IN SUPPORT OF**
   Commissioner,                             **PRELIMINARY APPROVAL OF**
                                             **CLASS ACTION SETTLEMENT**
17              Plaintiffs,                   **AND CONDITIONAL**
                                             **CERTIFICATION OF**
18      v.                                    **SETTLEMENT CLASS**

19 AIRPORT TERMINAL SERVICES,               Date:      April 9, 2018
   INC., RICHARD B. HAWES, and             Time:      2:00 p.m.
20 SALLY A. LEIBLE,                         Courtroom: 8A
                                                       350 West 1st Street
21              Defendants.                            Los Angeles, CA 90012

22

23

24

25

26

27

28

**RUTH ASHLY ALCARAZ** declares under penalty of perjury under the laws of the United States and of the State of California, as follows:

1.      I am a Plaintiff in the above-captioned action.  If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

2.      I am a former hourly-paid employee of Airport Terminal Services, Inc. ("ATS").  I was employed by ATS as an Airport Agent in Palm Springs, California.  I first met with my attorneys herein regarding my employment with ATS in approximately mid-2015 after developing certain concerns about the compensation ATS had paid me, as well as concerns about ATS's practice of deducting uniform deposits from the paychecks of Airport Agents.  Over the course of several meetings with my attorneys, I came to the conclusion that I was owed amounts for ATS's failure to provide me with adequate meal breaks, failure to pay proper overtime, failure to reimburse me for the costs associated with maintaining my work uniform and ATS's practice of deducting uniform deposits from my paychecks.

3.      After coming to these conclusions, I assisted my attorneys with the drafting of the complaints filed in this case, including the operative Second Amended Complaint. I thereafter had numerous discussions regarding this case with my attorneys.  All told, I have spent more than fifteen hours discussing my case with my attorneys.  I have also spent additional numerous hours—both before and after the case was filed—reviewing various documents relating to my employment with ATS and providing my attorneys with the necessary factual background to understand and interpret these documents.  I understand that my input with respect to ATS's payroll documents was instrumental, as a central factual inquiry for my claims concerns ATS's coding of "NO LUNCH" on employee time sheets and how that coding was treated on subsequent employee pay stubs.

4.      In addition to assisting my attorneys with interpreting ATS's payroll documents, I helped them with respect to the full-day mediation session that was held in

this case. I intend on continuing to take an active role in this litigation until its resolution.

5.      In connection with this lawsuit, I believe that I have been—and that I can continue to be—a good representative of other individuals employed by ATS. As such a representative, I understand that I owe a duty of good faith to these employees and that I cannot—and will not—act solely in my own self-interest. My primary concern at all times has been—and will continue to be—that all of ATS's employees be treated fairly.

6.      In light of the allegations made by my attorneys in this case, I can think of no interest I have that is adverse to any interest of any ATS employee. Indeed, I believe that my individual claims are typical of the claims of ATS's other employees in that, among other things, I did not receive meal-period "premium" pay for those instances when my time sheets reflect a "NO LUNCH" coding.

7.      I understand that any amounts provided to me under any class-wide settlement of my lawsuit must be approved by the Court. I have had an opportunity to review in detail the terms of the Settlement Agreement and Release of Claims ("Settlement Agreement") attached to the concurrently filed Declaration of Alan Harris. I have thoroughly discussed the terms of the Settlement Agreement with my attorneys. I believe that the $600,000 Gross Settlement Payment called for by the Settlement Agreement represents a fair and reasonable resolution of this case for the employees I seek to represent. This is particularly true in light of the airline-industry-specific defenses that my attorneys have explained ATS intends on asserting in this case.

I have read the foregoing, and the facts set forth therein are true and correct of my own personal knowledge. Executed on March 9, 2018, in the County of Riverside, State of California.

RUTH ASHLY ALCARAZ

# Exhibit 4

Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Ave.
Glendale, California 91203
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
pmohan@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
600 Canterbury Lane
Sagamore Hills, Ohio 44067
Telephone: (330) 748-4475
Facsimile: (330) 748-4475
jpdorigan@aol.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. PEDERSON, R. ALCARAZ, and S. MASON, individually and on behalf of all others similarly situated, and on behalf of aggrieved employees, the people of the State of California and the Labor Commissioner,<br><br>            Plaintiffs,<br><br>      v.<br><br>AIRPORT TERMINAL SERVICES, INC., RICHARD B. HAWES, and SALLY A. LEIBLE,<br><br>            Defendants. | Case No. 5:15-cv-02400-VAP-SP<br>*Assigned to Hon. Virginia A. Phillips*<br><br>**DECLARATION OF SASHA MASON IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:         April 9, 2018<br>Time:         2:00 p.m.<br>Courtroom: 8A<br>                350 West 1st Street<br>                Los Angeles, CA 90012 |

i

**SASHA MASON** declares under penalty of perjury under the laws of the United States and of the State of California, as follows:

1.      I am a Plaintiff in the above-captioned action.  If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

2.      I am a former hourly-paid employee of Airport Terminal Services, Inc. ("ATS").  I was employed by ATS as an Airport Agent in Palm Springs, California.  I first met with my attorneys herein regarding my employment with ATS in approximately mid-2015 after developing certain concerns about the compensation ATS had paid me, as well as concerns about ATS's practice of deducting uniform deposits from the paychecks of Airport Agents.  Over the course of several meetings with my attorneys, I came to the conclusion that I was owed amounts for ATS's failure to provide me with adequate meal breaks, failure to pay proper overtime, failure to reimburse me for the costs associated with maintaining my work uniform and ATS's practice of deducting uniform deposits from my paychecks.

3.      After coming to these conclusions, I assisted my attorneys with the drafting of the complaints filed in this case, including the operative Second Amended Complaint. I thereafter had numerous discussions regarding this case with my attorneys.  All told, I have spent more than fifteen hours discussing my case with my attorneys.  I have also spent additional numerous hours—both before and after the case was filed—reviewing various documents relating to my employment with ATS and providing my attorneys with the necessary factual background to understand and interpret these documents.  I understand that my input with respect to ATS's payroll documents was instrumental, as a central factual inquiry for my claims concerns ATS's coding of "NO LUNCH" on employee time sheets and how that coding was treated on subsequent employee pay stubs.

4.      In addition to assisting my attorneys with interpreting ATS's payroll documents, I helped them with respect to the full-day mediation session that was held in

DECL. OF SASHA MASON IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL

1   this case. I intend on continuing to take an active role in this litigation until its resolution.

2        5.     In connection with this lawsuit, I believe that I have been—and that I can

3   continue to be—a good representative of other individuals employed by ATS. As such a

4   representative, I understand that I owe a duty of good faith to these employees and that I

5   cannot—and will not—act solely in my own self-interest. My primary concern at all

6   times has been—and will continue to be—that all of ATS's employees be treated fairly.

7        6.     In light of the allegations made by my attorneys in this case, I can think of

8   no interest I have that is adverse to any interest of any ATS employee. Indeed, I believe

9   that my individual claims are typical of the claims of ATS's other employees in that,

10  among other things, I did not receive meal-period "premium" pay for those instances

11  when my time sheets reflect a "NO LUNCH" coding.

12       7.     I understand that any amounts provided to me under any class-wide

13  settlement of my lawsuit must be approved by the Court. I have had an opportunity to

14  review in detail the terms of the Settlement Agreement and Release of Claims

15  ("Settlement Agreement") attached to the concurrently filed Declaration of Alan Harris.

16  I have thoroughly discussed the terms of the Settlement Agreement with my attorneys. I

17  believe that the $600,000 Gross Settlement Payment called for by the Settlement

18  Agreement represents a fair and reasonable resolution of this case for the employees I

19  seek to represent. This is particularly true in light of the airline-industry-specific

20  defenses that my attorneys have explained ATS intends on asserting in this case.

21       I have read the foregoing, and the facts set forth therein are true and correct of my

22  own personal knowledge. Executed on March 9, 2018, in the County of Riverside, State

23  of California.

24

25  SASHA MASON

26

27

28

Exhibit 5

**HARRIS & RUBLE**
ATTORNEYS AND COUNSELORS AT LAW
655 N. CENTRAL AVE. 17th FL.
GLENDALE, CA 91203
TEL (323) 962-3777
FAX (323) 962-3004

Page: 1
05/04/2018
Billing Ref: ATS-DORIGAN
Invoice No: 1639

<u>Fees</u>

| | | Hours | |
|---|---|---|---|
| **10/11/2014** | | | |
| AH | Conference with JPD re: potential case regarding ATS. | 0.50 | 400.00 |
| **05/15/2015** | | | |
| AH | Reviewing documents re ATS uniform policy. | 0.30 | 240.00 |
| **05/31/2015** | | | |
| AH | Reviewing documents -- .  Thus, this court relies on Murphy in finding that Section 226.7 premiums constitutes wages, and are therefore required to be included in wage statements under Section 226.<br> Finder v. Leprino Foods Co., 2015 WL 1137151, at *3-5 (E.D. Cal. Mar. 12, 2015). | 0.10 | 80.00 |
| **06/11/2015** | | | |
| PM | Review documents regarding potential claims against ATS and research regarding potential PAGA penalties. | 0.30 | 187.50 |
| **06/12/2015** | | | |
| PM | Review email correspondence J. Dorigan re PAGA letter for claims against ATS and proper notice procedures. | 0.10 | 62.50 |
| **06/18/2015** | | | |
| PM | Research and preparation complaint against ATS. | 2.40 | 1,500.00 |
| **06/19/2015** | | | |
| PM | Review email correspondence from AH regarding various ATS policies pertaining to recovery periods, uniforms and uniform deductions. | 0.30 | 187.50 |
| **06/21/2015** | | | |
| AH | Telephone call to John Patrick Dorigan  - spoke - With PM on phone, we three interview CI re background on case. | 0.60 | 480.00 |
| **06/22/2015** | | | |
| PM | Review ATS website regarding various statements and number of locations. | 0.20 | 125.00 |
| AH | Drafting documents and legal research re complaint. | 2.50 | 2,000.00 |
| **06/23/2015** | | | |
| AH | Drafting documents and legal research re complaint. | 1.50 | 1,200.00 |

| | | | Hours | |
|---|---|---|---|---|
| **06/28/2015** | | | | |
| | PM | Review relevant documents regarding claims and preparation of complaint against ATS. | 3.00 | 1,875.00 |
| **07/23/2015** | | | | |
| | PM | Review email correspondence from J. Dorigan regarding draft complaints and edits to same. | 0.40 | 250.00 |
| **07/24/2015** | | | | |
| | PM | Research regarding sick leave violations and ATS policies. | 0.50 | 312.50 |
| | PM | Review research regarding ATS uniform deduction policy. | 0.20 | 125.00 |
| | AH | Correspondence from Dorigan  regarding Ashly Alcaraz and violations evident from wage statements. | 0.10 | 80.00 |
| | AH | Correspondence from Dorigan re uniform policy--. re the uniform deduction claim, here is more info.  It is the official policy re uniforms from the ATS handbook.It appears there are two types of deductions.  The ramp/cargo agents are charged $150 (which is non-refundable) for the  cost  of the uniform.  Passenger service agents are required to pay a  security deposit  in the amount of $300 (which is refundable).  So, it would seem there is a violation of L.C. 2802, as regards the ramp/cargo agents and a violation of the wage order which triggers a violation of L.C. 558 for the passenger service agents. | 0.10 | 80.00 |
| | AH | Correspondence from Dorigan re a brand new statute came into effect on July 1, 2015 (L.C. Sec. 245-249) which provides 3 days of paid sick leave for all CA non-exempt employees.  It is not restricted to full-time but includes all employees who work  for 30 or more days within a year from the commencement of employment . . .It provides an accrual rate of one hour of paid leave for every 30 hours worked.  There is a posting requirement (Sec. 247) that carries a $100 penalty  per each offense  (don't know how this is calculated if the notice is just never posted).  The penalty for failing to provide the sick days is treble damages (based on hourly wage) or $250 whichever is greater, but not to exceed $4,000.  There is also a requirement that the employer set forth the amount of sick leave available or paid time off taken on the employee's itemized wage statement or it can be provided in a separate written statement provided on the designated pay date with the employee's payment of wages (Sec. 246(h)). | 0.10 | 80.00 |
| **07/26/2015** | | | | |
| | PM | Review correspondence regarding ATS Security Deposit Policy. | 0.20 | 125.00 |
| | PM | Review correspondence regarding ATS deduction policy and plaintiffs' wage statements regarding violations.  Research regarding California State Employees' Assoc. v. State of California case. | 0.30 | 187.50 |
| | AH | Correspondence from Dorigan regarding another possible claim for the ATS case. | 0.10 | 80.00 |
| | AH | Correspondence from Dorigan regarding another claim in our ATS case for another type of illegal deduction.  California State Employees' Assoc. v. State of California (1988) 198 Cal App 3d 374,377 makes clear that an employer may not resort to a deduction of wages to recoup a prior over-payment. | 0.10 | 80.00 |
| **07/27/2015** | | | | |
| | PM | Review client wage statements regarding overtime violations. | 0.40 | 250.00 |

Case 5:15-cv-02400-VAP-SP    Document 47-1    Filed 05/07/18    Page 72 of 120    Page
Alcaraz, Beth Ashly                                                    ID #:738

Page: 3
05/04/2018
Billing Ref:    ATS-DORIGAN
Invoice No:              1639

| | | | Hours | |
|---|---|---|---|---|
| **07/31/2015** | | | | |
| | PM | Review correspondence regarding ATS bonus and sick leave claims. | 0.20 | 125.00 |
| | AH | Correspondence from Dorigan re the bonus issue. The bonus was provided to all employees with the caveat that only those employees who did not have a performance issue or unapproved absence would qualify. | 0.10 | 80.00 |
| **08/04/2015** | | | | |
| | PM | Review correspondence regarding ATS bonuses and overtime and client Alcaraz wage statements. | 0.20 | 125.00 |
| | PM | Prepare email correspondence to Dorigan re ATS bonus policy. | 0.10 | 62.50 |
| | PM | Review ATS website re bonus issue and ATS policy manuals regarding same. | 0.20 | 125.00 |
| | AH | Correspondence from JD re . . .  Here are the items you requested re the bonus issue.  The first is from the ATS website.  The middle of the page is missing the picture because it is a video and that image would not download, but the types of bonuses/awards are listed at the bottom. The second is from the policy manual and the various bonuses/awards are listed under the Recognition Programs  section. | 0.10 | 80.00 |
| | AH | Correspondence from Dorigan re sick leave issue. Spoke to another ATS employee today re whether ATS is complying with the new sick leave law. | 0.10 | 80.00 |
| | AH | Drafting documents and legal research re complaint | 0.30 | 240.00 |
| | AH | Correspondence from JD re bonus issue -- Another issue re ATS . . .bonus should be factored into OT rate of pay.  Claim for non-payment of OT wages under L.C. 1194 and 1197.1 (which includes restitution of wages, liquidated damages, waiting-time penalties, and PAGA civil penalties of $100/pay period). The Wage Order makes it clear that OT is included in L.C. 1197.1 because it cites to it in Sec. 20(B). | 0.10 | 80.00 |
| **08/10/2015** | | | | |
| | PM | Review correspondence from Dorigan re draft complaint. | 0.10 | 62.50 |
| | AH | Correspondence with Dorigan re complaint. | 0.10 | 80.00 |
| **08/28/2015** | | | | |
| | PM | Review research regarding deductions and information on LWDA site re same. | 0.20 | 125.00 |
| | PM | Review NLRB decision regarding labor contractors and companies' liability for wage and hour violations. | 0.20 | 125.00 |
| **08/29/2015** | | | | |
| | AH | Drafting documents and legal research re complaint. | 0.10 | 80.00 |
| **09/15/2015** | | | | |
| | AH | Drafting documents and legal research -- Best cases relating to Unpaid Wages:Under California's Unfair Competition Law (UCL), "restitution" is broad enough to encompass funds in which a person had a vested interest, such as unpaid wages, but it is not available where plaintiff claims only an attenuated expectancy interest that cannot be traced to any particular funds in defendants' possession.  Hill v. Opus Corp., C.D.Cal.2011, 464 B.R. 361. Generally, Unfair Competition Law (UCL) permits employees to obtain restitution for unpaid wages.  Safeway, Inc. v. Superior Court of Los Angeles County (Cal.App. 2 Dist. 2015) 190 Cal.Rptr.3d 131, 238 Cal.App.4th 1138. Although earned wages can be recovered as restitution under California's Unfair Competition Law (UCL), a lost business opportunity, which is only an attenuated expectancy interest, and not subject to a constructive trust, is not | | |

Page: 4
05/04/2018
Alcaraz, Ruth Ashly
Billing Ref:     ATS-DORIGAN
Invoice No:     1639

| | | | Hours | |
|---|---|---|---|---|
| | | a vested interest, and cannot be recovered under the UCL as restitution. POM Wonderful LLC v. Coca Cola Co., C.D.Cal.2010, 727 F.Supp.2d 849, affirmed in part, vacated in part and remanded 679 F.3d 1170, 102 U.S.P.Q.2d 1781, on remand 2013 WL 543361, certiorari granted 134 S.Ct. 895, 187 L.Ed.2d 701, reversed 134 S.Ct. 2228, 189 L.Ed.2d 141, 110 U.S.P.Q.2d 1877. | 0.20 | 160.00 |
| **09/20/2015** | | | | |
| | PM | Review correspondence regarding scheduling telephone conferences with plaintiffs. | 0.10 | 62.50 |
| | AH | Correspondence JPD re calls with plaintiffs. | 0.10 | 80.00 |
| | AH | Correspondence with Dorigan re complaint and clients. | 0.10 | 80.00 |
| **09/21/2015** | | | | |
| | AH | Sasha Mason  - telephone conference. | 0.30 | 240.00 |
| **09/22/2015** | | | | |
| | AH | Telephone call to Ruth Ashly Alcaraz  - spoke - With JD and KD.  Review duties and responsibilities of class representative; mediation; deposition; settlement. | 0.30 | 240.00 |
| | AH | Telephone call to Gideon Pederson  - voice mail - | 0.10 | 80.00 |
| | AH | Telephone call to Sasha Mason  - spoke - With KD. Discuss purpose of suit; responsibility of class representative; mediation; deposition process; case background. | 0.40 | 320.00 |
| **10/01/2015** | | | | |
| | PM | Review email correspondence from Dorigan re complaint. | 0.10 | 62.50 |
| | AH | Reviewing documents--retainers, etc. For Pederson, Alcaraz and Mason. | 0.10 | 80.00 |
| | AH | Correspondence from Dorigan, forwarding client retainers. | 0.10 | 80.00 |
| **10/02/2015** | | | | |
| | PM | Review Plaintiff Mason wage statements for complaint preparation. | 0.40 | 250.00 |
| | AH | Telephone call to Sasha Mason  - spoke - With KD, discuss her case.  Now filing.  DK meaning of Regular LD or Minimum | 0.20 | 160.00 |
| | AH | Correspondence with JD re client communications. | 0.10 | 80.00 |
| | AH | Correspondence JD re Pederson and regarding complaint preparation. | 0.10 | 80.00 |
| | AH | Telephone call to Dorigan  - voice mail - | 0.10 | 80.00 |
| **10/03/2015** | | | | |
| | PM | Review research and ATS policies regarding uniforms and security deposit requirement. | 0.30 | 187.50 |
| | PM | Review ATS documentation re minimum pay requirement. | 0.20 | 125.00 |
| | AH | Correspondence from JD -- re drafting complaint and documentation re ATS' pay codes. | 0.10 | 80.00 |
| | AH | Correspondence from Dorigan re Complaint relating to the uniform issue in the ATS case. | 0.50 | 400.00 |
| **10/08/2015** | | | | |
| | PM | Review email correspondence re viability of 2810 claim. | 0.10 | 62.50 |
| | PM | Review ATS employee handbook. | 0.30 | 187.50 |
| | AH | Correspondence from Dorigan regarding ATS policies. | 0.10 | 80.00 |
| **10/10/2015** | | | | |
| | AH | Drafting documents and legal research re complaint | 3.70 | 2,960.00 |

|  |  |  | Hours |  |
|---|---|---|---|---|
| **10/11/2015** | | | | |
| | PM | Review Dorigan correspondence regarding draft complaint. | 0.20 | 125.00 |
| | AH | Drafting documents and legal research re complaint | 2.20 | 1,760.00 |
| | AH | Correspondence with JD re draft complaint and edits thereto. Since ATS is not a certified airline, it cannot claim any OT exemption under Wage Order 9(3)(N), so shift-trading is not allowed. Regarding uniform maintenance, emphasize that certain pieces specifically carry the label Dry Clean Only. Violation of LC 405 (commingling of security deposit funds) constitutes theft and subjects the employer to punishment in accordance with the provisions of the Penal Code (treble damages, costs of suit, attorney fees). See People v. Keefer, 146 Cal. App. 2d 726 and People v. Vandersee, 139 Cal App. 2d 388. | 0.10 | 80.00 |
| **10/12/2015** | | | | |
| | PM | Review email correspondence from AH and Dorigan re bonus issue. | 0.10 | 62.50 |
| | AH | Correspondence from Dorigan -- Re bonus/OT issue and ATS Employee Handbook. | 0.10 | 80.00 |
| | AH | Correspondence from Dorigan re complaint -- Re the bonus/OT issue . . .Here is the link to the ATS page that lists the various bonuses. There is a referral bonus program, a safety incentive award program, and Ideas That Fly suggestion award program. | 0.10 | 80.00 |
| **10/14/2015** | | | | |
| | AH | Telephone call to John Patrick Dorigan- spoke - Discuss ATS complaint. | 0.30 | 240.00 |
| | AH | Drafting documents and legal research re complaint. | 1.50 | 1,200.00 |
| | AH | Drafting documents--work on Complaint | 0.40 | 320.00 |
| **11/03/2015** | | | | |
| | AH | Drafting documents and legal research re complaint. | 0.40 | 320.00 |
| **11/18/2015** | | | | |
| | CN | Drafting documents, civil case cover sheet, summons and certificate of interested parties in preparation for filing complaint. | 0.50 | 187.50 |
| | CN | Reviewing documents Complaint in McDonald - Drafting notice of related case | 1.00 | 375.00 |
| | CN | Reviewing documents Complaint | 0.40 | 150.00 |
| | AH | Drafting documents and legal research re Complaint. | 1.80 | 1,440.00 |
| **11/19/2015** | | | | |
| | CN | Drafting documents complaint | 4.00 | 1,500.00 |
| | AH | Drafting documents--work on complaint. | 0.80 | 640.00 |
| **11/20/2015** | | | | |
| | PM | Attention to review of summons and related documents, finalize Complaint. | 0.50 | 312.50 |
| | CN | Reviewing Complaint and accompanying Documents - and filing. | 1.60 | 600.00 |
| | AH | Drafting documents--Document Number: 5 Docket Text: Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), [1] filed by Plaintiff R Alcaraz, S Mason, G Pederson. (Harris, D) | 0.10 | 80.00 |
| | AH | Drafting documents -- Document Number:1 Docket Text: COMPLAINT Receipt No: 0973-16824327 - Fee: $400, filed by Plaintiff G Pederson, S Mason, R Alcaraz. (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Exhibit 3, # (4) Exhibit 4, # (5) Exhibit 5, # (6) Exhibit 6, # (7) Exhibit 7) (Attorney D Alan Harris added to party R Alcaraz(pty:pla), Attorney D Alan Harris added to party S Mason(pty:pla), Attorney D Alan Harris added to party G Pederson | | |

|  |  |  | Hours |  |
|---|---|---|---|---|
|  | (pty:pla))(Harris, D) |  | 0.20 | 160.00 |
| **11/22/2015** | | | | |
| AH | Correspondence with JPD re complaint. | | 0.10 | 80.00 |
| **11/23/2015** | | | | |
| CN | Drafting documents PAGA letter with copy of complaint and Exhibits - sent via certified mail today to LWDA and ATS registered Agent | | 0.60 | 225.00 |
| **11/24/2015** | | | | |
| CN | Filing documentation filing mandatory chambers copies of all case initiating documents with assigned judge Percy Anderson | | 0.40 | 150.00 |
| CN | Filing documentation preparing summons and complaint and accompanying documents for service of process with janney and janney | | 0.50 | 187.50 |
| **11/25/2015** | | | | |
| PM | Telephone call from Simon Yang  - spoke; Telephone conference with other side | | 0.20 | 125.00 |
| **12/02/2015** | | | | |
| AH | Correspondence from defense, forwarding documents relating to Plaintiffs. | | 0.80 | 640.00 |
| **12/05/2015** | | | | |
| AH | Correspondence from KD regarding payroll issues. | | 0.10 | 80.00 |
| AH | Correspondence with Dorigan regarding ATS meal break policies. | | 0.10 | 80.00 |
| **12/11/2015** | | | | |
| PM | Review ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 14-03 -Related Case- filed. Related Case No: 5:11-cv-01946-VAP(SPx). Case transferred from Judge Percy Anderson to Judge Virginia A. Phillips for all further proceedings. The case number will now reflect the initials of the transferee Judge 5:15-cv-02400-VAP(SPx). Signed by Judge Virginia A. Phillips (vp) (Entered: 12/11/2015) | | 0.10 | 62.50 |
| AH | Reviewing documents--Document Number:9 Docket Text: ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 14-03 -Related Case- filed. Related Case No: 5:11-cv-01946-VAP(SPx). Case transferred from Judge Percy Anderson to Judge Virginia A. Phillips for all further proceedings. The case number will now reflect the initials of the transferee Judge 5:15-cv-02400-VAP(SPx). Signed by Judge Virginia A. Phillips(vp) | | 0.10 | 80.00 |
| **12/15/2015** | | | | |
| CN | Filing documentation Proof of service of summons and comlpaint | | 0.30 | 112.50 |
| **01/05/2016** | | | | |
| AH | Telephone call to Dorigan  - voice mail - | | 0.10 | 80.00 |
| **01/06/2016** | | | | |
| AH | Telephone call to John Patrick Dorigan  - left message - Discuss need to confer with clients for their deps and class certification. | | 0.10 | 80.00 |
| AH | Drafting documents--work on outline for class certification brief. | | 2.50 | 2,000.00 |
| AH | Telephone call to Simon Yang  - voice mail - | | 0.10 | 80.00 |
| **01/07/2016** | | | | |
| CN | Client administration updating client contact information in amicus | | 0.10 | 37.50 |

Page: 7
05/04/2018
Case 5:15-cv-02400-VAP-SP   Document 47-1   Filed 05/07/18   Page 76 of 120   Page
ID #:742
Alcaraz, Ruth Ashly
Billing Ref: ATS-DORIGAN
Invoice No: 1639

|  |  |  | Hours |  |
|---|---|---|---|---|

**01/15/2016**

AH — Reviewing documents--on preemption issues, Interstate Distributor Co and Dilts. — 0.10 — 80.00

**01/20/2016**

CN — Reviewing PACER for case update. No answer has been filed. — 0.10 — 37.50

**01/21/2016**

AH — Telephone call to Simon Yang - voice mail - ultimately, he returned the call and we discussed his client's appearance; class certification briefing schedule. — 0.20 — 160.00

AH — Correspondence to Lubeley and Yang, requesting they call. — 0.10 — 80.00

**01/22/2016**

AH — Correspondence from defense -- Alan, as we discussed, please circulate the proposed amended complaint so that we can review and discuss. As we also discussed, we will also look into whether the records production was complete, and we will talk again next week. Thanks. — 0.10 — 80.00

AH — Drafting documents and legal research re FAC. Richard B. Hawes bought the company from TWA in 1994 and was the sole owner. However, he is now listed as the Chairman of the Board. Sally A. Leible is now listed as the CEO and President. All communication from the company to employees is signed by her. I've never seen his name on anything. — 0.10 — 80.00

**01/23/2016**

AH — Drafting documents, legal and internet research, re individual Defendants and FAC. — 2.80 — 2,240.00

**01/25/2016**

AH — Drafting documents--Document Number:11 Docket Text: FIRST AMENDED COMPLAINT against Defendants All Defendants amending Complaint (Attorney Civil Case Opening), [1], filed by Plaintiffs G Pederson, S Mason, R Alcaraz (Attachments: # (1) Exhibit Exhibits 1-8)(Harris, D) — 0.10 — 80.00

**01/26/2016**

PM — Correspondence to attorney service re FAC -- First Amended Complaint and Summons delivered to Judge Virginia A. Phillips. There is a courtesy copy tray outside of her courtroom (Courtroom 2). The address of the courthouse is 3470 Twelfth Street, Riverside, CA 92501-3801. We need exhibit tabs 1-8 inserted for the first amended complaint and both documents blue-backed. — 0.10 — 62.50

AH — Drafting documents--Document Number:12 Docket Text: Request for Clerk to Issue Summons on Amended Complaint/Petition[11] filed by Plaintiffs R Alcaraz, S Mason, G Pederson. (Harris, D) — 0.10 — 80.00

**01/27/2016**

AH — Reviewing documents -- Document Number:13 Docket Text: 21 DAY Summons Issued re First Amended Complaint/Petition[11] as to defendants Airport Terminal Services, Inc, Richard B. Hawes, Sally A. Leible. (mrgo) — 0.10 — 80.00

**01/29/2016**

AH — Correspondence to defense -- Simon, please find attached the First Amended Complaint which was filed on Monday, January 25. Please call us to discuss the attached, and a schedule for discovery and the class certification briefing.

|  |  | Hours |  |
|---|---|---|---|
|  | We would also like to set dates for the depositions of Mr. Hawes and Ms. Leible.   Could you please provide us with some dates for their deposition? | 0.10 | 80.00 |
| AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| AH | Telephone call to Aaron R. Lubeley  - left message - Later, Yang and Lubeley returned our call and with PM, we discussed dropping the individuals and attempting to settle the case. | 0.30 | 240.00 |

**02/01/2016**

| AH | Correspondence to defense re conference call, scheduled for later today: What we need for mediation. For the period from 11/20/11 to date, the database used to generate wage statements and the database reflecting when employees punched in and out for work and their meal breaks.  This will enable us to have our expert determine the possible exposure for the Overtime violations due to miscomputation of overtime for failure to take into account bonus payments and split shift premiums alleged in Counts 6 and 9 (and Count 8 under 17200) and the derivative wage statement claims alleged in Count 2.  This will also identify meal period violations (under Count 1) for the period from July 17, 2013 to date and weeks worked by employee for Count 3 uniform maintenance expenses for period from July 17, 2013 to date. We also need the information to ascertain damages for improper deductions under Counts 4 and 5.   Meet with PM to review file to prepare for call and to draft document request. | 2.20 | 1,760.00 |
| PM | Meeting with AH regarding call with ATS counsel and document requests. | 2.00 | 1,250.00 |

**02/05/2016**

| AH | Correspondence re current status of affairs at Palm Springs station. | 0.10 | 80.00 |

**02/23/2016**

| AH | Correspondence to defense re Second Amended Complaint.  Simon, I wanted to follow up on this. I will give you a call shortly. | 0.10 | 80.00 |

**02/24/2016**

| AH | Correspondence with Yang re SAC, he requesting a call on Friday. | 0.10 | 80.00 |

**02/25/2016**

| AH | Correspondence with Yang re SAC. | 0.10 | 80.00 |

**02/26/2016**

| AH | Correspondence with defense re SAC. | 0.10 | 80.00 |

**03/03/2016**

| PM | Review NOTICE TO PARTIES by District Judge Virginia A. Phillips. | 0.10 | 62.50 |

**03/08/2016**

| AH | Correspondence from defense, forwarding their proposed changes to complaint; stipulation; order. Review same. | 0.20 | 160.00 |
| AH | Correspondence with defense, forwarding amended stipulation re filing amended complaint. | 0.10 | 80.00 |
| PM | Review and revise proposed stipulation from defense. | 0.40 | 250.00 |

**03/15/2016**

| AH | Review correspondence to defense counsel, Simon Yang: Simon,  I just wanted to follow up on this.  We have agreed to your changes to the |  |  |

Case 5:15-cv-02400-VAP-SP   Document 47-1   Filed 05/07/18   Page 78 of 120   Page
ID #:744

|  |  | Hours |  |
|---|---|---|---|
|  | stipulation to the filing of the Second Amended Complaint. Please let me know if we have your permission to file with your electronic signature. | 0.10 | 80.00 |
| **03/16/2016** | | | |
| AH | Review correspondence from defense -- Priya, I'll confirm as soon as I can. I need to have another conversation with the client, since it would be a waste of everyone's time if we agreed to mediation but the client wasn't committed to a class-wide settlement. Also, there were a few minor redlines on the second amended complaint itself. My understanding is that those (in addition to the edits on the stipulation itself) were being accepted. Please let me know if incorrect; thanks. | 0.10 | 80.00 |
| PM | Prepare correspondence to defense regarding proposed stipulation. | 0.10 | 62.50 |
| **03/23/2016** | | | |
| AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| **03/29/2016** | | | |
| AH | Correspondence from defense -- Priya, our client is ready to move forward with the stipulation. I know you indicated that you were on board with the proposed redlines to the stipulation, but I don't believe I received a response to my prior email about whether suggested redlines to the SAC were also being accepted. Can you send over a draft of both the stip and attachment you would be filing? Thanks. | 0.10 | 80.00 |
| **04/07/2016** | | | |
| AH | Drafting documents--Document Number:15 Docket Text: STIPULATION to Amend Amended Complaint/Petition[11] filed by Plaintiffs R Alcaraz, S Mason, G Pederson. (Attachments: # (1) Proposed Order)(Harris, D) | 0.10 | 80.00 |
| **04/13/2016** | | | |
| AH | Document Number:17 Docket Text: ORDER by Judge Virginia A. Phillips re: Stipulation to Amend/Correct[15]. IT IS HEREBY ORDERED, upon review of the Stipulation of the Parties filed herewith and for good cause shown: 1. Plaintiff is directed to file the proposed Second Amended Complaint attached as Exhibit 1 to the Notice of Lodging [Proposed] Second Amended Complaint forthwith. (See document for specifics.) (iva) | 0.10 | 80.00 |
| **04/14/2016** | | | |
| AH | Correspondence with Janney re filing of SAC. | 0.10 | 80.00 |
| AH | Drafting documents -- Document Number:18 Docket Text: SECOND AMENDED COMPLAINT against Defendant Airport Terminal Services, Inc amending Amended Complaint/Petition[11], filed by Plaintiffs G Pederson, S Mason, R Alcaraz (Attachments: # (1) Exhibit Exhibits 1 - 7)(Harris, D) | 0.10 | 80.00 |
| AH | Reviewing documents--Docket Text: ORDER by Judge Virginia A. Phillips re: Stipulation to Amend/Correct[15]. IT IS HEREBY ORDERED, upon review of the Stipulation of the Parties filed herewith and for good cause shown: 1. Plaintiff is directed to file the proposed Second Amended Complaint attached as Exhibit 1 to the Notice of Lodging [Proposed] Second Amended Complaint forthwith. (See document for specifics.) (iva) | 0.10 | 80.00 |
| **05/01/2016** | | | |
| AH | Reviewing documents--Hendershot -- held that: [1] trial court's bare conclusion that nine class members did not constitute sufficiently numerous class without any analysis as to the ultimate issue of whether the class was | | |

Case 5:15-cv-02400-VAP-SP    Document 47-1    Filed 05/07/18    Page 79 of 120    Page
ID #:745

Page: 10
05/04/2018
Billing Ref:        ATS-DORIGAN
Invoice No:                1639

Alcaraz, Beth Ashly

|  |  | Hours |  |
|---|---|---|---|
|  | too large to make joinder practicable was incomplete;[2] trial court improperly ruled on the merits of the defendant's affirmative defenses in denying class certification; and [3] trial court denied the class action plaintiffs due process by failing to grant them an adequate opportunity to perform discovery on and brief certification issues. | 0.10 | 80.00 |
| **05/04/2016** |  |  |  |
| AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| AH | Correspondence to Yang:  Simon, please call us so we can discuss next steps and scheduling mediation. | 0.10 | 80.00 |
| **05/05/2016** |  |  |  |
| AH | Telephone call to John Patrick Dorigan  - spoke - Discuss mediation and settlement | 0.10 | 80.00 |
| AH | Telephone call to Simon Yang  - spoke - Correspondence with Simon Yang re mediation. With PM on phone. | 0.30 | 240.00 |
| PM | Telephone conference with AH and ATS counsel S. Yang  re mediation. With PM on phone. | 0.30 | 187.50 |
| **05/17/2016** |  |  |  |
| RL | Discussion with A. Harris and P. Mohan re case and discovery re case | 0.30 | 112.50 |
| PM | Conference with AH and RL regarding necessary discovery for mediation. | 0.30 | 187.50 |
| **05/19/2016** |  |  |  |
| AH | Correspondence with defense re mediation in July. | 0.10 | 80.00 |
| **05/25/2016** |  |  |  |
| AH | Drafting documents and legal research re mediation brief. L.C. 2810.3(a) (4) and (b):  Wages  has the same meaning provided by Section 200 and all sums payable to an employee or the state based upon any failure to pay wages, as provided by law. (b) A client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for the payment of wages. | 0.70 | 560.00 |
| **05/26/2016** |  |  |  |
| AH | Drafting documents and legal research -- In Re Work Uniform Cases (2005) 133 Cal App 4th 328-- More on point are California authorities concerning private employers that have concluded that payment for employee uniforms is a component of employee compensation. In Department of Industrial Relations v. UI Video Stores, Inc. (1997) 55 Cal.App.4th 1084 (UI Video), this court explained that the Division of Labor Standards Enforcement was authorized to collect unpaid wages in the form of the costs of required uniforms.fn. 9  The term 'wages' has been held to include money as well as other value given, including room, board and clothes. [Citation.] ' [T]he term 'wages' should be deemed to include not only the periodic monetary [133 Cal.App.4th 338] earnings of the employee but also the other benefits to which he is entitled as a part of his compensation. [Citations.] '   (UI Video, supra, at p. 1091 [citing Schumann v. California Cotton Credit Corp.(1930) 105 Cal.App. 136, 140 and Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1972) 24 Cal.App.3d 35, 44.) In United Air Lines, Inc. v. Industrial Welfare Com. (1963) 211 Cal.App.2d 729, (disapproved on another point in Industrial Welfare Com. v. Superior Court (1980) 27 Cal.3d 690, 728, fn. 15), the court noted that a regulation regarding payment for employee uniforms in |  |  |

|  |  | Hours |  |
|---|---|---|---|
| | effect concerned employee wages. Although it is agreed that the regulation was not intended to be one concerning wages, actually it is. The real effect of the order is to increase the female employees' wages by the amount which in the absence of the regulation they would have to pay towards the cost of their uniforms.  (Id.. at p. 746.) Also, in Ventura County Deputy Sheriffs' Assn. v. Board of Retirement (1997) 16 Cal.4th 483, the court analyzed a challenge to a county retirement board's computation of retirement allowances. The court concluded that the county's payment of an annual uniform maintenance allowance was compensation because it provided a benefit to the employee in that it substitutes for other attire that the employee would have to acquire absent the uniform allowance. (Id. at pp. 487, 495-497; see also Rose v. City of Hayward (1981) 126 Cal.App.3d 926, 943 [uniform allowance included in computation of pension benefits].) [5] In light of the foregoing reasoning, we conclude that payment to employees for work uniforms is a part of the employee's compensation and should be considered like any other payment of wages, compensation or benefits. | 0.10 | 80.00 |

**06/02/2016**

| | | | |
|---|---|---|---|
| AH | Telephone call to Gideon Pederson  - spoke - Status.  Sun Country and American.  Also doing US Air. Changed shirts when working for other companies.  With PM, KD and JD on phone. | 0.40 | 320.00 |
| AH | Correspondence to defense re mediation -- Hi Simon, please let me know if you were able to confirm a mediation date.  Also, please let me know if you have any questions regarding our requests for information. | 0.10 | 80.00 |
| PM | Telephone call to Gideon Pederson  - spoke - Status. | 0.40 | 250.00 |

**06/05/2016**

| | | | |
|---|---|---|---|
| AH | Correspondence with JPD re seasonal layoffs and ATS payroll system. | 0.10 | 80.00 |

**06/09/2016**

| | | | |
|---|---|---|---|
| AH | Reviewing Vaquero--The furniture companies' attorneys at Littler Mendelson had argued that class certification was improper in light of two landmark U.S. Supreme Court rulings: Dukes v. Walmart in 2011, and Comcast v. Behrend in 2013. But, a unanimous panel three-judge panel of the 9th U.S. Circuit Court of Appeals disagreed, saying the high court's April decision in Tyson Foods v. Bouaphakeo supported certification. | 0.10 | 80.00 |

**06/14/2016**

| | | | |
|---|---|---|---|
| AH | Correspondence with defense re mediation. | 0.10 | 80.00 |

**06/15/2016**

| | | | |
|---|---|---|---|
| AH | Correspondence with Lisa Klerman and defense re mediation. | 0.10 | 80.00 |

**06/21/2016**

| | | | |
|---|---|---|---|
| AH | Correspondence with mediator re location for August session. | 0.10 | 80.00 |
| AH | Correspondence from Mediator Klerman --Simon has offered their firm's downtown LA office as the mediation location.  Is it okay with your side to hold the mediation there? | 0.10 | 80.00 |

**06/22/2016**

| | | | |
|---|---|---|---|
| AH | Correspondence from Mediator Klerman -- We are confirmed for mediation on August 9, 2016 in the case of Pederson v ATS, Inc. | 0.10 | 80.00 |

Alcaraz, Ruth Ashly

|  |  | | Hours | |
|---|---|---|---|---|
| **07/07/2016** | | | | |
| | AH | Drafting documents and legal research re mediation. | 1.60 | 1,280.00 |
| **07/08/2016** | | | | |
| | AH | Drafting documents and legal research re mediation. | 0.40 | 320.00 |
| **07/09/2016** | | | | |
| | AH | Telephone call to Sasha Mason  - voice mail - | 0.10 | 80.00 |
| | AH | Telephone call to Gideon Pederson  - voice mail - [with Dorigan on phone] | 0.10 | 80.00 |
| | AH | Telephone call to Ruth Ashly Alcaraz  - spoke - Discuss mediation process and August 9 mediation date, in LA.  With Dorigan on phone. | 0.10 | 80.00 |
| **07/18/2016** | | | | |
| | AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| | AH | Correspondence to defense -- Simon, please give us a call.  Where do we stand with the production of information from ATS? | 0.10 | 80.00 |
| **07/20/2016** | | | | |
| | AH | Correspondence with defense re conference call re mediation, set for tomorrow. | 0.10 | 80.00 |
| **07/21/2016** | | | | |
| | AH | Drafting documents -- work on mediation brief. | 3.50 | 2,800.00 |
| | AH | Correspondence from S. Yang regarding production of data for mediation | 0.10 | 80.00 |
| | AH | Correspondence to defense re settlement negotiations. | 0.10 | 80.00 |
| | AH | Correspondence to defense following up on production of data necessary for mediation and sampling information. | 0.10 | 80.00 |
| **07/28/2016** | | | | |
| | AH | Work on mediation brief -- review documentation provided by defense including sample agreements. | 0.40 | 320.00 |
| **07/29/2016** | | | | |
| | AH | Correspondence to mediator Klerman re upcoming session. | 0.10 | 80.00 |
| **07/30/2016** | | | | |
| | AH | Drafting documents and legal research re mediation brief. | 6.50 | 5,200.00 |
| **08/07/2016** | | | | |
| | AH | Drafting documents -- work on mediation brief. | 4.80 | 3,840.00 |
| **08/08/2016** | | | | |
| | AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| | AH | Drafting documents and legal research re preparation for mediation, tomorrow. | 6.70 | 5,360.00 |
| **08/09/2016** | | | | |
| | AH | Meeting with Klerman, PM, JPD, KD, defense, for mediation, downtown LA. | 11.50 | 9,200.00 |
| | RL | Research re calculating regular rate based on FLSA and California law when two rates are in effect | 0.60 | 225.00 |
| | PM | Mediation, downtown LA. | 11.50 | 7,187.50 |
| **08/10/2016** | | | | |
| | AH | Drafting documents and legal research re class certification motion. | 1.70 | 1,360.00 |

|  |  |  | Hours |  |
|---|---|---|---|---|
| AH | Reviewing documents--Wert v. U.S. Bancorp, Case No. 13-cv-3130-BAS(BLM) 03/22/2016 | | 0.10 | 80.00 |
| **08/12/2016** | | | | |
| AH | Correspondence from Ms. Klerman re status. | | 0.10 | 80.00 |
| **08/15/2016** | | | | |
| PM | Review ORDER to Show Cause. | | 0.10 | 62.50 |
| RL | Research re private right of action for section 221 | | 0.30 | 112.50 |
| **08/16/2016** | | | | |
| AH | Telephone call to John Patrick Dorigan  - voice mail - [Settlement and mediation] | | 0.10 | 80.00 |
| AH | Correspondence with Klerman re mediation issues. | | 0.10 | 80.00 |
| **08/17/2016** | | | | |
| AH | Telephone call to Gideon Pederson  - voice mail - | | 0.10 | 80.00 |
| **08/24/2016** | | | | |
| AH | Correspondence with defense and mediator re continued discussions. | | 0.30 | 240.00 |
| AH | Legal research regarding damages and claims. | | 0.20 | 160.00 |
| **09/02/2016** | | | | |
| AH | Reviewing documents--Document Number:22 Docket Text: ORDER GRANTING STIPULATION FOR STAY TO CONTINUE MEDIATED SETTLEMENT DISCUSSIONS by Judge Virginia A. Phillips, re Stipulation to Stay Case [21]: IT IS HEREBY ORDERED, upon review of the Stipulation of the Parties filed herewith and for good cause shown: 1. The matter shall be stayed through November 7, 2016. 2. The deadline to file a responsive pleading to the SAC shall be continued for sixty (60) days from September 8, 2016, to November 7, 2016. (bm) | | 0.10 | 80.00 |
| **09/06/2016** | | | | |
| AH | Review ORDER GRANTING STIPULATION FOR STAY TO CONTINUE MEDIATED SETTLEMENT DISCUSSIONS | | 0.10 | 80.00 |
| **10/03/2016** | | | | |
| AH | Correspondence defense and Ms. Klerman regarding provision of information regarding ATS 4/10 elections. | | 0.40 | 320.00 |
| **10/06/2016** | | | | |
| AH | Correspondence from Yang -- I will be out of the office in mediation on Thursday, October 6, and have limited access to email. I apologize for any inconvenience. If you have immediate needs, please contact my assistant, Michelle Stevenson, at (213) 270-9656. Thank you. | | 0.10 | 80.00 |
| **10/13/2016** | | | | |
| AH | Correspondence with mediator re call with defense, tomorrow.  Discuss issues with 4/10 elections . (.1)  Drafting documents re outline for argument, tomorrow. (.7) | | 0.80 | 640.00 |
| AH | Correspondence with mediator Klerman re conference call with defense. | | 0.10 | 80.00 |
| **10/14/2016** | | | | |
| AH | Telephone call to Lisa Klerman  - spoke - With JPD on phone, discuss | | | |

Page: 14
05/04/2018
Alcaraz, Ruth Ashly
Case 5:15-cv-02400-VAP-SP    Document 47-1    Filed 05/07/18    Page 83 of 120    Page
ID #:749
Billing Ref:    ATS-DORIGAN
Invoice No:    1639

|  |  | Hours |  |
|---|---|---|---|
|  | mediation and defense claimed need for more information. | 0.10 | 80.00 |
| AH | Correspondence from Simon Yang regarding list of necessary information for settlement. | 0.10 | 80.00 |
| **10/16/2016** |  |  |  |
| AH | Telephone call to Ruth Ashly Alcaraz  - spoke - Discuss case status.  With JPD and KD. | 0.30 | 240.00 |
| AH | Drafting documents and legal research re mediation brief. | 3.80 | 3,040.00 |
| **11/07/2016** |  |  |  |
| AH | Prepare for meeting with class representatives, tomorrow. | 0.30 | 240.00 |
| AH | Reviewing documents--NOTICE TO PARTIES by District Judge Virginia A. Phillips. Effective November 14, 2016, Judge Phillips will be located at the 1st Street Courthouse, COURTROOM 8A on the 8th floor, located at 350 W. 1st Street, Los Angeles, California 90012. All Court appearances shall be made in Courtroom 8A of the 1st Street Courthouse, and all mandatory chambers copies shall be hand delivered to the judge's mail box outside the Clerk's Office on the 4th floor of the 1st Street Courthouse. The location for filing civil documents in paper format exempted from electronic filing and for viewing case files and other records services remains at the United States Courthouse, 312 North Spring Street, Room G-8, Los Angeles, California 90012. The location for filing criminal documents in paper format exempted from electronic filing remains at Edward R. Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Room 178, Los Angeles, California 90012. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (rrp) TEXT ONLY ENTRY | 0.10 | 80.00 |
| **11/10/2016** |  |  |  |
| AH | Review docket.  No answer filed. | 0.10 | 80.00 |
| **11/11/2016** |  |  |  |
| AH | Telephone call to Simon Yang  - voice mail - | 0.40 | 320.00 |
| **11/22/2016** |  |  |  |
| AH | Reviewing documents--Document Number:25 Docket Text: ORDER SETTING SCHEDULING CONFERENCE for 1/30/2017 at 01:30 PM before Judge Virginia A. Phillips.(bh) | 0.10 | 80.00 |
| **12/22/2016** |  |  |  |
| AH | Telephone call to Evie Carlson  - spoke - Telephone call to Evelyn Carlson - spoke - Status and need for meeting to review case and documents to prepare for her Declaration in support of case. | 0.10 | 80.00 |
| **12/30/2016** |  |  |  |
| AH | Construe statutes to protect employees. Peabody v. Time Warner Cable, Inc., 59 Cal.4th 662 (2016) | 0.10 | 80.00 |
| **01/09/2017** |  |  |  |
| AH | With PM, Aaron Lubeley and Simon Yang.  Rule 26(f) Conference. | 0.40 | 320.00 |
| PM | Rule 26(f) conference with AH and defense counsel Simon Yang and Aaron Lubeley. | 0.40 | 250.00 |
| **01/19/2017** |  |  |  |
| AH | Drafting documents--ATS Rule 26 report. | 0.60 | 480.00 |

Alcaraz, Ruth Ashly    Case 5:15-cv-02400-VAP-SP    Document 47-1    Filed 05/07/18    Page 84 of 120    Page ID #:750

|  |  |  | Hours |  |
|---|---|---|---|---|
| **01/20/2017** | | | | |
| | AH | Correspondence to defense -- Please find attached the draft Joint Report. Please let us know if you agree to our selection of ADR Procedure No. 1—referral to a magistrate judge for a settlement conference.  If so, I can prepare the ADR stipulation for filing on Monday. | 0.20 | 160.00 |
| | AH | Drafting documents--review Local Rules and work on related Rule 26 report | 0.30 | 240.00 |
| | AH | Drafting documents re Rule 26 report. | 0.20 | 160.00 |
| **01/23/2017** | | | | |
| | AH | Review correspondence re joint report. | 0.10 | 80.00 |
| | AH | Correspondence with defense re joint report | 0.10 | 80.00 |
| | AH | Reviewing documents--Document Number:27 Docket Text: REQUEST for ADR Procedure No. 3. Parties request for private mediation. Filed by Plaintiffs R Alcaraz, S Mason, G Pederson (Harris, D) | 0.10 | 80.00 |
| | AH | Correspondence from Simon Yang, defense counsel, forwarding initial disclosures -- Priya, attached are initial disclosures that will be received via mail and will be supplemented as appropriate. Review same. | 0.20 | 160.00 |
| | PM | Correspondence with defense counsel S. Yang regarding Rule 26 Joint Report. | 0.20 | 125.00 |
| **01/30/2017** | | | | |
| | AH | Sched Conf Phillips, J. All Lead Trial Counsel must be present - (.7) Confer with defense, in hall (.4); preparation 1.5. | 2.60 | 2,080.00 |
| **02/13/2017** | | | | |
| | AH | Correspondence to defese regarding status of production of materials regarding ATS elections. | 0.10 | 80.00 |
| **03/01/2017** | | | | |
| | AH | Correspondence re status at PSP and status of employment plaintiffs. | 0.10 | 80.00 |
| **03/09/2017** | | | | |
| | AH | Correspondence to Mr. Yang:  Priya and I are awaiting the documents we discussed, today.  We do not have them yet. | 0.10 | 80.00 |
| | AH | Telephone call to Simon Yang  - spoke - With PM, discuss OT owing at PS due to lack of proper election; settlement; stipulation at class certification for some items. | 0.40 | 320.00 |
| **03/10/2017** | | | | |
| | AH | Correspondence to Yang -- Please send us the documents and numbers we discussed yesterday so we can review them before the call. | 0.10 | 80.00 |
| **03/22/2017** | | | | |
| | AH | Drafting documents--request for production of documents. | 0.10 | 80.00 |
| | PM | Correspondence to defense counsel regarding production of election data and scheduling a call. | 0.10 | 62.50 |
| **03/24/2017** | | | | |
| | AH | Telephone call to Simon Yang  - voice mail - Class cert due June 19.  We are to submit stip re discovery.  This was from February 8 hearing at which he spoke of motions he wanted to file. Wanted to stipulate to certification of certain matters. | 0.10 | 80.00 |

Page: 16
05/04/2018
Case 5:15-cv-02400-VAP-SP    Document 47-1    Filed 05/07/18    Page 85 of 120    Page
ID #:751    Billing Ref:    ATS-DORIGAN
Invoice No:    1639
Alcaraz, Beth Ashly

| | | | Hours | |
|---|---|---|---|---|
| 03/28/2017 | | | | |
| | AH | Correspondence to Lubely--Aaron, despite our repeated attempts, we have not been able to communicate with Simon regarding this matter. Can you please give us a call or let us know when we can schedule a time to speak? | 0.10 | 80.00 |
| 04/04/2017 | | | | |
| | AH | Telephone call to Aaron R. Lubeley  - voice mail - | 0.10 | 80.00 |
| | AH | Telephone call to Aaron R. Lubeley  - left message - later, he returned with PM, SY and AH on phone.  Discuss settlement and discovery issues.  Agree to push dates by 2 months. | 0.30 | 240.00 |
| | PM | Conference call with defense counsel and AH. | 0.30 | 187.50 |
| 04/21/2017 | | | | |
| | AH | Telephone call to Aaron R. Lubeley  - voice mail - | 0.10 | 80.00 |
| | PM | Correspondence with defense re class certification issues. I am following up again on my emails below regarding a stipulation for the class certification briefing schedule.  I left a voicemail for Simon today and I believe Alan left a message for Aaron.  We would appreciate the courtesy of a response. | 0.20 | 125.00 |
| 05/07/2017 | | | | |
| | PM | Correspondence to defense regarding class certification briefing. | 0.10 | 62.50 |
| 05/09/2017 | | | | |
| | AH | Review correspondence from defense regarding stipulation and defense edits thereto and deposition scheduling.  . | 0.10 | 80.00 |
| | PM | Correspondence to defense re scheduling Rule 30(b)(6) deposition. | 0.10 | 62.50 |
| 05/23/2017 | | | | |
| | AH | Telephone call to Evie Carlson | 0.10 | 80.00 |
| 05/24/2017 | | | | |
| | AH | Reviewing documents--Document Number: 32  Docket Text:  ORDER GRANTING STIPULATION FOR STAY TO CONTINUE SETTLEMENT DISCUSSIONS AND TO CONTINUE DEADLINES FOR CLASS CERTIFICATION MOTIONS by Judge Virginia A. Phillips, re Stipulation to Stay Case, [31]: IT IS HEREBY ORDERED, upon review of the Stipulation of the Parties filed herewith and for good cause shown: 1. The matter is stayed through August 7, 2017. 2. The deadlines for Rule 23 motions are continued for 13 weeks after August 7, 2017. (bm) | 0.10 | 80.00 |
| 05/27/2017 | | | | |
| | AH | Correspondence with Expert Witness Evelyn Carlson, forwarding SAC and exhibits (.1); prepare for meeting re class certification declaration (3.5); Meet with EC (3). | 6.60 | 5,280.00 |
| 05/28/2017 | | | | |
| | AH | Correspondence to Dorigan re EC retained as our expert. | 0.10 | 80.00 |
| 07/17/2017 | | | | |
| | AH | Correspondence with defense re settlement conference call; prepare for same. | 0.60 | 480.00 |

|  |  | Hours |  |
|---|---|---:|---:|
| **07/18/2017** |  |  |  |
| AH | Correspondence to defense counsel -- Aaron, I am sorry we could not connect yesterday.  Can you please let us know a time you will be available tomorrow so we can schedule a call? | 0.10 | 80.00 |
| **07/24/2017** |  |  |  |
| AH | Drafting documents and legal research re mediation brief. | 2.70 | 2,160.00 |
| **07/25/2017** |  |  |  |
| AH | Telephone call to Simon Yang  - spoke - Status. Discuss settlement issues. Improper Security Deposit Deductions. | 0.30 | 240.00 |
| **07/26/2017** |  |  |  |
| AH | Correspondence to defense re settlement discussions. | 0.10 | 80.00 |
| **07/31/2017** |  |  |  |
| AH | Telephone call to Ruth Ashly Alcaraz  - spoke - preparation declaration in support of class certification. | 0.50 | 400.00 |
| AH | Telephone call to Sasha Mason  - spoke - preparation declaration in support of class certification. | 0.40 | 320.00 |
| AH | Telephone call to Gideon Pederson  - spoke - preparation declaration in support of class certification. | 0.40 | 320.00 |
| **08/31/2017** |  |  |  |
| AH | Review correspondence from Simon Yang re settlement and data provided. | 0.40 | 320.00 |
| **09/13/2017** |  |  |  |
| AH | Correspondence regarding Plaintiff Gideon. | 0.10 | 80.00 |
| **09/14/2017** |  |  |  |
| AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| AH | Correspondence with defense re settlement communications. | 0.10 | 80.00 |
| **09/19/2017** |  |  |  |
| AH | Correspondence with defense re settlement conference, continued for tomorrow. | 0.10 | 80.00 |
| **09/20/2017** |  |  |  |
| AH | Telephone call to John Patrick Dorigan  - left message - | 0.10 | 80.00 |
| **10/13/2017** |  |  |  |
| AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| AH | Correspondence with defense re settlement and stipulation re class certification. | 0.10 | 80.00 |
| AH | Telephone call to Aaron R. Lubeley  - voice mail - | 1.70 | 1,360.00 |
| AH | Correspondence with defense re mediation brief and settlement. | 0.10 | 80.00 |
| **10/16/2017** |  |  |  |
| AH | Telephone call to Simon Yang  - spoke - Discuss stipulation | 0.10 | 80.00 |
| **10/17/2017** |  |  |  |
| AH | Correspondence with defense re settlement issues; discuss same with Mr. Yang and PM. | 0.30 | 240.00 |
| AH | Drafting documents and legal research re PAGA and settlement. | 0.80 | 640.00 |

Alcaraz, Beth Ashly    Case 5:15-cv-02400-VAP-SP    Document 47-1    Filed 05/07/18    Page 87 of 120    Page ID #:753

| | | | Hours | |
|---|---|---|---|---|
| | PM | Telephone conference with AH and S. Yang regarding settlement. | 0.30 | 187.50 |
| **10/18/2017** | | | | |
| | AH | Telephone call to Aaron R. Lubeley  - voice mail - | 0.10 | 80.00 |
| | AH | Drafting documents and legal research re class certification | 7.50 | 6,000.00 |
| | PM | Correspondence to defense re: necessary stipulations for class certification and discovery issues. | 0.10 | 62.50 |
| **10/19/2017** | | | | |
| | AH | Telephone call to Evie Carlson  - voice mail - | 0.10 | 80.00 |
| | AH | Telephone call to Aaron R. Lubeley  - spoke - Discuss settlement issues and stipulation for additional time in which to file certification memo | 0.80 | 640.00 |
| | AH | Drafting documents--Document Number: 33   Docket Text:  STIPULATION for Order Granting Stay to Continue Settlement Discussions and to Continue Deadline for Rule 23 Motions filed by Plaintiffs R Alcaraz, S Mason, G Pederson. (Attachments: # (1) Proposed Order, # (2) Declaration of Alan Harris)(Harris, D) | 0.10 | 80.00 |
| **10/26/2017** | | | | |
| | PM | Review Court Order re stipulation on class certification motion and settlement. | 0.20 | 125.00 |
| **11/10/2017** | | | | |
| | PM | Correspondence to defense re settlement. | 0.10 | 62.50 |
| **11/14/2017** | | | | |
| | PM | Email correspondence to Simon Yang. | 0.10 | 62.50 |
| **11/15/2017** | | | | |
| | AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| | AH | Telephone call to Aaron R. Lubeley  - voice mail - | 0.10 | 80.00 |
| **11/16/2017** | | | | |
| | PM | Email correspondence to defense counsel re deposition. | 0.10 | 62.50 |
| | AH | Drafting documents and legal research re motion for class certification. | 3.20 | 2,560.00 |
| **11/17/2017** | | | | |
| | PM | Telephone call to Simon Yang  - spoke Returned his call.  With Alan Harris re update on settlement efforts. | 0.20 | 125.00 |
| | AH | Correspondence with Klerman re settlement. (.1) Drafting certification motion and mediation brief. (1.7) | 1.80 | 1,440.00 |
| **11/18/2017** | | | | |
| | AH | Drafting documents and legal research re motion for class certification. | 2.20 | 1,760.00 |
| **11/26/2017** | | | | |
| | PM | Attention to review witness list. | 0.60 | 375.00 |
| **11/29/2017** | | | | |
| | PM | Discussion with AH regarding ATS documents necessary for settlement negotiations.  Review email correspondence re same from Simon Yang. | 0.30 | 187.50 |
| | PM | Telephone conference with Simon Yang and AH re settlement. | 0.50 | 312.50 |

Page: 19
05/04/2018
Billing Ref:  ATS-DORIGAN
Invoice No:  1639

Alcaraz, Ruth Ashly    Case 5:15-cv-02400-VAP-SP    Document 47-1    Filed 05/07/18    Page 88 of 120    Page
ID #:754

|  |  | Hours |  |
|---|---|---|---|
| **12/01/2017** | | | |
| AH | Telephone call to Aaron R. Lubeley  - spoke - With PM and SY, discuss discovery and settlement issues. | 0.40 | 320.00 |
| **12/05/2017** | | | |
| AH | Drafting documents and legal research re certification. | 3.20 | 2,560.00 |
| **12/06/2017** | | | |
| PM | Attention to preparation Rule 30(b)(6) deposition notice. (.4); email correspondence to defense counsel re settlement (.1); telephone conference with AH and J. Dorigan re settlement (.1) | 0.60 | 375.00 |
| AH | Drafting documents and legal research -- 226(a)(9) and 2810.5(a)(3) violations | 0.70 | 560.00 |
| **12/07/2017** | | | |
| PM | Review stipulation re discovery and motion for class certification and email correspondence to defense counsel re same.  (.1) Telephone call with AH to Aaron Lubeley (.1) | 0.20 | 125.00 |
| AH | Telephone call to Aaron R. Lubeley  - voice mail - | 0.10 | 80.00 |
| **12/08/2017** | | | |
| AH | Correspondence with defense re settlement discussions today and further call on Monday morning.  Information regarding profitability.  With PM. | 0.70 | 560.00 |
| **12/12/2017** | | | |
| PM | Correspondence to defense regarding settlement and deposition dates. | 0.10 | 62.50 |
| **12/15/2017** | | | |
| PM | Email correspondence to Simon Yang re discovery and settlement. | 0.20 | 125.00 |
| AH | Telephone call to Simon Yang  - spoke - With PM and Aaron on line, discuss settlement issues. | 0.50 | 400.00 |
| AH | Telephone call to Gideon Pederson  - voice mail - | 0.10 | 80.00 |
| AH | Telephone call to Ruth Ashly Alcaraz  - voice mail - | 0.10 | 80.00 |
| AH | Telephone call to Sasha Mason  - voice mail - | 0.10 | 80.00 |
| AH | Review correspondence to defense -- Simon, we were not able to speak yesterday.  Can we schedule a time to speak this afternoon? | 0.10 | 80.00 |
| AH | Correspondence with defense re deposition. | 0.10 | 80.00 |
| PM | Telephone conference with AH and defense regarding settlement. | 0.50 | 312.50 |
| PM | Correspondence with defense. | 0.10 | 62.50 |
| **12/16/2017** | | | |
| AH | Telephone call to Ruth Ashly Alcaraz  - spoke - Status.  With KD regarding bonuses. | 0.30 | 240.00 |
| AH | Telephone call to Gideon Pederson  - spoke - With KD.  Will call back, shortly. Later, he returned and we discusses settlement issues as well as motions for certification of class and collective actions. | 0.30 | 240.00 |
| AH | Drafting documents and legal research re motions to certify classes and a collective action. | 7.40 | 5,920.00 |
| AH | Telephone call to Sasha Mason  - voice mail - | 0.10 | 80.00 |
| AH | Correspondence to Plaintiff Alcaraz regarding draft declaration, the Second Amended Complaint and the ATS Answer. | 0.10 | 80.00 |
| AH | Drafting documents and legal research re class certification. | 3.80 | 3,040.00 |

Alcaraz Beth Ashly Case 5:15-cv-02400-VAP-SP     Document 47-1     Filed 05/07/18     Page 89 of 120     Page
ID #:755

Page: 20
05/04/2018
Billing Ref:     ATS-DORIGAN
Invoice No:     1639

|  |  |  | Hours |  |
|---|---|---|---|---|
| **12/17/2017** | | | | |
| | AH | Correspondence to Mason, forwarding draft Declaration in support of certification, SAC and answer to SAC. | 0.10 | 80.00 |
| | AH | Correspondence to Pederson, forwarding draft Declaration in support of certification, SAC and answer to SAC. | 0.10 | 80.00 |
| | AH | Drafting documents re certification of a collective and class action. | 7.50 | 6,000.00 |
| | AH | Correspondence to defense counsel re discovery -- You have provided some, but not all, of the punch data for the Plaintiffs.  Please send us the balance of the data. | 0.10 | 80.00 |
| | AH | Telephone call to Sasha Mason  - spoke - Status. Review settlement discussions and her draft certification declaration. | 0.40 | 320.00 |
| | AH | Correspondence re settlement issues. | 0.10 | 80.00 |
| **12/18/2017** | | | | |
| | AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| | AH | Reviewing documents regarding settlement. | 0.10 | 80.00 |
| **12/19/2017** | | | | |
| | AH | Correspondence to defense regarding settlement, deposition scheduling and the production of documents. | 0.10 | 80.00 |
| **12/20/2017** | | | | |
| | PM | Telephone conference with AH with co-counsel John Dorigan re settlement proposal. | 0.20 | 125.00 |
| | PM | Conference call with AH, Simon Yang, Aaron Lubeley and Mediator Lisa Klerman re settlement discussions. | 0.50 | 312.50 |
| | AH | Correspondence with Klerman re settlement. | 0.30 | 240.00 |
| **12/21/2017** | | | | |
| | PM | Review and respond to email correspondence from defense counsel and mediator re settlement. | 0.20 | 125.00 |
| | PM | Settlement communications with AH, Lisa Klerman, defense counsel. | 0.80 | 500.00 |
| | PM | Telephone call to John Patrick Dorigan  - Left message asking for call back. | 0.10 | 62.50 |
| | PM | Email correspondence and telephone calls with Dorigan re settlement. | 0.20 | 125.00 |
| | AH | Reviewing documents and emails re settlement. | 0.50 | 400.00 |
| **12/22/2017** | | | | |
| | AH | Correspondence from mediator Klerman -- I am thrilled to report that the mediator's proposal has been accepted by both sides, and that you have a deal.  Congratulations on settlement! | 0.10 | 80.00 |
| | AH | Correspondence to mediator Lisa Klerman, accepting her settlement proposal. | 0.10 | 80.00 |
| **01/02/2018** | | | | |
| | PM | Telephone call to Simon Yang  - Spoke regarding settlement.  I will prepare notice of settlement and circulate and he will prepare MOU. | 0.20 | 125.00 |
| | PM | Prepare notice of settlement and correspondence to Simon Yang regarding same. | 0.20 | 125.00 |
| | AH | Correspondence to defense regarding Notice of Settlement and draft MOU. | 0.10 | 80.00 |
| **01/03/2018** | | | | |
| | AH | Correspondence from defense regarding completion of MOU. | 0.10 | 80.00 |

Page: 21
05/04/2018
Alcaraz, Ruth Ashly    Case 5:15-cv-02400-VAP-SP    Document 47-1    Filed 05/07/18    Page 90 of 120    Page
ID #:756
Billing Ref:    ATS-DORIGAN
Invoice No:    1639

|  |  |  | Hours |  |
|---|---|---|---|---|
| **01/04/2018** |  |  |  |  |
| | PM | Attention to preparation and filing notice of settlement.  Correspondence with counsel re same. | 0.50 | 312.50 |
| | AH | Drafting documents--Document Number: 35 |  |  |
| | |  Docket Text:  NOTICE of Settlement filed by Plaintiffs R Alcaraz, S Mason, G Pederson. (Harris, D) | 0.10 | 80.00 |
| | AH | Correspondence re notice of settlement. | 0.10 | 80.00 |
| **01/05/2018** |  |  |  |  |
| | PM | Email correspondence to Simon Yang re MOU. | 0.10 | 62.50 |
| | AH | Correspondence to Mr. Yang, requesting he forward MOU re settlement. | 0.10 | 80.00 |
| **01/08/2018** |  |  |  |  |
| | AH | Drafting documents -- work on notice of settlement. | 0.10 | 80.00 |
| **01/10/2018** |  |  |  |  |
| | PM | Review and revise draft MOU. | 1.00 | 625.00 |
| | AH | Telephone call to Gideon Pederson  - voice mail - [please call re settlement] | 0.10 | 80.00 |
| | AH | Telephone call to Ruth Ashley Alcaraz  - voice mail - | 0.10 | 80.00 |
| | AH | Telephone call to Sasha Mason  - spoke - Discuss settlement. | 0.20 | 160.00 |
| | AH | Drafting documents--work on MOU | 0.20 | 160.00 |
| **01/11/2018** |  |  |  |  |
| | PM | Review correspondence from clerk re notice of settlement (.1), email correspondence to Simon Yang re same (.1); review draft MOU and conference with AH re same (.3) | 0.50 | 312.50 |
| | AH | Telephone call to Gideon Pederson  - spoke - Status.  Discuss settlement. | 0.20 | 160.00 |
| | AH | Telephone call to Ruth Ashley Alcaraz  - spoke - Discuss settlement. | 0.20 | 160.00 |
| | AH | Correspondence with defense re joint notice of settlement. | 0.10 | 80.00 |
| **01/12/2018** |  |  |  |  |
| | AH | Drafting documents -- comments on draft MOU. Send same to Dorigan and PM for their review prior to sending to Simon. | 0.40 | 320.00 |
| **01/15/2018** |  |  |  |  |
| | PM | Review MOU and defense changes.  Conference with AH and email correspondence regarding same | 0.50 | 312.50 |
| | PM | Preparation of Joint Notice of Settlement pursuant to the Court's instruction. Correspondence to defense counsel regarding same. | 0.60 | 375.00 |
| | AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| | AH | Correspondence to defense --Simon, per the Court's instructions (see below), please the attached Joint Notice of Settlement.  Please let me know if you have any changes or if I have your authorization to file with your electronic signature. | 0.10 | 80.00 |
| | AH | Correspondence with defense re indemnification issues. | 0.10 | 80.00 |
| **01/16/2018** |  |  |  |  |
| | PM | Telephone conference with Simon Yang regarding provisions in settlement agreement (.2); review and respond to emails from Simon Yang re settlement (.2); attention to finalizing and filing of Joint Notice of Settlement. (.2) | 0.60 | 375.00 |
| | AH | Correspondence with defense re settlement. | 0.10 | 80.00 |

Alcaraz, Ruth Ashley Case 5:15-cv-02400-VAP-SP    Document 47-1    Filed 05/07/18    Page 91 of 120    Page
ID #:757

Page: 22
05/04/2018
Billing Ref: ATS-DORIGAN
Invoice No: 1639

|  |  |  | Hours |  |
|---|---|---|---|---|
| **01/18/2018** | | | | |
| | AH | Correspondence with Yang re settlement issues. | 0.10 | 80.00 |
| **01/24/2018** | | | | |
| | PM | Email correspondence to S. Yang regarding MOU. | 0.40 | 250.00 |
| | AH | Correspondence to defense seeking to finalize the draft MOU. | 0.10 | 80.00 |
| | AH | Correspondence with defense re settlement. | 0.10 | 80.00 |
| **01/25/2018** | | | | |
| | PM | Telephone call to Aaron R. Lubeley  - Left message. | 0.10 | 62.50 |
| | PM | Telephone call from Simon Yang  - spoke Returned my call. We are trying to schedule call with A. Lubeley and AH to discuss finalizing terms of MOU.  He will call this afternoon once A. Lubeley is done with hearing. | 0.10 | 62.50 |
| | AH | Correspondence with defense re settlement. | 0.10 | 80.00 |
| | AH | Telephone call to Simon Yang  - voice mail - | 0.10 | 80.00 |
| | AH | Telephone call to Aaron R. Lubeley  - voice mail - | 0.10 | 80.00 |
| **01/29/2018** | | | | |
| | AH | Correspondence with defense re settlement. | 0.20 | 160.00 |
| | AH | Correspondence with defense re MOU | 0.10 | 80.00 |
| **01/31/2018** | | | | |
| | AH | Correspondence with defense re MOU | 0.10 | 80.00 |
| **02/06/2018** | | | | |
| | AH | Correspondence with defense re settlement. | 0.10 | 80.00 |
| **02/08/2018** | | | | |
| | AH | Correspondence to defense re MOU | 0.10 | 80.00 |
| **02/09/2018** | | | | |
| | AH | Correspondence to defense counsel --Please find attached a pdf copy of the MOU I circulated yesterday for execution. | 0.10 | 80.00 |
| **02/13/2018** | | | | |
| | AH | Telephone call to Ruth Ashley Alcaraz  - spoke - Status re settlement.  OK for me to take care of MOU | 0.40 | 320.00 |
| | AH | Telephone call to Sasha Mason  - voice mail - | 0.10 | 80.00 |
| | AH | Telephone call to Gideon Pederson  - spoke - Status re settlement.  I will take care of MOU. | 0.10 | 80.00 |
| | AH | Correspondence with defense re long form settlement agreement. | 0.10 | 80.00 |
| **02/14/2018** | | | | |
| | AH | Review settlement negotiations with PM -- who spoke to Simon Yang regarding long form. | 0.10 | 80.00 |
| | PM | Telephone conference with S. Yang regarding preparation long form settlement agreement. | 0.20 | 125.00 |
| **02/15/2018** | | | | |
| | PM | Attention to preparation ATS Settlement Agreement. (1.5); email correspondence to Simon Yang re same.  (.2) | 1.70 | 1,062.50 |
| | AH | Review correspondence to Simon Yang --Simon, I have attached a word document with some language relating to the claims process. | 0.10 | 80.00 |

|  |  |  | Hours |  |
|---|---|---|---|---|
| **02/16/2018** | | | | |
| | PM | Telephone call to Simon Yang - Left message and email to follow up regarding preparation of long form settlement agreement. | 0.10 | 62.50 |
| | AH | Correspondence with Simon Yang re settlement. | 0.10 | 80.00 |
| **02/20/2018** | | | | |
| | AH | Correspondence with Simon Yang re settlement drafts. | 0.10 | 80.00 |
| **02/22/2018** | | | | |
| | PM | Email correspondence to Simon Yang re long form settlement agreement. (.1) Conference with AH regarding preparation motion for preliminary approval. (.1) | 0.20 | 125.00 |
| | AH | Correspondence to defense re settlement. | 0.10 | 80.00 |
| **02/23/2018** | | | | |
| | PM | Attention to preparation of motion for preliminary approval. | 1.20 | 750.00 |
| | AH | Correspondence re settlement. | 0.10 | 80.00 |
| **02/25/2018** | | | | |
| | AH | Correspondence to Mr. Yang re status of drafting long form agreement. | 0.10 | 80.00 |
| **02/26/2018** | | | | |
| | PM | Conference with AH regarding settlement administration (.2) Email correspondence to Simon Yang regarding selection of a claims administrator and obtaining bids for settlement administration. (.1) | 0.30 | 187.50 |
| | PM | Attention to review of settlement agreement and preparation motion for preliminary approval. | 3.30 | 2,062.50 |
| | AH | Correspondence to defense --Simon, thanks again for sending the draft settlement agreement.  I would like to request bids from various claims administrators. | 0.10 | 80.00 |
| **02/27/2018** | | | | |
| | PM | Preparation motion for preliminary approval. | 0.70 | 437.50 |
| **02/28/2018** | | | | |
| | PM | Conference with AH re review of the long form settlement agreement. (.4); email correspondence to defense counsel regarding same (.1) | 0.50 | 312.50 |
| | PM | Preparation of bid requests and correspondence regarding same to settlement administrators (CPT Group, Dahl, ILYM, Phoenix and RG2). | 0.80 | 500.00 |
| | PM | Preparation stipulation and proposed order regarding extending deadline to file motion for preliminary approval.  Correspondence with defense counsel regarding same. | 0.70 | 437.50 |
| | PM | Preparation of motion for preliminary approval. | 1.20 | 750.00 |
| | AH | Correspondence from court -- Thank you for submitting Proposed Order  Files you attached:   2018-2-28 Filestamped Stip re Mtn Preliminary Approval w service conf.pdf   2018-2-28 Filestamped Proposed Order re Stip Prelim Approval w serv cert.pdf      2018-2-28 Pederson-Prop. Order re Stip.docx | 0.10 | 80.00 |
| | AH | Drafting documents--Document Number: 37   Docket Text:  STIPULATION for Order regarding the filing of a motion for preliminary approval of class action settlement filed by Plaintiffs R Alcaraz, S Mason, G Pederson. (Attachments: # (1) Proposed Order)(Harris, D) | 0.20 | 160.00 |
| | AH | Correspondence with defense re settlement and motion for preliminary | | |

|  |  | Hours |  |
|---|---|---|---|
|  | approval. | 0.20 | 160.00 |
| AH | Correspondence from ILYM re quote for services. | 0.10 | 80.00 |
| AH | Correspondence from Phoenix r request for administrative services. | 0.10 | 80.00 |
| AH | Correspondence with defense, forwarding draft stipulation to continue deadline to file motion for preliminary approval. | 0.20 | 160.00 |
| PM | Correspondence withs. Court clerk, Simon Yang regarding scheduling hearing on motion for preliminary approval. | 0.20 | 125.00 |
| AH | Work on settlement. | 0.20 | 160.00 |

**03/01/2018**

| | | | |
|---|---|---|---|
| PM | Telephone conference with claims administrator RG2 rep Daniel Spaide re proposal for administration. | 0.20 | 125.00 |
| PM | Attention to preparation motion preliminary approval. | 2.30 | 1,437.50 |
| AH | Correspondence with defense re settlement. | 0.20 | 160.00 |
| AH | Correspondence with Dahl re settlement administration --Thanks for the clarification, Priya.  Attached is our proposal for your Pederson v Airport Terminal Services settlement. | 0.10 | 80.00 |
| AH | Correspondence with KCC re settlement | 0.10 | 80.00 |
| AH | Correspondence with ILYM re bid for administration. | 0.10 | 80.00 |
| AH | Correspondence with Phoenix re settlement administration. | 0.10 | 80.00 |
| AH | Correspondence with RG2 claims re bid | 0.10 | 80.00 |
| AH | Correspondence with CPT re quote. | 0.10 | 80.00 |

**03/02/2018**

| | | | |
|---|---|---|---|
| PM | Attention to preparation of motion for preliminary approval. | 1.60 | 1,000.00 |
| AH | Correspondence with defense re class list and settlement agreement. | 0.10 | 80.00 |

**03/05/2018**

| | | | |
|---|---|---|---|
| PM | Telephone call to Simon Yang  - Left message following up on settlement status. | 0.20 | 125.00 |
| PM | Email correspondence with claims administrators re proposals (.2); Email correspondence and telephone call to Simon Yang to follow up regarding settlement status. (.1) | 0.30 | 187.50 |
| PM | Telephone conference with AH and Simon Yang re finalizing settlement. (.3) continue preparation motion for preliminary approval.  (5.3) | 5.60 | 3,500.00 |
| AH | Correspondence with defense re possible claims administrators and final changes to settlement agreement. | 0.20 | 160.00 |

**03/06/2018**

| | | | |
|---|---|---|---|
| AH | Correspondence with defense re settlement; drafting of same. | 0.40 | 320.00 |

**03/07/2018**

| | | | |
|---|---|---|---|
| PM | Preparation of motion for preliminary approval. | 3.20 | 2,000.00 |

**03/08/2018**

| | | | |
|---|---|---|---|
| PM | Attention to preparation of motion for preliminary approval. | 3.50 | 2,187.50 |
| AH | Correspondence with defense re settlement agreement and claim form. | 0.30 | 240.00 |
| AH | Telephone call to Gideon Pederson  - spoke - Status.  Sending settlement agreement and declaration. | 0.30 | 240.00 |
| AH | Telephone call to Ruth Ashley Alcaraz  - spoke - Status.  Discuss her Declaration. | 0.30 | 240.00 |
| AH | Telephone call to Sasha Mason  - voice mail - | 0.10 | 80.00 |
| AH | Telephone call to Ruth Ashley Alcaraz  - spoke - Status.  She is going to look at it later tonight and call back then or in the morning. | 0.10 | 80.00 |

|  |  | Hours |  |
|---|---|---|---|
| AH | Telephone call to Sasha Mason  - spoke - Status. She will review tonight and call back. | 0.30 | 240.00 |
| AH | Telephone call to Gideon Pederson  - spoke - Status.  Is reviewing and will call back to give OK. | 0.20 | 160.00 |
| AH | Correspondence with counsel and plaintiffs re motion for preliminary approval and declarations. | 0.60 | 480.00 |

**03/09/2018**

|  |  | Hours |  |
|---|---|---|---|
| PM | Telephone call to Sasha Mason regarding settlement agreement and declaration in support of preliminary approval. - spoke | 0.20 | 125.00 |
| PM | Attention to preparation and filing of motion for preliminary approval. | 3.70 | 2,312.50 |
| AH | Drafting documents--motion for preliminary approval. | 5.40 | 4,320.00 |
| AH | Telephone call to Ruth Ashly Alcaraz  - spoke - | 0.10 | 80.00 |
| AH | Telephone call to Gideon Pederson  - spoke - | 0.10 | 80.00 |
| AH | Telephone call to Sasha Mason  - voice mail - | 0.10 | 80.00 |
| AH | Correspondence to defense -- Please find attached the fully executed settlement agreement. | 0.10 | 80.00 |
| AH | Drafting documents and legal research re stacking issus --Smith v. Lux Retail N. Am., Inc., No. C 13-01579 WHA, 2013 WL 2932243, at *4 (N.D. Cal. June 13, 2013) (refusing to "pile one penalty on another for a single substantive wrong" and noting that "no actual holding in any judicial decision has ever blessed such stacking."). | 0.30 | 240.00 |
| AH | Correspondence with defense and counsel re declarations and settlement agreement. | 0.40 | 320.00 |

**03/12/2018**

|  |  | Hours |  |
|---|---|---|---|
| PM | Attention to preparation documents for the Court related to Preliminary Approval Motion. | 0.40 | 250.00 |
| AH | Correspondence from Janney, attorney service -- Courtesy Copy Delivery Order Confirmation  This confirms Janney and Janney has received your Courtesy Copy Delivery order to deliver the following document(s):  Motion for Preliminary Approval;  Declaration of Alan Harris and Exs. 1-5;  Declaration of John Dorigan;  Proposed Order  At: First Street Federal Courthouse  Your document(s) are scheduled to be delivered to the Clerk by court day (Mon, Mar 12, 2018) by 4:00 PM.  Order(s): 1936082 Billing Code: ATS | 0.10 | 80.00 |

**03/28/2018**

|  |  | Hours |  |
|---|---|---|---|
| PM | Telephone call to Simon Yang  - ILeft message regarding claims administration proposal and filing a supplement with the Court. | 0.10 | 62.50 |

**03/30/2018**

|  |  | Hours |  |
|---|---|---|---|
| PM | Preparation and filing of supplemental memorandum in support of preliminary approval. | 0.80 | 500.00 |
| AH | Correspondence from Janney, attorney service -- This confirms Janney and Janney has received your Courtesy Copy Delivery order to deliver the following document(s):  Supplemental Memorandum re Motion for Preliminary Approval  At: First Street Federal Courthouse  Your document(s) are scheduled to be delivered to the Clerk by court day (Mon, Apr 2, 2018) by 4:00 PM.  Once your Courtesy Copy Delivery order has been delivered you will receive a status update with details stating if your documents were Accepted, Partially Accepted or Rejected by the Clerk, followed by your received or delivered copy(s) or else rejection notice.  Should you have any questions, please contact us or log in and manage your cases and orders at www.janneyandjanney.com Thank you for using Janney and Janney. |  |  |

|  |  | Hours |  |
|---|---|---|---|
|  | Order(s): 1962265 | 0.10 | 80.00 |
| AH | Drafting documents -- Document Number: 40 |  |  |
|  | Docket Text:  SUPPLEMENT to NOTICE OF MOTION AND MOTION for Order for Granting Preliminary Approval of Class Action Settlement and Conditional Certification of Settlement Class [39] filed by Plaintiffs R Alcaraz, S Mason, G Pederson. (Harris, D) | 0.10 | 80.00 |

**04/05/2018**

|  |  |  |  |
|---|---|---|---|
| PM | Review of Court Order re Preliminary Approval and discussion with AH re same. | 0.70 | 437.50 |
| PM | Telephone call to Simon Yang  - Spoke regarding Court's Order regarding preliminary approval and selection of claims administrator. Telephone call with S. Yang to Court Clerk re same. | 0.10 | 62.50 |
| AH | Correspondence CPT re administrative services. | 0.20 | 160.00 |

**04/06/2018**

|  |  |  |  |
|---|---|---|---|
| AH | Correspondence with defense re administrator. | 0.10 | 80.00 |

**04/09/2018**

|  |  |  |  |
|---|---|---|---|
| PM | Telephone call to Simon Yang  - spoke He is going to call and email clerk--there are other issues with the order that also need to be corrected. | 0.10 | 62.50 |
| PM | Telephone conference with Simon Yang regarding Court's Order. | 0.10 | 62.50 |

**04/10/2018**

|  |  |  |  |
|---|---|---|---|
| PM | Attention to review and revision of proposed stipulation to clarify order. | 0.60 | 375.00 |
| PM | Email correspondence to Simon regarding the proposed stipulation to clarify order. | 0.30 | 187.50 |
| AH | Drafting documents --  STIPULATION to Clarify STIPULATION REQUESTING CLARIFICATION OF ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, Re: Order on Motion for Order,,,,, [41], filed by Defendant Airport Terminal Services, Inc. (Attachments: # (1) Proposed Order Proposed Order)(Yang, Simon) | 0.20 | 160.00 |

**04/11/2018**

|  |  |  |  |
|---|---|---|---|
| AH | Reviewing documents--Document Number:44   Docket Text:  STIPULATION to Clarify Clarifying the Order Granting Preliminary Approval of Class Action Settlement, Re: Order on Motion for Order [41], filed by Defendant Airport Terminal Services, Inc. (Attachments: # (1) Proposed Order Proposed Order)(Yang, Simon) | 0.30 | 240.00 |
| AH | Correspondence from clerk of court to clarification of order. | 0.10 | 80.00 |
| AH | Correspondence with defense and drafting stiputlation. | 0.20 | 160.00 |
| AH | Correspondence from defense to court re order. | 0.20 | 160.00 |

**04/19/2018**

|  |  |  |  |
|---|---|---|---|
| AH | Correspondence from SY to administrator -- Claudia, looking forward to working with CPT again. I will be sending the class list separately, but attached are the settlement agreement, order granting preliminary approval, and order modifying that order, as well as a .docx version of the notice. | 0.10 | 80.00 |
| AH | Correspondence from CPT to Yang -- Thank you for the requested documents and the Settlement Agreement. Much appreciated.   Please password protect the class data spreadsheet and use the link below to safely upload the data into our secure FTP site. https://cptgroup.sharefile.com/r-rbf5243566414251b |  |  |

Case 2:15-cv-02400-VAP-SP   Document 47-1   Filed 05/07/18   Page 96 of 120   Page
ID #:762

Alcaraz, Beth Ashly

Page: 27
05/04/2018
Billing Ref:        ATS-DORIGAN
Invoice No:                1639

|  |  | Hours |  |
|---|---|---|---|
| | Once uploaded, please give me a call and provide me with the password. Please, feel free to contact me with any questions. | 0.10 | 80.00 |
| **04/20/2018** | | | |
| AH | Correspondence from CPT re administration -- I would like to introduce myself, Claudia Amaro, and Tin Nguyen, copied here, as your case management team for the Pederson v. Airport Terminal Services, Inc. case settlement.  We will be overseeing this case and will be happy to assist you whenever possible. Please include all of us on all future correspondence.  We will circulate our administrative timeline shortly. Additionally, please provide us with the Settlement Agreement, mailing documents (Word format), and the contact information for Defense Counsel so that we may request the Class Data that is due today, April 19, 2108, pursuant to the Order.   Lastly, please advise if any other individuals should be included (or removed) on future correspondences.  Looking forward to working with everyone and please feel free to contact us with any questions. | 0.10 | 80.00 |
| **04/23/2018** | | | |
| PM | Attention to review and response to email correspondence from claims administrator re settlement administration and timeline for completion of tasks. | 0.70 | 437.50 |
| **04/24/2018** | | | |
| PM | Email correspondence to John Dorigan regarding preparation of Motion for Fees, Costs and Enhancement Awards. | 0.10 | 62.50 |
| PM | Preparation fee petition. | 4.10 | 2,562.50 |
| **04/25/2018** | | | |
| PM | Continue preparation regarding fee petition. | 7.20 | 4,500.00 |
| AH | Reviewing documents -- Attached is the formatted Notice of Pending Class Action Settlement for your review and approval.     Please be advised that our formatting process solely consists of aesthetic changes of the document, as well as the insertions of applicable dates, setting merge fields and providing CPT contact information. Any dates/information inserted by CPT have been highlighted in Blue for your reference. | 0.10 | 80.00 |
| **04/27/2018** | | | |
| PM | Estimated additional time for preparation of motion for final approval, attendance at hearing on motion for final approval and settlement administration matters. | 15.00 | 9,375.00 |
| | For Current Services Rendered | 280.30 | 201,842.50 |

Recapitulation

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Alan Harris | 167.60 | $800.00 | $134,080.00 |
| Rebecca Lee | 1.20 | 375.00 | 450.00 |
| Priya Mohan | 102.00 | 625.00 | 63,750.00 |
| Christina Nordsten | 9.50 | 375.00 | 3,562.50 |

Advances

| 08/09/2016 | Klerman Mediation | | 5,000.00 |

Alcaraz, Beth Ashley

| | | |
|---|---|---|
| 08/09/2016 | Filing fee Janney | 568.00 |
| 08/09/2016 | Copies | 176.25 |
| 08/09/2016 | Postage | 21.59 |
| 05/29/2017 | Professional fee: Expert Retainer | 1,000.00 |
| 10/18/2017 | Postage: GSO to Seyfarth | 30.96 |
| 04/30/2018 | | |
| | Total Advances | 6,796.80 |
| | Total Current Work | 208,639.30 |
| | Balance Due | $208,639.30 |

| | | Billing History | | |
|---|---|---|---|---|
| Fees | Expenses | Advances | Finance Charge | Payments |
| 201,842.50 | 0.00 | 6,796.80 | 0.00 | 0.00 |

Exhibit 6

DECLARATION OF PETER D. ZEUGHAUSER

I, Peter D. Zeughauser, Declare as follows:

1. I am an attorney duly licensed to practice law in the State of Missouri (admitted and in good standing since 1975) and California (admitted and in good standing since 1977). My California State Bar Number is 75253.

2. I have been engaged in the active practice of law since 1975. From July 1981 until January 1996 I was employed as an attorney by The Irvine Company (the "Company") in Newport Beach, California. The Company is one of the largest real estate developers in the United States with over $15,000,000,000.00 in assets. From May 1985 until January 1996, I served as the general counsel of the Company. During my employment by the Company, at various times I also held the positions of Division Counsel, Senior Division Counsel, Associate General Counsel, Vice President and Senior Vice President.

3. My responsibilities as general counsel of the Company included the oversight and management of the Company's legal affairs. In carrying out my responsibilities at the Company, I was responsible for managing over fifty outside law firms representing the Company in over 350 active legal matters at any given time, approximately half of which were disputes and litigation in which the Company was involved.

4. Over the course of my employment by the Company, I was responsible for the management of outside counsel representing the Company in thousands of disputes pursuant to attorney fee arrangements in excess of $100 million.

5. Since approximately 1985, I have spoken to over three hundred audiences comprised of attorneys, including many national, state and local bar association groups, on the proper management of legal matters. A significant number of these talks have been on the topic of determining the appropriate value of legal services, a subject on which I consult regularly as part of my occupation.

6. Since 1985, I have published numerous articles in national, state and local legal publications on the topic of determining the appropriate value of legal services. I am a member of the Board of Editors of America Lawyer Magazine and a regular columnist for the magazine. My writings in the magazine often address the subject of proper techniques for determining the appropriate value of legal services.

7. In 1995, I authored and published a book entitled *Lawyers are from Mercury, Clients are from Pluto*, which includes several chapters on the proper management of legal matters and proper techniques for determining the appropriate value of legal services.

8. Since January 1996, I have served as a legal management consultant to law firms throughout the United States. As part of my consulting work, I have trained over 1,000 partners in law firms throughout the United States on determining the appropriate value of legal services and on the utilization of appropriate billing techniques. I have also consulted with numerous law firms with offices in Los Angeles and throughout the United States

regarding the appropriate amount to charge clients for services rendered by the firms. I regularly advise law firms on the appropriate hourly rates to charge for lawyers in their firms.

9. In my work as a legal management consultant, I regularly advise law firms on the strengths and weaknesses of their practices and on practice management and opportunities, including the desirability of their entering and leaving certain markets for legal services, broadly defined as practice areas, geographic locations, and industry sectors. This aspect of my work requires me to be familiar with the billing rates of attorneys with different levels of experience and expertise in numerous specific practice areas and geographic markets. Among the practice areas and geographic markets I have knowledge of is wage and hour and other class action litigation in the Los Angeles market for legal services.

9. Harris & Ruble has retained me in this matter to offer my opinion on the reasonableness of hourly attorney rates for certain attorneys employed by them.

10. In rendering my opinion, I have reviewed the resumes of the attorneys and am also familiar with the firm's work.

11. In my opinion, the reasonable hourly rates for the following attorneys are:

| Attorney | Reasonable Hourly Rate |
|---|---|
| Lorraine Aguilar | $325.00 |
| Alan Harris | $895.00 |
| David Harris | $675.00 |
| Priya Mohan | $625.00 |
| David Zelenski | $625.00 |

12. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of May, 2013 at Newport Beach, California.

Peter D. Zeughauser

# Exhibit 7

***Chookey v. Sears, Roebuck & Co.***, Case No. CV-12-2491 GW (MRWx)
Tentative Rulings on: (1) Motion for Final Approval of Class-Action Settlement, and (2) Motion for Award of Attorney's Fees, Incentive Award and Reimbursement of Costs

## I. Background

Sarah Chookey ("Plaintiff") originally brought this action on February 10, 2012, as a class action in California state court. Defendant Sears, Roebuck and Co. ("Defendant") removed the case to this Court on March 22, 2012, asserting the existence of diversity jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). The operative complaint in the case is the First Amended Complaint filed on April 20, 2012, presenting four claims under the California Labor Code (including a Private Attorneys General Act claim) and one claim under California's Business and Professions Code. *See* Docket No. 14. The Court preliminarily approved a settlement reached in the case and preliminarily certified a settlement class on February 13, 2014. *See* Docket Nos. 126, 132. Now before the Court are Plaintiff's motions for final approval of the settlement of her class-wide overtime and wage-statement claims and her representative claim for civil penalties, and for an award of attorney's fees, an incentive award, and reimbursement of costs.

## II. Analysis

### A. Jurisdiction

This Court has subject matter jurisdiction over this case pursuant to CAFA. The Court has personal jurisdiction over the plaintiff class because the members received proper notice of the action, as set forth more fully below, and over Defendant by virtue of its operations in this State giving rise to this litigation and its consent to jurisdiction here and participation in this litigation.

### B. Settlement Class Certification

For the same reasons as set forth in Plaintiff's motion seeking final approval, *see* Docket No. 134, at 18:25-21:7, the Court confirms its analysis of the propriety of a settlement class, as set forth in its preliminary approval of this settlement. *See* Docket No. 126, at 1-2. With over 16,000 class members, numerosity is plainly satisfied; the action presents the common, central questions, over whether Sears's overtime calculations were or were not appropriate under California law, and whether any impropriety in that regard led to deficient wage statements; Plaintiff's claims are typical, and there is no reason advanced to suspect her or her counsel of being inadequate in any respect, *see* Chookey Decl. (Docket No. 137) ¶¶ 3, 5-10; common questions would predominate over individual ones; and a class action would be a superior method for fairly and efficiently adjudicating the controversy. The Court therefore certifies the following class, for settlement purposes only: "all non-exempt individuals who worked overtime hours and who received sales commissions totaling less than one-half of their total compensation during the work week (meaning Sears' 'C-Plan' employees) who were employed by Sears in California at any time between February 10, 2008, through the date of Preliminary Approval." Docket No. 132, at 2:10-13.

### C. Notice

Notice is adequate if it is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980), *cert. denied sub nom.*, *Sanchez v. Tucson Unified Sch. Dist. No. 1*, 450 U.S. 912 (1981). All class members were mailed notice of the settlement in this case via first-class mail. *See* Harris Decl. (Docket No. 136) ¶¶ 18, 23. They also received "reminder" postcards 21 days after the initial mailing, if they had not yet submitted claim forms or exclusion requests. *See* Myette Decl. (Docket No. 141-1) ¶ 10. The Court has determined that the Notice issued here was reasonably calculated to apprise interested parties of the pendency of this action and to afford them the opportunity to object. *See* Fed. R. Civ. P. 23(e). Such notice satisfies the due process requirements of the Fifth Amendment. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *Brown v. Ticor Title Inc.*, 982 F.2d 386, 392 (9th Cir.1992); *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

### D. The Merits of the Settlement

#### 1. Legal Standards Governing Settlement

Settlement of a class action lawsuit requires approval of the court. *See* Fed. R. Civ. P. 23(e). The court must find that a proposed settlement is fundamentally fair, adequate, and reasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In making this determination, the court may consider any or all of the following factors, if applicable:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982). This list is not intended to be exhaustive; the court must consider the applicable factors in the context of the case at hand. *See Officers for Justice*, 688 F.2d at 625. "[C]omprehensive" consideration of those factors alone, however, "is not enough to survive appellate review" when a settlement agreement is negotiated *prior* to formal class certification. *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 946-47 (9th Cir. 2011). The court must also assess whether there are any signs of collusion or other conflicts of interest. *See id.*

Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action lawsuits. *See, e.g., Officers for Justice*, 688 F.2d at 625 ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation ...."). While balancing all of these interests, the court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* The court, in evaluating the agreement(s) of the parties, is not to reach the merits of the case or to form conclusions about

2

the underlying questions of law or fact. *See id.*

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." *Id.* The court may not delete, modify, or rewrite particular provisions of a settlement. *See id.* "Settlement is the offspring of compromise; the question...is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

### 2. The Settlement is Fair

#### a. The Settlement Agreement Enjoys a Presumption of Fairness

Generally speaking, courts afford a presumption of fairness to a settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *See In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). As discussed more fully below, Plaintiff – who was represented by experienced counsel – reached a settlement with Defendant after at least a modicum of discovery and a negotiation process involving the services of an experienced wage-and-hour mediator, Mark Rudy. In addition, as discussed further below, the Court has received only one objection to the settlement (though purportedly advanced on behalf of thousands of class members), and only ten potential class members have opted-out. *See, e.g.*, Supp. Harris Decl. (Docket No. 141) ¶ 16. Thus, the settlement enjoys a presumption of fairness.

#### b. The Settlement Agreement is Fair, Adequate, and Reasonable

##### i. The Strength of the Case

Plaintiff of course believes she and the class have a strong case. Her overtime theory – the driver of this litigation – has survived multiple challenges, by way of various motions. Although that claim was still, nevertheless, somewhat tenuous – given the conflict the Court's interpretation produced between federal and California law in this area – its survival suggested that the parties would be in the fight for the long-haul, certain to include future appellate challenges. As Plaintiff notes in her motion and supplemental brief, 1) there is even recent authority calling into question her ability to "stack" statutory damages and civil penalties on top of one another when based on the same underlying alleged wrong, and 2) Defendant may well have had a strong "good faith" argument insofar as Labor Code § 226 is concerned. Therefore, though Plaintiff had seemingly strong claims – at least under this Court's approach to the questions – they were not without their potential problems.

##### ii. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir.2000); *see also Nat'l Rural*, 221 F.R.D. at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). At the time the case settled, it had not yet reached the class certification stage, was heading towards a hearing on plaintiff's partial summary judgment motion, and would have – as noted above – doubtlessly lasted through trial and an eventual

3

appeal.

Even if Plaintiff was able to prevail initially, success in maintaining class status and achieving a favorable judgment could not be guaranteed. Against all of this, the settlement agreement offers the class immediate and certain relief. This factor therefore weighs in favor of approving the settlement.

### iii.    The Risk of Maintaining Class Action Status Throughout Trial

Having not yet even achieved a non-settlement-based certification of the class, there is always the risk that certification would be denied or that any certification achieved would not be maintained throughout the litigation. This factor thus also supports approval of the settlement.

### iv.    The Amount Offered in the Settlements

"Basic to [the process of deciding whether a proposed compromise is fair and equitable] in every instance…is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Thus, in determining whether the relief offered by way of settlement is fair, the Ninth Circuit has suggested that the court compare the settlement to the parties' "estimates of the maximum [recovery] in a successful litigation." *See Dunleavy*, 213 F.3d at 459; *see also Rodriguez*, 563 F.3d at 965.

Here, the settlement amount (before deductions) is $3,200,000 – after proposed deductions, $2,147,500. Plaintiff represents that this *available* amount would *over*-compensate the plaintiff class for overtime compensation the class members are due. Though it also ultimately compensates the class for only a fraction of what it might have recovered on Plaintiff's representative civil-penalty claims, *see* Docket No. 134, at 14:17-16:11; Docket No. 140, at 14:24-15:25, a settling plaintiff class trades certainty for maximum value. Again, the Court has received only one objection (and that objection has nothing to do with the monetary recovery here), and only ten potential class members have opted out.

Beyond all of that, of course, Plaintiff's litigation has also played a role in non-monetary changes to Defendant's practices. In 2013, for instance, Defendant changed the way its wage statements displayed overtime rates of pay.

### v.    The Extent of Discovery Completed and the Stage of the Proceedings

For a plaintiff to broker a fair settlement of a class action, he/she must be armed with sufficient information about the case to have been able to reasonably assess strengths and value. Plaintiff did engage in at least some measure of discovery – Defendant responded to written discovery requests and sat for two depositions pursuant to Fed. R. Civ. P. 30(b)(6). While this is, of course, not an overwhelming amount of discovery, the factor certainly does not dissuade from finally approving the settlement.

### vi.    The Experience and Views of Counsel

In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. *See Nat'l Rural*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted). The basis for such reliance is that "[p]arties represented by competent counsel are

better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995). Obviously, Plaintiff's attorney – who is an experienced class action and employment/wage-and-hour litigator, *see* Harris Decl. (Docket No. 136) ¶¶ 35-37 – considers the settlement to be fair, adequate and reasonable.   There is no reason to conclude that Defendant's counsel – also experienced in wage-and-hour litigation, *see id.* ¶ 26 – feels otherwise.

This factor therefore weighs in favor of approving the settlements.

### vii. The Presence of a Governmental Participant

There is no indication that any governmental entity participated in the settlement of this case (though California's Labor and Workforce Development Agency will receive $20,000 in sharing the recovery attributed to Plaintiff's PAGA claim). This factor is therefore neutral.

### viii. The Reaction of the Members of the Class to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural*, 221 F.R.D. at 529. Here, there has been only a single objection to the settlement,[1] and only ten opt-outs out of 16,750 class members. *See* Myette Decl. (Docket No. 141-1) ¶ 14; Docket Nos. 138-39. In addition, the class members who submitted claim forms – over 4,600 class members, resulting in claims for over 50% of the funds made available by the settlement, *see* Myette Decl. (Docket No. 141-1) ¶ 13 – generally worked for a greater amount of time than those class members who did not respond to the notice. In other words, those class members most interested in the resolution of this litigation were the ones most likely to submit claims. As a result, the average payment will amount to $231, as opposed to the $111 average payment the parties estimated at the time of preliminary approval. *See* Supp. Harris Decl. (Docket No. 141) ¶¶ 4-5. Accordingly, putting aside the nature and content of the objection for the moment, this factor weighs in favor of approving the settlements.

As for the sole objection, Alonso Lizaola and Luis Flores (the latter of whom is a named plaintiff and proposed class representative in a putative class action – the *Vatraleva* action – against Defendant pending in Los Angeles County Superior Court) assert that the release term in the settlement agreement, *see* Docket No. 136-1, ¶ 12, is potentially overbroad and unenforceable as straying beyond the bounds of the "identical factual predicate" limitation on release terms.   Plaintiff acknowledges that the "identical factual predicate" concept forms the outer boundaries of the scope of the release term here. *See* Docket No. 134, at 18:11-20 ("Settlement Class Members will be deemed to have released Sears from those claims that were or could have been asserted in the Action stemming from the allegations therein.").

In other words, perhaps not surprisingly, *Plaintiff*, at least, appears to share this Court's view of the proper outer boundaries of a permissible release term. *See* Docket No. 140, at 17:13-17 ("If the Court grants final approval of the Class Settlement, then, in exchange for the consideration described above, Settlement Class Members will be deemed to have released Sears

---

[1] While it is a single objection, it is advanced by two individuals, one of whom purports to be representing the view of all of Defendant's employees who are members of both the class in this case and a putative class involved in litigation proceeding in Los Angeles County Superior Court – some 9,500 people.

from those claims that were or could have been asserted in the Action *stemming from the allegations therein*.  The scope of this release is proper.") (emphasis added; omitting internal citation).[2]  Defendant, however, does not:  "[A]ccording to the plain language of the Chookey release, it includes, among other things, *all* claims for failure to provide rest breaks, inaccurate wage statements and untimely final pay."  Docket No. 142, at 2:11-13.[3]

The objection in question appears to be well-taken.  As written, the second clause of the release term is the only one of the three clauses that does not appear to be expressly or impliedly limited, in any respect, by the identical factual predicate doctrine.[4]  As described in the objection, the claims at issue in *Vatraleva* concern Defendant's failure to separately pay commissioned employees for certain hours that they work, not the failure to properly include commissions in rates of pay that has been at issue in this litigation.

The question is, having expressed its understanding of the proper scope of the release term's second clause, what more is there for this Court to do?  Should it refrain from finally approving the settlement under the present language in the release term or, having expressed this Court's understanding of that term's proper scope and operation, is it now for the *Vatraleva* court to rule as it sees fit on any attempt by Defendant to have the release herein bar some or all of that case?  The objectors' citation to *Prieto v. United States Bank Nat'l Ass'n*, No. CIV S-09-901 KJM EFB, 2012 U.S. Dist. LEXIS 141891, *24-27 (E.D. Cal. Sept. 30, 2012), suggests that it is now for the *Vatraleva* court to address the issue, if indeed Defendant presses an expansive view of the scope of the *Chookey* release in that litigation.  Plaintiff's supplemental memorandum addressing (in part) this objection appears to argue for a similar end, as does Defendant's response to the objection (which the Court only received on July 3, 2014).  *See* Docket No. 140, at 18:4-5 ("Obviously, some future court could misinterpret or misapply the release in this case."); *id.* at 19:2-4 ("To derail this Settlement while the parties await answers to the questions raised in the Objector's litigation is unnecessary and would be fundamentally unfair…."); Docket No. 142, at 1:15-18, 7:9-8:4.

A Ninth Circuit opinion, however, might be read to indicate the contrary.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) ("[T]he *Wal-Mart* courts' decision that the settlement covered, and thereby released, Plaintiffs' claims in the Northern District of California was necessary to their final judgment that approved the *Wal-Mart* settlement….  In approving the settlement as 'fair, reasonable, and adequate' under Federal Rule of Civil Procedure 23(e)(2), the *Wal-Mart* courts necessarily had to adjudicate the objections Plaintiffs raised, including whether the *Wal-Mart* settlement released Plaintiffs' price-fixing

---

[2] The Court only heard from Defendant on this point by way of a July 3, 2014, filing – a filing that was not contemplated by the scheduling order filed in connection with approval proceedings. *See* Docket No. 131.

[3] Penalties for "untimely final pay" were never at issue in this case.  Plaintiff was a current employee at the time the parties reached an agreement to settle, but not at the time the parties actually executed the settlement agreement.  Plaintiff and Defendant appear to have differing views with respect to whether Plaintiff *could have* advanced such a claim in this litigation. *Compare* Docket No. 140, at 18:5-11, and Supp. Harris Decl. (Docket No. 141) ¶ 12, *with* Docket No. 142, at 5:16-24.

[4] The Court would invite Defendant to point to the *specific* support it finds in the case law for the particular (italicized, as follows) proposition that "a class action settlement release may include (a) all claims alleged in the action *without regard to factual predicate*" as well as claims that could have been asserted based on the same factual predicate.  Docket No. 142, at 6:3-4.

claims."). Obviously this Court cannot issue a pronouncement as to the true scope of the release as to all possible claims which may later be made because it is not the Court's province to issue advisory opinions. However, where the Court is presented with a distinct and concrete set of allegations such as those presented in the now-pending *Vatraleva* action, *Reyn's Pasta Bella* suggests that it may be *required* to take into consideration the effect of the release on *Vatraleva* in order to determine the fairness and reasonableness of the settlement (and its accompanying release). This should be a focus of the parties' (and the objectors') discussion at oral argument.

Finally, to the extent Defendant complains about the possibilities of double recoveries – with respect to, for instance, the wage statement claims – because an employee can only suffer a particular type of harm once (no matter the number of violations), *see* Docket No. 142, at 11:4-23, that is not an issue for a release to resolve, but instead an issue that would presumably work to offset individual employees' recoveries in other litigation (such as *Vatraleva*).

### ix. Signs of Collusion

The parties appear to have negotiated the settlement in question at arms-length, and used the services of an experienced mediator in reaching their resolution. As such, there is no hint of collusion that would act to derail the settlement.

### 3. The Court, in Its Discretion, Would Award an "Incentive Award" to Plaintiff

The decision whether to award an incentive payment to a class representative, and the size of that award, is entirely within the trial court's discretion. *See, e.g., Dunleavy*, 213 F.3d at 458, 462. The criteria courts may consider in determining whether to make an incentive award include:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (S.D.Cal.1995). Here, the request is for only a $5,000 award.

Plaintiff obtained an exceptional result for the class on the overtime claim, not-insignificant amounts for her penalty claims, spent considerable time consulting with her counsel and investigators, provided factual background, helped analyze Defendant's data, and attended a full-day deposition. *See* Chookey Decl. (Docket No. 137) ¶¶ 3, 5. She also, of course, risked some measure of job-related stigma from having sued her employer. A $5,000 incentive award is well-warranted here.

### 4. Attorneys' Fees and Expenses

It is well established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Jones*, 654 F.3d at 941. This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel. *See Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). In addition, attorneys

may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters, at least where costs are provided for by statute. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (considering costs application under 42 U.S.C. § 1988). Plaintiffs' counsel requests $960,000 in attorneys' fees (amounting to 30% of the $3,200,000 pre-deduction settlement amount), and $22,500 in costs (representing travel costs, mediation fees, expert fees, copy and scanning costs, filing fees, and electronic research fees, *see* Harris Decl., Exh. 3 (Docket No. 136-3), at 107-11).

In the Ninth Circuit, district courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method (essentially a modification of hourly billing) or a percentage method. *See Jones*, 654 F.3d at 942; *Class Plaintiffs v. City of Seattle (In re Wash. Pub. Power Supply Sys. Secs. Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994) ("[W]e restate the law of our circuit that, in common fund cases, no presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other."). "As always, when determining attorneys' fees, the district court should be guided by the fundamental principle that fee awards out of common funds be '*reasonable under the circumstances*.'" *Class Plaintiffs*, 19 F.3d at 1296 (emphasis in original) (quoting *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (emphasis in original)).

Despite this discretion, use of the percentage method in common fund cases appears to be dominant. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson*, 886 F.2d at 272. The advantages of using the percentage method have been described thoroughly by other courts. *See, e.g.*, *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1374-77 (N.D.Cal.1989) (collecting authority and describing benefits of the percentage method over the lodestar method).

The ultimate goal under either method of determining fees is to reasonably compensate counsel for efforts in creating the common fund. *See Paul, Johnson*, 886 F.2d at 271-72. It is not sufficient to arbitrarily apply a percentage; rather the district court must show why that percentage and the ultimate award are appropriate based on the facts of the case. *See Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048-50.

Plaintiff's counsel reports that his fee request amounts to 30% of the settlement. Generally speaking, this Court does not exceed the 25% benchmark for attorney's fees, *see, e.g.*, *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000), except where there is some indication that counsel performed exceptionally or in another unusual manner. As noted previously herein, Plaintiff and her counsel have overcome numerous challenges to their overtime theory, in the face of federal law to the contrary. They have patiently and masterfully explained the calculations necessary to their theory and those that Defendant actually employed, setting forth as simple an explanation as possible in this math-heavy case. They not only fought off motions challenging their theory in this forum, but successfully prevented Defendant from obtaining a quickened appellate review Defendant sought by way of *mandamus*.

Beyond all of that, of course, Plaintiff's counsel obtained a substantial settlement figure that was made available to the plaintiff class (even if the plaintiff class did not take full

8

advantage of that settlement fund). Plaintiff's counsel accomplished all this as a small firm working on a contingency basis, *see* Harris Decl. (Docket No. 136) ¶¶ 35, 47-48, by definition a risky proposition. And, once again, the Court received only a single objection, which had nothing to do with Plaintiff's counsel's fee request, notwithstanding the fact that class members had plentiful time in which to assess (and prepare a challenge to) the fee request. For all of these reasons, the Court is inclined to depart from its ordinary practice of adhering to the 25% benchmark, and to award the fees requested in full.[5]

### E. Conclusion

In sum, the settlement the parties have reached is reasonable, provides substantial monetary benefits to the plaintiff class (in addition to the non-monetary changes to Defendant's practices that the litigation spurred), and was the result of arms-length negotiations assisted by an experienced mediator. It therefore meets the standards for final approval of a class action settlement. If the Court concludes that the single objection should be overruled, the Court should finally approve the settlement, along with a $5,000 incentive award to Plaintiff, and should confirm certification of the settlement class. It should also award Plaintiff's counsel $960,000 in fees and $22,500 in expenses, and approve the $66,999.81 in expenses incurred by the claims administrator, *see* Myette Decl. (Docket No. 141-1) ¶ 16.

---

[5] A Plaintiff-prepared lodestar cross-check reflects that such an award would amount only to a 1.6 multiplier, certainly reasonable considering the difficulties presented by Plaintiff's case and the success Plaintiff and her counsel achieved in the face of repeated challenges directed to her overtime claim and theory. Although the Court would find the hourly rates reflected in that analysis to be on the high-side, they are not so high as to make Plaintiff's suggested 1.6 multiplier significantly out-of-line with what the Court would find to be a more likely multiplier figure in this case.

1   JOSEPH C. LIBURT (STATE BAR NO. 155507)
    CHRISTIAN N. BROWN (STATE BAR NO. 233147)
2   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
3   Menlo Park, California  94025
    United States of America
4   Telephone:   (650) 614-7400
    Facsimile:   (650) 614-7401
5   Email:     jliburt@orrick.com
    Email:     cbrown@orrick.com
6
    Attorneys for Defendant
7   SEARS, ROEBUCK AND CO.

8   ALAN HARRIS (STATE BAR NO. 146079)
    PRIYA MOHAN (STATE BAR NO. 228984)
9   HARRIS & RUBLE
    6424 Santa Monica Boulevard
10  Los Angeles, California  90038
    Telephone:   (323) 962-3777
11  Facsimile:   (323) 962-3004
    Email:     aharris@harrisandruble.com
12  Email:     dzelenski@harrisandruble.com

13  Attorneys for Plaintiff
    SARAH CHOOKEY
14

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17

18  SARAH CHOOKEY, individually and          Case No. CV 12-2491-GW (MRWx)
    on behalf of all others similarly situated,
19                           Plaintiff,       **ORDER GRANTING FINAL
                                              APPROVAL OF CLASS ACTION
20        v.                                  SETTLEMENT**

21  SEARS, ROEBUCK AND CO.; and
    DOES 1 through 100, inclusive,
22                           Defendants.

23

24

25

26

27

28

The Court has before it Plaintiff's Motion for Final Approval of a Class Action Settlement ("Class Settlement") and Motion for Award of Attorney's Fees, Incentive Award and Reimbursement of Costs. After reviewing the Motion for Final Approval, Motion for Award of Attorney's Fees and the Stipulation and Settlement Agreement of Class Action and Individual Claims ("Settlement Agreement"), the Objection to Final Approval of Class Action filed by Alonso Lizaola and Luis Flores and the papers filed in support thereof (the "Objectors"), and the supplemental briefing filed by the parties and the Objectors, the Court hereby finds and orders as follows:

1.      This Court has jurisdiction over the claims of the Class Members asserted in this proceeding and over all parties to the action.

2.      The Court finds that a single Objection was filed by two objectors to the Settlement. Ten Class Members have requested exclusion from the Settlement. Approximately 27.91% of the Class Members have filed timely and valid claims. As of the date of the July 10, 2014 hearing on Final Approval, Six Class Members submitted late claims. The parties have agreed to permit these six late claims. These 4,682 individuals worked during approximately 50.82% of the total Work Weeks and have claimed, and will be paid, approximately $1,080,179 from the Total Maximum Settlement Amount.

3.      This Court finds that the applicable requirements of Federal Rule of Civil Procedure 23 have been satisfied with respect to the Settlement Class and the proposed Class Settlement. The Court hereby makes final its earlier provisional certification of the Class, as set forth in the Preliminary Approval Order. The Court finds that the settlement is fair, adequate, and reasonable, and falls within the range of reasonableness.

4.      The notice given to the Class Members fully and accurately informed the Class Members of all material elements of the proposed Class Settlement and of

1   their opportunity to object to or comment thereon; was the best notice practicable

2   under  the circumstances; was valid, due and sufficient notice to all Class Members;

3   and complied fully with the laws of the State of California, the Federal Rules of

4   Civil Procedure, the United States Constitution, due process and other applicable

5   law. The notice fairly and adequately described the Class Settlement and provided

6   Class Members adequate instructions and a variety of means to obtain additional

7   information. A full opportunity has been afforded to the Class Members to

8   participate in this hearing, and all Class Members and other persons wishing to be

9   heard have been heard. Accordingly, the Court determines that all Class Members

10  (as defined in the Class Settlement) who did not timely and properly execute a

11  request for exclusion are bound by this Order and Judgment.

12      5.      The Court hereby grants final approval to the Class Settlement and

13  finds it reasonable and adequate, and in the best interests of the Class as a whole.

14  Accordingly, the Court hereby directs that the Class Settlement be effected in

15  accordance with the Settlement Agreement and the following terms and conditions.

16      6.      It is hereby ordered that the Settlement Administrator shall pay the

17  Settlement Awards in the amounts and pursuant to the terms set forth in the

18  Settlement Agreement.

19      7.      It is hereby ordered that the that the Settlement Administrator shall pay

20  the Incentive Award of $5,000.00 to Named Plaintiff Sarah Chookey because the

21  Court finds the Incentive Award is fair and reasonable for the work she provided to

22  the Class and Class Counsel.

23      8.      It is hereby ordered that the Settlement Administrator shall pay a Fee

24  Award of $960,000, as well as $22,500 in actual costs, to Class Counsel. Class

25  Counsel's request falls within the range of reasonableness and the result achieved

26  justified the award. Class Counsel's actual expenses in prosecuting this Action are

27  hereby approved as reasonably incurred.

28

1

2        9.     It is hereby ordered that the Settlement Administrator shall pay the

3  Labor and Workforce Development Agency $20,000 on account of the California

4  Labor Code Private Attorney General's Act claim, as set forth in the Settlement

5  Agreement.

6        10.    It is hereby ordered that the Settlement Administrator shall be paid

7  Administration Costs of $66,999.81 as set forth in the Settlement Agreement.

8        11.    With this final approval of the Class Settlement, it is hereby ordered

9  that all claims that are released as set forth in the Settlement Agreement are hereby

10  barred.

11

12      **IT IS SO ORDERED.**

13

14  DATED:  July 30, 2014

                                              GEORGE H. WU, U.S. District Judge

# Exhibit 8

# LAFFEY MATRIX

History

Case Law

Expert Opinions

See the Matrix

Contact us

Home

Links

|  |  |  | Years Out of Law School * | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

Exhibit 9

**SALARY TABLE 2017-DCB**
**INCORPORATING THE 1% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 27.10%**
**FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-ARLINGTON, DC-MD-VA-WV-PA**
**TOTAL INCREASE: 2.88%**
**EFFECTIVE JANUARY 2017**

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 23,547 | $ 24,335 | $ 25,118 | $ 25,897 | $ 26,680 | $ 27,137 | $ 27,911 | $ 28,693 | $ 28,723 | $ 29,450 |
| 2 | 26,474 | 27,104 | 27,981 | 28,723 | 29,046 | 29,900 | 30,754 | 31,608 | 32,463 | 33,317 |
| 3 | 28,886 | 29,849 | 30,813 | 31,776 | 32,740 | 33,703 | 34,667 | 35,630 | 36,593 | 37,557 |
| 4 | 32,428 | 33,509 | 34,589 | 35,669 | 36,750 | 37,830 | 38,910 | 39,991 | 41,071 | 42,151 |
| 5 | 36,281 | 37,491 | 38,701 | 39,911 | 41,121 | 42,331 | 43,541 | 44,751 | 45,961 | 47,171 |
| 6 | 40,442 | 41,790 | 43,139 | 44,488 | 45,836 | 47,185 | 48,533 | 49,882 | 51,230 | 52,579 |
| 7 | 44,941 | 46,440 | 47,938 | 49,437 | 50,935 | 52,434 | 53,932 | 55,431 | 56,929 | 58,428 |
| 8 | 49,771 | 51,430 | 53,088 | 54,747 | 56,406 | 58,064 | 59,723 | 61,382 | 63,040 | 64,699 |
| 9 | 54,972 | 56,805 | 58,638 | 60,470 | 62,303 | 64,136 | 65,969 | 67,801 | 69,634 | 71,467 |
| 10 | 60,538 | 62,556 | 64,574 | 66,593 | 68,611 | 70,629 | 72,648 | 74,666 | 76,685 | 78,703 |
| 11 | 66,510 | 68,727 | 70,943 | 73,160 | 75,377 | 77,593 | 79,810 | 82,027 | 84,243 | 86,460 |
| 12 | 79,720 | 82,377 | 85,035 | 87,693 | 90,350 | 93,008 | 95,666 | 98,323 | 100,981 | 103,639 |
| 13 | 94,796 | 97,956 | 101,116 | 104,275 | 107,435 | 110,595 | 113,755 | 116,914 | 120,074 | 123,234 |
| 14 | 112,021 | 115,755 | 119,489 | 123,223 | 126,958 | 130,692 | 134,426 | 138,160 | 141,894 | 145,629 |
| 15 | 131,767 | 136,160 | 140,552 | 144,945 | 149,337 | 153,730 | 158,123 | 161,900 * | 161,900 * | 161,900 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2017 Locality Pay Area Definitions page: http://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2017/locality-pay-area-definitions/

### SALARY TABLE 2017-LA
### INCORPORATING THE 1% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 29.65%
### FOR THE LOCALITY PAY AREA OF LOS ANGELES-LONG BEACH, CA
### TOTAL INCREASE: 2.58%
### EFFECTIVE JANUARY 2017

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 24,019 | $ 24,823 | $ 25,621 | $ 26,416 | $ 27,215 | $ 27,682 | $ 28,471 | $ 29,268 | $ 29,300 | $ 30,041 |
| 2 | 27,005 | 27,648 | 28,542 | 29,300 | 29,629 | 30,500 | 31,371 | 32,243 | 33,114 | 33,985 |
| 3 | 29,466 | 30,448 | 31,431 | 32,414 | 33,397 | 34,379 | 35,362 | 36,345 | 37,328 | 38,310 |
| 4 | 33,079 | 34,181 | 35,283 | 36,385 | 37,487 | 38,589 | 39,691 | 40,793 | 41,895 | 42,997 |
| 5 | 37,009 | 38,243 | 39,477 | 40,711 | 41,946 | 43,180 | 44,414 | 45,648 | 46,883 | 48,117 |
| 6 | 41,253 | 42,629 | 44,005 | 45,380 | 46,756 | 48,131 | 49,507 | 50,882 | 52,258 | 53,634 |
| 7 | 45,843 | 47,372 | 48,900 | 50,429 | 51,957 | 53,486 | 55,014 | 56,543 | 58,072 | 59,600 |
| 8 | 50,770 | 52,462 | 54,154 | 55,845 | 57,537 | 59,229 | 60,921 | 62,613 | 64,305 | 65,997 |
| 9 | 56,075 | 57,944 | 59,814 | 61,684 | 63,553 | 65,423 | 67,292 | 69,162 | 71,031 | 72,901 |
| 10 | 61,752 | 63,811 | 65,870 | 67,929 | 69,988 | 72,047 | 74,105 | 76,164 | 78,223 | 80,282 |
| 11 | 67,845 | 70,106 | 72,367 | 74,628 | 76,889 | 79,150 | 81,411 | 83,672 | 85,933 | 88,194 |
| 12 | 81,319 | 84,030 | 86,741 | 89,452 | 92,163 | 94,874 | 97,585 | 100,296 | 103,007 | 105,718 |
| 13 | 96,698 | 99,921 | 103,144 | 106,367 | 109,591 | 112,814 | 116,037 | 119,260 | 122,483 | 125,706 |
| 14 | 114,268 | 118,077 | 121,887 | 125,696 | 129,505 | 133,314 | 137,123 | 140,932 | 144,741 | 148,550 |
| 15 | 134,411 | 138,891 | 143,372 | 147,853 | 152,334 | 156,814 | 161,295 | 161,900 * | 161,900 * | 161,900 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2017 Locality Pay Area Definitions page: http://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2017/locality-pay-area-definitions/