Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Ave.
Glendale, California 91203
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
pmohan@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
600 Canterbury Lane
Sagamore Hills, Ohio 44067
Telephone: (330) 748-4475
Facsimile: (330) 748-4475
jpdorigan@aol.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. PEDERSON, R. ALCARAZ, and S. MASON, individually and on behalf of all others similarly situated, and on behalf of aggrieved employees, the people of the State of California and the Labor Commissioner,<br><br>Plaintiffs,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., RICHARD B. HAWES, and SALLY A. LEIBLE,<br><br>Defendants. | Case No. 5:15-cv-02400-VAP-SP<br>*Assigned to Hon. Virginia A. Phillips*<br><br>**NOTICE OF MOTION AND MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:       July 2, 2018<br>Time:       2:00 p.m.<br>Courtroom: 8A<br>              350 West 1st Street<br>              Los Angeles, CA 90012 |

1    **PLEASE TAKE NOTICE** that, on July 2, 2018, at 2:00 p.m.., in Courtroom 8A

2    of the above-entitled Court located at 350 West 1st Street, Los Angeles, California

3    90012—or at such other date, time, or place as the Court may designate—Plaintiffs

4    Gideon Pederson, Ruth Alcaraz and Sasha Mason will move for an order granting final

5    approval of the class-wide settlement reached in the above-captioned action.[1]

6    The Motion is based on the grounds that the settlement is fair, adequate and

7    reasonable given the:

8    (1) relative strengths and weaknesses of the Parties' claims and defenses;

9    (2) risks, expense, complexity and likely duration of the litigation, but for

10    the settlement;

11    (3) amount offered in settlement; and

12    (4) uncertainties of appeal.

13    As very clear validation of the reasonableness of this non-reversionary settlement,

14    as of the filing of this Motion, none of the 2,941 class members has objected to the

15    settlement.[2]  Since the claims period does not expire until June 18, 2018, Plaintiffs will

16    file a supplement with the Court detailing the class participation rates and the number of

17    opt outs or objections, if any after the close of the claims period.

18    The Motion will be made and based upon this Notice of Motion; the Memorandum

19    of Points and Authorities appended hereto; the Declarations of Alan Harris and Alan

20    Garrido, the claims administrator representative, filed herewith; all of the pleadings,

21    papers, and documents contained in the file of the within action; and such further

22    evidence and argument as may be presented at or before the hearing on the Motion.

23    The required Local Rule 7-3 meet-and-confer took place commencing on January

24    8, 2018, and on various dates thereafter.  (See June 2, 2018, Decl. of Alan Harris in Supp.

25
26    [1] Unless otherwise noted, capitalized terms herein have the meanings set forth in the Settlement Agreement.

27    [2] After class notice was mailed, the claims administrator received a request from an individual to be added to the class.  This request was approved after review of supporting

28    documentation which resulted in an increase in the class size by one person—to 2,941 class members.

1    of Mot. for Final Approval of Class-Action Settlement ("Harris Decl.") ¶ 1.)

2    Dated:  June 4, 2018                            Respectfully submitted

3                                             HARRIS & RUBLE
                                              LAW OFFICES OF JOHN P.
4                                             DORIGAN

5                                            /s/ *Alan Harris*

6                                           Alan Harris
                                            John P. Dorigan
7                                           *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.    Introduction ...................................................................................................1

II.   Summary of the Litigation's Claims and of the Relevant Procedural............3
      History..........................................................................................................3

      A.    Plaintiffs' Initiation of this Action ....................................................3

      B.    Class Counsel's Investigation ...........................................................4

      C.    Mediation and Court-Ordered Stay ...................................................5

      D.    Scheduling Conference and Continued Settlement Efforts.................5

      On or about January 30, 2017, the Parties appeared before the Court
      for a...........................................................................................................5

      E.    Settlement ........................................................................................5

III.  The Settlement Meets The Standards For Final Approval As It Is Fair,
      Reasonable, And Adequate...........................................................................6

      A.    The Terms Of The Proposed Settlement .............................................6

            i.     The Settlement Fund Provides Class Members With A
                   Substantial Recovery ..............................................................8

            ii.    Additional Non-Monetary Relief..............................................9

            iii.   Plaintiffs' Incentive Awards And Requested Individual
                   Payments .................................................................................9

            iv.    Class Counsel's Fee And Expense Award And Costs Of
                   Claims Administration ...........................................................10

            v.     Notice to the Class .................................................................13

            vi.    Release Provisions and Opting Out ........................................14

      B.    The Settlement Meets The Requirements For Final Approval .........15

            i.     Settlement Negotiations Were Conducted at Arm's
                   Length ...................................................................................16

            ii.    The Settlement Has No Obvious Deficiencies ........................16

IV.   Conclusion .................................................................................................21

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

Angeles v. US Airways, Inc.,
  2013 WL 622032 (N.D. Cal. filed Feb. 19, 2013)...................................................17

Blackwell v. Skywest Airlines, Inc.,
  2008 WL 5103195 (S.D. Cal. filed Dec. 3, 2008).................................................17

Boeing Co. v. Van Germet,
  444 U.S. 472 (1980)...............................................................10, 12, 13, 14

Brinker Rest. Corp. v. Superior Court,
  53 Cal. 4th 1004 (2012)...............................................................19

Churchill Village, LLC v. Gen. Elec.,
  361 F.3d 566 (9th Cir. 2004) ...............................................................6

Cicero v. DirecTV, Inc.,
  2010 WL 2991486 (C.D. Cal. filed July 27, 2010) .......................................11

Class Plaintiffs v. City of Seattle,
  955 F.2d 1268 (9th Cir. 1992) ...............................................................6

Craft v. County of San Bernardino,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...............................................11

Hanlon v. Chrysler Corp.,
  150 F.3d 1011 (9th Cir. 1998) ...............................................6, 15, 16

Helm v. Alderwoods Group, Inc.,
  2011 WL 5573837 (N.D. Cal. filed Nov. 15, 2011)......................................9

Hesse v. Sprint Corp.,
  598 F.3d 581 (9th Cir. 2010) ...............................................................15

Hopkins v. Stryker Sales Corp.,
  2013 WL 496358 (N.D. Cal. filed Feb. 6, 2013)........................................11

In re Austrian & German Bank Holocaust Litigation,
  80 F.Supp.2d 164 (S.D.N.Y. 2000) ...............................................21

In re NASDAQ Market-Makers Antitrust Litig.,
  187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................19

In re Pacific Enter. Sec. Litig.,
  47 F.3d 373 (9th Cir. 1995) ...............................................................6

In re Warfarin Sodium Antitrust Litig.,
  212 F.R.D. 231 (D. Del. 2002) ...............................................19

Kakani v. Oracle Corp.,
  2007 WL 2221073 (N.D. Cal. filed Aug. 2, 2007)......................................9

Monterrubio v. Best Buy Stores, L.P.,
  291 F.R.D. 443 (E.D. Cal. 2013)...............................................14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mullane v. Cent. Hanover Bank & Trust Co.,
   339 U.S. 306 (1950)..............................................................................................14
Ordonez v. Radio Shack, Inc.,
   2013 WL 210223 (C.D. Cal. filed Jan. 17, 2013) .............................................19
Rodriguez v. West Publ'g Corp.,
   563 F.3d 948 (9th Cir. 2009) .....................................................................10, 19
Rodriguez v. West Publ'g Corp.,
   2007 WL 2827379 (C.D. Cal. filed Sept. 10, 2007)......................................19, 20
Rowe v. N.H. Motor Transp. Ass'n,
   552 U.S. 364 (2008)..............................................................................................17
Sandoval v. Tharaldson Employee Mgmt., Inc.,
   2010 WL 2486346 (C.D. Cal. filed June 15, 2010) ............................................9
Singer v. Becton Dickinson & Co.,
   2010 WL 2196104 (S.D. Cal. filed June 1, 2010)...............................................11
Staton v. Boeing Co.,
   327 F.3d 938 (9th Cir. 2003) ...............................................................................12
Stoetzner v. U.S. Steel Corp.,
   897 F.2d 115 (3d. Cir. 1990) ...............................................................................21
Torrisi v. Tucson Elec. Power Co.,
   8 F.3d 1370 (9th Cir. 1993) .................................................................................17
Van Vranken v. Atl. Richfield Co.,
   901 F. Supp. 294 (N.D. Cal. 1995)......................................................................10
Williams v. Boeing Co.,
   517 F.3d 1120 (9th Cir. 2008) .............................................................................15
Wren v. RGIS Inventory Specialists,
   2011 WL 1230826 (N.D. Cal. filed Apr. 1, 2011) .............................................9

**Statutes**

49 U.S.C. § 41713.......................................................................................................17
section 203 of the California Labor Code..............................................................2, 3
section 17200 *et seq.* of the California Business and Professions Code .............................4

**Rules**

Fed. R. Civ. P. 23(c)(1)..............................................................................................19
Fed. R. Civ. Proc. 23(c)(2)(B) ...........................................................................13, 14
Fed. R. Civ. Proc. 23(e) ............................................................................................15
Fed. R. Civ. Proc. 23(e)(2)..........................................................................................6

**Regulations**

8 Cal. Code Regs. 11090 § 14(A) ..............................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

Plaintiffs Ruth Alcaraz, Gideon Pederson, and Sasha Mason ("Plaintiffs") and Defendant Airport Terminal Services, Inc. ("ATS") reached a $600,000 settlement of the class-wide claims alleged in the above-captioned action, a settlement which has achieved significant changes in ATS policies as well as a gross cash recovery of over $200 per employee.[3]  On April 5, 2018, this Court preliminarily approved the Settlement Agreement [ECF Doc. 41].  Plaintiffs now move for final approval of the settlement.

If all requested fees and costs are awarded, and there is one hundred percent participation, the average net recovery will be approximately $102 for each Class Member (=$302,186/2,941). However, since only those Class Members who submit a valid Claim Form will benefit from the cash to be distributed, the actual gross and net benefit to Participating Class Members will be greater. Class Counsel will submit a supplemental Declaration detailing the final class participation numbers after the close of the claims period (June 18, 2018).  The Settlement Agreement is attached to the June 2, 2018 Declaration of Alan Harris ("Harris Decl.") filed herewith as Exhibit 1.

The Court's April 5, 2018 Preliminary Approval Order directed distribution of the Class Notice and Claim Form in the manner specified by the Settlement Agreement. Following entry of the Preliminary Approval Order, the Parties ensured that each step necessary to effectuate the Settlement Agreement occurred as ordered by the Court. Specifically, on May 3, 2018, Notice was published and mailed to Class Members, who could choose whether to participate in the settlement, object, or opt-out of it by June 18, 2018.

The response from the Class Members thus far has been positive.  As of the filing of this Motion, the claims administrator has received no objections to the Settlement. (June 1, 2018 Declaration of Alan Garrido ("Garrido Decl.") ¶ 12.)  The Class Members have until

---

[3] The Declarations of Plaintiffs Pederson, Alcaraz and Mason are attached as Exhibits 3, 4 and 5 respectively to the June 4, 2018 Declaration of Alan Harris ("Harris Decl.")

PLS.' NOT. OF MOT. AND MOT. FOR FINAL APPROVAL; MEM. OF P. & A. IN SUPP. THEREOF

June 18, 2018 to submit claim forms, and Plaintiffs will file a supplement detailing the final class participation information after the close of the claims period.

In this action, Plaintiffs contend that ATS did not: (i) provide meal period premium wages for those occasions when employees were not provided with adequate meal periods, (ii) provide adequate wage statements; (iii) failed to reimburse employees for uniform-related expenses; (iv) provide restitution of withheld uniform deductions and (v) failed to pay correct overtime. Plaintiffs contend that ATS's alleged failures have resulted in a violation of the Labor Code's requirement that all wages due and owing be paid to former employees upon the termination of their employment, resulting in exposure to payment of penalties under section 203 of the California Labor Code (the "Code").

Under the terms of the Settlement Agreement, a Gross Settlement Payment of $600,000 will be tendered to compensate employees for the alleged violations.[4]  After deducting amounts for requested attorney's fees ($200,000) and costs ($9,357.47), estimated claims-administration expenses ($15,000), class representative incentive awards ($500 to each Plaintiff) and individual payments to Plaintiffs on account of their execution of broad general releases of the claims articulated in the litigation, claims for retaliation and discrimination arising thereafter and their agreement to refrain from seeking future employment with Defendant ($4,500 to each Plaintiff), the PAGA penalty payment to the Labor Workforce and Development Agency ($7,500), and the security deposits and interest held by ATS as of January 1, 2018 ($50,956.45)[5] a minimum of $302,186 will remain for distribution to the Settlement Class as a whole, with the security Deposit Sums also being returned to the specific workers who had previously tendered them to ATS.  Accordingly, assuming 100% participation by the 2,941 members of the Settlement Class, the plan of allocation specified by the Settlement Agreement will provide an average net payment of $102 dollars per class member.  Of course, a 100% participation rate is unlikely for any class.  As explained below, because the Gross

---

[4] Capitalized terms herein are the same as defined in the Settlement Agreement.
[5] All employees will receive refund of their security deposits, in full, whether or not they have submitted a Claim.

1   Settlement Payment is non-reversionary, the amounts are subject to upward adjustment as

2   a function of the number of employees who participate in the claims process.  For any

3   Class Member who fails to submit a Claim Form, a settlement payment will not be made

4   to the Class Member and the Net Settlement Fund will be increased on a *pro rata* basis.

5   Participating Settlement Class members will therefore receive significantly more than

6   $100 each.  All told, this is an outstanding result, particularly in light of the arguably

7   *dispositive airline-industry defenses* applicable to each of Plaintiffs' claims, discussed

8   *infra*.  (Harris Decl., ¶ 2.)  Because the Settlement satisfies all the criteria for final

9   approval under Rule 23 of the Federal Rules of Civil Procedure, including that it is fair,

10  reasonable and adequate, Plaintiffs respectfully request that the Court issue an Order

11  granting final approval of the class action settlement in this Action.

12  **II.    Summary of the Litigation's Claims and of the Relevant Procedural**

13  **History**

14          **A.    Plaintiffs' Initiation of this Action**

15          In November of 2015, Plaintiffs commenced this action on behalf of a putative

16  class of all current and or former employees employed by Defendant within California at

17  any time from November 20, 2011.  On January 25, 2016, Plaintiffs filed a first amended

18  complaint to clarify that they were authorized to pursue claims under the California

19  Labor Code Private Attorneys General Act of 2004, Code section 2698 et seq. ("PAGA").

20  On April 14, 2016, Plaintiffs filed the operative Second Amended Complaint ("SAC"),

21  asserting twelve causes of action:  (1) a claim for missed meal breaks under Code

22  sections 226.7 and 512; (2) a claim for improper pay stubs under section 226(a) of the

23  Code; (3) a claim alleging that ATS failed to reimburse employees for uniform-

24  maintenance expenses under section 2802 of the Code; (4) a claim for failing to properly

25  deal with security deposits under sections 403-406 of the Code, as well as section 9(c) of

26  the Wage Order; (5) a claim for unlawful deductions from wages, in violation of Code

27  section 221; (6) failure to pay proper overtime in violation of sections 510 and 1194 of

28  the Code; (7) failure to pay all wages as required by Code sections 201, 201.3(B)(1) and

continuing wages under section 203 of the Code; (8) a claim for unfair competition under section 17200 *et seq.* of the California Business and Professions Code; (9) a claim violation of the FLSA; (10) individual claims for failure to produce records requested under section 226(b) of the Code; (11) individual claims for failure to produce records under section 1198.5 of the Code; and (12) a claim for civil penalties under section 2698 *et seq.* of the Code. The civil-penalties claim is premised in part on the ATS failure to provide adequate seating for its employees, as required by section 14 of the wage order,[6] as well as the ATS violations of Code provisions and Wage Order requirements with respect to treatment of security deposits.[7]

## B.    Class Counsel's Investigation

Both before initiating the Action and afterwards, Class Counsel investigated the claims against Defendant and also analyzed any and all applicable defenses raised by Defendant. Class Counsel's investigation included work conducted in connection with a prior class action lawsuit, <u>Collette McDonald v. Airport Terminal Services</u>, No. 5:11-cv-01946-VAP-SP (C.D. Ca. 2011). Class Counsel's investigation also included the exchange of information and documentation pursuant to informal discovery methods, service of formal discovery, numerous conferences between Class Counsel and Defendant's Counsel, and Class Counsel's interviews of Plaintiffs and Class Members.

In connection with these attempts at resolution, ATS's counsel provided information as to the class size, and the number of automatic meal period deductions

---

[6] The SAC alleges that ATS failed to provide its employees with adequate seating. In this regard, IWC Wage Order 9 states that ―[a]ll working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.‖ 8 Cal. Code Regs. 11090 § 14(A).

[7] Plaintiffs contend that the ATS practice of taking uniform deductions from Plaintiffs' and Airport Agents' paychecks violates Code §§ 403, 404, and 405, giving rise to civil penalties under 2699 (f) (2). Defendant ATS commingled the earned but unpaid wages of Plaintiffs and Airport Agents with other funds of ATS in violation of Code § 405. ATS failed and refused to pay interest to workers on the return of such deposits. According to Cose section 2699.5: "The provisions of subdivision (a) of Section 2699.3 apply to any alleged violation of . . . 403 [requiring segregated deposit of cash bonds, and a written agreement signed by employer and employee detailing the conditions] [and] subdivision (b) of Section 404 [requiring return of deposit with interest]."

1  taken during the relevant period when employees worked shifts of more than five hours

2  per day.  ATS also provided information regarding required security deposits and

3  alternative workweek elections.  (Harris Decl. ¶ 3.)

4      **C.    Mediation and Court-Ordered Stay**

5      After extensive negotiations, including several settlement offers and counteroffers,

6  the Parties agreed that the services of a private mediator would assist in resolving

7  Plaintiff's claims.  (Harris Decl. ¶ 4.)  On or about August 9, 2016, the Parties attended a

8  mediation before Lisa Klerman, an experienced mediator of cases involving the wage and

9  hour laws at issue in the Action. The Parties were unable to reach a mediated resolution.

10  On or about September 1, 2016, the Court stayed the Action through November 7, 2016,

11  to permit the Parties and mediator to continue efforts to attempt to settle the Action.

12  (Harris Decl. ¶ 4.)

13      **D.    Scheduling Conference and Continued Settlement Efforts**

14      On or about January 30, 2017, the Parties appeared before the Court for a

15  scheduling conference. The Parties continued to meet and confer on numerous occasions,

16  reviewing Plaintiffs' claims, the alleged defenses, the potential for a mediated resolution

17  of the Action. On or about May 12, 2017, the Court stayed the Action through August 7,

18  2017. The Parties and mediator continued to meet and confer to explore the potential for

19  settlement. (Harris Decl. ¶ 5.)

20      **E.    Settlement**

21      After more than 16 months of negotiations and exchange of information between

22  the Parties following the initial mediation, the Parties finally agreed to a settlement, and

23  on or about January 4, 2018, the Parties filed a notice of settlement. The settlement was

24  negotiated in light of all known facts and circumstances—including the potential

25  difficulty of proving Plaintiffs' claims, potential defenses, the uncertainty associated with

26  litigation, the risks of significant delay, and numerous potential appellate issues.  The

27  settlement was reached only after extensive arm's-length negotiations, with the assistance

28  of the mediator Lisa Klerman. Over the course of the next two months, the Parties

proceeded to negotiate the terms of a long-form settlement agreement encompassing the terms of the Memorandum of Understanding.  (Harris Decl. ¶ 6.)  In March 2018, those negotiations resulted in the execution of the Settlement Agreement.  The Court granted Preliminary Approval of the Settlement on April 5, 2018 [ECF Doc. 41], and notice was mailed to Class Members on May 3, 2018.

## III.    The Settlement Meets The Standards For Final Approval As It Is Fair, Reasonable, And Adequate

Pre-trial settlement of complex class actions is strongly favored.  See Churchill Village, LLC v. Gen. Elec. Co., 361 F.3d 566, 576 (9th Cir. 2004); In re Pacific Enter. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).  In determining if a settlement meets Rule 23 final-approval standards, the district court must find that the settlement is "fair, reasonable, and adequate."  Fed. Rule Civ. Proc. 23(e)(2).  There is an initial presumption of fairness when a proposed class settlement is negotiated at arm's length and presented for court approval.  See Newberg and Conte, Newberg on Class Actions (4th ed. 2002) ("Newberg"), § 11:41, p. 90.

This determination to approve or reject a settlement is made in the "sound discretion of the trial court."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  In assessing a settlement, the district court considers a number of factors, including:  "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  Id.  In addition, a settlement must not have been the product of collusion.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992).  Here, these factors heavily weigh in favor of the Court's granting final approval of the settlement.

### A.    The Terms Of The Proposed Settlement

Pursuant to the terms of the Settlement Agreement, ATS will pay $600,000 for the

1    benefit of these 2,941 members. The $600,000 settlement amount constitutes the Gross

2    Settlement Payment. (Harris Decl., Ex. 1 at ¶ 5.1.) The Gross Settlement Payment will

3    be used to pay the costs of delivering the Class Notice and the claim form to the

4    Settlement Class, as well as to pay attorney's fees and costs to Class Counsel, incentive

5    awards and individual payments (on account of their execution of broad releases of

6    claims and agreement not to seek future employment) to Plaintiffs, and a PAGA payment

7    to the LWDA, all subject to approval by this Court.[8] (Harris Decl., Ex. 1 at ¶¶ 5.1, 5.3,

8    5.4 and 5.5.) The Gross Settlement Payment also includes the value of Class Member

9    security deposits held by Defendant as of January 1, 2018 ($50,957.45) and accrued

10    interest as of January 1, 2018. (Harris Decl., Ex. 1 at ¶ 5.7.)

11      After the above-noted deductions have been made from the Gross Settlement

12    Payment, the balance (the "Net Settlement Fund") will be distributed to Settlement Class

13    members who do not "opt out" of the settlement and who submit valid and timely claim

14    forms.[9] (Harris Decl., Ex. 1 at ¶ 5.8.) This distribution will be made on a *pro rata* basis

15    according to the Class Member's length of active employment in the State of California

16    as a non-exempt employee since November 20, 2011, through the date of preliminary

17    approval, as reflected in ATS's payroll records. Each Class Member's proportional share

18    shall be calculated by multiplying the balance of the Net Settlement Amount by a

19    fraction, the numerator of which is the total of the Class Member's number of workweeks

20    during the class period, and the denominator of which is the total of all workweeks for

21

22 [8] Class Counsel has requested an award of attorney's fees of 33.33% of the Gross
Settlement Payment ($200,000), an award of incurred litigation costs of $9,357.47,
23 incentive payments to Plaintiffs of $500 each and individual payments to Plaintiffs of
$4,500 each. (Harris Decl., Ex. 1 at ¶¶ 5.3 and 5.4; See also Motion for Award of
24 Attorney's Fees [ECF Doc. 47].) The reasonableness of these amounts is thoroughly
discussed in the Motion for Award of Attorney's Fees [ECF Doc. 47]. As for claims-
25 administration fees and expenses, Class Counsel presently anticipate that such fees and
costs will not exceed $15,000. (Harris Decl. ¶ 7.) Indeed, the Declaration of claims
26 administrator representative, Alan Garrido, states that the charge for services will be
$14,750. (Garrido Decl., ¶ 16.)
27 [9] Settlement Class members who do not opt out are referred to as "Class Members."
(Harris Decl., Ex. 1 at ¶ 1.23.)
28

Class Members who have submitted valid and timely claim forms.  (Harris Decl., Ex. 1 at ¶ 5.8.1.)  Accordingly, the longer a participating Class Member worked for ATS, the greater his or her share.  Eighty percent of each Class Member's Individual Settlement Payment shall be characterized as 1099 income, and twenty percent as W-2 income. (Harris Decl., Ex. 1 at ¶ 5.8.3.) As part of the Settlement, ATS shall distribute all deposit sums, which include accrued interest, to Class Members on whose behalf the security deposits were held.  (Harris Decl., Ex. 1 at ¶ 5.7.)  According to ATS's records, the 2,941 Settlement Class members worked a total of approximately 138,986 weeks during the class period.  (Harris Decl. ¶ 14.)

### i.    The Settlement Fund Provides Class Members With A Substantial Recovery

The sum of potential damages on account of unpaid premium wages for failing to provide proper meal breaks ($37,773) and unpaid overtime ($72,500) is about $110,000. In addition, the Settlement Agreement provides for the return of 100% of the balance of Deposit Sums still retained by ATS, just over $50,000.  The balance of the payments represent attorney's fees and costs as well as a sum attributable to penalties, civil penalties and liquidated damages, recoveries which courts routinely permit to be substantially discounted in cases in which unpaid wage claims are paid, as here.

Assuming that the Court approves $200,000 in attorney's fees (equal to 33.33% of the Gross Settlement Payment), the requested $9,357.47 in litigation expenses, the estimated $15,000 in claims-administration expenses, $500 incentive awards to each Plaintiff, $4,500 individual payments to the Plaintiffs on account of their broad general release of claims, including individual claims for retaliation and discrimination, and their agreement not to seek employment with Defendant, and $7.500 for payment to the LWDA, $353,143 will remain.  Out of the $353,143, $50,956.45 is the Deposit Sum held by ATS which will be distributed to Class Members on whose behalf the security deposits are being held.  The remaining Net Settlement Amount is $302,186.  Assuming a 100% participation rate, the average net payment to Class Members will therefore be

some $102 (= $302,186 ÷ 2,941 Class Members).

Of course, "[h]uman nature dictates that[,] despite counsel's best efforts, not all [Settlement C]lass members will submit claims." Kakani v. Oracle Corp., 2007 WL 2221073 at *4 (N.D. Cal. filed Aug. 2, 2007). Accordingly, it is more reasonable to assume a participation rate by the Settlement Class of over 20%. See e.g., Sandoval v. Tharaldson Employee Mgmt., Inc., 2010 WL 2486346 at *7 (C.D. Cal. filed June 15, 2010) (in approving a settled wage-and-hour class action, noting that "24% of [c]lass [m]embers submitted valid claim[s]," which the court characterized as a "positive" response). If 25% of the Settlement Class submit claims, the average net settlement payment increases to $411 (= $302,186 ÷ 735 Class Members). (Harris Decl., ¶ 22.)

## ii.    *Additional Non-Monetary Relief*

Aside from the above-described cash fund, as a direct result of this lawsuit ATS has changes its security deposit practices. Specifically, ATS stopped taking deposits in August 2017 and no longer requires security deposits at all. (Harris Decl. ¶ 13.) This is a noteworthy benefit from this lawsuit, given that Plaintiffs are former employees who necessarily would not have been able to obtain such relief even if they had prevailed at trial. See, e.g., Helm v. Alderwoods Group, Inc., 2011 WL 5573837 at *1, 5 (N.D. Cal. filed Nov. 15, 2011) (in a wage-and-hour action alleging Code violations, holding that "[a] former employee does not have standing o seek injunctive relief for any of the violations of his former employer because he cannot demonstrate  a 'real or immediate threat of irreparable injury'"). Because "this concession from [ATS] exceeds what Plaintiff[] could have obtained even if [she] had prevailed at trial," it has value separate and apart from the cash fund described above. Wren v. RGIS Inventory Specialists, 2011 WL 1230826 at *28 (N.D. Cal. filed Apr. 1, 2011).

## iii.    *Plaintiffs' Incentive Awards And Requested Individual Payments*

Under the terms of the Settlement Agreement, Class Counsel has applied for an incentive award to Plaintiffs of $500 each for their efforts in bringing and prosecuting this case. (Harris Decl. ,Ex. 1 at ¶¶ 5.2 and 5.4.) Granting the requested incentive award

will *still* result in the settlement amounts detailed above.

According to the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of [a] class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) (emphasis removed), vacated on other grounds, 688 F.3d 645, 660 (9th Cir. 2012). As recently explained by the Southern District of California, courts should consider "'the risk to the class representative in commencing suit, both financial and otherwise,'" as well as "'the amount of time and effort spent by the class representative'" and "'the personal benefit (or lack thereof) enjoyed by the class as a result of the litigation.'" Smith, 2013 WL 163293 at *6 (quoting Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, all of the factors weigh in favor of approving the awards. First, as a direct result of Plaintiffs' having brought this suit, participating Class Members will receive a cash benefit in recognition of the claims alleged in this case, most of which are penalties. Second, Plaintiffs have expended considerable time conferring with Class Counsel and their investigators, providing factual background and support, analyzing ATS's provided data, and participating in mediation and subsequent settlement discussions. (Harris Decl., Exs. 2, 3, and 4 (March 9, 2018 Declarations of Gideon Pederson, Sasha Mason and Ruth Alcaraz in Supp. of Mot. for Preliminary Approval of Class-Action Settlement & Conditional Certification of Settlement Class.))

### iv.    Class Counsel's Fee And Expense Award And Costs Of Claims Administration

Pursuant to the terms of the Settlement Agreement, Class Counsel has applied for an award of attorney's fees in the amount of $200,000 (33.33% of the Gross Settlement Payment), as well as an award of costs of $9,357.47. (Harris Decl., Ex. 1 at ¶ 5.3; see also ECF Doc. 47.) Principles of equity permit fees and costs to come from the fund as a whole. See, e.g., Boeing Co. v. Van Germet, 444 U.S. 472, 478 (1980) (explaining that

the "common-fund" doctrine "allows a court to . . . assess[] attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.").

Although the requested 33.33% exceeds the 25% "benchmark" for common-fund cases, see, e.g., Vasquez, 266 F.R.D. at 491 (stating that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"), it is warranted in this case on account of (i) the fact that participating Class Members will likely receive 100% of their outstanding meal-period compensation even if the requested fee is awarded—an outstanding result, given the potentially dispositive defenses to Plaintiffs' claims, and (ii) the fact that Class Counsel's lodestar substantially exceeds the fee request. See Singer v. Becton Dickinson & Co., 2010 WL 2196104 at *8–9 (S.D. Cal. filed June 1, 2010) (departing from the benchmark and awarding fees equal to 33.33% of the settlement fund when class members would recover "110% of their claimed losses"); Hopkins v. Stryker Sales Corp., 2013 WL 496358 at *3 (N.D. Cal. filed Feb. 6, 2013) (explaining that courts depart from the benchmark when the requested fees are "significantly less than the lodestar"). According to the Central District, when compared to other settlements of comparable size, the 33.33% request is reasonable. See, e.g., Craft v. County of San Bernardino, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (explaining that "25% is substantially below the average class fund fee nationally" and that "[c]ases of under $10 [m]illion will often result in fees above 25%"); Cicero v. DirecTV, Inc., 2010 WL 2991486 at *6 (C.D. Cal. filed July 27, 2010) (explaining that "case law surveys suggest that . . . 30–50% [is] commonly awarded in case[s] in which the common fund is relatively small"). In any event, the Settlement Class has been given an opportunity to object to Class Counsel's requested fees and the Motion for an Award of Attorney's Fees is scheduled for hearing on July 2, 2018.

In addition, the Settlement Agreement calls for the appointment of a Settlement Administrator for purposes of, *inter alia*, notifying the Class of the Class Settlement, overseeing the claims-submission process, calculating each Class Member's Settlement

Award, and making all the payments under the Settlement Agreement.  (Harris Decl.,

Ex. 1, ¶ 17.)  As noted above, the Administration Costs associated with this process will

be deducted from the Total Maximum Settlement Amount.  (Harris Decl., Ex. 1, ¶ 17.)

The Court has approved the appointment of CPT Group, Inc. to be the Claims

Administrator.[10]  The costs associated with the administration of this matter shall not

exceed $15,000, and are estimated by CPT to be $14,750.  This includes all costs

incurred to date, as well as the estimated costs involved in completing the settlement

distribution.  (Garrido Decl. ¶ 16.)  The modest magnitude of these costs is the result of

Class Counsel insisting on a bidding process in order to secure the most economical

alternative in selection a Claims Administrator.

Principles of equity permit fees and costs associated with a common-fund

settlement to come from the fund itself.  See, e.g., Boeing Co. v. Van Germet, 444 U.S.

472, 478 (1980) (explaining that the common-fund doctrine "allows a court to . . .

assess[] attorney's fees against the entire fund, thus spreading fees proportionately among

those benefited").  This principle extends to the fees and costs of claims administration.

See Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003) (stating that "[t]he post-

settlement cost of providing notice to the class can reasonably be considered a benefit to

the class").  Further to these equitable-based holdings, courts approving common-fund

settlements routinely permit attorney's fees and costs, and the fees and costs of claims

administration, to be deducted from the common fund.  See, e.g., Jefferson v. H & M

Hennes & Mauritz, L.P., 2013 U.S. Dist. LEXIS 2875, at *7–10 (C.D. Cal. filed Jan. 7,

2013) (in a wage-and-hour settlement, deducting 30% of the common fund for attorney's

fees, as well as additional amounts for litigation expenses and claims-administration

costs); Franco v. Ruiz Food Prods., Inc., 2012 U.S. Dist. LEXIS 169057, at *36, 68 (E.D.

Cal. filed Nov. 27, 2012) (in a wage-and-hour settlement, awarding 33% in attorney's

fees, an additional amount for litigation costs, and an additional amount for claims-

---

[10] Detail concerning the history, capabilities and experience of CPT Group, Inc. is found
at the company website: https://cptgroup.com/.

1   administration costs, all payable from the common fund).

2        Here, the $600,000 Settlement Amount is a common fund, and all associated fees

3   and costs may therefore be deducted from the fund.  As explained by the Ninth Circuit, a

4   common fund exists "when (1) the class of beneficiaries is sufficiently identifiable, (2)

5   the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude

6   to those benefiting."  In re Petition of Hill, 775 F.2d 1037, 1041 (9th Cir. 1985).

7   According to the Supreme Court, "the[se] criteria are satisfied when each member of a

8   certified class has an undisputed and mathematically ascertainable claim to part of a

9   lump-sum [amount]."  Boeing Co., 444 U.S. at 479 (1980).  The Settlement Amount is a

10  common fund because, under the Settlement Agreement, each participating Class

11  Member is entitled to a sum certain computed as a function of the relative number of his

12  or her workweeks.  Class Counsel and the Settlement Administrator are therefore entitled

13  to have their fees and costs paid from the Total Settlement Amount.  In any event, Class

14  Members will be given an opportunity to object to Class Counsel's request.  The Motion

15  for Attorney's Fees, Incentive Award and Reimbursement of Costs was filed on May 7,

16  2018 [ECF Doc. 47], just days after the May 3, 2018 mailing of the Class Notice and well

17  before the end of the Notice period of June 18, 2018.

18  *v.*   ***Notice to the Class***

19       Pursuant to the Preliminary Approval Order, the Parties sent Class Notice to the

20  Class Members on May 3, 2018.  The Class Notice includes all of the information

21  required by Federal Rule of Civil Procedure 23.  Specifically, the proposed Notice

22  describes the nature of the Action, the definition of the Class, and Plaintiffs' claims;

23  explains that Class Members may enter an appearance through an attorney and that the

24  Court will exclude those Members requesting exclusion; and specifies the time

25  requirements and manner of requesting exclusion, as well as the binding effect of a class-

26  wide judgment.  (Compare Garrido Decl., Ex. A with Fed. R. Civ. Proc. 23(c)(2)(B)

27  (specifying the elements of class notice).)  The Notice further explains that Class

28  Members may object and provides the time and place of the Final Approval Hearing;

1  prominently displays the address and telephone number of Class Counsel and the

2  procedure for making inquiries; and provides information regarding the contemplated

3  deductions from the Gross Settlement Amount.  (Garrido Decl., Ex. A.)  In addition, the

4  Class Notice describes the procedures for allocating the Net Settlement Sum to

5  Participating Class Members.  (Id.)

6       In compliance with the Preliminary Approval Order, the Claims Administrator

7  delivered the Class Notice and Claim Form to Class Members via first-class mail on May

8  3, 2018.  (Garrido Decl., ¶ 7).  Class Members have forty-five days from the date of the

9  initial mailing, to submit Claim Forms or exclusion requests to the Settlement

10  Administrator.  Class Members are permitted to file objections within the forty-five-day

11  period after the date of the initial mailing. These notice procedures constitute the "best

12  notice . . . practicable under the circumstances."  Fed. R. Civ. Proc. 23(c)(2)(B).  See e.g.

13  Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 452 (E.D. Cal. 2013) (explaining

14  that "the 'best notice . . . practicable under the circumstances'" does not mean that "actual

15  notice" must be provided to each class member; that "[n]otice by mail is sufficient to

16  provide due process to known affected parties, so long as the notice is 'reasonably

17  calculated . . . to apprise interested parties of the pendency of the action"; and that "notice

18  by mail to [c]lass [m]embers' last known addresses" satisfies this standard) (quoting Fed.

19  R. Civ. Proc. 23(c)(2)(B); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306,

20  314 (1950)); Moshogiannis v. Sec. Consultants Group, Inc., 2012 U.S. Dist. LEXIS

21  16287, at *20 (N.D. Cal. filed Feb. 8, 2012) (approving a forty-five-day claims window).

22  **vi.    *Release Provisions and Opting Out***

23       If the Court grants final approval of the settlement, then, in exchange for the

24  consideration described above, Class Members will be deemed to have released ATS

25  from those claims that were or could have been asserted in the Complaint stemming from

26  the specific facts alleged therein.  (Harris Decl., Ex. 1 at ¶ 3.2.)  If a Settlement Class

27  member opts out pursuant to the procedures outlined in the Class Notice, then he or she

28  will not release any claims that he or she may have against ATS.  (Harris Decl., Ex. 1 at ¶

1.23 (defining "Class Members" as only those individuals "who do not exclude themselves"), ¶ 4.4 (stating that those Settlement Class Members who opt out of the settlement "shall not be bound by the release provisions in this Agreement or the applicable release provisions in any order granting final approval of class action settlement.")  The scope of this release is proper.  See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims settled in the class action.'") (quoting Williams v. Boeing Co., 517 F.3d 1120, 1133 (9th Cir. 2008)). Were a Class Member to opt out from the Settlement, pursuant to the procedures outlined in the Class Notice, then he or she would not release any claims that he or she may have against Defendant.

### B.    The Settlement Meets The Requirements For Final Approval

Rule 23 provides that "[t]he claims . . . of a certified class may be settled . . . only with the Court's approval." Fed. R. Civ. Proc. 23(e).  In evaluating a proposed settlement, courts consider "(1) the strength of the Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; . . . and [7] the reaction of class members to the proposed settlement." Bolton v. U.S. Nursing Corp., 2013 U.S. Dist. LEXIS 79928, at *12 (N.D. Cal. filed June 6, 2013) (citing Hanlon, 150 F.3d at 1026).  Also relevant is whether "'the settlement agreement was reached in arm's length negotiations,'" which "'create[s] a presumption that the agreement is fair.'" In re MRV Commc'ns., Inc. Derivative Litig., 2013 U.S. Dist. LEXIS 86295, at *9 (C.D. Cal. filed June 6, 2013) (quoting Linney v. Cellular Alaska P'ship, 1997 U.S. Dist. LEXIS 24300, at *5 (N.D. Cal. filed July 18, 1997)).  Here, each factor weighs in favor of approval.

### i.    Settlement Negotiations Were Conducted at Arm's Length

There is no doubt that the Settlement Agreement was reached through arm's length bargaining.  Again, the parties participated in private mediation before an experienced wage-and-hour mediator familiar with the airline industry.  (Harris Decl., ¶ 4.)  During the mediation and in subsequent settlement negotiations, Class Counsel gave serious consideration to ATS's potentially dispositive affirmative defenses, discussed below.  Moreover, in advance of the mediation, ATS's counsel provided Class Counsel with information as to the size of the Settlement Class, as well as to the total number of cancelled meal breaks during the class period.  (Harris Decl. ¶ 7.)  Class Counsel were thus able to calculate potential damages with precision.  Ultimately, the parties agreed upon a Gross Settlement Payment of $600,000—an amount that will likely provide participating Class Members with a substantial portion of their outstanding meal-period compensation, as well as additional amounts for Plaintiffs' other claims.  ATS has also changed its deduction practices as a result of this lawsuit, which is significant non-monetary relief for class members to remedy the alleged deduction violations on a going-forward basis.

### ii.    The Settlement Has No Obvious Deficiencies

According to the Ninth Circuit:

> "Assessing a settlement proposal requires a district court to balance a number of factors:  the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class-action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."

Dunleavy, 213 F.3d at 458 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)) (ellipses in original).  Certain factors may predominate in different factual contexts, and one factor alone may predominate over all the others and provide sufficient

1    grounds for approval of a settlement.  See Torrisi v. Tucson Elec. Power Co., 8 F.3d

2    1370, 1376 (9th Cir. 1993).

3                    a.    *The Strength of Plaintiffs' Case*

4            Since the inception of this case, ATS has asserted that Plaintiff's meal-break

5    claims are preempted under the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.

6    The Northern District of California has held that, because "ADA preemption applies to

7    'state enforcement actions having a connection with, or reference to[,] carrier rates,

8    routes or services . . . even if a state law's effect on rates, routes or services is only

9    indirect,'" and because "enforcing state meal period . . . regulations would impermissibly

10   regulate an air carrier's service" by, say, "prevent[ing] an aircraft from being fueled or

11   serviced" or by preventing "cargo from being unloaded such that [there] would [be an]

12   impact [on] the schedule of the point-to-point transportation of passengers or cargo,"

13   California's meal-break statute is preempted.  Angeles v. US Airways, Inc., 2013 WL

14   622032 at *8–9 (N.D. Cal. filed Feb. 19, 2013) (quoting Rowe v. N.H. Motor Transp.

15   Ass'n, 552 U.S. 364, 370 (2008)) (quotation marks omitted).  See also Blackwell v.

16   Skywest Airlines, Inc., 2008 WL 5103195 at *15–18 (S.D. Cal. filed Dec. 3, 2008)

17   (holding that California's meal-period requirements are preempted under the ADA

18   because they impact an airline's services, routes, and prices).  If preemption applies, *none*

19   of the Settlement Class are entitled to *any* meal-period damages.[11]  The $600,000 Gross

20   Settlement Payment, which will likely provide participating Class Members with a

21   substantial amount of what they are owed for missed breaks, is therefore more than

22   reasonable.  This factor thus weighs in favor of approving the settlement.  (Harris Decl., ¶

23   15.)

24           Another potentially dispositive defense applies to Plaintiff's claim for improper

25   wage statements.  Plaintiffs' wage statement claim is based on the assertion that ATS is a

26   "temporary services employer."  Defendant has argued that ATS does not meet the

27   definition of a temporary services employer because it does not provide workers to its

28

---

[11] Preemption, in other words, is a common issue further justifying class certification.

1    customers, but rather services.  If Defendant were to prevail on this argument, Class

2    Members would not be entitled to any damages for the wage statement claim.  (Harris

3    Decl., ¶ 16.)

4          With respect to Plaintiffs' expense reimbursement claim for uniform maintenance,

5    Defendant has denied that ATS issued any directive requiring employees to dry clean

6    their uniforms and has raised the defense that individualized inquiries would preclude

7    class action treatment of this claim. (Harris Decl., ¶ 17.)

8          With respect to Plaintiffs' unlawful deduction claim, Defendant has argued that

9    there is no private right of action for a Code § 221 claim and is therefore subject to a one

10    year statute of limitations under PAGA.  Defendant also argues that therefore the

11    Plaintiffs lack standing to bring this claim.  (Harris Decl., ¶ 18.)

12          Defendant also disputes the merits of any regular rate based overtime claim or

13    overtime claim based on Defendant's failure to comply with the requirements for

14    alternative workweek elections.  (Harris Decl., ¶ 19.)

15          The defenses raised by ATS potentially eliminate *any* liability for Plaintiffs' meal

16    period, pay-stub, expense reimbursement, unlawful deduction, overtime and derivative

17    continuing-wage claims.  Given these defenses, the $600,000 Gross Settlement Payment,

18    which will provide participating Class Members with an average net payment of at least

19    $102, should be approved.

20                ***b.     The Likely Duration of Further Litigation***

21          In most cases, "'unless the settlement is clearly inadequate, its acceptance and

22    approval are preferable to lengthy and expensive litigation with uncertain results.'"  Nat'l

23    Rural Telcomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004)

24    (quoting Newberg, § 11:50).  In the absence of settlement, the likely duration of further

25    litigation might well be several years.  Accordingly, this factor also weighs in favor of

26    approving the settlement.

27                ***c.     The Risk of Maintaining Class-Action Status Through Trial***

28          Of course, "there is no guarantee that [a d]efendant w[ill] not move for and obtain

1  decertification of [a c]lass before or during trial." Rodriguez v. West Publ'g Corp., 2007

2  WL 2827379 at *8 (C.D. Cal. filed Sept. 10, 2007) (citing In re NASDAQ Market-

3  Makers Antitrust Litig., 187 F.R.D. 465, 476 (S.D.N.Y. 1998)), rev'd on other grounds,

4  563 F.3d 948 (9th Cir. 2009).  See also Rodriguez, 2007 WL 2827379 at *8 (stating that,

5  "if 'insurmountable management problems were to develop at any point, class

6  certification can be revisited at any time under Fed. R. Civ. P. 23(c)(1)'") (quoting In re

7  NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. at 476).  With respect to meal-

8  break claims in particular, the California Supreme Court has held that "[a]n employer's

9  duty . . . under . . . section 512 . . . is an obligation to provide a meal period," which is

10 satisfied if the employer "relieves its employees of all duty, relinquishes control over

11 their activities and permits them a reasonable opportunity to take an uninterrupted 30-

12 minute break." Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012).

13 This means that an employer is not liable for meal-break violations if the employee

14 voluntarily foregoes a break.  As explained by the Central District of California, there is

15 often "no way of determining on a classwide basis whether [missed breaks] were

16 violations . . . or whether individual class members voluntarily opted to start their meal

17 break late, cut it short, or not take a break at all." Ordonez v. Radio Shack, Inc., 2013

18 WL 210223 at *7 (C.D. Cal. filed Jan. 17, 2013).  There is thus a risk that Plaintiffs'

19 claims may be decertified before trial, and this factor weighs in favor of approval.

20            ### d.    *The Settlement Amount Offered*

21        The Gross Settlement Payment of $600,000 will result in an average net payment

22 of $102.  In addition, those employees who have had deductions taken from their wages

23 will be reimbursed for those amounts.  This represents a more-than-reasonable resolution

24 of this case.  See Rodriguez, 2007 WL 2827379 at *9 (noting that a "'settlement amount

25 representing 33% of the maximum possible recovery was well within a reasonable range

26 when compared with recovery percentages in other class action settlements'") (quoting In

27 re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 257–58 (D. Del. 2002).

28 Consequently, this factor weighs in favor of approving the settlement.

### e.    The Extent of Discovery and Stage of the Proceedings

Given the parties' attempts at an early resolution of this case, Plaintiffs have not had occasion to undertake any "formal" discovery.  However, as explained by the Ninth Circuit, "'in the context of class action settlements, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'"  <u>Dunleavy</u>, 213 F.3d at 459 (quoting <u>Linney</u>, 151 F.3d at 1239).  Here, in negotiating the Settlement Agreement, Class Counsel were provided with information as to the size of the Settlement Class, as well as to the total number of cancelled breaks during the class period.  Class Counsel were also provided information regarding the security deposits maintained by Defendant and the alternative workweek elections held by Defendant.  (Harris Decl. ¶¶ 7-11.)  In addition, Class Counsel undertook their own independent investigation to inform their negotiating position, including risk re-evaluation in light of the potentially dispositive defenses noted above.  (<u>See</u> Harris Decl. ¶¶ 3, 8.)  All told, they had sufficient information to make an informed decision about settlement.  This factor thus weighs in favor of approval.

### f.    The Experience and Views of Counsel

As reflected in the Declaration of Alan Harris filed herewith, Class Counsel have substantial experience in prosecuting class actions, including wage-and-hour actions.  (<u>See</u> Harris Decl. ¶¶ 20-21.)  Class Counsel are of the opinion that the Settlement Agreement represents an excellent bargain for the Settlement Class, given the inherent risks, hazards, and expenses of carrying the case through trial.  (Harris Decl. ¶ 22.)  As the Central District has explained, this weighs strongly in favor of approving the settlement.  <u>See</u> <u>Rodriguez</u>, 2007 WL 2827379 at *9 (explaining that "the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties").

### g.    The Reaction of Class Members to the Proposed Settlement

The reaction of the Settlement Class thus far supports approval of the Settlement.  Significantly, after dissemination of the Notice to the members of the Settlement Class, which provided each class member with the terms of the settlement, including the

specific payment amount to that employee, there have been only a single opt out and no objections to the settlement.  (Garrido Decl., ¶¶ 11-12.) The absence of any objector strongly supports the fairness, reasonableness and adequacy of the Settlement.  See In re Austrian & German Bank Holocaust Litigation, 80 F.Supp.2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d. Cir. 1990) (29 objections out of 281 member class "strongly favors settlement"). Plaintiffs will submit a supplement detailing the class participation rates after the close of the claims period on June 18, 2018.

## IV. Conclusion

For the aforementioned reasons, the Settlement Agreement fulfills the Rule 23 requirements that the proposed resolution is fair, reasonable and adequate.  Consequently, the Parties respectfully request that this Court issue an Order granting final approval of the class settlement in this Action.


Dated:  June 4, 2018                        Respectfully submitted,

                                            HARRIS & RUBLE
                                            LAW OFFICES OF JOHN P.
                                            DORIGAN


                                            _____/s/ *Alan Harris*_____
                                            Alan Harris
                                            John P. Dorigan