Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Ave.
Glendale, California 91203
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
pmohan@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
600 Canterbury Lane
Sagamore Hills, Ohio 44067
Telephone: (330) 748-4475
Facsimile: (330) 748-4475
jpdorigan@aol.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. PEDERSON, R. ALCARAZ, and S. MASON, individually and on behalf of all others similarly situated, and on behalf of aggrieved employees, the people of the State of California and the Labor Commissioner,<br><br>        Plaintiffs,<br><br>    v.<br><br>AIRPORT TERMINAL SERVICES, INC., RICHARD B. HAWES, and SALLY A. LEIBLE,<br><br>        Defendants. | Case No. 5:15-cv-02400-VAP-SP<br>*Assigned to Hon. Virginia A. Phillips*<br><br>**DECLARATION OF ALAN HARRIS IN SUPPORT OF MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     July 2, 2018<br>Time:    2:00 p.m.<br>Courtroom: 8A<br>       350 West 1st Street<br>       Los Angeles, CA 90012 |

I, ALAN HARRIS, declare under penalty of perjury under the laws of the United States and of the State of California, as follows:

1.      I am a member in good standing of the State Bar of California, and am admitted to practice in the Central District of California. I am counsel for Plaintiffs Gideon Pederson, Ruth Alcaraz and Sasha Mason in this action. I am making this declaration in support of the Motion for Final Approval of the class-wide settlement that has been reached in this case.  The required Local Rule 7-3 meet and confer took place commencing on January 8, 2018, and on various dates thereafter.  If sworn as a witness I could competently testify to each and every fact set forth herein from my personal knowledge.  A true and correct copy of the Settlement Agreement and Release of Claims ("Settlement Agreement") is attached hereto as Exhibit 1.  True and correct copies of the Declarations of Plaintiffs Gideon Pederson, Ruth Alcaraz and Sasha Mason are attached hereto as Exhibits 2, 3 and 4.

*Summary of Litigation and Procedural History*

2.      In November of 2015, Plaintiffs commenced this action on behalf of a putative class of all current and or former employees employed by Defendant within California at any time from November 20, 2011.  On January 25, 2016, Plaintiffs filed a first amended complaint to clarify that they were authorized to pursue claims under the California Labor Code Private Attorneys General Act of 2004, Code section 2698 et seq. ("PAGA").  On April 14, 2016, Plaintiffs filed the operative Second Amended Complaint ("SAC"), asserting twelve causes of action:  (1) a claim for missed meal breaks under Code sections 226.7 and 512; (2) a claim for improper pay stubs under section 226(a) of the Code; (3) a claim alleging that ATS failed to reimburse employees for uniform-maintenance expenses under section 2802 of the Code; (4) a claim for failing to properly deal with security deposits under sections 403-406 of the Code, as well as section 9(c) of the Wage Order; (5) a claim for unlawful deductions from wages, in violation of Code section 221; (6) failure to pay proper overtime in violation of sections 510 and 1194 of the Code; (7) failure to pay all wages as required by Code sections 201, 201.3(B)(1) and

continuing wages under section 203 of the Code; (8) a claim for unfair competition under section 17200 *et seq.* of the California Business and Professions Code; (9) a claim violation of the FLSA; (10) individual claims for failure to produce records requested under section 226(b) of the Code; (11) individual claims for failure to produce records under section 1198.5 of the Code; and (12) a claim for civil penalties under section 2698 *et seq.* of the Code. The civil-penalties claim is premised in part on the ATS failure to provide adequate seating for its employees, as required by section 14 of the wage order as well as the ATS violations of Code provisions and Wage Order requirements with respect to treatment of security deposits.

3.    Both before initiating the Action and afterwards, the undersigned investigated the claims against Defendant and also analyzed any and all applicable defenses raised by Defendant. This investigation included work conducted in connection with a prior class action lawsuit, <u>Collette McDonald v. Airport Terminal Services</u>, No. 5:11-cv-01946-VAP-SP (C.D. Ca. 2011). The investigation also included the exchange of information and documentation pursuant to informal discovery methods, service of formal discovery, numerous conferences between the undersigned and Defendant's Counsel, and the undersigned's interviews of Plaintiffs and Class Members. In connection with these attempts at resolution, ATS's counsel provided information as to the class size, and the number of automatic meal period deductions taken during the relevant period when employees worked shifts of more than five hours per day. ATS also provided information regarding required security deposits and alternative workweek elections.

4.    After extensive negotiations, including several settlement offers and counteroffers, the Parties agreed that the services of a private mediator would assist in resolving Plaintiff's claims. On or about August 9, 2016, the Parties attended mediation before Lisa Klerman, an experienced mediator of cases involving the wage and hour laws at issue in the Action. The Parties were unable to reach a mediated resolution. On or

about September 1, 2016, the Court stayed the Action through November 7, 2016, to permit the Parties and mediator to continue efforts to attempt to settle the Action.

5.      On or about January 30, 2017, the Parties appeared before the Court for a scheduling conference. The Parties continued to meet and confer on numerous occasions, reviewing Plaintiffs' claims, the alleged defenses, the potential for a mediated resolution of the Action. On or about May 12, 2017, the Court stayed the Action through August 7, 2017. The Parties and mediator continued to meet and confer to explore the potential for settlement.

6.      After more than 16 months of negotiations and exchange of information between the Parties following the initial mediation, the Parties finally agreed to a settlement, and on or about January 4, 2018, the Parties filed a notice of settlement. The settlement was negotiated in light of all known facts and circumstances—including the potential difficulty of proving Plaintiffs' claims, potential defenses, the uncertainty associated with litigation, the risks of significant delay, and numerous potential appellate issues.  The settlement was reached only after extensive arm's-length negotiations, with the assistance of the mediator Lisa Klerman. Over the course of the next two months, the Parties proceeded to negotiate the terms of a long-form settlement agreement encompassing the terms of the Memorandum of Understanding.  In March 2018, those negotiations resulted in the execution of the Settlement Agreement that is presently before the Court for final approval (Exhibit 1 hereto).

*The Specific Claims for Relief Alleged in this Action*

7.      *Meal Break Violation.*  As alleged in the SAC, the nature of ATS's hourly employees' work at airport worksites at times prevented them from taking their meal breaks.  During discovery, Class Counsel were able to establish that there were some 2,422 instances when they might prove liability for premium wages on account of missed meals on a class-wide basis.  Assuming an average hourly wage of $14.77, the total damages would amount to $35,772.94 (=$14.77*2,422).

8. *Unpaid Overtime.* Investigation uncovered a dispute between the parties with respect to whether ATS complied with the technical requirements for an employee election to permit an alternative workweek of four days, ten hours per day, all paid at straight time wages. There were only some sixty persons impacted, and the total claim for unpaid overtime came to less than some $12,500. In addition, Plaintiffs claimed that ATS improperly computed overtime owing to many employees on account of failing to properly compute the applicable regular rate. The total damages for this part of the overtime claim came to under $60,000.

9. *Wage Statement Violation.* Plaintiffs allege that Defendant failed to provide Airport Agents with the data required by section 226(a) of the Code. The wage statements fail to record properly the additional wages owed to Plaintiffs on account of overtime wages owing to them. Although ATS is a temporary services employer, the wage statements also fail to provide the rate of pay and total hours worked for each temporary services assignment. The total damages are capped at $4,000 per employee, limited to the period commencing one year prior to the filing of suit. During the relevant time, the company employed hundreds of workers who collectively received many thousands of wage statements. The total at issue, with PAGA penalties, comes to several million dollars. In the settlement, this sum is substantially discounted, as there are substantial problems in establishing liability and courts are unlikely to reward stacked penalties for a violation that the defense claims to by hyper-technical in nature.

10. *Failure to Reimburse Uniform Maintenance Expenses.* Plaintiffs allege that ATS failed to reimburse hourly employees for the costs of maintaining their uniforms, despite the fact that certain parts of the uniforms have a label: "dry clean only." Plaintiffs contend that uniform-maintenance expenses are a "necessary expenditure" for which ATS bears the burden of reimbursement. See 8 Cal. Code Regs. § 11090 subsec. 9(A) (stating that, "[w]hen uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer"). Damages here were estimated to apply to about 600 full time equivalent

workers who, over a year would spend about $5 per dry cleaning per month, about $36,000 per year (=600 FTEs*$5*12 months).

11.     *Unlawful Deductions.*  Plaintiffs allege that, in violation of Code section 221, ATS unlawfully deducted uniform deposits from the paychecks of Airport Agents. As of January of 2018, the total retained by ATS, including accrued interest, came to just over $50,000.

12.     *Liability for Cal. Lab. Code § 203 Continuing Wages.*  Plaintiffs contend that at least on account of Defendant's failure to pay Airport Agents proper overtime wages, as well as Defendant's failure to provide meal-period premium wages, Defendant is liable to former employees for continuing wages pursuant to section 203 of the Code. To the extent the case were not settled and continuing wages were awarded, the total would come to several million dollars.  For one employee, continuing wages could come to some $3,544.80 (=$14.77 per hour*8 hours per day * 30 days).  Were liability established for the 2,941 employees, the total penalty would be $10,425,256.  Here, in settlement, such penalties are completely discounted.  Rodriguez v. West Publ'g Corp., 2007 WL 2827379 at *8 (C.D. Cal. filed Sept. 10, 2007).

13.     Aside from the above-described cash fund, as a direct result of this lawsuit ATS has changes its security deposit practices. Specifically, ATS stopped taking deposits in August 2017 and no longer requires security deposits at all.

14.     According to ATS's records, there are 2,941 Settlement Class members who worked a total of approximately 138,986 weeks during the class period.  The Parties selected and the Court has approved CPT Group, Inc. as the settlement administrator in this case.  The undersigned anticipates that settlement administration fees and costs will not exceed $15,000.  This is confirmed by the concurrently filed Declaration of CPT representative, Alan Garrido.  (Garrido Decl., ¶ 16).

15.     *The Strength of Plaintiffs' Case.*  Since the inception of this case, ATS has asserted that Plaintiff's meal-break claims are preempted under the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.  The Northern District of California has held that,

because "ADA preemption applies to 'state enforcement actions having a connection with, or reference to[,] carrier rates, routes or services . . . even if a state law's effect on rates, routes or services is only indirect,'" and because "enforcing state meal period . . . regulations would impermissibly regulate an air carrier's service" by, say, "prevent[ing] an aircraft from being fueled or serviced" or by preventing "cargo from being unloaded such that [there] would [be an] impact [on] the schedule of the point-to-point transportation of passengers or cargo," California's meal-break statute is preempted. Angeles v. US Airways, Inc., 2013 WL 622032 at *8–9 (N.D. Cal. filed Feb. 19, 2013) (quoting Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008)) (quotation marks omitted). See also Blackwell v. Skywest Airlines, Inc., 2008 WL 5103195 at *15–18 (S.D. Cal. filed Dec. 3, 2008) (holding that California's meal-period requirements are preempted under the ADA because they impact an airline's services, routes, and prices). If preemption applies, *none* of the Settlement Class are entitled to *any* meal-period damages. The $600,000 Gross Settlement Payment, which will likely provide participating Class Members with a substantial amount of what they are owed for missed breaks, is therefore more than reasonable. This factor thus weighs in favor of approving the settlement.

16.     Another potentially dispositive defense applies to Plaintiff's claim for improper wage statements. Plaintiffs' wage statement claim is based on the assertion that ATS is a "temporary services employer." Defendant has argued that ATS does not meet the definition of a temporary services employer because it does not provide workers to its customers, but rather services. If Defendant were to prevail on this argument, Class Members would not be entitled to any damages for the wage statement claim.

17.     With respect to Plaintiffs' expense reimbursement claim for uniform maintenance, Defendant has denied that ATS issued any directive requiring employees to dry clean their uniforms and has raised the defense that individualized inquiries would preclude class action treatment of this claim.

18.    With respect to Plaintiffs' unlawful deduction claim, Defendant has argued that there is no private right of action for a Code § 221 claim and is therefore subject to a one year statute of limitations under PAGA.  Defendant also argues that therefore the Plaintiffs lack standing to bring this claim.

19.    Defendant also disputes the merits of any regular rate based overtime claim or overtime claim based on Defendant's failure to comply with the requirements for alternative workweek elections.

*Class Counsel's Opinion on the Reasonableness of the Class Settlement Agreement.*

20.    *Experience.*  I have been and am licensed as an attorney, first in Illinois (1974) and later in California (1989). I am a graduate of the University of Illinois (A.B. 1970, J.D. 1974). After graduation from law school in January 1974, I was hired as a litigation associate at a plaintiffs' antitrust boutique in Chicago, Illinois: Freeman, Freeman & Salzman, P.C. I became a partner in that firm in 1980, and I started my own practice in 1982.[1]  I speak before professional organizations on topics of interest to the Bar, and I have represented plaintiffs in complex business litigation for over forty years. See e.g., Illinois v. Ill. Brick Co., Inc., 431 U.S. 720 (1977); In re My Left Hook, LLC, 129 Fed. Appx. 352 (9th Cir. 2005); Gregory v. SCIE, LLC, 317 F.3d 1050 (9th Cir. 2003); In re Blue Coal Corp., 986 F.2d 687 (3d Cir. 1993); In re Blue Coal Corp., 206 B.R. 730 (M.D. Pa. 1997); U.S. v. Gleneagles Inv. Co., Inc., 584 F. Supp. 671, 689 (M.D. Pa. 1984), aff'd. in part and vacated in part, and remanded sub. nom., U.S. v. Tabor Ct. Realty Corp. 803 F.2d 1288 (3d Cir. 1986), cert. den. sub. nom., McClellan Realty Co. v. U.S. 483 U.S. 1005 (1987); In re Uranium Antitrust Litig., 503 F. Supp. 33 (N.D. Ill. 1981); In re Grand Jury, 469 F. Supp. 666 (M.D. Pa. 1980); In re Anthracite Coal

---

[1] Of my still-living partners in Freeman, Freeman & Salzman, a firm that dissolved in 2007, each has assumed a senior role in a leading national law firm. Lee Freeman, Jr. was a partner and chair of the Antitrust Litigation Practice Group at Jenner & Block from 2007 to June 2011. Jerrold Salzman is of counsel at Skadden, Arps, Slate, Meagher & Flom LLP. Tyrone Fahner, formerly an Attorney General of the State of Illinois, is a partner at Mayer Brown, having served as its co-chair from 1998 to 2001 and its chair from 2001 to 2007.

Antitrust Litig., 82 F.R.D. 364 (M.D. Pa. 1979), In re Folding Carton Antitrust Litig., 83
F.R.D. 251 (N.D. Ill. 1978); In re Anthracite Coal Antitrust Litig., 78 F.R.D. 709 (M.D.
Pa. 1978); In re Masterkey Antitrust Litig., 1977 U.S. Dist. LEXIS 12948 (D. Conn.
1977) (six-week jury trial for plaintiffs); A. Cherney Disposal Co. v. Chicago &
Suburban Refuse Disposal Corp., 68 F.R.D. 383 (N.D. Ill. 1975); In re Cement-Concrete
Block, Chicago Area, Grand Jury Proceedings, 381 F. Supp. 1108 (N.D. Ill. 1974);
Parmet v. Lapin, 2004 Cal. App. Unpub. LEXIS 5217 (June 1, 2004).  I have participated
in class-action jury and bench trials on behalf of plaintiffs and, once, a class-action bench
trial for a defendant, Allstate Insurance Company. I have represented employees in
numerous disputes concerning their receipt of wages, both before the California Division
of Labor Standards Enforcement and before state and federal courts. See, e.g., Jacobs v.
CSAA Inter Ins. Bureau, 2009 U.S. Dist. LEXIS 37153 (N.D. Cal. filed May 1, 2009);
Escobar v. Whiteside Constr. Corp., 2008 U.S. Dist. LEXIS 68439 (N.D. Cal. 2008)
(wage-and-hour collective action); Tremblay v. Chevron Stations, Inc., 2008 Westlaw
2020514 (N.D. Cal. 2008) (wage-and-hour collective action); Gonzalez v. Preferred
Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 93013 (C.D. Cal. filed July 5, 2012)
(successful opposition to a defense motion to compel arbitration in a putative wage-and-
hour class action); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist.
LEXIS 139764 (C.D. Cal. filed Sept. 27, 2012) (successful motion to correct improper
defense contact of class members in a putative wage-and-hour class action); Covillo v.
Specialty's Café, 2012 U.S. Dist. LEXIS 114602 (N.D. Cal. filed Aug. 14, 2012)
(successful opposition to a defense motion to compel arbitration in a putative wage-and-
hour class action); Perez v. Maid Brigade, Inc., 2007 U.S. Dist. LEXIS 78412 (N.D. Cal.
filed Oct. 11, 2007) (successful opposition to a defense motion to compel arbitration in a
putative wage-and- hour class action); Hoffman v. Uncle P Prods., 2008 Cal. App.
Unpub. LEXIS 3609; Bithell v. E.P. Mgmt. Servs., LP, 2007 WL 4216854 (Cal. Ct. App.
2007) (sustaining a class-wide settlement as fair and reasonable, and finding that class
counsel adequately represented the class); DuPont v. Avalon Hollywood Servs., Inc.,

2007 WL 93386 (Cal. App. 2007); <u>Gregory v. Superior Court</u>, 2004 WL 2786357 (Cal. Ct. App. 2004). In addition, I have been appointed lead class counsel in many wage-and-hour class actions. <u>See</u>, <u>e.g.</u>, <u>Kang v. Albertson's, Inc.</u>, C.D. Cal. Case No. CV 07-00894 CAS ($6,637,500 settlement); <u>Tremblay v. Chevron Stations, Inc.</u>, N.D. Cal. Case No. CV 07-6009 EDL ($4,500,000 settlement); <u>Doty v. Costco Wholesale Corp.</u>, C.D. Cal. Case No. CV 05- 3241 FMC ($7,500,000 settlement); <u>Agatep v. Exxon Mobil Corp.</u>, C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000 settlement); <u>Alfano v. Int'l Coffee & Tea, LLC</u>, C.D. Cal. Case No. CV 04-8996 SVW; <u>Jenne v. On Stage Audio Corp.</u>, C.D. Cal. Case No. CV 04- 2045 CAS; <u>Hansen v. Advanced Tech Sec. Servs., Inc.</u>, Los Angeles Sup. Ct. Case No BC 367175 ($1,050,000 settlement); <u>Ross v. Human Res., Inc.</u>, Los Angeles Sup. Ct. Case No. BC 351506; <u>Harrington v. Manpay, LLC</u>, Los Angeles Sup. Ct. Case No. BC 312171 ($1,000,000 settlement); <u>Brackett v. Saatchi & Saatchi</u>, Los Angeles Sup. Ct. Case No. BC 298728; <u>Readmond v. Straw Dogs, Inc.</u>, Los Angeles Sup. Ct. Case No. BC 257394; <u>Greenberg v. EP Mgmt. Servs., LP</u>, Los Angeles Sup. Ct. Case No. BC 237787 ($5,348,000 settlement); <u>Angel Paws, Inc. v. Avalon Payroll Servs., Inc.</u>, Los Angeles Superior Court Case No. BC 188982 ($450,000 settlement); <u>Saunders v. Metro Image Group</u>, San Diego Sup. Ct. Case No. GIC 809753; <u>Stratford v. Citicorp West FSB</u>, Monterey Sup. Ct. Case No. M 81026 ($950,000 settlement); <u>Deckard v. Banco Popular N. Am.</u>, <u>related to</u> <u>Silva v. Banco Popular N. Am.</u>, C.D. Cal. Case No. CV 08-6709 JFW ($1,050,000 settlement); <u>Gonzalez v. Preferred Freezer Servs. LBF, LLC</u>, 2013 U.S. Dist. LEXIS 109930 (C.D. Cal. filed July 29, 2013) ($834,474 settlement); <u>McDonald v. Airport Terminal Servs., Inc.</u>, C.D. Cal. Case No. EDCV 11-1946 VAP ($250,000 settlement); <u>Chookey v. Sears, Roebuck and Co.</u>, C.D. Cal. Case No. 12-CV-2491-GW ($3.2 million settlement); <u>Taylor v. West Marine Products, Inc.</u>, N.D. Cal. Case No. 13-CV-4916-WHA ($435,000 settlement); <u>Brumfield v. Belmont Village, LP</u>, C.D. Cal. Case No. 13-CV-07445-BRO ($459,312 settlement); <u>Wigersma v. Motion Theory, Inc.</u>, Los Angeles Sup. Ct. Case No. BC 531180 ($1,000,000 settlement); <u>Castillo v. ADT</u>, E.D. Cal. Case No. 2:15-cv-00383-WBS-DAD ($1,060,000 settlement).

1  Like the present case, the majority of the foregoing cases, was prosecuted on a
2  contingent-fee basis.

3      21.    Priya Mohan is a *magna cum laude* graduate of the University of Michigan
4  (B.A., 2000), USC Gould School of Law (J.D., 2003), and the UCLA Luskin School of
5  Public Affairs (M.P.P. 2010). She became a member of the California bar in 2003.  Ms.
6  Mohan has worked with me in a number of labor-law disputes at Harris & Ruble.  E.g.
7  Clarke v. Indelible Media Corp., C.D. Cal. Case No. CV10-6230; Lobato v. Abbott
8  Cardiovascular Systems, Inc., Santa Clara Sup. Ct. Case No. 1-10-CV-175637; Matheny
9  v. CA Payroll, Inc., C.D. Cal. Case No. 2:11-CV-02522; Chorley v. Palm Productions,
10  Los Angeles Sup. Ct. Case No. BC465045; Popko v. Van Acker Construction Associates,
11  Inc., N.D. Cal. Case No. CV114034; Rentoria v. Omnicare, Los Angeles Sup. Ct. Case
12  No. BC405988; Pena v. Downey, Los Angeles Sup. Ct. Case No. BC447731; Seielstad v.
13  Aegis Senior Communities, LLC, N.D. Cal. Case No. 09-01797; Covillo v. Specialty's
14  Café and Bakery, Inc., N.D. Cal. Case No. 11-CV-00594-DMR; Johnson v. Sky Chefs,
15  Inc., N.D. Cal. Case No. 11-CV- 05619-LHK. Ms. Mohan has also worked with me on
16  class-action matters and has been appointed class counsel in connection therewith, e.g.
17  Lobato v. Abbott Cardiovascular Systems, Inc., Santa Clara Sup. Ct. Case No. 1-10-CV-
18  175637; Rentoria v. Omnicare, Los Angeles Sup. Ct. Case No. BC405988; Covillo v.
19  Specialty's Café and Bakery, Inc., N.D. Cal. Case No.11-CV-00594-DMR; Johnson v.
20  Sky Chefs, Inc., N.D. Cal. Case No. 11-CV- 05619-LHK; Chookey v. Sears Roebuck and
21  Co., C.D. Cal. Case No.12-CV-2491-GW; Taylor v. West Marine Products, Inc., N.D.
22  Cal. Case No. 13-CV-4916-WHA, Brumfield v. Belmont Village, LP, C.D. Cal. Case No.
23  13-CV-07445-BRO and Castillo v. ADT, E.D. Cal. Case No. 2:15-cv-00383-WBS-DAD.

24      22.    In light of the estimated payments noted above, I have concluded that the
25  Settlement Agreement represents a fair, reasonable, and adequate resolution of this case.
26  As explained in the concurrently filed Memorandum of points and authorities, there is a
27  risk that Plaintiffs' claims may fail, whether at trial or on appeal.  The $600,000 non-
28  reversionary settlement pays each class member a cash benefit in recognition of the

1    claims alleged in this case, most of which are penalties.  Moreover, recent authority holds

2    that statutory damages and civil penalties predicated on the same underlying alleged

3    wrong cannot be "stacked" on top of one another.  Assuming that the Court approves

4    $200,000 in attorney's fees (equal to 33.33% of the Gross Settlement Payment), the

5    requested $9,357.47 in litigation expenses, the estimated $15,000 in claims-

6    administration expenses, $500 incentive awards to each Plaintiff, $4,500 individual

7    payments to the Plaintiffs on account of their broad general release of claims, including

8    individual claims for retaliation and discrimination, and their agreement not to seek

9    employment with Defendant, and $7.500 for payment to the LWDA, $353,143 will

10   remain.  Out of the $353,143, $50,956.45 is the Deposit Sum held by ATS which will be

11   distributed to Class Members on whose behalf the security deposits are being held.  The

12   remaining Net Settlement Amount is $302,186.  Assuming a 100% participation rate, the

13   average net payment to Class Members will therefore be some $102 (= $302,186 ÷ 2,941

14   Class Members).  Of course, "[h]uman nature dictates that[,] despite counsel's best

15   efforts, not all [Settlement C]lass members will submit claims."  Kakani v. Oracle Corp.,

16   2007 WL 2221073 at *4 (N.D. Cal. filed Aug. 2, 2007).  Accordingly, it is more

17   reasonable to assume a participation rate by the Settlement Class of over 20%.  See e.g.,

18   Sandoval v. Tharaldson Employee Mgmt., Inc., 2010 WL 2486346 at *7 (C.D. Cal. filed

19   June 15, 2010) (in approving a settled wage-and-hour class action, noting that "24% of

20   [c]lass [m]embers submitted valid claim[s]," which the court characterized as a "positive"

21   response).  If 25% of the Settlement Class submit claims, the average net settlement

22   payment increases to $411 (= $302,186 ÷ 735 Class Members).

23         23.    Both while negotiating and before executing the Settlement Agreement, I

24   reviewed the terms in detail with Plaintiffs.  Plaintiffs Pederson, Alcaraz and Mason have

25   indicated to me that they consider the Class Settlement Agreement to represent a fair,

26   reasonable and adequate resolution of this case. Plaintiffs share the desire to be paid in

27

28

full, such that they are committed to pursuing the Class claims to seek reimbursement for themselves as well as other of Defendants' employees.

I have read the foregoing, and the facts set forth therein are true and correct of my personal knowledge. Executed June 4, 2018, in the County of Los Angeles, State of California.


_____*/s/ Alan Harris*_____
Alan Harris

DECL. OF ALAN HARRIS IN SUPPORT OF MOT. FOR FINAL APPROVAL

# Exhibit 1

# SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims is entered into by and between Plaintiffs Gideon Pederson, Ruth Alcaraz, and Sasha Mason, their counsel, and on behalf of the class they seek to represent, on the one hand, and Defendant, Airport Terminal Services, Inc., on the other hand.

## 1. DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

**1.1.    Action.** "Action" means the civil lawsuit originally entitled *G. Pederson, R. Alcaraz, and S. Mason v. Airport Terminal Services, Inc.*, filed on or about November 20, 2015, in the United States District Court, Central District of California, and designated as Case No. 5:15-cv-02400-VAP-SP.

**1.2.    Agreement.** "Agreement" means this Settlement Agreement and Release of Claims, which includes the Definitions, Recitals, and all Exhibits attached hereto.

**1.3.    Attorneys' Fees and Costs Award.** "Attorneys' Fees and Costs Award" means any attorneys' fees and costs payment, subject to Court approval, from the Gross Settlement Amount for Class Counsel's attorneys' fees and costs associated with the litigation and resolution of the Action (excluding third-party Settlement Administration Costs which are separately identified and defined below).

**1.4.    Class Counsel.** "Class Counsel" (or "Plaintiffs' Counsel") means Alan Harris and Priya Mohan of HARRIS & RUBLE, 655 North Central Avenue, Glendale, California 91203, and John P. Dorigan of LAW OFFICES OF JOHN P. DORIGAN, 600 Canterbury Lane, Sagamore Hills, Ohio 44067.

**1.5.    Class Member.** "Class Member" means any current or former non-exempt employee who is or was employed by Defendant within California at any time from November 20, 2011, through the date of preliminary approval of the settlement.

**1.6.    Class Notice.** "Class Notice" means the Notice of Class Action Settlement, substantially in the form attached as Exhibit A.

1

**1.7.    Class Representative Incentive Award.** "Class Representative Incentive Award" means any payment, subject to Court approval, to Plaintiffs from the Gross Settlement Amount in recognition of their efforts and work in prosecuting the Action on behalf of Class Members.

**1.8.    Plaintiff's Individual Payment.** "Plaintiff's Individual Payment" means any payment, subject to Court approval, to Plaintiffs from the Gross Settlement Amount on account of their individual agreements to refrain from seeking future employment with Defendant and their individual agreements to broader general releases of claims articulated in the litigation.

**1.9.    Court.** "Court" means the United States District Court, Central District of California, the Honorable Virginia A. Phillips presiding.

**1.10.    Defendant.** "Defendant" means Airport Terminal Services, Inc.

**1.11.    Defendant's Counsel.** "Defendant's Counsel" means Seyfarth Shaw LLP. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Aaron R. Lubeley and Simon L. Yang, Seyfarth Shaw LLP, 333 South Hope Street, Suite 3900, Los Angeles, California 90071.

**1.12.    Deposit Sum.** "Deposit Sum" means the value of any Class Member security deposits (and accrued interest) held by Defendant as of January 1, 2018.

**1.13.    Effective Date.** "Effective Date" means the date applicable based on the following: (a) if no appeals of an order by the Court granting final approval of class action settlement or granting judgment dismissing with prejudice the Action and all claims for Settlement Class Members is filed, 10 days after the expiration date of the time for the filing or notice of any appeals from such an order or judgment; or (b) if any appeals of an order by the Court granting final approval of class action settlement or granting judgment dismissing with prejudice the Action and all claims for Settlement Class Members is filed, 30 days after any appeals affirming such an order or judgment are final and no longer appealable.

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**1.14.  Individual Settlement Payment.** "Individual Settlement Payment" means each Settlement Class Member's potential payment from the Net Settlement Amount.

**1.15.  Gross Settlement Amount.** "Gross Settlement Amount" means the maximum potential settlement amount (inclusive of any Attorneys' Fees and Costs Award, Class Representative Incentive Awards, Plaintiff's Individual Payments, Deposit Sum, LWDA Payment, Settlement Administration Costs, Individual Settlement Payments, and all employee or employer payroll taxes) that Defendant may be required to pay in connection with an order granting final approval of class action settlement.

**1.16.  LWDA Payment.** "LWDA Payment" means any payment, subject to Court approval, to the State of California Labor and Workforce Development Agency.

**1.17.  Net Settlement Amount.** "Net Settlement Amount" means the portion of the Gross Settlement Amount available for allocation to Settlement Class Members for all Individual Settlement Payments and all employee or employer payroll taxes, after deductions for any Court approved Attorneys' Fees and Costs Award, Class Representative Incentive Awards, Plaintiff's Individual Payments, Deposit Sum, LWDA Payment, and Settlement Administration Costs.

**1.18.  Parties.** "Parties" means Plaintiffs and Defendant.

**1.19.  Plaintiff(s).** "Plaintiff" or "Plaintiffs" mean Gideon Pederson, Ruth Alcaraz or Sasha Mason.

**1.20.  Released Party.** "Released Party" means Defendant or any of its current or former subsidiaries, affiliates, parents, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, employers, attorneys, personal representatives, executors, and shareholders, including their respective pension, profit sharing, savings, health, and other employee benefit plans of any nature, the successors of such plans, and those plans' respective current or former trustees and administrators, agents, employees, and fiduciaries.

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**1.21.  Settlement Administrator.** "Settlement Administrator" means the independent third-party settlement administrator mutually agreed on by the Parties, subject to Court approval, to administer the settlement.

**1.22.  Settlement Administration Costs.** "Settlement Administration Costs" means any payment, subject to Court approval, payable from the Gross Settlement Amount to the Settlement Administrator for administering the settlement, including, but not limited to, printing, distributing, or tracking Class Notices, processing any required tax payments or reportings, providing any required tax forms, distributing the Deposit Sum, Individual Settlement Payments, Class Representative Incentive Awards, Plaintiff's Individual Payments, Attorneys' Fees and Costs Award, and LWDA Payment, and providing necessary reports and declarations, as requested by the Court or Class Counsel and Defendant's Counsel.

**1.23.  Settlement Class Members.** "Settlement Class Members" means any and all Class Members who do not exclude themselves from the settlement by complying with the procedures set forth in the Class Notice to opt out of the settlement.

**2.    RECITALS**

**2.1.    Initiation of Action.** On or about November 20, 2015, Plaintiffs filed the original complaint initiating the Action on behalf of a putative class of all current or former non-exempt employees employed by Defendant within California at any time from November 20, 2011. On January 25, 2016, Plaintiffs filed a first amended complaint to amend the existing complaint to clarify that they were authorized to pursue claims under the California Labor Code Private Attorneys General Act of 2004, California Labor Code section 2698 et seq. ("PAGA"), and to name two additional individual defendants. On April 14, 2016, Plaintiffs filed a second amended complaint to dismiss the two additional individual defendants. The second amended complaint is the operative complaint.

**2.2.    Causes of Action.** The Action pursues class, collective, and representative action claims for alleged (i) meal break violations, (ii) inaccurate itemized wage

statements, (iii) expense reimbursement violations, (iv) security deposit violations, (v) improper deductions, (vi) overtime violations, (vii) late final pay, (viii) unfair competition, (ix) Fair Labor Standards Act violations, (x) wage record inspection violations, (xi) employment record inspection violations, and (xii) penalties under PAGA.

2.3.   **Plaintiffs' Factual Allegations.** Plaintiffs asserted their claims based on various factual allegations, including but not limited to, claims that Defendant (i) failed to pay earned wages to Class Members on account of late, curtailed, or missed meal periods, (ii) failed to provide Class Members with proper wage statements, (iii) failed to reimburse Class Members for uniform maintenance expenses; (iv) collected unlawful deductions or security deposits from Class Members; (v) unlawfully required Class Members to purchase uniforms; (vi) failed to generally pay the correct amount of overtime owed, including specific failures on account of shift differential payments or alternative workweek elections; (vii) failed to provide Class Members with proper seating; and (viii) generally engaged in unfair, unlawful, or fraudulent business practices in violation of California law to the detriment of Class Members and the general public.

2.4.   **Class Counsel's Investigation.** Both before initiating the Action and afterwards, Class Counsel investigated the claims against Defendant and also analyzed any and all applicable defenses raised by Defendant. Class Counsel's investigation included work conducted in connection with a prior class action lawsuit, *Collette McDonald v. Airport Terminal Services*, filed on or about November 2, 2011, and designated as United States District Court, Central District of California Case No. 5:11-cv-01946-VAP-SP. Class Counsel's investigation also included the exchange of information and documentation pursuant to informal discovery methods, service of formal discovery, numerous conferences between Class Counsel and Defendant's Counsel, and Class Counsel's interviews of Plaintiffs and Class Members.

2.5.   **Mediation and Court-Ordered Stay.** On or about August 9, 2016, the Parties attended a mediation before Lisa Klerman, an experienced mediator knowledgeable of both the wage and hour laws and class, collective, and representative

claims at issue in the Action. The Parties were unable to reach a mediated resolution. On or about September 1, 2016, the Court stayed the Action through November 7, 2016, to permit the Parties and mediator to continue efforts to attempt to settle the Action. The Parties continued preparing their claims and defenses for litigation, while the Parties and mediator continued also to meet and confer on numerous occasions. The Parties were unable to reach a resolution at that time.

**2.6.    Scheduling Conference and Continued Settlement Efforts.** On or about January 30, 2017, the Parties appeared before the Court for a scheduling conference and to discuss the status of the Action. The Parties continued to meet and confer on numerous occasions, discuss Plaintiffs' claims described above, discuss Defendant's defenses, discuss the potential for a mediated resolution of the Action, and exchange informal discovery. On or about May 12, 2017, the Court stayed the Action through August 7, 2017. The Parties and mediator continued to meet and confer to explore the potential for settlement.

**2.7.    Settlement.** After more than 16 months of continued negotiations and exchange of information between the Parties following the initial mediation, the Parties finally agreed to a settlement, and on or about January 16, 2018, the Parties filed a notice of settlement with the Court. The settlement was negotiated in light of all known facts and circumstances—including the potential difficulty of proving Plaintiffs' claims, potential defenses asserted by Defendant, the uncertainty associated with litigation, the risks of significant delay, and numerous potential appellate issues—and was reached after extensive arm's-length negotiations, with the assistance of the mediator Lisa Klerman.

**2.8.    Defendant's Denials.** Defendant denied and continues to deny (i) all of the allegations made by Plaintiffs in the Action, (ii) that it violated any applicable laws, (iii) that it would be liable or owes damages, penalties, or any other type of remedies to anyone with respect to the alleged facts or claims asserted in the Action, and (iv) that class, collective, or representative treatment of the Action or any alleged claims would be proper. Nonetheless, without admitting or conceding any liability or wrongdoing

whatsoever and without admitting or conceding that class, collective, or representative treatment would be appropriate for any purpose other than settlement purposes alone, Defendant has agreed to settle the Action on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing the Action. Any stipulation or statement by Defendant contained herein is made for settlement purposes only.

**2.9.    Class Counsel's Evaluation.** Based on Class Counsel's ongoing investigation and evaluation over the course of more than two years since initiating the Action, Class Counsel is of the opinion that the terms set forth in this Agreement are fair, reasonable, adequate, and in the best interests of the class. Any stipulation or statement by Plaintiffs contained herein is made for settlement purposes only.

**2.10.   Intention of Parties.** It is the desire of the Parties to fully, finally, and forever settle, compromise, or discharge any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind that were or could have been asserted in the Action or that arise out of the alleged facts, circumstances, and occurrences underlying the allegations in the Action.

**2.11.   Certification of Settlement Class.** This Agreement is contingent upon the approval and certification by the Court of a class for settlement purposes only. Defendant does not waive, and instead expressly reserves, any and all rights to challenge the propriety of class, collective, or representative treatment for any other purpose should the Court not approve this Agreement or grant final approval of class action settlement.

**2.12.   Agreement to Cooperate.** The Parties agree to cooperate and take all steps necessary and appropriate to effectuate all aspects of this Agreement, to obtain preliminary and final approval of class action settlement, and to dismiss the Action and claims of Class Members with prejudice upon final approval.

**3.    NOTICE TO CLASS MEMBERS**

**3.1.    Settlement Administrator**. Plaintiffs and Class Counsel shall request that the Court appoint CPT Group, Inc. (or another administrator mutually agreed upon with

7

Defendant) as Settlement Administrator for purposes of sending notice of the settlement to Class Members. The Parties agree that Settlement Administration Costs should not exceed $27,000.00 and shall continue to seek reduced bids from potential administrators. All disputes relating to the Settlement Administrator's performance of its duties, after good-faith efforts by the Parties to first resolve such disputes, will be referred to the Court, if necessary, which will have continuing jurisdiction over this Agreement until all payments and obligations contemplated by this Agreement have been fully completed to Class Counsel and Defendant's Counsel's satisfaction.

**3.2.    Class Notice of Settlement.** The Settlement Administrator shall send Class Notice to Class Members to provide notice of settlement within 28 days of the entry of an order granting preliminary approval of class action settlement, pursuant to the procedures below. This shall be the sole means of notice to Class Members.

**3.3.    Class Data for Settlement Administrator.** Within 14 days of the entry of an order granting preliminary approval of class action settlement, Defendant shall provide to the Settlement Administrator each Class Member's most current, known mailing address, as well as data sufficient for the Settlement Administrator to determine each Class Member's number of workweeks during the applicable Class Period.

**3.4.    Confidentiality of Class Data.** Within 10 days of the entry of an order granting preliminary approval of class action settlement, the Settlement Administrator shall execute a confidentiality agreement. The Settlement Administrator shall keep data provided by Defendant strictly confidential, shall not share it with Class Counsel, shall use it only for the purposes described herein, and shall return it to Defendant or confirm its destruction upon completion of the Settlement Administrator's duties in administering the settlement.

**3.5.    Mailing of Notice.** The Settlement Administrator shall send Class Notice to each Class Member via First Class U.S. Mail, using the most current, known mailing address for each Class Member, based on class data provided by Defendant. Any Class Notice returned to the Settlement Administrator as undeliverable shall be sent promptly

via First Class U.S. Mail to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine the correct address using a skip-trace search and shall then promptly send a single re-mailing.

**3.6.    Proof of Mailing.** At least 5 days prior to the filing of a motion for final approval for class action settlement, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel a declaration by the Settlement Administrator of due diligence and proof of mailing with regard to mailing of Class Notice. At least 5 days prior to the hearing on a motion for final approval for class action settlement, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel a supplemental declaration regarding the mailing of Class Notice, response rate of Class Members, and the number of opt outs or objections to the settlement.

# 4.    CLASS MEMBERS' RESPONSE OPTIONS

**4.1.    Consideration Period.** Class Members shall be provided 45 days after the postmark date of the initial mailing of Class Notice to exercise any rights with regard to the settlement. Except as specifically provided herein, no Class Member responses of any kind that are postmarked more than 45 days after the initial mailing of Class Notice shall be considered.

**4.2.    Claim Procedure.** Plaintiffs shall submit a motion for preliminary approval of the settlement on a claims-made basis, which will require Class Members to submit a written, timely, and signed claim form to the Settlement Administrator in order to receive a share of the Net Settlement Amount. If for any reason the Court does not grant preliminary approval of a claims-made settlement, Plaintiffs shall take all steps necessary to move for preliminary approval of a settlement distributing the Net Settlement Amount in separate checks to Class Members without the need to submit a specific claim form.

**4.3.    Opt-Out Rights and Procedures.** Class Members shall be given the opportunity to opt out of the settlement. Class Members must comply with the procedures set forth in the Class Notice to opt out of the settlement. Class Members may opt out of the settlement by mailing to the Settlement Administrator the Request for Exclusion form

(attached to the Class Notice), which expresses their desire to be excluded from the Settlement Class. Any Request for Exclusion must include a Class Member's name (and former names, if any), signature, current address, and current telephone number. Any such Request for Exclusion must be postmarked not more than 45 days after the postmark date of the initial mailing of Class Notice. A Request for Exclusion shall be deemed to be submitted as of the postmarked date. Any Request for Exclusion that does not include all required information or that is not submitted on a timely basis shall be deemed null, void, and ineffective.

**4.4.    Opt-Out Effect.** Class Members who opt out of the settlement pursuant to the terms of this Agreement shall not be permitted to object to the settlement, shall not receive any Individual Settlement Payments, and shall not be bound by the release provisions in this Agreement or the applicable release provisions in any order granting final approval of class action settlement. If a Class Member submits both a Request for Exclusion and an objection, the Class Member's objection shall be valid and shall be deemed to invalidate the Request for Exclusion. Each Class Member who does not opt out of the settlement shall remain qualified to receive an Individual Settlement Payment, pursuant to the terms of this Agreement, and shall be subject to being bound by the applicable release provisions in this Agreement or the applicable release provisions in any order granting final approval of class action settlement.

**4.5.    Objection Rights and Procedures.** Because a class would be certified by the Court for settlement purposes, Settlement Class Members shall be given the opportunity to object to the terms of the settlement. Class Members who fail to make objections in the manner specified in the Class Notice shall be deemed to have waived any objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement. An objection shall be deemed to be submitted as of the postmarked date.

**4.6.    Objection Effect.** Class Members who submit an objection shall remain subject to be bound by the release provisions in this Agreement or the applicable release

provisions in any order granting final approval of class action settlement. Class Members who submit an objection pursuant to the procedures set forth in the Class Notice may appear at the hearing on a motion for final approval for class action settlement, either in person or through counsel, but must state their intention to do so at the time they submit their written objection. Class Members may withdraw their objections at any time.

**4.7. Proof of Class Members' Responses.** By not later than 60 days after the initial mailing of Class Notice, the Settlement Administrator will prepare and submit a declaration attesting to (by number of relevant individuals), its mailing of Class Notice, its inability to deliver Class Notice due to invalid addresses, and its receipt of valid Requests for Exclusion. Prior to the hearing on the motion for final approval of the settlement, the Settlement Administrator shall prepare any supplemental declarations regarding the administration of the settlement, as necessary or as jointly requested by the Parties or the Court. Class Counsel shall file any valid objections with the Court.

**4.8. Class Member Freedom and Defendant's Right to Withdraw.** The Parties shall do nothing to encourage or solicit Class Members to submit claims, opt out, or object. Defendant, however, shall have the right, at its sole option, to withdraw from this Agreement if the total number of opt outs exceeds 20 Class Members.

**5.     SETTLEMENT PROCEEDS**

**5.1. Gross Settlement Amount.** Defendant agrees to pay a maximum potential settlement amount of $600,000.00. The Gross Settlement Amount is inclusive of any Attorneys' Fees and Costs Award, Class Representative Incentive Awards, Plaintiff's Individual Payments, Deposit Sum, LWDA Payment, Settlement Administration Costs, Individual Settlement Payments, and all employee or employer payroll taxes that Defendant may be required to pay in connection with an order granting final approval of class action settlement.

**5.2. Funding of Gross Settlement Amount.** Within 21 days after entry of an order granting final approval of class action settlement, Defendant shall make a one-time deposit of the Gross Settlement Amount (excluding only any amounts of the Deposit Sum

no longer in its possession as a result of a return to Class Member) into a qualified settlement fund to be established by the Settlement Administrator. The Settlement Administrator will not disburse any funds until at least 5 days after the Effective Date and after disbursing all payments pursuant to this settlement shall return to Defendant any funds or interest accrued prior to or after the Effective Date. If the Effective Date does not or is not to occur, the Settlement Administrator will return the deposited funds, with interest, to Defendant.

5.3.    **Attorneys' Fees and Costs Award.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve an Attorneys' Fees and Costs Award in the amount of (a) up to one-third (33.33%) of the Gross Settlement Amount (or $200,000.00) and (b) costs in the amount of up to $12,000.00. Except as provided in this Agreement, Defendant shall have no liability for any Plaintiffs or Class Member's attorneys' fees or costs in connection with the Action.

5.3.1. **Award Not Material.** The Court's approval of an Attorneys' Fees and Costs Award is not a material term of this Agreement. If the Court does not approve Class Counsel's request for an Attorneys' Fees and Costs Award (or approves only a lesser amount than requested by Class Counsel), the other terms of this Agreement shall apply. The Court's refusal to approve the Attorneys' Fees and Costs Award requested by Class Counsel does not give Plaintiffs or Class Counsel any basis to abrogate this Agreement. Any different amount of an Attorneys' Fees and Costs Award approved by the Court shall be allocated to the Net Settlement Amount or from the Gross Settlement Amount.

5.3.2. **Timing of Payment.** The Settlement Administrator shall pay to Class Counsel any approved Attorneys' Fees and Costs Award no later than 30 days after the Effective Date. Within 21 days after the Effective Date, Class Counsel shall transmit instructions to the Settlement Administrator as to how the Attorneys' Fees and Costs Award shall be paid. Class Counsel agrees that Class Counsel is responsible for allocating this payment among themselves or any other counsel for Class Members

settling claims through the final approval of class action settlement. The Settlement Administrator shall issue an Internal Revenue Service ("IRS") Form 1099 to Class Counsel for any Attorneys' Fees and Costs Award payment. Class Counsel shall be solely and legally responsible for paying all applicable taxes on any Attorneys' Fees and Costs Award payments and shall hold harmless Defendant from any claim or liability for taxes, fees, costs, or assessments resulting from any failure to timely pay taxes, interest, fees, or penalties owed in connection with the settlement or any payments to be made pursuant to this settlement.

**5.4.    Class Representative Incentive Awards and Plaintiff's Individual Payments.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve (i) Class Representative Incentive Awards of up to $500.00 for each Plaintiff and (ii) Plaintiff's Individual Payments of up to $4,500.00 for each Plaintiff on account of their execution additional individual releases broader than Settlement Class Member releases (including California Civil Code section 1542 waivers of all known or unknown claims), as well as their additional agreements to refrain from seeking future employment with Defendant. Any approved Class Representative Incentive Awards or Plaintiff's Individual Payments are supplemental to Plaintiffs' Individual Settlement Payments.

**5.4.1. Award Not Material.** The Court's approval of Class Representative Incentive Awards  is not a material term of this Agreement. If the Court does not approve the Class Representative Incentive Awards (or approves only a lesser amount than requested by Class Counsel), the other terms of this Agreement shall apply. The Court's refusal to approve Class Representative Incentive Awards requested by Class Counsel does not give Plaintiffs or Class Counsel any basis to abrogate this Agreement. If the Court approves Plaintiff's Individual Payments but approves only a different amount than requested by Class Counsel, the other terms of this Agreement shall apply. Any different amount of Class Representative Incentive Awards or Plaintiff's Individual Payments

approved by the Court shall be allocated to the Net Settlement Amount or from the Gross Settlement Amount.

**5.4.2. Timing of Payment.** The Settlement Administrator shall pay to Plaintiffs any approved Class Representative Incentive Awards or Plaintiff's Individual Payments no later than 30 days after the Effective Date. The Settlement Administrator shall issue an IRS Form 1099 to Plaintiffs for any Class Representative Incentive Awards or Plaintiff's Individual Payments distributed to Plaintiffs. Plaintiffs shall be solely and legally responsible for paying all applicable taxes on any Class Representative Incentive Awards or Plaintiff's Individual Payments and shall hold harmless Defendant from any claim or liability for taxes, fees, costs, or assessments resulting from any failure to timely pay taxes, interest, fees, or penalties owed in connection with the settlement or any payments to be made pursuant to this settlement.

**5.5.    Settlement Administration Costs.** Class Counsel intends to request—and Defendant agrees not to oppose—that the Court approve Settlement Administration Costs of up to $27,000.00. Any amount of Settlement Administration Costs requested by Class Counsel but unapproved by the Court shall be allocated to the Net Settlement Amount. Upon completion of administration of the settlement, the Settlement Administrator shall provide written certification of such completion to Class Counsel and Defendant's Counsel. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize Settlement Administration Costs.

**5.6.    LWDA Payment.** Class Counsel intends to request that the Court approve allocation of $10,000 of the Gross Settlement Amount to PAGA penalties and of $7,500.00 of the Gross Settlement Amount as an LWDA Payment to the State of California Labor and Workforce Development Agency. Any different amount of LWDA Payment approved by the Court shall be allocated to the Net Settlement Amount or from the Gross Settlement Amount. The Settlement Administrator shall issue the LWDA Payment no later than 30 days after the Effective Date.

**5.7.    Deposit Sums.** The Gross Settlement Amount includes the value of Class Member security deposits held by Defendant as of January 1, 2018, or $50,956.45, and accrued interest as of January 1, 2018. No later than 30 days after the Effective Date, the Settlement Administrator shall distribute any Deposit Sum included with the one-time funding of the Gross Settlement Amount to Settlement Class Members on whose behalf the security deposits are held. The Settlement Administrator shall issue an IRS Form 1099 to Settlement Class members for any Deposit Sum interest payments distributed to Settlement Class Members. Settlement Class Members shall be solely and legally responsible for paying all applicable taxes on their respective Deposit Sum payments.

**5.8.    Individual Settlement Payments.** Subject to any payroll taxes (including the employer's share of payroll taxes), the remaining Net Settlement Amount shall be distributed in separate checks to Settlement Class Members either on a claims-made basis or without the need to submit a specific claim form, based on Court approval. The Settlement Administrator shall calculate Individual Settlement Payments for Settlement Class Members.

**5.8.1. Claims-Made Calculations.** Pursuant to a claims-made settlement, the amount of the Net Settlement Amount allocated to each Settlement Class Member submitting a valid claim shall be based on the Settlement Class Member's length of active employment in the State of California as non-exempt employees since November 20, 2011, through the date of preliminary approval, as reflected in Defendant's records. Each Settlement Class Member's proportional share shall be calculated by multiplying the balance of the Net Settlement Amount by a fraction, the numerator of which is the total of the Settlement Class Member's number of workweeks during the class period, and the denominator of which is the total of all workweeks by Settlement Class Members submitting a valid claim during the class period.

**5.8.2. Alternative Calculations.** If the Court does not approve a claims-made settlement, the amount of the Net Settlement Amount allocated to each Settlement Class Member shall be based on Settlement Class Member's length of active employment

15

in the State of California as non-exempt employees since November 20, 2011, through the date of preliminary approval, as reflected in Defendant's records. Each Settlement Class Member's proportional share shall be calculated by multiplying the balance of the Net Settlement Amount by a fraction, the numerator of which is the total of the Settlement Class Member's number of workweeks during the class period, and the denominator of which is the total of all Settlement Class Members' workweeks during the class period.

**5.8.3. Timing of Payment.** The Settlement Administrator shall issue Individual Settlement Payments no later than 30 days after the Effective Date. Each Settlement Class Member's Individual Settlement Payment shall be characterized as 80% 1099 income and 20% W-2 income. In accordance with applicable tax laws, required tax withholdings will be taken from each Individual Settlement Payment for the portion allocated to W-2 income and remitted to the appropriate taxing authorities. The Settlement Administrator shall issue any necessary IRS Form 1099 or W-2 to Settlement Class Members for their respective Individual Settlement Payments. Settlement Class Members shall be solely and legally responsible for paying all applicable taxes on their respective Individual Settlement Payments.

**5.8.4. Undeliverable or Uncashed Checks.** No portion of the Gross Settlement Amount in Defendant's possession upon funding shall revert to Defendant. All uncashed or undeliverable settlement checks will expire after 180 days. The sum value of all expired checks will be tallied by the Settlement Administrator. As to all uncashed settlement payments, the Settlement Administrator, after the 180 days, will direct the associated funds to the Industrial Relations Unpaid Wage Fund described in California Labor Code section 96.6 or as consistent with applicable law and approved by the Court.

**5.9. Payment Considerations.** Defendant are not giving any tax advice in connection with the settlement or any payments to be made pursuant to this Agreement.

16

**5.9.1. No Tax Advice or Liability.** Each Settlement Class Member, Plaintiffs, and Class Counsel shall hold harmless Defendant from any claim or liability for taxes, fees, costs, or assessments resulting from any failure to timely pay taxes, interest, fees, or penalties owed in connection with the settlement or any payments to be made pursuant to this settlement.

**5.9.2. No ERISA Impact.** None of the payments made pursuant to the settlement and this Agreement shall be considered for purposes of determining eligibility for, vesting or participation in, or contributions to any benefit plan, including, without limitation, all plans subject to the Employee Retirement and Income Security Act of 1974 ("ERISA"). Any distribution of payments to Plaintiffs or Settlement Class Members shall not be considered as a payment of wages or compensation under the terms of any applicable benefit plan and shall not affect participation in, eligibility for, vesting in, the amount of any past or future contribution to, or level of benefits under any applicable benefit plan. Any amounts paid will not impact or modify any previously credited hours of service or compensation taken into account under any benefit plan sponsored or contributed to by Defendant or any jointly-trusteed benefit plan. For purposes of this Agreement, "benefit plan" means each and every "employee benefit plan" as defined in 29 U.S.C. § 1002(3), and, even if not thereby included, any bonus, pension, stock option, stock purchase, stock appreciation, welfare, profit sharing, retirement, disability, vacation, severance, hospitalization, insurance, incentive, deferred compensation, or any other similar benefit plan, practice, program, or policy.

## 6.     RELEASES

**6.1.     Settlement Class Member Acknowledgment.** Settlement Class Members acknowledge that they may hereafter discover facts or law different from, or in addition to, the facts or law they know or believe to exist with respect to a released claim. Settlement Class Members nonetheless acknowledge that this Agreement and their releases shall be and shall remain effective in all respects notwithstanding such different or additional facts or law regarding such released claims.

**6.2.    Releases by Settlement Class Members**. By operation of the entry of the final judgment and final approval, and except as to such rights or claims as may be created by this Agreement, Settlement Class Members, and each of their respective executors, administrators, representatives, agents, heirs, successors, assigns, trustees, or guardians, shall release each Released Party and give a limited waiver of California Civil Code section 1542 of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind that were or could have been asserted in any version of the complaints filed in this Action or that are based on or arise out of the facts or allegations alleged in connection with this Action, including but not limited to those for (i) meal break violations, (ii) inaccurate itemized wage statements, (iii) expense reimbursement violations, (iv) security deposit violations, (v) improper deductions, (vi) overtime violations, (vii) late final pay, (viii) unfair competition, (ix) Fair Labor Standards Act violations, and (x) penalties under PAGA. California Civil Code section 1542 states:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

These releases do not include any claims that cannot be waived as a matter of law, though Settlement Class Members acknowledge and agree that they will not accept any monetary recovery from any proceedings relating to any such claims. Settlement Class Members further acknowledge that this Agreement and these releases do not waive prospective rights but do include post-dispute waivers or releases of any and all rights to pursue or recover PAGA remedies arising from or related to any of the underlying claims that were or could have been brought in the Action.

**6.3.    Additional Releases by Plaintiffs**. In addition to the above release applicable to Plaintiffs as Settlement Class Members, Plaintiffs specifically release any claims related to wage record inspection violations and employment record inspection violations. Plaintiffs also additionally agree that they will not knowingly seek, accept, or

18

continue employment with Defendant. Plaintiffs further generally release each Released Party of and from any and all claims, rights, demands, charges, complaint, causes of action, obligations or liability, including a waiver of California Civil Code section 1542. Plaintiffs expressly waive all rights provided by California Civil Code section 1542, or other similar statutes, that Plaintiffs may have against each Released Party. California Civil Code section 1542 states:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs acknowledge that they have read all of this Agreement, including the above language from the California Civil Code, and that they fully understand both this Agreement and the California Civil Code section. By executing this Agreement, Plaintiffs expressly waive any benefits and rights granted pursuant to California Civil Code section 1542 or any statute, rule, or principle of common law or equity, in any jurisdiction, that is similar, comparable, or equivalent, in whole or in part, to California Civil Code section 1542. Plaintiffs acknowledge and agree that this knowing and voluntary waiver is an essential and material term of this Agreement, and the Agreement would not have been entered into without such a waiver.

**6.4. Injunction from Pursuing Released Claims**. As part of the preliminary approval of the settlement, the Court shall order that Settlement Class Members unless and until opting out of the settlement, shall be enjoined from filing, initiating, or continuing to prosecute any actions, claims, complaints, or proceedings in court, with the California Division of Labor Standards Enforcement ("DLSE"), with the California Labor and Workforce Development Agency ("LWDA"), or with any other entity regarding the released claims. This settlement is conditioned upon the releases by Settlement Class Members as described herein, and upon covenants by Settlement Class Members that they will not participate in any actions, lawsuits, proceedings, complaints, or charges brought individually, by the DLSE, the LWDA, or by any other agency,

persons, or entity in any court or before any administrative body related to the released claims, nor will Settlement Class Members contest or interfere with efforts by Defendant or a Released Party to oppose any attempt to bring such released claims against Defendant or a Released Party.

**6.5.    Non-Admission of Liability**. By entering into this Agreement, Defendant in no way admit any violation of law or any liability whatsoever to Plaintiffs or Class Members, individually or collectively, and expressly denies all such liability. Neither this Agreement nor the Memorandum of Understanding or any other settlement document shall be offered in any case or proceeding as evidence of any admission by Defendant of any liability on any claim for damages or relief. Likewise, by entering into this Agreement, Defendant in no way admit to the suitability of this case for class, collective, or representative treatment, other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and Class Members. The Parties understand and agree that this Agreement and all exhibits thereto are settlement documents and shall be inadmissible for any purpose in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement. The Parties agree that, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement.

**7.    COURT APPROVAL**

**7.1.    Preliminary Approval**. Plaintiffs shall request from the Court a hearing date for the motion for preliminary approval and submit to the Court a motion for an order granting preliminary approval of class action settlement.

**7.1.1. Order Granting Preliminary Approval**. The motion shall request the entry of an order to, among other things, (i) grant preliminary approval of the proposed settlement according to the terms in this Agreement, (ii) set a date for a final

approval and fairness hearing; and (iii) provide for Class Notice to be sent to Class Members as specified herein.

**7.1.2. Defendant's Right to Oppose**. Plaintiffs' motion shall be unopposed by Defendant, unless Plaintiffs' motion for preliminary approval seeks relief not specified by this Agreement. In such event, Defendant reserves its rights to address any assertions that are not contained in this Agreement.

**7.1.3. Effect of Failure to Obtain Preliminary Approval**. If this Agreement or a mutually agreed settlement is not preliminarily approved, the Action shall proceed as if no settlement has been attempted, unless the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. Defendant retains the right to contest whether any aspect of the Action should properly be maintained as a class, collective, or representative action or to contest the merits of the claims being asserted by Plaintiffs in the Action.

**7.2.    Final Approval**. Not later than 28 court days before the date set by the Court for a final approval and fairness hearing, or such other time as the Court may require, Class Counsel shall submit to the Court a motion for final approval of class action settlement. Class Counsel shall request the entry of an order granting final approval, which shall include findings and orders: (i) approving the settlement, (ii) adjudging the terms to be fair, reasonable, and adequate, (iii) reciting the release terms, (iv) directing that the settlement's terms and provisions be carried out; and (v) retaining jurisdiction to oversee administration and enforcement of the terms of this Agreement and the Court's orders.

**7.2.1. Entry of Judgment.** At the final approval and fairness hearing, the Parties shall request that the Court, among other things: (i) enter final judgment in accordance with this Agreement and without further fees or costs to any party except as expressly set forth in this Agreement; (ii) approve this Agreement as fair, reasonable, adequate, and binding on all Class Members; (iii) enter an order as to Class Counsel's request for an Attorneys' Fees and Costs Award; (iv) enter an order as to the request for

Class Representative Incentive Awards and Plaintiff's Individual Payments; (v) enter an order as to the request for the LWDA Payment; and (vi) enter an order permanently enjoining all Settlement Class Members from pursuing or seeking to reopen claims that have been released by this Agreement.

**7.2.2. Effect of Failure to Obtain Final Judgment**. In the event the Court fails to enter final judgment in accordance with this Agreement, or such final judgment is reversed, the Action shall proceed as if no settlement had been attempted, unless the Parties jointly agree to seek reconsideration or appellate review of the ruling or seek Court approval of a renegotiated settlement. Defendant retains the right to contest whether any aspect of the Action should be maintained as a class, collective, or representative action or to contest the merits of the claims being asserted by Plaintiffs in the Action.

**7.3.    Waiver of Appeal Rights.** By accepting this settlement and authorizing the dismissal of the Action with prejudice, Plaintiffs and Class Counsel hereby waive any and all rights they may have to appeal any judgment, ruling, or order made by the Court in this Action, including, without limitation, any order granting final approval of this settlement or dismissing the Action with prejudice.

## 8.    MISCELLANEOUS

**8.1.    Interim Stay of Proceedings**. The Parties agree to refrain from further litigation of this matter, except such proceedings necessary to implement and obtain an order granting final approval of the terms of the Agreement. If the settlement is not finally approved, the Parties agree that they will revert to their positions in the lawsuit prior to the time the settlement was reached, and no agreements set forth in this Agreement, Memorandum of Understanding, or any documents generated or orders issued related to the settlement will be admissible in any future proceeding in this or any other action. If the settlement is not finally approved, Defendant reserves its rights to make all arguments that class or collective action certification or representative treatment would not be appropriate.

**8.2.    Parties' Authority**. The signatories hereto represent that they are fully authorized to enter into this Agreement and are fully authorized to bind the Parties to all terms stated herein. Subject to and upon the Court's order granting final approval of settlement by the Court, the Parties agree that Class Members are so numerous that it is impossible or impractical to have each Class Member execute this Agreement and that this Agreement may be executed on behalf of Class Members by Plaintiffs and Class Counsel and have the same force and effect as if executed by each Class Member.

**8.3.    Entire Agreement**. This Agreement, which includes the Definitions, Recitals, and all Exhibits attached hereto, constitute the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**8.3.1. Materiality of Terms**. The Parties have arrived at this Agreement as a result of arm's-length negotiations. Except as otherwise stated herein, all terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

**8.3.2. Counterparts**. This Agreement may be executed in counterparts, and when all signatories have signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one signed Agreement, which shall be binding upon and effective as to all Parties.

**8.3.3. Facsimile or Scanned Signatures**. Any party may sign and deliver this Agreement by signing on the designated signature block and transmitting that signature page via facsimile or as an attachment to an e-mail to counsel for the other party. Any signature made and transmitted by facsimile or as an attachment to an e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party who transmits the signature page.

**8.3.4. Binding Effect**. This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**8.3.5. Waivers, Modifications, Etc. to Be in Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement. The time periods and dates provided in this Agreement with respect to giving of notices and hearings are subject to Court approval and modification by the Court or by written stipulation of Class Counsel and Defendant's Counsel.

**8.4.    Construction**. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**8.4.1. Exhibits Incorporated by Reference**. The terms of this Agreement include the terms set forth in any attached Exhibit, which are incorporated by this reference as though fully set forth herein. Any Exhibit to this Agreement is an integral part of the settlement.

**8.4.2. Captions**. The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**8.4.3. Invalidity of Any Provision**. Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to render all provisions of this Agreement valid and enforceable.

**8.5.    Further Acts and Cooperation Between the Parties**. The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of another, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. All papers to be filed with the Court by Defendant or Plaintiffs' Counsel in connection with this Agreement shall be submitted to the other Party at least two days prior to filing.

**8.5.1. No Prior Assignments or Undisclosed Liens**. Plaintiffs and Class Counsel represent and warrant that they have not assigned, transferred, conveyed, or otherwise disposed of, or purported to assign, transfer, convey, or otherwise dispose of any of their Released Claims or the Attorneys' Fees and Costs Award to be paid pursuant to this Agreement. Plaintiffs and Class Counsel further represent and warrant that there are not any liens or claims against any of the amounts to be paid by Defendant to Plaintiffs or Class Counsel pursuant to this Agreement. Plaintiffs and Class Counsel agree to defend, indemnify, and hold Defendant harmless from any liability, losses, claims, damages, costs, or expenses, including reasonable attorneys' fees, resulting from a breach of these representations or from any lien or assignment.

**8.5.2. No Future Employment of Plaintiffs**. Plaintiffs hereby waive any rights to future employment with Defendant, any related company, affiliate, entity, or business. Plaintiffs agree that neither Defendant nor any related company, affiliate, entity, or business is obligated to offer employment to them, regardless of the circumstances, at any time in the future. Plaintiffs agree that this is a negotiated clause of this Agreement and not evidence of claimed retaliation.

**8.5.3. Waiver of Right to Object**. Plaintiffs agree to sign this Agreement, and by signing this Agreement, Plaintiffs are thereby bound by the terms herein. For good and valuable consideration, Plaintiffs further agree that they shall not object to any of the terms of this Agreement.

**8.5.4. No Solicitation of Objections**. The Parties further represent and warrant that they have not and will not solicit, encourage, or assist in any fashion any effort by any entity or person to object to the settlement set forth in this Agreement or to seek exclusion from the settlement.

**8.5.5. Discovery of Confidential Documents and Information**. Within 60 days after the completion of the administration of the settlement, Class Counsel shall either return to Defendant any confidential documents and confidential data produced by Defendant in connection with the Action or destroy such documents and data. Class Counsel shall certify in writing to Defendant the good-faith efforts to comply with this provision.

**8.6.    No Media**. Neither side shall make any public statements, to the media or otherwise, concerning the settlement, and both sides shall decline to respond to media inquiries concerning the settlement. Nothing in this provision shall prevent Class Counsel from communicating directly with Class Members regarding the settlement, provided that such communication is limited to Class Members. Nor shall anything in this provision prevent Defendant from making any appropriate disclosures.

**8.7.    Continuing Jurisdiction**. The Court shall retain jurisdiction over the implementation of this Agreement as well as any and all matters arising out of, or related to, the implementation of this Agreement and of the settlement contemplated thereby. Unless the Parties jointly agree, the Court shall not have jurisdiction to modify the terms of the Agreement.

**8.8.    Disputes**. If the Parties have a dispute with regard to the language of this Agreement, the Parties agree to engage Lisa Klerman to mediate any such dispute. The Parties will split the costs of the mediator, and the Parties will bear their own fees.

**8.9.  Governing Law**. All terms of this Agreement shall be governed by and interpreted according to the laws of the State of California.

**COUNSEL FOR PLAINTIFFS AND CLASS**

Dated: March 9, 2018

*Alan Harris*
Alan Harris

**COUNSEL FOR PLAINTIFFS AND CLASS**

Dated: March___, 2018

_____
John P. Dorigan

**PLAINTIFF**

Dated: March ___, 2018

_____
Gideon Pederson

**PLAINTIFF**

Dated: March ___, 2018

_____
Ruth Alcaraz

**PLAINTIFF**

Dated: March ___, 2018

_____
Sasha Mason

**DEFENDANT**

Dated: March ___, 2018

_____
Sally Leible
On behalf of Airport Terminal Services, Inc.

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1    **8.9.    Governing Law**. All terms of this Agreement shall be governed by and

2    interpreted according to the laws of the State of California.

3                                                        **COUNSEL FOR PLAINTIFFS AND CLASS**

4    Dated: March____, 2018                              _____

5                                                        Alan Harris

6                                                        **COUNSEL FOR PLAINTIFFS AND CLASS**

7    Dated: March 9, 2018

8                                                        John P. Dorigan

9                                                        **PLAINTIFF**

10   Dated: March ____, 2018                             _____

11                                                       Gideon Pederson

12                                                       **PLAINTIFF**

13   Dated: March ____, 2018                             _____

14                                                       Ruth Alcaraz

15                                                       **PLAINTIFF**

16   Dated: March ____, 2018                             _____

17                                                       Sasha Mason

18                                                       **DEFENDANT**

19   Dated: March ____, 2018                             _____

20                                                       Sally Leible
                                                         On behalf of Airport Terminal Services, Inc.

21

22

23

24

25

26

27

28

27

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1   **8.9.   Governing Law**. All terms of this Agreement shall be governed by and

2   interpreted according to the laws of the State of California.

3                                                    **COUNSEL FOR PLAINTIFFS AND CLASS**

4   Dated: March___, 2018       _____

5                                                    Alan Harris

6                                                    **COUNSEL FOR PLAINTIFFS AND CLASS**

7   Dated: March___, 2018       _____

8                                                    John P. Dorigan

9                                                    **PLAINTIFF**

10  Dated: March  9 , 2018      _____

11                                                   Gideon Pederson

12                                                   **PLAINTIFF**

13  Dated: March ___, 2018      _____

14                                                   Ruth Alcaraz

15                                                   **PLAINTIFF**

16  Dated: March ___, 2018      _____

17                                                   Sasha Mason

18                                                   **DEFENDANT**

19  Dated: March ___, 2018      _____

20                                                   Sally Leible
                                                     On behalf of Airport Terminal Services, Inc.

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1    **8.9.    Governing Law**. All terms of this Agreement shall be governed by and

2    interpreted according to the laws of the State of California.

3    **COUNSEL FOR PLAINTIFFS AND CLASS**

4    Dated: March___, 2018

5    _____
     Alan Harris

6    **COUNSEL FOR PLAINTIFFS AND CLASS**

7    Dated: March___, 2018

8    _____
     John P. Dorigan

9    **PLAINTIFF**

10   Dated: March ___, 2018

11   _____
     Gideon Pederson

12   **PLAINTIFF**

13   Dated: March _9_, 2018

14   _____
     Ruth Alcaraz

15   **PLAINTIFF**

16   Dated: March ___, 2018

17   _____
     Sasha Mason

18   **DEFENDANT**

19   Dated: March ___, 2018

20   _____
     Sally Leible
     On behalf of Airport Terminal Services, Inc.

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

1    **8.9.    Governing Law**. All terms of this Agreement shall be governed by and

2    interpreted according to the laws of the State of California.

3                                                    **COUNSEL FOR PLAINTIFFS AND CLASS**

4    Dated: March____, 2018    _____

5                                                    Alan Harris

6                                                    **COUNSEL FOR PLAINTIFFS AND CLASS**

7    Dated: March____, 2018    _____

8                                                    John P. Dorigan

9                                                    **PLAINTIFF**

10    Dated: March ____, 2018    _____

11                                                    Gideon Pederson

12                                                    **PLAINTIFF**

13    Dated: March ____, 2018    _____

14                                                    Ruth Alcaraz

15                                                    **PLAINTIFF**

16    Dated: March 9 , 2018    _____

17                                                    Sasha Mason

18                                                    **DEFENDANT**

19    Dated: March ____, 2018    _____

20                                                    Sally Leible
                                                     On behalf of Airport Terminal Services, Inc.

21

22

23

24

25

26

27

28

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**8.9.    Governing Law**. All terms of this Agreement shall be governed by and interpreted according to the laws of the State of California.

**COUNSEL FOR PLAINTIFFS AND CLASS**

Dated: March___, 2018

_____
Alan Harris

**COUNSEL FOR PLAINTIFFS AND CLASS**

Dated: March___, 2018

_____
John P. Dorigan

**PLAINTIFF**

Dated: March ___, 2018

_____
Gideon Pederson

**PLAINTIFF**

Dated: March ___, 2018

_____
Ruth Alcaraz

**PLAINTIFF**

Dated: March ___, 2018

_____
Sasha Mason

**DEFENDANT**

Dated: March ___, 2018

_____
Sally Leible
On behalf of Airport Terminal Services, Inc.

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

Exhibit A

*This notice is being sent pursuant to court order. This is not a solicitation from a lawyer.*

## NOTICE OF PENDING CLASS ACTION SETTLEMENT

*Pederson et al. v. Airport Terminal Services, Inc.*,
United States District Court, Central District of California Case No. 5:15-cv-02400-VAP-SP

---

**If you are a current or former non-exempt employee who is or was employed by Airport Terminal Services, Inc. within California at any time from November 20, 2011, through [April 9], 2018, you are a Class Member and may waive your legal rights and any entitlement to settlement proceeds if you do not act. To remain eligible for a settlement payment, you MUST respond to this notice.**

*Read this notice carefully, as your legal rights could be affected whether you act or not.*

---

The United States District Court for the Central District of California has preliminarily approved a class action settlement that may affect your legal rights. The proposed settlement resolves a class action filed by Plaintiffs Gideon Pederson, Ruth Alcaraz, and Sasha Mason against Airport Terminal Services, Inc. ("ATS")— *G. Pederson et al. v. Airport Terminal Services, Inc.*, United States District Court, Central District of California Case No. 5:15-cv-02400-VAP-SP.

- The Lawsuit is based on various allegations, including but not limited to, Plaintiffs' claims that ATS (i) failed to pay earned wages, (ii) failed to provide proper wage statements, (iii) failed to reimburse expenses; (iv) collected unlawful deductions or security deposits; (v) unlawfully required purchases of uniforms; (vi) failed to pay overtime; (vii) failed to provide proper seating; and (viii) engaged in unfair, unlawful, or fraudulent business practices.

- ATS denies Plaintiffs' contentions and maintains it has fully complied with the law. By entering into this settlement, ATS in no way admits any violation of law or any liability whatsoever to Plaintiffs or Class Members, individually or collectively, and expressly denies all such liability. ATS enters into this settlement solely to avoid further protracted litigation and to resolve and settle any disputes between Class Members and Released Parties.

- The Court has preliminary approved Plaintiffs' counsel—Alan Harris and Priya Mohan of HARRIS & RUBLE and John P. Dorigan of LAW OFFICES OF JOHN P. DORIGAN—as Class Counsel. Based on their investigation and evaluation, Class Counsel is of the opinion that the terms set forth in the preliminarily approved settlement are fair, reasonable, adequate, and in the best interests of the class.

- Plaintiffs and ATS have reached this settlement in light of all known facts and circumstances—including the risks of significant delay and uncertainty associated with litigation, various defenses asserted by ATS, and numerous potential appellate issues—with the assistance of an experienced mediator knowledgeable of both the wage and hour laws and class and representative claims at issue.

**THIS NOTICE IS NOT TO BE UNDERSTOOD OR VIEWED AS AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS ASSERTED BY THE PLAINTIFFS.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM** | You may submit a claim. If you submit a Claim Form and the Court grants final approval of the settlement, you (i) will be eligible to receive an Individual Settlement Payment and (ii) will release your claims. **To receive a settlement payment, you *must* submit a Claim Form.** |
| **DO NOTHING** | You may do nothing. If you do nothing and the Court grants final approval of the settlement, you (i) will release your claims but (ii) will *not* be eligible to receive an Individual Settlement Payment. |
| **OPT OUT** | You may opt out. If you submit a Request for Exclusion and the Court grants final approval of the settlement, you (i) will not release your claims and (ii) will not be eligible to receive an Individual Settlement Payment. **To avoid releasing your claims, you *must* opt out.** |
| **OBJECT** | You may object. If you submit a written objection and the Court nonetheless grants final approval of the settlement despite your objection, you (i) will release your claims but (ii) will *not* be eligible to receive an Individual Settlement Payment, unless you also submit a Claim Form. |

**IMPORTANT LEGAL NOTICE CONCERNING YOUR RIGHTS**
YOU MAY WAIVE YOUR LEGAL RIGHTS AND ANY ENTITLEMENT TO SETTLEMENT PROCEEDS IF YOU DO NOT ACT.
TO REMAIN ELIGIBLE FOR A SETTLEMENT PAYMENT, YOU MUST RESPOND TO THIS NOTICE.

| 1. | Why Did I Receive This Notice? |

The Court ordered that this Notice of Pending Class Action Settlement ("Notice") be sent to you because ATS's records show that you are a current or former non-exempt employee who is or was employed by ATS within California at any time from November 20, 2011, through [April 9], 2018, and are a Class Member. This Notice provides a brief description of the Lawsuit, informs you of the settlement terms preliminarily approved by the Court, and advises you of your legal rights. If finally approved by the Court, the settlement will fully resolve the Lawsuit and your legal rights may be affected by the settlement. The terms of the settlement are set forth in detail in the Settlement Agreement and Release of Claims ("Settlement Agreement"), which you may obtain from the neutral third-party appointed by the Court to administer the settlement (the "Settlement Administrator").

| 2. | What Is the Lawsuit About? |

On November 20, 2015, Plaintiffs filed a complaint on behalf of a putative class of all current or former non-exempt employees employed by ATS within California at any time from November 20, 2011. The Lawsuit pursues class, collective, and representative action claims for alleged (i) meal break violations, (ii) inaccurate itemized wage statements, (iii) expense reimbursement violations, (iv) security deposit violations, (v) improper deductions, (vi) overtime violations, (vii) late final pay, (viii) unfair competition, (ix) Fair Labor Standards Act violations, (x) wage record inspection violations, (xi) employment record inspection violations, and (xii) penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA").

ATS denies and continues to deny (i) all of the allegations made by Plaintiffs, (ii) that it violated any applicable laws, (iii) that it would be liable or owes damages, penalties, or any other type of remedy to anyone with respect to the alleged facts or claims asserted in the Lawsuit, and (iv) that class certification or representative treatment of the Lawsuit or any alleged claims would be proper. Nonetheless, without admitting or conceding any liability or wrongdoing whatsoever and without admitting or conceding that class certification or representative treatment would be appropriate for any purpose other than settlement purposes alone, ATS has agreed to settle the Lawsuit to avoid the burden, expense, and uncertainty of continuing the Lawsuit.

| 3. | What Are the Payments Under the Settlement? |

### a.    Overall Summary of Settlement Payments

ATS agrees to pay a maximum potential settlement amount of **$600,000** ("Gross Settlement Amount"), which would be inclusive of $50,956.45 in security deposits (and accrued interest) held by ATS as of January 1, 2018 ("Deposit Sum") and any payments, subject to Court approval, (i) to Settlement Class Members ("Individual Settlement Payments"), (ii) for any attorneys' fees and costs payment for Class Counsel's attorneys' fees and costs associated with the litigation and resolution of the Lawsuit ("Attorneys' Fees and Costs Award"), (iii) to Plaintiffs for their efforts and work in prosecuting the Lawsuit on behalf of Class Members ("Class Representative Incentive Payments"), (iv) to Plaintiffs for their individual agreements to refrain from seeking future employment with ATS and their individual agreements to broader general releases of claims ("Plaintiff's Individual Payments"), (v) to the State of California Labor and Workforce Development Agency ("LWDA Payment"), (vi) to the Settlement Administrator for administering the settlement ("Settlement Administration Costs"), and (vii) for all employee or employer payroll taxes required in connection with an order granting final approval of class action settlement.

### b.    Payments to Settlement Class Members

If the Court grants final approval of the settlement and concludes it is reasonable, fair, and adequate for Class Members, the Settlement Administrator shall (i) distribute any Deposit Sum remaining in ATS's possession to Settlement Class Members on whose behalf the security deposits are held and (ii) distribute separate checks for Individual Settlement Payments to Settlement Class Members submitting a valid claim. The portion of the Gross Settlement Amount available for allocation to Settlement Class Members for all Individual Settlement Payments and all employee or employer payroll taxes is the Net Settlement Amount, after deductions for any Court approved Attorneys' Fees and Costs Award, Class Representative Incentive Awards, Plaintiff's Individual Payments, Deposit Sum, LWDA Payment, and Settlement Administration Costs.

The Settlement Administrator shall calculate Individual Settlement Payments for each Settlement Class Member submitting a valid claim based on the Settlement Class Member's length of active employment in the State of California as a non-exempt employee since November 20, 2011, through [April 9], 2018, as reflected in ATS's records. Each Settlement Class Member's proportional share shall be calculated by multiplying the balance of the Net Settlement Amount by a fraction, the numerator of which is the total of the Settlement Class Member's number of workweeks during the class period, and the denominator of which is the total of all workweeks by Settlement Class Members submitting a valid claim during the class period.

The Settlement Administrator shall issue an IRS Form 1099 for any Deposit Sum interest payments distributed. Each Settlement Class Member's Individual Settlement Payment shall be characterized as 80% 1099 income and 20% W-2 income. In accordance with applicable tax laws, required tax withholdings will be taken from each Individual Settlement Payment for the portion allocated to W-2 income and remitted to the appropriate taxing authorities. The Settlement Administrator shall issue any necessary IRS Form 1099 or W-2 to Settlement Class Members for their respective payments. Class Members shall be solely and legally responsible for paying all applicable taxes on their respective payments.

**IMPORTANT LEGAL NOTICE CONCERNING YOUR RIGHTS**
YOU MAY WAIVE YOUR LEGAL RIGHTS AND ANY ENTITLEMENT TO SETTLEMENT PROCEEDS IF YOU DO NOT ACT.
TO REMAIN ELIGIBLE FOR A SETTLEMENT PAYMENT, YOU MUST RESPOND TO THIS NOTICE.

### c.    Additional Payments Subject to Court Approval

You do not need to pay individually any portion of Class Counsel's attorneys' fees and costs. Any payments for those attorneys' fees and costs—or any other payments—would be deducted from the Gross Settlement Amount and would be made if and only if the Court concludes the settlement is reasonable, fair, and adequate for the Class and grants final approval of the settlement. The Court may deny or adjust the amounts of certain payments. Any amounts unapproved by the Court shall be added to the amount to be allocated to Settlement Class Members. Class Counsel intends to request that the Court approve (i) Settlement Administration Costs of up to $xx,xxx; (ii) an LWDA Payment to the State of California Labor and Workforce Development Agency of $7,500; (iii) Class Representative Incentive Payments of $500 for each Plaintiff; (iii) Plaintiff's Individual Payments of $4,500 for each Plaintiff; (iv) an Attorneys' Fees and Costs Award for (a) fees of $200,000 and (b) costs of up to $12,000.

## 4.    What Do I Release Under the Settlement?

By operation of the entry of the final judgment and final approval, and except as to such rights or claims as may be created by this Agreement, Settlement Class Members, and each of their respective executors, administrators, representatives, agents, heirs, successors, assigns, trustees, or guardians, shall release ATS and any of its current or former subsidiaries, affiliates, parents, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, employers, attorneys, personal representatives, executors, and shareholders, including their respective pension, profit sharing, savings, health, and other employee benefit plans of any nature, the successors of such plans, and those plans' respective current or former trustees and administrators, agents, employees, and fiduciaries ("Released Party") from certain claims. Specifically, Settlement Class Members will give a limited waiver of California Civil Code section 1542 of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind that were or could have been asserted in any version of the complaints filed in this Lawsuit or that are based on or arise out of the facts or allegations alleged in connection with this Lawsuit, including but not limited to those for (i) meal break violations, (ii) inaccurate itemized wage statements, (iii) expense reimbursement violations, (iv) security deposit violations, (v) improper deductions, (vi) overtime violations, (vii) late final pay, (viii) unfair competition, (ix) Fair Labor Standards Act violations, and (x) penalties under PAGA. California Civil Code section 1542 states: "*A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.*" Settlement Class Members acknowledge that they may hereafter discover facts or law different from, or in addition to, the facts or law they know or believe to exist with respect to a released claim. Settlement Class Members nonetheless acknowledge that this Agreement and their releases shall be and shall remain effective in all respects notwithstanding such different or additional facts or law regarding such released claims.

These releases do not include any claims that cannot be waived as a matter of law, though Settlement Class Members acknowledge and agree that they will not accept any monetary recovery from any proceedings relating to any such claims. Settlement Class Members further acknowledge that this Agreement and these releases do not waive prospective rights but do include post-dispute waivers or releases of any and all rights to pursue or recover PAGA remedies arising from or related to any of the underlying claims that were or could have been brought in the Lawsuit.

## 5.    What Are My Options?

Your options are explained below. The option you select is up to you, but you MUST make your choice by [45 days after mailing]. Any Claim Form, Request for Exclusion, or written objection shall be deemed to be submitted as of the postmarked date.

*If you do nothing and the Court grants final approval of the settlement, you (i) will release your claims but (ii) will not be eligible to receive an Individual Settlement Payment.*

### a.    Submit a Claim Form

**To receive a settlement payment, you *must* submit a Claim Form.** If you submit a Claim Form and the Court grants final approval of the settlement, you (i) will be eligible to receive an Individual Settlement Payment and (ii) will release your claims. In order to remain eligible to receive a settlement payment, you must mail to the Settlement Administrator listed below a Claim Form that includes your name (and former names, if any), signature, current address, and current telephone number. Class Members who submit a Claim Form will remain bound by the settlement if finally approved.

### b.    Opt Out of the Settlement

**To avoid potentially releasing your claims, you *must* submit a Request for Exclusion.** If you submit a Request for Exclusion and the Court grants final approval of the settlement, you (i) will not release your claims and (ii) will not be eligible to receive an Individual Settlement Payment. In order to opt out, you must mail to the Settlement Administrator listed below a Request for Exclusion form that includes your name (and former names, if any), signature, current address, and current telephone number. Any Request for Exclusion that does not include all required information or that is not submitted on a timely basis will be deemed null, void, and ineffective.

Class Members who opt out of the settlement pursuant to the above procedures shall not be permitted to object to the settlement, shall not receive any Individual Settlement Payments, and shall not be bound by the release provisions in any order granting final approval

**IMPORTANT LEGAL NOTICE CONCERNING YOUR RIGHTS**
YOU MAY WAIVE YOUR LEGAL RIGHTS AND ANY ENTITLEMENT TO SETTLEMENT PROCEEDS IF YOU DO NOT ACT.
TO REMAIN ELIGIBLE FOR A SETTLEMENT PAYMENT, YOU MUST RESPOND TO THIS NOTICE.

of settlement. If a Class Member submits both a Request for Exclusion and an objection, the Class Member's objection shall be valid and shall be deemed to invalidate the Request for Exclusion. Class Members who do not opt out of the settlement shall remain subject to being bound by the applicable release provisions in any order granting final approval of class action settlement.

      **c.**      **Object to the Settlement**

**To object to the settlement, you *must* submit a written objection to the Settlement Administrator.** If you submit a written objection and the Court nonetheless grants final approval of the settlement despite your objection, you (i) will release your claims but (ii) will not be eligible to receive an Individual Settlement Payment, unless you also submit a Claim Form. In order to object, you must mail to the Settlement Administrator listed below a written objection that includes: your name (and former names, if any), current address, current telephone number, and the basis for your objection. Any objection that does not include all required information or that is not submitted on a timely basis will be deemed null, void, and ineffective.

Class Members who submit an objection will remain bound by the settlement if finally approved. Class Members who object pursuant to the above procedures may appear at the final approval hearing, either in person or through counsel, but must state their intention to do so at the time they submit their written objection. Class Members may withdraw their objections at any time. Class Members who fail to object pursuant to these procedures shall be deemed to have waived any objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement.

| **7.** | **Where Can I Get Additional Information?** |
|---|---|

This Notice summarizes the Lawsuit, settlement, and related matters. For more information, you may contact the Settlement Administrator, [INSERT], Telephone: (xxx) xxx- xxxx.

**DO NOT CONTACT THE COURT FOR INFORMATION REGARDING THE SETTLEMENT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REQUEST FOR EXCLUSION**

I would like to opt out of the pending class action settlement in *G. Pederson et al. v. Airport Terminal Services, Inc.*, United States District Court, Central District of California Case No. 5:15-cv-02400-VAP-SP. I understand that by completing, signing, and mailing a valid Request for Exclusion by [45 days after mailing], I shall not receive any payment from the settlement in the above-referenced lawsuit. I also understand that by submitting a valid Request for Exclusion, I may not object to the settlement.

Name (and Former Names, if Any): _____

Signature: _____

Current Address: _____

_____

Current Telephone Number: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CLAIM FORM**

I would like to receive an Individual Settlement Payment in connection with the pending class action settlement in *G. Pederson et al. v. Airport Terminal Services, Inc.*, United States District Court, Central District of California Case No. 5:15-cv-02400-VAP-SP. I understand that by completing, signing, and mailing a valid Claim Form by [45 days after mailing], I may be bound by the release provisions if the settlement is finally approved.

Name (and Former Names, if Any): _____

Signature: _____

Current Address: _____

_____

Current Telephone Number: _____

**IMPORTANT LEGAL NOTICE CONCERNING YOUR RIGHTS**
YOU MAY WAIVE YOUR LEGAL RIGHTS AND ANY ENTITLEMENT TO SETTLEMENT PROCEEDS IF YOU DO NOT ACT.
TO REMAIN ELIGIBLE FOR A SETTLEMENT PAYMENT, YOU MUST RESPOND TO THIS NOTICE.

Exhibit 2

Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Ave.
Glendale, California 91203
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
pmohan@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
600 Canterbury Lane
Sagamore Hills, Ohio 44067
Telephone: (330) 748-4475
Facsimile: (330) 748-4475
jpdorigan@aol.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. PEDERSON, R. ALCARAZ, and S. MASON, individually and on behalf of all others similarly situated, and on behalf of aggrieved employees, the people of the State of California and the Labor Commissioner,<br><br>        Plaintiffs,<br><br>    v.<br><br>AIRPORT TERMINAL SERVICES, INC., RICHARD B. HAWES, and SALLY A. LEIBLE,<br><br>        Defendants. | Case No. 5:15-cv-02400-VAP-SP<br>*Assigned to Hon. Virginia A. Phillips*<br><br>**DECLARATION OF GIDEON PEDERSON IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:        April 9, 2018<br>Time:        2:00 p.m.<br>Courtroom: 8A<br>        350 West 1st Street<br>        Los Angeles, CA 90012 |

i

**GIDEON PEDERSON** declares under penalty of perjury under the laws of the United States and of the State of California, as follows:

1.      I am a Plaintiff in the above-captioned action.  If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

2.      I am a former hourly-paid employee of Airport Terminal Services, Inc. ("ATS").  I was employed by ATS as an Airport Agent in Palm Springs, California.  I first met with my attorneys herein regarding my employment with ATS in approximately mid-2015 after developing certain concerns about the compensation ATS had paid me, as well as concerns about ATS's practice of deducting uniform deposits from the paychecks of Airport Agents.  Over the course of several meetings with my attorneys, I came to the conclusion that I was owed amounts for ATS's failure to provide me with adequate meal breaks, failure to pay proper overtime, failure to reimburse me for the costs associated with maintaining my work uniform and ATS's practice of deducting uniform deposits from my paychecks.

3.      After coming to these conclusions, I assisted my attorneys with the drafting of the complaints filed in this case, including the operative Second Amended Complaint. I thereafter had numerous discussions regarding this case with my attorneys.  All told, I have spent more than fifteen hours discussing my case with my attorneys.  I have also spent additional numerous hours—both before and after the case was filed—reviewing various documents relating to my employment with ATS and providing my attorneys with the necessary factual background to understand and interpret these documents.  I understand that my input with respect to ATS's payroll documents was instrumental, as a central factual inquiry for my claims concerns ATS's coding of "NO LUNCH" on employee time sheets and how that coding was treated on subsequent employee pay stubs.

4.      In addition to assisting my attorneys with interpreting ATS's payroll documents, I helped them with respect to the full-day mediation session that was held in

1   this case.  I intend on continuing to take an active role in this litigation until its resolution.

2   5.      In connection with this lawsuit, I believe that I have been—and that I can

3   continue to be—a good representative of other individuals employed by ATS.  As such a

4   representative, I understand that I owe a duty of good faith to these employees and that I

5   cannot—and will not—act solely in my own self-interest.  My primary concern at all

6   times has been—and will continue to be—that all of ATS's employees be treated fairly.

7   6.      In light of the allegations made by my attorneys in this case, I can think of

8   no interest I have that is adverse to any interest of any ATS employee.  Indeed, I believe

9   that my individual claims are typical of the claims of ATS's other employees in that,

10  among other things, I did not receive meal-period "premium" pay for those instances

11  when my time sheets reflect a "NO LUNCH" coding.

12  7.      I understand that any amounts provided to me under any class-wide

13  settlement of my lawsuit must be approved by the Court.  I have had an opportunity to

14  review in detail the terms of the Settlement Agreement and Release of Claims

15  ("Settlement Agreement") attached to the concurrently filed Declaration of Alan Harris.

16  I have thoroughly discussed the terms of the Settlement Agreement with my attorneys.  I

17  believe that the $600,000 Gross Settlement Payment called for by the Settlement

18  Agreement represents a fair and reasonable resolution of this case for the employees I

19  seek to represent.  This is particularly true in light of the airline-industry-specific

20  defenses that my attorneys have explained ATS intends on asserting in this case.

21      I have read the foregoing, and the facts set forth therein are true and correct of my

22  own personal knowledge.  Executed on March 9, 2018, in the County of Riverside, State

23  of California.

24                                          GIDEON PEDERSON

25

26

27

28

Exhibit 3

Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Ave.
Glendale, California 91203
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
pmohan@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
600 Canterbury Lane
Sagamore Hills, Ohio 44067
Telephone: (330) 748-4475
Facsimile: (330) 748-4475
jpdorigan@aol.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. PEDERSON, R. ALCARAZ, and S. MASON, individually and on behalf of all others similarly situated, and on behalf of aggrieved employees, the people of the State of California and the Labor Commissioner,<br><br>       Plaintiffs,<br><br>     v.<br><br>AIRPORT TERMINAL SERVICES, INC., RICHARD B. HAWES, and SALLY A. LEIBLE,<br><br>       Defendants. | Case No. 5:15-cv-02400-VAP-SP<br>*Assigned to Hon. Virginia A. Phillips*<br><br>**DECLARATION OF RUTH ASHLY ALCARAZ IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:     April 9, 2018<br>Time:    2:00 p.m.<br>Courtroom: 8A<br>          350 West 1st Street<br>          Los Angeles, CA 90012 |

**RUTH ASHLY ALCARAZ** declares under penalty of perjury under the laws of the United States and of the State of California, as follows:

1.    I am a Plaintiff in the above-captioned action.  If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

2.    I am a former hourly-paid employee of Airport Terminal Services, Inc. ("ATS").  I was employed by ATS as an Airport Agent in Palm Springs, California.  I first met with my attorneys herein regarding my employment with ATS in approximately mid-2015 after developing certain concerns about the compensation ATS had paid me, as well as concerns about ATS's practice of deducting uniform deposits from the paychecks of Airport Agents.  Over the course of several meetings with my attorneys, I came to the conclusion that I was owed amounts for ATS's failure to provide me with adequate meal breaks, failure to pay proper overtime, failure to reimburse me for the costs associated with maintaining my work uniform and ATS's practice of deducting uniform deposits from my paychecks.

3.    After coming to these conclusions, I assisted my attorneys with the drafting of the complaints filed in this case, including the operative Second Amended Complaint. I thereafter had numerous discussions regarding this case with my attorneys.  All told, I have spent more than fifteen hours discussing my case with my attorneys.  I have also spent additional numerous hours—both before and after the case was filed—reviewing various documents relating to my employment with ATS and providing my attorneys with the necessary factual background to understand and interpret these documents.  I understand that my input with respect to ATS's payroll documents was instrumental, as a central factual inquiry for my claims concerns ATS's coding of "NO LUNCH" on employee time sheets and how that coding was treated on subsequent employee pay stubs.

4.    In addition to assisting my attorneys with interpreting ATS's payroll documents, I helped them with respect to the full-day mediation session that was held in

1   this case.  I intend on continuing to take an active role in this litigation until its resolution.

2       5.     In connection with this lawsuit, I believe that I have been—and that I can

3   continue to be—a good representative of other individuals employed by ATS.  As such a

4   representative, I understand that I owe a duty of good faith to these employees and that I

5   cannot—and will not—act solely in my own self-interest.  My primary concern at all

6   times has been—and will continue to be—that all of ATS's employees be treated fairly.

7       6.     In light of the allegations made by my attorneys in this case, I can think of

8   no interest I have that is adverse to any interest of any ATS employee.  Indeed, I believe

9   that my individual claims are typical of the claims of ATS's other employees in that,

10   among other things, I did not receive meal-period "premium" pay for those instances

11   when my time sheets reflect a "NO LUNCH" coding.

12       7.     I understand that any amounts provided to me under any class-wide

13   settlement of my lawsuit must be approved by the Court.  I have had an opportunity to

14   review in detail the terms of the Settlement Agreement and Release of Claims

15   ("Settlement Agreement") attached to the concurrently filed Declaration of Alan Harris.

16   I have thoroughly discussed the terms of the Settlement Agreement with my attorneys.  I

17   believe that the $600,000 Gross Settlement Payment called for by the Settlement

18   Agreement represents a fair and reasonable resolution of this case for the employees I

19   seek to represent.  This is particularly true in light of the airline-industry-specific

20   defenses that my attorneys have explained ATS intends on asserting in this case.

21       I have read the foregoing, and the facts set forth therein are true and correct of my

22   own personal knowledge.  Executed on March 9, 2018, in the County of Riverside, State

23   of California.

24

25                       RUTH ASHLY ALCARAZ

26

27

28

Exhibit 4

Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Ave.
Glendale, California 91203
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
pmohan@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
600 Canterbury Lane
Sagamore Hills, Ohio 44067
Telephone: (330) 748-4475
Facsimile: (330) 748-4475
jpdorigan@aol.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| G. PEDERSON, R. ALCARAZ, and S. MASON, individually and on behalf of all others similarly situated, and on behalf of aggrieved employees, the people of the State of California and the Labor Commissioner,<br><br>             Plaintiffs,<br><br>      v.<br><br>AIRPORT TERMINAL SERVICES, INC., RICHARD B. HAWES, and SALLY A. LEIBLE,<br><br>             Defendants. | Case No. 5:15-cv-02400-VAP-SP<br>*Assigned to Hon. Virginia A. Phillips*<br><br>**DECLARATION OF SASHA MASON IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:      April 9, 2018<br>Time:      2:00 p.m.<br>Courtroom: 8A<br>             350 West 1st Street<br>             Los Angeles, CA 90012 |

**SASHA MASON** declares under penalty of perjury under the laws of the United States and of the State of California, as follows:

1.      I am a Plaintiff in the above-captioned action.  If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

2.      I am a former hourly-paid employee of Airport Terminal Services, Inc. ("ATS").  I was employed by ATS as an Airport Agent in Palm Springs, California.  I first met with my attorneys herein regarding my employment with ATS in approximately mid-2015 after developing certain concerns about the compensation ATS had paid me, as well as concerns about ATS's practice of deducting uniform deposits from the paychecks of Airport Agents.  Over the course of several meetings with my attorneys, I came to the conclusion that I was owed amounts for ATS's failure to provide me with adequate meal breaks, failure to pay proper overtime, failure to reimburse me for the costs associated with maintaining my work uniform and ATS's practice of deducting uniform deposits from my paychecks.

3.      After coming to these conclusions, I assisted my attorneys with the drafting of the complaints filed in this case, including the operative Second Amended Complaint. I thereafter had numerous discussions regarding this case with my attorneys.  All told, I have spent more than fifteen hours discussing my case with my attorneys.  I have also spent additional numerous hours—both before and after the case was filed—reviewing various documents relating to my employment with ATS and providing my attorneys with the necessary factual background to understand and interpret these documents.  I understand that my input with respect to ATS's payroll documents was instrumental, as a central factual inquiry for my claims concerns ATS's coding of "NO LUNCH" on employee time sheets and how that coding was treated on subsequent employee pay stubs.

4.      In addition to assisting my attorneys with interpreting ATS's payroll documents, I helped them with respect to the full-day mediation session that was held in

DECL. OF SASHA MASON IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL

1    this case. I intend on continuing to take an active role in this litigation until its resolution.

2    5.    In connection with this lawsuit, I believe that I have been—and that I can

3    continue to be—a good representative of other individuals employed by ATS. As such a

4    representative, I understand that I owe a duty of good faith to these employees and that I

5    cannot—and will not—act solely in my own self-interest. My primary concern at all

6    times has been—and will continue to be—that all of ATS's employees be treated fairly.

7    6.    In light of the allegations made by my attorneys in this case, I can think of

8    no interest I have that is adverse to any interest of any ATS employee. Indeed, I believe

9    that my individual claims are typical of the claims of ATS's other employees in that,

10   among other things, I did not receive meal-period "premium" pay for those instances

11   when my time sheets reflect a "NO LUNCH" coding.

12   7.    I understand that any amounts provided to me under any class-wide

13   settlement of my lawsuit must be approved by the Court. I have had an opportunity to

14   review in detail the terms of the Settlement Agreement and Release of Claims

15   ("Settlement Agreement") attached to the concurrently filed Declaration of Alan Harris.

16   I have thoroughly discussed the terms of the Settlement Agreement with my attorneys. I

17   believe that the $600,000 Gross Settlement Payment called for by the Settlement

18   Agreement represents a fair and reasonable resolution of this case for the employees I

19   seek to represent. This is particularly true in light of the airline-industry-specific

20   defenses that my attorneys have explained ATS intends on asserting in this case.

21   I have read the foregoing, and the facts set forth therein are true and correct of my

22   own personal knowledge. Executed on March 9, 2018, in the County of Riverside, State

23   of California.

24   _____

25   SASHA MASON

26

27

28

DECL. OF SASHA MASON IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL